UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**KANE MARCEAUX, ET AL**         **CIVIL ACTION NO. 6:12-CV-01532**
   *Plaintiffs*

**VERSUS**                         **JUDGE RICHARD T. HAIK, SR.**

**LAFAYETTE CONSOLIDATED**
**GOVERNMENT, ET AL**             **MAGISTRATE PATRICK J. HANNA**
   *Defendants*

*************************************************************************

**MEMORANDUM IN SUPPORT OF**
**MOTION TO STRIKE PURSUANT TO F.R.C.P. RULE 12(f)**

NOW INTO COURT, through undersigned counsel, come Defendants, LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT (LCG); LAFAYETTE POLICE DEPARTMENT THROUGH THE LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT (LPD); LESTER JOSEPH "JOEY" DUREL, JR. IN HIS CAPACITY AS PRESIDENT OF THE LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT; DEE EDWARD STANLEY, INDIVIDUALLY AND IN HIS CAPACITY AS CHIEF ADMINISTRATIVE OFFICER OF THE LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT; JAMES P. "JIM" CRAFT, INDIVIDUALLY AND IN HIS CAPACITY AS CHIEF OF THE LAFAYETTE POLICE DEPARTMENT; AND GEORGE "JACKIE" ALFRED, INDIVIDUALLY AND IN HIS CAPACITY AS PATROL DIVISION COMMANDER OF THE LAFAYETTE POLICE DEPARTMENT, who present their Memorandum in Support of the foregoing Motion to Strike pursuant to F.R.C.P. Rule 12(f) as follows:

### I.  FACTS & PROCEDURAL HISTORY

The instant lawsuit is the second in a series of proceedings in which Plaintiffs, former and

current LCG and/or LPD officers and employees, allege various constitutional violations. Initially, Plaintiffs filed suit in the Louisiana Fifteenth Judicial District Court seeking a temporary restraining order (TRO) and preliminary injunction prohibiting Defendants from conducting an investigation into Plaintiffs' potential involvement in the unauthorized release of a confidential Internal Affairs document.[1] Though the State District Court initially issued the TRO, it dissolved the TRO at the subsequent hearing as wrongfully issued and dismissed the lawsuit.[2] Nevertheless, on June 5, 2012, Plaintiffs instituted the instant lawsuit seeking damages based on Defendants' alleged constitutional violations. The Clerk of Court issued Summons for each Defendant; however, Plaintiffs have inexplicably failed to serve any Defendant, each of which can easily be found. Accordingly, Defendants hereby waive service seeking dismissal of Plaintiffs' meritless lawsuit without further delay. Because the majority of Plaintiffs' Complaint constitutes Plaintiffs' rendition of various alleged events which do not involve Plaintiffs, but amount to mere gossip, Defendants urge the instant Motion to Strike, which is presented in conjunction with Defendants' F.R.C.P. Rule 12(b)(6) Motion to Dismiss, both of which will support Defendants' contemplated Motion for Sanctions under F.R.C.P. Rule 11 and 28 U.S.C. §1927.

## II.  LAW & ARGUMENT

### A.  Inflammatory Accusations and Gossip Must Be Stricken.

Under F.R.C.P. Rule 8, civil claims in federal court must set forth a short and plain statement of the claims and the pleaders' entitlement to relief. The purpose of notice pleadings in federal court

---

[1] Exhibit A, in globo. Plaintiffs Marceaux, Cormier, Poiencot, Thompson, and Myers initially filed suit on May 22, 2012. Thereafter, Plaintiffs Stelly, Hewitt, Briscoe, and Harding joined by Supplemental and Amending Petition. Defendant, President Durel, was not named as a defendant in the State Court proceedings.

[2] Exhibit B.

is to limit averments to simple, concise and direct statements so as to avoid verbose allegations while providing defendants with fair notice of what plaintiffs' claim are and the grounds upon which they rest.[3] F.R.C.P. Rule 12(f) authorizes the court to strike material from a pleading that is "redundant, immaterial, impertinent, or scandalous." Scandalous material is that which is distasteful, defamatory, or irrelevant to the action.[4] While recognizing the standard of materiality "is a loose one," Defendants' Motion to Strike is warranted where the allegations are both prejudicial and immaterial to the lawsuit, having "no possible bearing upon the subject matter of the litigation."[5]

Plaintiffs' Complaint is a text-book example of pleadings contemplated by F.R.C.P. Rule 12(f), beginning with repetitive use of the phrase, "rotten to the core,"[6] a defamatory non-factual allegation more appropriate in a press release than a Federal Court pleading. In that same vein, Plaintiffs expressly stop short of accusing Defendants of extortion,[7] though making no such claim. The allegation, "Plaintiffs *do not* presently allege the Defendants were involved in any extortion schemes…"(emphasis in the original), represents a scandalous form of notice pleading which serves no purpose other than to imply Defendants are indeed "extortionists."

