| | |
|---|---|
| Kane Marceaux, Greg Cormier, Scott Poiencot, Norbert Myers & Gabe Thompson<br>*Petitioners*<br><br>V.<br><br>The Consolidated Government of Lafayette; Dee Stanley, CAO of The Lafayette Consolidated Government of Lafayette; Officially and Individually; Chief James Craft, Chief of Police of Lafayette Police Department; Officially and Individually; and Major George "Jackie" Alfred, Lafayette Police Department; Officially and Individually<br>*Respondent* | DOCKET NO.: 20122899<br>SEC.: J<br>15TH JUDICIAL DISTRICT COURT<br>PARISH OF LAFAYETTE<br>STATE OF LOUISIANA |

<u>PETITION FOR TEMPORARY RESTRAINING ORDER WITH NOTICE
AND PRELIMINARY INJUNCTION PURSUANT
TO THE POLICEMAN'S BILL OF RIGHTS</u>

The petition of Kane Marceaux, Gregory Cormier, Scott Poiencot, Norbert Myers and Gabe Thompson, Lafayette City Police Officers, of the age of majority individually and residing and/or working in Lafayette Parish, Lafayette, Louisiana, respectfully represents:

1.

1. Made defendant herein are the following Defendants:

   a) **The Lafayette Consolidated Government**, responsible for the implementation, distribution, execution, of Constitutional policies for the Lafayette City Police Department, as well as, responsible for the employment of the other named Defendants who are charged with adhering to the mandates of the Police Officer's Bill of Rights (i.e. La. R.S. Title 40 § 2531, et seq.).

   b) **Dee Stanley, CAO**, for the consolidated government and direct supervisor to all departmental directors, including Defendant, James Craft, Chief of Police. He is sued in both his official and individual capacities.

   c) **James Craft, Chief of Police**, who is tasked with the mission to serve the community with a sense of courage, dedication, compassion and integrity. He is sued in both his official and individual capacities.

   d) **Major George "Jackie" Alfred**, Patrol Division Commander, first eschelon of the Lafayette City Police Department and direct subordinate of Chief, James Craft. He is sued in both his official and individual capacities.

2.

The named Defendants herein initiated an internal investigation regarding an apparently purloined Internal Affairs document of the Lafayette City Police Department on or about February 1, 2012. Although the Policeman's Bill of Rights requires that investigation, explained in more detail below, to be completed within sixty (60) days (i.e. April 1, 2012) or it is **AN ABSOLUTE NULLITY**, Defendants transmitted target letters to the Plaintiffs herein on or about May 14, 2012, for an investigation which was required by law to have been completed not later than April 1, 2012. As such, and for other reasons below, the "investigation" is an absolute nullity at law such that Defendants should not only be restrained but permanently enjoined from any further attempts to carry forward this absolute nullity. The "investigation", upon information and belief, is not only a subterfuge for an apparent witch hunt, it is evidence of unwritten policies of the Defendants utilized in an attempt to foist reprisals, retributions, and retaliation against Plaintiffs and other police officers located on the Third Floor of the police building under cover of "investigation." All conduct and/or acts and/or omissions occurred in Lafayette, Lafayette Parish, Louisiana such that venue is proper in this Honorable Court.

3.

Defendants, ( hereinafter referred to respectively as a) Lafayette, b) Stanley, c) Craft, and d) Alfred") are the employers and supervisors of the Plaintiffs who are all serving police officers for the Lafayette City Police Department. In accordance with the requirements of *Monell v. Department of Soc. Services,* 436 U.S. 658 (1978), the Defendants are required to maintain and implement written policies to insure that all Constitutional and statutory rights of citizens and police officers are protected, including the fair and impartial internal administration of the police department, insuring an absence of racial discrimination, nepotism, and political appointments not based on merit and achievement. The Defendants are obligated to adhere to all Constitutional and statutory obligations which preclude the subversion of legitimate processes to achieve retaliation and injury to protected rights of the police officers in the Department. At all times relevant, the acts and omissions complained of herein along with the residence of the

Plaintiffs reside and are domiciled in Lafayette, Louisiana, such that venue is proper herein.

4.

Plaintiffs suggest that Defendants, in an effort to avoid potential liabilities from required written policies, have engendered a de facto policy absenting policies which should be written, published, circulated and adhered to. Any absence of written policy, as an attempt to avoid having complete and thorough written policies as a practice for the Police Department is, in fact, a negligent policy consisting of "no policy", and actionable.