Following Plaintiffs' paragraphs relating to jurisdiction and identification of parties, and beginning at Paragraph No. 23, the Complaint embarks on a barrage of epic proportions, rehashing

---

[3] *See Ross v. State of Ala., 893 F.Supp 1545* (M.D.Ala.1995); *Pierce v. Wagner, 134 F.2d 958* (9th Cir. 1943).

[4] Black's Law Dictionary (9th ed. 2009).

[5] *Sadler v. Benson Motors Corporation*, 1997 WL 266735, p. 1 (E.D. La. 1997) (citations omitted). See also *Whitney Nat. Bank v. Boylston*, 09 WL 180665, p.4 (W.D. La.–Lafayette 2009).

[6] Complaint, Paragraphs 25-27.

[7] Complaint, Paragraph 30.

(and enhancing) the latest gossip, providing commentary, accusations, and other statements that are irrelevant, immaterial, impertinent and/or scandalous. None of these "facts" concern Plaintiffs and, even less, their claims. . Though these morsels have been voraciously swallowed by the local media, they have no bearing on the subject matter of the litigation. Examples include:

1. In Paragraph Nos. 23-49, Plaintiffs' Complaint asserts that the Lafayette Police Department is"Rotten to the Core," there exists a "Code of Silence" and there is a concealment of police misconduct. None of the Paragraphs concern any Plaintiff or any claim of Plaintiffs.

2. Paragraph Nos. 50-53 relay that Internal Affairs investigations are either not conducted or are manipulated by 'white washing' or covering up, that a code of silence exists among certain employees, falsification of police reports occur, and officers have been assigned quotas for tickets, etc. None of the Paragraphs concern any Plaintiff or any claim of Plaintiffs.

3. Paragraph Nos. 54-56 relate the tale of an unnamed police officer regarding Mardi Gras in 2010. The tale is unrelated to any Plaintiff or any claim.

4. Paragraph Nos. 57-80 are a colorful rendition of Defendant Craft's purported encounter with an arrestee at Festival International in 2010, where Plaintiffs go as far to assert that Defendant Craft performed a full-scale beat down of a defenseless, unarmed, one-legged homeless and disabled man and then covered it up. The inflammatory and scandalous tale, however, does not concern any Plaintiff or any claim.

5. Paragraph Nos. 81-105 are related to purported discrimination and the purported cover up of crimes committed by members of the SWAT Team, where Plaintiffs label several police officers as liars and law breakers and allege that Chief Craft is a frequent patron of a certain bar. The narrative involves seven individuals, none of whom are parties to the suit; although, Plaintiff Cormier makes a brief appearance as willing listener. Not only are these allegations beyond inflammatory and disparage non-party police officers, they do not concern any Plaintiff nor any purported claim of Plaintiffs.

6. Paragraph Nos. 107-121 concern Plaintiffs' attempt to label the Internal Affairs Department as corrupt or inept. Plaintiffs also disparage Dewayne Prejean (a non-party) by asserting he has ruined the IA department and is inept; that the IA employees are ignorant and inept; and that Prejean's wife, a lawyer, has potentially violated the Rules of Professional Conduct by being part of some deal relating to her

representation of clients. None of the Paragraphs concern any Plaintiff or any claim of Plaintiffs.

7. Paragraph Nos. 122-146 concern an episode with Major Glenn Dartez, who is not a party to this proceeding. Plaintiffs disparage Glenn Dartez by suggesting he had a relationship with a "female companion of dubious credentials." Plaintiffs also disparage Captain Randy Vincent and Lt. Mac Gallien by inferring they, along with Defendant Craft, covered up a crime. All of these "facts" are relayed as being heard by the open ears of Plaintiffs Poiencot, Thompson, and Cormier, but none of the Paragraphs concern any Plaintiff or any claim of Plaintiffs.