5.

Beginning in the year 2012, another Officer and member of the Lafayette Police Department was advised of possible disciplinary charges and placed on administrative leave. At Mardi Gras, this officer was removed from administrative leave to provide services during the Mardi Gras holiday season. At the conclusion of Mardi Gras, this same officer was again placed on administrative leave. Subsequently he was disciplined and exercised his right to appeal the decision to the Civil Service Authority for Lafayette Parish.

6.

On or about February 1, 2012, this officer's attorney filed a legal memorandum defending the officer. Attached and incorporated to the attorney's brief was an internal document of the Lafayette Police Department Internal Affairs Department. The attachment and filing of same made this document a public record, much to the apparent chagrin of the named Defendants herein. A copy of the Internal Affairs Document is attached and annexed hereto as **Exhibit "A"**.

7.

On or about May 8, 2012, during the Civil Service Proceeding, a Sgt. Keith Gremillion from the Lafayette City Police Department's Internal Affairs section testified under oath that pursuant to the instructions he had received from his superiors, he BEGAN an internal investigation on or about February 1, 2012, to determine who, if anyone, from inside the police department secured the disputed IA document and provided it to the appealing police officer's lawyer. According to Sgt. Gremillion's oath given testimony, the disputed IA document was not related in any way to the appeal of the defending police officer involved in the Civil Service proceeding.

8.

According to the testimony of Sgt. Gremillion, after he had received a copy of the document he conducted an investigation to determine how the officer obtained the document, including reviewing shift log investigations and the file from which the document had apparently been removed, concluding his testimony that the removal of same was a "serious breach".

9.

During the Consolidated Government's administration of the Lafayette Police Department, there have been numerous irregularities in violation of Constitutional and statutory requirements. The unwritten policies of the named Defendants include the use of positions to conduct retaliation, racial discrimination, misreporting of events, and use of disciplinary procedures to injure the due process rights of serving police officers by disingenuously conducting "investigations" which are "absolute nullities" as a means of retaliation, reprisal and retribution for misconceived affronts. Upon information and belief, prior to the acts complained of herein, Chief James Craft believed that there were African American officers in the Department who wanted to take his job as Chief of Police. In addition, upon information and belief, Defendant Alfred embarked upon the path of seeking reprisals and retribution for perceived wrongs suffered by Craft and Alfred. Upon information and belief, Alfred has bragged that he was going to "make some changes around here", reverberating that he didn't care what it was called, including retaliation. Further, Alfred received authority from Defendant Craft to carry out these retaliations within the Department because things had gotten personal, at least as far as Alfred was concerned. Alfred has bragged that he was going to shake things up and that he could obscure the retributions within the police department's structure by making the changes "appear" to be a policy change. In addition, Defendant Alfred, the direct subordinate and, at times, designate for the Chief of Police, Defendant Craft, circulated that because things became personal lots of things could happen, including the shooting of police officers against whom retributions were likely to occur. The above described statements attributed to Defendant Alfred occurred after February 1, 2012, (the date of the police officer's brief with the disputed Internal Affairs Document) and prior to the acts complained of herein that triggered the present lawsuit.

10.

Upon information and belief, the present administration has engaged in a policy and practice of widespread deception and disinformation to the news media about police events of public interest, acknowledging that in the event of discovery, there might be some last page of the newspaper correction made some five years later, all with the direct knowledge and acquiescence of the Consolidated Government and Defendants Stanley, Craft, and Alfred.

11.

Plaintiffs, with personal knowledge of the factual allegations herein and the truth of the facts alleged herein, have legitimate fears and concerns for their right to simply do their jobs without fear of unlawful reprisals, retributions, and retaliations. Plaintiffs herein take very seriously the statements of Defendant Alfred, as an expression of the entire governing authority of the Lafayette Police Department, that as "Serpico" they have genuine fears of either being shot or physically assaulted or battered along with unlawful and attempted disciplinary proceedings.

12.

On or about May 14, 2012, and May 15, 2012, as part of the implementation of the retributions and reprisals by the named Defendants herein, Plaintiffs received an administrative notices that they were now the subjects of an "investigation" being conducted regarding Exhibit "A" attached hereto *in globo*, being the purloined internal affairs investigation documents for which an internal investigation began on or about February 1, 2012, according to the sworn testimony of Sgt. Keith Gremillion.

13.