8. Paragraph Nos. 147-178 concern Captain Angelo Iorio (a non party) and an unknown Officer, neither of whom are parties. Plaintiffs disparage Captain Angelo Iorio by asserting that he has tipped off drug dealers, individuals with no affiliations to the police department. None of the Paragraphs concern any Plaintiff or any claim of Plaintiffs.

9. Paragraph Nos. 242-250 concern alleged ticket quotas, wherein Plaintiffs assert that Officer Gremillion (a non-party) tried to get officers to lie in an investigation. None of the Paragraphs concern any Plaintiff or any claim of Plaintiffs.[8]

Thus, Plaintiffs' alleged "facts" amount to mere "name calling, accusations of irrelevant and prejudicial conduct, repetition of vicious gossip, and guilt by association which are inflammatory, prejudicial and scandalous, and have nothing to do with the allegations of the complaint."[9] These allegations must be stricken from the Complaint as such language and allegations "add nothing to the substantive allegations of the complaint and are both immaterial and scandalous."[10] As such, Defendants request the Court to strike all paragraphs which do not substantively pertain to any Plaintiff or any claim, as well as Plaintiffs' inflammatory "rotten to the core," "extortionist," and related language, including but not limited to Paragraphs 23-178 and 242-250.

---

[8] See Complaint, numbered paragraphs as identified.

[9] *Slaughter House Records and Production Co., Inc. v. Miller*, 1999 WL 412431 (E.D. La. 1999).

[10] *Id*.

## B.   Request for Punitive Damages Against Defendants Must Be Stricken.

Plaintiffs in a §1983 action cannot recover punitive damages from a municipality or its officials acting in their official capacities; therefore, such requests are appropriately stricken from the Complaint as irrelevant.[11] Thus, Defendants respectfully request that any and all reference to and requests for punitive or exemplary damages against Defendants, LCG, LPD, President Durel, CAO Stanley, Chief Craft, and Major Alfred, be stricken from the Complaint, as this Honorable Court did in *Lawrence v. Morris.*[12]

## III.  CONCLUSION

The overall gossip-like nature of Plaintiffs' Complaint in conjunction with inappropriate and inflammatory references to phrases such as "rotten to the core" and "extortion," render Defendants' Motion to Strike not only warranted under F.R.C.P. Rule 12(f), but also necessary to combat the Complaint's unnecessary appeal to the media. As such, Defendants request this Honorable Court to strike the following provisions from the Complaint:

1. Paragraphs 23-178;

2. Paragraphs 242-250;

3. All references to punitive or exemplary damages against LCG, LPD, President Durel, CAO Stanley, Chief Craft, and Major Alfred, including but not limited to Paragraphs 267-270; and

4. Any other word, phrase, or statement which is redundant, immaterial, impertinent or scandalous and does not substantively pertain to the Plaintiffs' claims.

---

[11]   *Lawrence v. Morris*, 10 WL 572736 (W.D. La.–Lafayette 2010).

[12]   *Id.*

RESPECTFULLY SUBMITTED:

BRINEY FORET CORRY

By: ____s/ Michael P. Corry____
     **MICHAEL P. CORRY - 20764**
     **RICHARD R. MONTGOMERY - 21363**
     **HALLIE P. COREIL - 33784**
     413 Travis Street, Suite 200
     Post Office Drawer 51367
     Lafayette, Louisiana 70505-1367
     Telephone: (337) 237-4070
     Facsimile: (337) 233-8719
ATTORNEYS FOR DEFENDANTS, LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT (LCG); LAFAYETTE POLICE DEPARTMENT THROUGH THE LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT (LPD); LESTER JOSEPH "JOEY" DUREL, JR. IN HIS CAPACITY AS PRESIDENT OF THE LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT; DEE EDWARD STANLEY, INDIVIDUALLY AND IN HIS CAPACITY AS CHIEF ADMINISTRATIVE OFFICER OF THE LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT; JAMES P. "JIM" CRAFT, INDIVIDUALLY AND IN HIS CAPACITY AS CHIEF OF THE LAFAYETTE POLICE DEPARTMENT; AND GEORGE "JACKIE" ALFRED, INDIVIDUALLY AND IN HIS CAPACITY AS PATROL DIVISION COMMANDER OF THE LAFAYETTE POLICE DEPARTMENT

## **CERTIFICATE**

This is to certify that on July 6, 2012, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of such filing to the following:

     springlaw@gmail.com;

     jca@jcalaw.us;

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant or pro se defendant:

     **None.**

                                      s/Michael P. Corry
                                      **MICHAEL P. CORRY- 20764**