The "investigation" as a matter of law is an "absolute nullity." The mandatory terms, conditions and provisions of the Police Officer's Bill of Rights require that in an investigation of any police officer subject to possible sanctions, the Chief of Police or his authorized representative shall initiate an investigation within fourteen days of the date the complaint is made. Further, each investigation of a police employee or law enforcement officer which is conducted…**SHALL BE COMPLETED WITHIN SIXTY DAYS**.

14.

In accordance with the Police Officer's Bill of Rights, there shall be no discipline, demotion, dismissal or adverse action of any sort taken…..unless the investigation is conducted in accordance with the minimum standards provided in this Section. In the event that the minimum standards are ignored, any discipline, demotion, or averse action …**IS AN ABSOLUTE**

NULLITY as provided in the Police Officer's Bill of Rights, a copy of which is attached and annexed hereto as **Exhibit "B"**.

15.

According to these mandatory provisions of law, directly applicable to the Plaintiffs herein, an investigation was commenced on the subject matter for which they received the notices of May 14th and 15, 2012, on or about February 1, 2012. After fourteen days from February 1, 2012, none of the Plaintiffs ever received any notice whatsoever. As Sgt. Gremillion testified, the investigation was begun on or about February 1, 2012. The bright line for completion of that investigation was sixty (60) days from February 1, 2012, or Sunday, April 1, 2012. The Defendants have completely failed to adhere to these mandatory requirements of law since the present "investigation" noticed on May 14th and 15th, 2012, was required to have been completed by April 1,2012. Since it was not, the present "investigation" is AN ABSOLUTE NULLITY. This "investigation" is further evidence by its initiation of the negligent unwritten policies of retribution, retaliation, and misuse of internal policies and procedures to cause harm and injury to line officers as part of the policies of racial discrimination and deprivation of guaranteed rights of due process and integrity of the system in general.

16.

Unless a temporary restraining order is issued, preventing Defendants from proceeding with the "investigation," Plaintiffs will suffer irreparable injury, loss and damage. There is no adequate remedy at law.

17.

Plaintiffs request that this temporary restraining order should issue with prior notice to Defendants as immediate relief is necessary to prevent damages to Plaintiffs. Plaintiffs suggest that with notice and hearing and the ability to present their testimony and evidence, the factual allegations of the unwritten and negligent policies of retaliation, retribution and reprisal shall be proven. Defendants have been noticed via United States mail that Plaintiffs are seeking a temporary restraining order, preliminary and final injunction against Defendants prohibiting and restraining Defendants from proceeding with the present "investigation" in complete disregard and abrogation of the Police Officer's Bill of Rights. This "investigation" further demonstrates the existence of the unwritten policies of retribution, retaliation and reprisal extent with the knowledge, acquiescence and support of all named Defendants herein acting in concert. Plaintiffs wish that any temporary restraining order be followed by hearing for preliminary injunction within ten (10) days or as soon as this Court can hear same and thereafter this Court permanently enjoin, Defendants, after an award of costs, damages and attorney's fees for the necessity of bringing this action.

18.

This temporary restraining order should issue without security or alternatively minimal security, as the Defendants will not be harmed by the issuance of any restraining order or injunction since they are engaged in an absolute nullity in contravention of the Police Officer's Bill of Rights which they opined in their Notices of May 14th and 15th, 2012 to Plaintiffs. In the alternative, security should be minimal in amount.

**WHEREFORE**, petitioners pray:

(1) That a temporary restraining order issue herein, according to law and without bond or minimal bond, directed to the Defendants restraining, enjoining and prohibiting them from proceeding with the present "investigation" which is an absolute nullity at law.

(2) That Defendants be ordered to show cause on the date and time fixed by this Court why a preliminary injunction and thereafter final injunction in the form and substance of the temporary restraining order prayed for should not be issued, and

(3) That certified copies of this petition, together with citation, be issued and served according to law on the defendant at:

**Lafayette Consolidated Government**
705 West University Avenue,
Lafayette, Louisiana 70506

**Dee Stanley, CAO**
705 West University Avenue,
Lafayette, Louisiana 70506

**Chief James Craft**
900 E. University Ave
Lafayette, Louisiana 70502

**Major George"Jackie" Alfred**
900 E. University Ave
Lafayette, Louisiana 70502

and

After the lapse of all legal delays and proceedings had, there be judgment against **Defendants, Consolidated Government of Lafayette, Dee Stanley, Individually and in his Official Capacity; James Craft, Individually and in his Official Capacity; and George Alfred, Individually and in his official capacity.**

(4) permanently restraining, enjoining and prohibiting him from proceeding with any further investigation; and

(5) For all costs of these proceedings, and

(6) For all necessary orders and decrees as may be required or proper in the premises and for full, general and equitable relief.

Respectfully submitted,

Spring & Spring, LLC
Attorneys at Law

S. Stephen Spring, II
LBN: 12347
733 East Airport Avenue, Suite 104
Baton Rouge, Louisiana 70806
Telephone:   225.932.9671
Facsimile:    413.451.8923
E- Mail:       springlaw@gmail.com

**SERVICES INSTRUCTIONS:**

Please serve Defendants:

**Lafayette Consolidated Government**
705 West University Avenue,
Lafayette, Louisiana 70506

**Dee Stanley, CAO**
705 West University Avenue,
Lafayette, Louisiana 70506

**Chief James Craft**
900 E. University Ave
Lafayette, Louisiana 70502

**Major George"Jackie" Alfred**
900 E. University Ave
Lafayette, Louisiana 70502

| | |
|---|---|
| Kane Marceaux, Greg Cormier, Scott Poiencot, Norbert Myers & Gabe Thompson<br>*Petitioners*<br><br>V.<br><br>The Consolidated Government of Lafayette; Dee Stanley, CAO of The Lafayette Consolidated Government of Lafayette; Officially and Individually; Chief James Craft, Chief of Police of Lafayette Police Department; Officially and Individually; and Major George "Jackie" Alfred, Lafayette Police Department; Officially and Individually<br>*Respondent* | DOCKET NO.: 2012 2899  SEC.: "J"<br><br>15TH JUDICIAL DISTRICT COURT<br><br>PARISH OF LAFAYETTE<br><br>STATE OF LOUISIANA |

### PETITIONERS' FIRST SUPPLEMENTAL PETITION FOR TEMPORARY RESTRAINING ORDER WITH NOTICE, AND PRELIMINARY INJUNCTION PURSUANT TO THE POLICEMAN'S BILL OF RIGHTS

Pursuant to the provisions of La.C.Civ.P. Article 1151, Petitioners, Kane Marceaux, Gregory Cormier, Scott Poiencot, Norbert Myers and Gabe Thompson, Lafayette City Police Officers, of the age of majority individually and residing and/or working in Lafayette Parish, Lafayette, Louisiana, file of Right their First Supplemental Petition for Temporary Restraining Order With Notice, and Preliminary Injunction Pursuant to the Policeman's Bill of Rights respectfully represents:

1.

Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:

Art. 1151. Amendment of petition and answer; answer to amended petition

A plaintiff may amend his petition without leave of court at any time before the answer thereto is served. He may be ordered to amend his petition under Articles 932 through 934. A defendant may amend his answer once without leave of court at any time within ten days after it has been served. Otherwise, the petition and answer may be amended only by leave of court or by written consent of the adverse party.

A defendant shall plead in response to an amended petition within the time remaining for pleading to the original pleading or within ten days after service of the amended petition, whichever period is longer, unless the time is extended under Article 1001.

2.

Petitioners sought, and obtained a temporary restraining order with notice, pursuant to alleged violations of the Defendants of the Police Officer's Bill of Rights by the Defendants. Petitioners' complaint was filed on or about May 22, 2012.

3.

On May 23, 2012, this Honorable Court signed the requested temporary restraining order granting a period of ten (10) days to cease and desist, pending hearing, any investigation of the

Petitioners as contained in the Internal Affairs Notices issued by Defendants arising from a purloined Internal Affairs Document sometime in January or February of 2012.

4.

The Police Officers' Bill of Rights, a copy of which was annexed and incorporated in Plaintiffs' original complaint as Exhibit "B", provides in pertinent part:

**La. R. S. 40, § 2535. Retaliation for exercising rights**

**There shall be no penalty nor threat of any penalty for the exercise by a law enforcement officer of his rights under this Chapter.**

**Added by Acts 1985, No. 425,§ 1.**

5.

Subsequent to the filing of Petitioners' original complaint, Defendant James Craft, upon information and belief, with others have begun a systemic retaliation, reprisal, and retributions against all Plaintiffs herein.

6.

Further, as will be more fully shown below, Defendant, **JAMES CRAFT**, attempted to utilize his position as Chief of Police to set up for completely unwarranted disciplinary charges, Plaintiff, **SCOTT POIENCOT**.

7.

On the very day that this Honorable Court ordered Defendants restrained, Defendant, JAMES CRAFT, Chief of the Lafayette City Police, without any legitimate factual basis or any other purpose but retaliation, retribution, and reprisal ordered one of Craft's subordinates, Captain Myers, to remove Poiencot from his current position. Craft further told Captain Meyers that if he (Captain Meyers) didn't remove Poiencot, he (Craft) would. Craft, without any factual basis whatsoever, ordered this retaliation upon Craft's erroneous assumption that Poiencot in an exchange with a citizen named Mr. Dwayne Belfor, was "knocking his (Craft's) dick in the dirt".

8.

Officer **SCOTT POIENCOT** is the police representative on the Lafayette Municipal Fire and Police Civil Service Board. Upon information and belief, Officer Poiencot, as a voting member of the Civil Service Board; a board which has the power to vacate decisions by Craft regarding terminations, discipline, etc., is a particularly attractive target to Police Chief Craft for retaliation, retribution and reprisal.

9.

Upon information and belief, Chief James Craft, upon learning of the Petitioners' filing of their Petition for Temporary Restraining Order, Preliminary and Final Injunction, embarked upon a course of retaliation, retribution, and reprisal against these Plaintiffs and others in direct contravention of the specific prohibitions against retaliation in the Police Officers' Bill of Rights.


Case 6:12-cv-01532-RTH-PJH   Document 4-3   Filed 07/06/12   Page 11 of 14 PageID #: 102

10.

Upon information and belief, Chief James Craft, enlisted the services of his friend and/or associate, Mr. Dwayne Belfor, in an attempt to set up and discredit Officer Poiencot. Officer Poiencot, in responding to a citizen call, was required to interact with Mr. Belfor.

11.

The apparently rather transparent plan called for Mr. Belfor to call the Lafayette Police Department, after he had spoken with Officer Poiencot, and falsely report that Officer Poiencot was not only discourteous to Mr. Balfor but disparaged Chief James Craft to such an extent as Chief James Craft himself stated: Officer Poiencot was "knocking his dick in the dirt".

12.

The plain truth of the entire incident, a truth which Officer Poiencot, through present counsel will conclusively demonstrate at the trial of this matter, is that Mr. Balfor's rendition of events is not only false, but clear and convincing evidence of the subterfuge to which Defendant Craft will resort with the misuse of his position to attempt to obtain retaliation, retribution and reprisal specifically outlawed by the Policeman's Bill of Rights.

13.

Not only the Policeman's Bill of Rights, **but fundamental fair play and decency** [emphasis added], upon which our entire judicial system is based, requires that upon allegation or accusation, no person, even police officers, shall NOT be deprived of their rights or property interests without due process of law. This Constitutional and statutory precept, requires, irrespective of the Police Officer's Bill of Rights, that Officer Poinecot not be deprived of his rank and position resulting from a bogus and false allegation. It also requires that no such action be taken until any such allegation is investigated, documented, and substantiated.

14.

Interestingly, had Defendant Craft ordered an investigation to determine the actual facts before ordering Captain Myers to either remove Officer Poiencot or he (Craft) would, such an investigation (a basic and minimal predicate) would have revealed the utter falsity of Mr. Balfor's baseless and spurious allegations. Upon information and belief, since Defendant Craft's objective was to retaliate against Officer Poiencot, no investigation was ever ordered by Craft. Obviously, had Craft ordered any investigation, it would thwart the apparent, unwritten policy of Defendant James Craft to abuse his position by manipulating events and people to avenge himself in contravention of law.

15.

Officer Poiencot, finding himself the recipient of demotion for something that never happened, found it necessary to now file a complaint against Chief James Craft. Attached and annexed hereto as **EXHIBIT "A"** is a copy of Poiencot's complaint.

16.

Since the original filing of Petitioners' complaint on May 22, 2012, additional events after that date have occurred that are more retaliation against other named Plaintiffs.

17.

In approximately April of this year, Plaintiff, Police Officer Scott Poiencot, had a face to face conversation with Chief Craft. During that conversation, Chief Craft told Cormier that he (Craft) believed that Cormier and Plaintiff Gabriel Thompson were bad mouthing Chief Craft by "knocking his dick in the dirt". Chief Craft told Cormier that despite his belief that Cormier and Thompson were being negative about him, Craft would not transfer or separate Thompson and Cormier provided they simply did their job.

18.

The day after Plaintiffs filed their suit, Defendant Craft ordered the transfer of some 19 police officers. According to Craft's appointed public information officer, the transfers were being made to obtain "well rounded officers" for the benefit of the public. Upon information and belief, contrary to what Craft directed be published to the media and public, another more sinister reason was real reason and motivation.

19.

In April of 2012, Defendant Alfred made numerous statements about making changes within the Department and didn't care what anyone called these changes, including "retaliation". Contrary to the public statements that these transfers are being made to produce "well rounded officers", Major Alfred stated in mid April that there were certain officers (not Plaintiffs) who were lazy and hiding during their work on night shifts. Transfers, in part, were coming for these officers so that they could be transferred to the day shifts and, thereafter, be monitored and watched. These statements by Alfred were made the day after Plaintiff Cormier filed a complaint regarding payroll fraud within the Police Department to the Civil Service Board.

20.

On of the unwritten policies of Defendants is a policy of retaliation and reprisal that is embodied in both the transfers of Plaintiffs Cormier and Thompson, but also the 17 other police officers who were noticed of their transfer as well. The Defendants named herein order transfers to retaliate against individual officers by assigning the targeted officers assignment in the North side of Lafayette or working night shifts or both.

21.

There are a substantial number of officers who are single parents. The purpose or protocol of these retaliatory transfers (i.e. North side, nights, or both) is to disrupt the family life of these officers by disrupting the schedules they have been maintaining which is conducive to their family life. If any police officer is targeted for retaliation, the normal "unwritten" policy of

Defendant Craft is a transfer to the North side of Lafayette, transfer to night duty, or both transfer to night duty in North side Lafayette.

22.

The day after Plaintiffs sought to enforce their legitimate rights under the Policeman's Bill of Rights, Plaintiffs Greg Cormier and Gabriel Thompson were noticed that they were being transferred to North side Lafayette. In addition, as an additional punitive measure, Plaintiff Cormier was informed he was also being reassigned to "night duty".

23.

Since the announcement of these "transfers" Plaintiffs have been informed by fellow officers included in the 19 transfers, that the transfer of the additional officers (i.e. 17 others) is nothing more than camouflage to hide that Defendants are actually retaliating against of the real Plaintiffs Cormier and Thompson. These fellow officers; however, have affirmed the efforts of Plaintiffs to enforce their legitimate rights under the Policeman's Bill of Rights. Plaintiffs have been informed that the entire Department will benefit from the whistle blower efforts of Plaintiffs to disclose that sad state of affairs which have evolved under the "leadership" of Defendant Craft.

24.

Defendants have long maintained unlawful and unwritten policies utilizing reprisals and retaliation to either strip subordinate officers of benefits, rights, and/or enjoyed privileges because these officers would "not take passes for the team" as Defendant Mark Francis has previously described it. As a result of these policies, other officers namely: Police Officer Lieutenant Novey Stelly, Uletom P. Hewitt, Regina Briscoe and Aleeta M. Harding who have been past targets and recipients of the Defendants' unwritten policies used to strip away benefits or rights in a discriminatory fashion. These named individuals now join as Plaintiffs herein with the named officer Plaintiffs.

25.

Pursuant to Article 853 of the Louisiana Code of Civil Procedure, Plaintiffs incorporate by reference and annex hereto as **EXHIBIT "B"** the entirety of Plaintiffs' original Petition filed herein as though fully set forth and below.

WHEREFORE, Plaintiffs, Kane Marceaux, Gregory Cormier, Scott Poiencot, Norbert Myers Gabe Thompson, Novey Stelly, Uletom P. Hewitt, Regina Briscoe and Aleeta M. Harding file herein of right their First Supplemental Petition For Temporary Restraining Order With Notice and Preliminary Injunction Pursuant to the Policeman's Bill of Rights.

Respectfully submitted,

Spring & Spring, LLC
Attorneys at Law

_____
S. Stephen Spring, II
LBN: 12347
733 East Airport Avenue, Suite 104
Baton Rouge, Louisiana 70806
Telephone:   225.932.9671
Facsimile:    413.451.8923
E- Mail:        springlaw@gmail.com

**SERVICES INSTRUCTIONS:**

Please serve Defendants:

**Lafayette Consolidated Government**
705 West University Avenue,
Lafayette, Louisiana 70506

**Dee Stanley, CAO**
705 West University Avenue,
Lafayette, Louisiana 70506

**Chief James Craft**
900 E. University Ave
Lafayette, Louisiana 70502

**Major George "Jackie" Alfred**
900 E. University Ave
Lafayette, Louisiana 70502