# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

KANE MARCEAUX, ET AL.                    CIVIL ACTION 12-cv-1532

VERSUS                                   JUDGE HAIK

LAFAYETTE CITY-PARISH                    MAGISTRATE JUDGE HANNA
CONSOLIDATED GOVERNMENT,
ET AL.

## MEMORANDUM RULING

Before the undersigned is the defendants' Motion for Protective Order and

Sanctions [Rec. Doc. 18].  According to the motion, the specific protection sought by

the movers is an "Order enjoining Plaintiffs from attempting to prosecute their claims

before any other tribunal and from vexatiously filing future actions, abusing the court

system, and harassing Defendants."  [Rec Doc. 18].[1]  In the memorandum, the

defendants also seek to have the court prohibit the plaintiffs "from otherwise

interfering with this court's jurisdiction to hear and determine the merits of their

claims, which Plaintiffs willingly submitted for review and decision." [Rec. Doc. 18-

2, p. 6].  This would include restricting the plaintiffs' use of public records requests

to gain information related to this lawsuit, filing of similar lawsuits in state court, and

_____

[1]        Also pending are the defendants' Motion to Strike Portions of the Plaintiffs' Complaint pursuant
to Fed.R.Civ.P. 12(f) [Rec. Doc. 4], Motion to Dismiss the Plaintiffs' claims pursuant to Fed.R.Civ.P 12(b)(6) [Rec.
Doc. 5], and Motion for Sanctions under Fed.R.Civ.P. 11 and 28 U.S.C.§1927 [Rec. Doc. 13].   The first two
motions are currently set for hearing on September 25, 2012, and the last motion is deferred until after the court's
ruling on the first two.

participation in Lafayette Municipal Fire and Police Civil Service proceedings.  In the

Second Supplemental Memorandum in Support of Motion for Protective Order [Rec.

Doc. 33], the defendants also request that the protective order provide as follows:

(1)    No party shall intentionally contact or communicate with any member of the media (published, televised, or otherwise) or openly discuss the case knowing that the media is present. Neither shall any party post any comment or information pertaining to this litigation on the internet. Plaintiffs will underline remove the website, www.realcopsvcraft.com and will refrain from posting any relative information on any other website until the final conclusion of this litigation.

2)     No party shall initiate a Public Records Request seeking information relative to this litigation. Parties shall engage in court-approved discovery.

3)     No party shall initiate any other lawsuit concerning the subject matter of this litigation. This includes, without limitation, suits for mandamus, petitions and reconventional demands.

4)     Plaintiffs shall not bring claims which have already been asserted in their Complaint in any other venue, including the Lafayette Municipal Fire and Police Civil Service Board and any Louisiana State Court.

5)     Parties shall not engage in secret recording of conversations with anyone employed by LCG/LPD. Parties shall instead abide by discovery orders propounded by this Court and shall not conduct unauthorized discovery.[2]

---

[2]    These five requests will be referred to, later in this ruling, as Defendants' Requests Nos. 1 through 5.

For the reasons set out below, the Motion for Protective Order  [Rec. Doc. 18] is GRANTED in part and DENIED in part.  The request for sanctions will be addressed separately by report and recommendation to the district court.


**Factual and Procedural History**:

According to the complaint, this is an "action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and under the laws of the State of Louisiana. . . " [Rec. Doc. 1] The complaint has 271 articles and is the subject of pending motions to strike and dismiss.  At the status conference held on September 5, 2012, counsel for the plaintiffs represented that they wished to amend their complaint to add additional parties and perhaps clarify their complaint.  The plaintiffs were given leave to amend within 15 days, at which point the defendants are to advise this Court whether the two motions will go forward as presented or if they need to be supplemented, in which event a briefing schedule will be generated. [Rec. Doc. 27]

In the meantime, the defendants are trying to stop the plaintiffs from what is described as forum shopping, duplicative and vexatious litigation tactics in other tribunals, incendiary extra-judicial communications, multiple public records requests, and purported cease and desist correspondence [Rec. Doc. 18-4, 18-5]  with copies

to  defendants represented by counsel in this litigation, all of which are part of a

"campaign aimed at harassing Defendants and attempting to halt an investigation into

certain Plaintiffs' potential involvement in the unauthorized release of a confidential

Internal Affairs document." [Rec. Doc. 18-2, pp. 2-6]

An evidentiary hearing was held on September 14 and 17, 2012.  Based on the

evidence presented, this Court finds the following facts.


***Findings of Fact:***

1.  The ongoing dispute between the plaintiffs and defendants has been the subject

of extensive media coverage with multiple extra-judicial comments being made in the

print and television media.  The extensive media coverage began in the spring of

2012 even before the initial judicial proceeding, which was a hearing in the 15th

Judicial District Court for the Parish of Lafayette.  In that proceeding the plaintiffs

sought a temporary restraining order and injunction against the Lafayette Parish

Consolidated Government.  The TRO was denied, and the petition was dismissed

with prejudice on May 29, 2012.[3]  This suit followed on June 5.

2.  Counsel for the plaintiffs created a website entitled realcopsvcraft.com which

contains an image of the Chief of the Lafayette City Police Department, Jim Craft, on

---

[3]     *K. Marceaux, et. al. v. The Consolidated Government of Lafayette, et al.,* Dkt. 2012-2899-J, 15th
Judicial District Court for the Parish of Lafayette.

its home page along with quotes from newspaper articles and the complaint that describe the Lafayette City Police Department as "rotten." The website is styled in a manner comparable to a movie trailer, and included in its content are hyperlinks to multiple recordings of conversations within the department that were obtained surreptitiously by some of the plaintiffs. Some of the recordings include confidential personnel matters that do not involve any of these plaintiffs. The recordings were given by the plaintiffs to their counsel who had the postings made to the website without the consent or permission of the other parties to the conversations.[4] These recordings were also disclosed to other media sources. Between the time of the recess of the first hearing on Friday, September 14,  and the hearing being resumed on Monday, September 17, ownership of the website was transferred from plaintiffs' counsel to Regina Briscoe, one of the plaintiffs.

3. Upon learning of the surreptitious recordings, Chief Craft instituted a General Order that is utilized by other law enforcement agencies, prohibiting surreptitious recordings within the department.  This Court finds that action to be a reasonable exercise of the authority granted to the Chief of Police.

---

[4]      In one of the recordings, confidential information concerning a third party is allegedly discussed. Additional information concerning that party was the subject of a public records request which was objected to by that individual and is the subject of an, as yet, undecided mandamus action in the 15th Judicial District Court.

4. Plaintiffs' counsel, shortly **after** this suit was filed, sent a "Cease and Desist" letter to the members of the Lafayette City-Parish Council, threatening to join the individual council members as defendants in this lawsuit if they did not immediately terminate Chief Craft's investigation of the plaintiff officers and declare the General Order "absolutely void and of no effect."   In that letter, plaintiffs' counsel acknowledge the "significant media coverage," which was largely of their or their clients, own making. Many of the extra-judicial comments accuse various defendants and third parties who have nothing to do with this lawsuit of illegal and/or criminal activity.   For his part, Chief Craft publicly indicated that the plaintiffs are "disgruntled employees" whose  "unsubstantiated allegations" are "baseless" and a "purposeful attempt to dishonor LPD." Beyond this statement made in June after this lawsuit was filed, the defendants have largely refrained from any extra-judicial comments to the media.

5.  Plaintiffs' counsel, on behalf of plaintiff Kane Marceaux, has made multiple public records requests, pursuant to La. R.S. 44:1 *et. seq.,* seeking information that ranges from incidents involving third parties and the subsequent investigation of those individuals by the department, to the contracts of and payments made to the individual lawyers and law firm representing the defendants in this matter.  All of

6

these were made after this suit was filed, but while service of process on the defendants was being withheld.

6.  Plaintiffs Kane Marceaux and Uleton Hewitt instituted multiple complaints with the Lafayette  Fire and Police Civil Service Board also pertaining to investigations of incidents by third parties who are not involved in this lawsuit, but making allegations similar if not identical to those made in this lawsuit. All of these complaints were filed after this suit was filed, but while service of process on the defendants was being withheld.

7.  Confidential information has been leaked to multiple aspects of the media by plaintiffs or their counsel and, since the institution of the action in the 15th Judicial Court, some of the plaintiffs and their counsel have demonstrated a desire to manipulate media coverage to gain favorable attention.

8.  There is a substantial likelihood that the extra-judicial comments made in the media and on the website by the plaintiffs and/or their counsel, if allowed to continue unfettered, will undermine a fair trial and taint the jury venire.

*Conclusions of Law:*

Part of the relief sought by the defendants in Paragraphs 2 and 5 of their request is brought under Fed.R.Civ.P. 26. Rule 26(c)(1) sets out the grounds for court issuance of protective orders:

(1) In General. A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(A) forbidding the disclosure or discovery;

(B) specifying terms, including time and place, for the disclosure or discovery;

(C) prescribing a discovery method other than the one selected by the party seeking discovery;

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E) designating the persons who may be present while the discovery is conducted;

(F) requiring that a deposition be sealed and opened only on court order;

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Protective orders are entered for "good cause," and the court has almost complete discretion in determining what constitutes good cause. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17(1984).  The party seeking the protective order has the burden of showing that good cause exists by stating particular and specific facts.  *Gulf Oil Co. v. Bernard*, 452 U.S. 89,102, 101 S.Ct. 2193,2201, 68 L.Ed.2d 693(1981).

Discovery has not yet commenced in this case, and in the current posture of the case, the Court cannot give prospective relief to the movers under Rule 26.  Further, neither this Court nor any other authoritative body has invalidated General Order 12 issued by the Chief of Police. Therefore, Defendants' Request No. 5 is no longer necessary within the department; but, given the exchanges between the parties, this Court will limit the parties' interactions pertaining to this lawsuit and order that they be conducted only through counsel.

To the extent the defense  motion invites this Court to halt or restrict pending related state court proceedings under the All Writs Act, 28 U.S.C. § 1651, or the Anti

Injunction Act, 28 U.S.C. § 2283, this Court declines the invitation.  The Anti Injunction Act provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

The All-Writs Act, at 28 U.S.C. § 1651, provides:

> (a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.
> (b) An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

Both of these statutes contain essentially the same provision – that this Court is empowered to act in aid of its jurisdiction; however, the Anti Injunction Act has been interpreted very narrowly and would not grant the relief requested by the defendants although the All Writs Act could.[5]  As the Fifth Circuit stated:

> [T]he district court had the authority to compel lawyers properly before it from engaging in vexatious and needlessly harassing maneuvers that challenged judicial efforts to maintain the cooperative approach essential to preserving fair processes in the complex suit in federal court.
>
> .      .      .
>
> Here also principles of federalism lie behind our reluctance to adopt an expansive reading of "necessary in aid of jurisdiction," which extends to injunctions against prospective state court proceedings, even though they escape the reach of the Anti–Injunction Act.

---

[5]      *Newby v. Enron,* 302 F.3d 295, 301 (5th Cir. 2002).

At the same time, it is widely accepted that federal courts possess power under the All Writs Act to issue narrowly tailored orders enjoining repeatedly vexatious litigants from filing future state court actions without permission from the court. We have upheld an order enjoining a litigant from bringing any future litigation on any claim arising from a particular fact situation, where the litigant was abusing the court system by harassing his opponents. That order applied to both federal and state suits, and unlike the injunction at issue here, did not invite the plaintiff to seek leave of the court to file suit.[6]

Applying the standard applicable under the All Writs Act to the instant dispute, the undersigned does not find the act applicable *at this point* to stay or otherwise restrict any Civil Service action or civil litigation properly commenced in the appropriate forum.  Some of the pending litigation may lead to abstention by this Court should the complaint survive the pending motion to dismiss.  Likewise, given the nature of some of the complaints made to the Civil Service Board that were presented in evidence, those claims should be properly exhausted in the administrative process before any legal proceeding can take place.

While this Court does not look favorably on duplicative litigation in other venues, an issue which will be addressed in the forthcoming Report and Recommendation applicable to the requested sanctions, it does not see fit to tie the hands of the Civil Service Board or the 15th Judicial District Court, and concludes at this time that both entities are better fit to deal with the matters pending before them

---

[6]      *Id.* at 301-302, citing *Harrelson v. United States*, 613 F.2d 114, 116 (5th Cir. 1980).

given the current procedural posture of this case.  However, should this case survive the motion to dismiss, this Court will not hesitate to apply the analysis undertaken in *Newby v. Enron Corp.* to enjoin *future* litigation under the All Writs Act and will re-visit this issue if circumstances warrant.

Similarly, the Court finds no basis at present to insert itself into public records process established by La. R.S. 44:1 *et seq*. and enjoin *any* further public records requests.  However, to the extent discovery in the instant litigation becomes duplicative of public records requests already made and responded to by the defendants, then this Court will entertain with favor the appropriate discovery objections/motions.  In addition, this finding does not preclude this Court from viewing as frivolous, vexatious, or harassing, the public records requests for the defendants' attorneys' fee bills and contracts between the defendants and their lawyers for purposes of the sanctions request.

Therefore, this Court will deny the motion to the extent it seeks the protection set forth in Defendants' Requests Nos. 2 through 5, above, without prejudice to the right of the defendants to seek further relief should the conduct continue, and without prejudice to the right of this Court to consider the conduct of the plaintiffs and/or their counsel in the request for sanctions.  With regard to Defendants' Request No. 1, however, the motion will be granted.

Notwithstanding that this is a civil case, the extra-judicial statements include accusations of illegal and potentially criminal actions on the part of parties and non-parties who are (or were) affiliated with the entity charged with protecting the public in the city of Lafayette.   The suit names as defendants not only the Chief of Police, but the Mayor, the City-Parish Consolidated Government, and the Chief Administrative Officer.   If the threat that the plaintiffs' attorneys have made is realized, they would ostensibly name each individual member of the City-Parish Council.  Even though, as styled, this is a claim under 42 U.S.C. §§ 1983 and 1988 for money damages, it is clear to this Court that the plaintiffs and their attorneys are motivated to place any manner of what they perceive to be matters of "public interest" in the media regardless of the impact on the judicial system, this litigation, or third parties who have nothing to do with this litigation.

In *United States v. Brown*, 218 F.3d 415 (5th Cir. 2000), the court recognized that "[a]lthough litigants do not surrender their First Amendment rights at the courthouse door, those rights may be subordinated to other interests that arise in the context of *both civil and criminal* trials."[7]  Therefore, this Court concludes that *Brown* is a proper roadmap to deal with what is possibly a prior restraint.  Further, because the plaintiffs' counsel transferred ownership of the website to one of their clients, this

---

[7] *Id.,* at 424 [internal quotation marks omitted], citing *Seattle Times Co. v. Rhinehart,* 476 U.S. 20, 104 S.Ct. 2199, 2207-08 n.18 (1984).

Court finds it necessary to prohibit the litigants from making any extra-judicial comments in addition to the lawyers.

In *Brown*, the court concluded that a gag order applicable to the lawyers and participants was constitutionally permissible because it was based on a "reasonably found substantial likelihood that comments from the lawyers and parties might well taint the jury pool." *Id.,* at 423, 427.  The court recognized in particular that disseminating evidence to the press, which may ultimately be inadmissible, was a threat to the integrity of the judicial proceeding. *Id.,* at 423 n.8.

This Court does not intend to gag the press, but rather the litigants and their lawyers to the same extent that the lawyers would be ethically prohibited from making extra-judicial comments under the Code of Professional Responsibility Rule 3.6 which provides:

> (a) A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

The rule provides detailed descriptions of the kinds of statements that attorneys may make without violating the rule.  Likewise, Rule 4.4 of the Rules of Professional Conduct regarding respect for rights of third persons states:

14

(a) In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.

The website, now owned by one of the plaintiffs, was used by the plaintiffs and their counsel to publish confidential information about third parties that was obtained by surreptitious means and may well prove to be inadmissible. That information, as well as other information of a confidential nature was leaked to the press by plaintiffs or their counsel. The website itself contains wholly unprofessional and inappropriate commentary concerning the Lafayette Police Department, all of which has a substantial likelihood of impacting the jury venire. Therefore, both the plaintiffs and their counsel have demonstrated their willingness to put statements out to the public and the media which have a substantial likelihood of  materially prejudicing the proceedings and/or violating the rights of third parties. As stated in *Brown*:

> The fact that the gag order in this case concerns the speech of parties as well as attorneys requires some consideration. The *Gentile* Court premised its approval of the Nevada rule's "substantial likelihood" standard in part on the unique role of attorneys as "officers of the court" who "in pending cases [are] subject to ethical restrictions on speech to which an ordinary citizen would not be." See *Gentile*, 111 S.Ct. at 2743. The context of this case is different, however: it concerns a judicially crafted restriction on the extrajudicial speech of all trial participants, not a general rule of professional conduct. An attorney's ethical obligations to refrain from making prejudicial comments about a pending trial will exist whether a gag order is in place or not. In this case, the driving interest of the district court was to preserve the fair trial interests of the

15

parties in all three related cases. As the district court pointed out, trial participants, like attorneys, "are privy to a wealth of information that, if disclosed to the public, could readily jeopardize the fair trial rights of all parties." The mischief that might have been visited upon the three related trials-primarily, jury tainting-would have been the same whether prejudicial comments had been uttered by the parties or their lawyers. In other words, the problem the district court sought to avoid depended in no way on the identity of the speaker as either a lawyer or a party: the interests of the lawyers and the parties in "trying the case in the media" were (and continue to be) the same. In light of these considerations, there appears to be no reason, at least where lawyers and parties have each demonstrated a "substantial likelihood" of making prejudicial comments outside the courtroom, to distinguish between the two groups for the purpose of evaluating a gag order directed at them both.[8]

Just as the district court found in *Brown*, it is clear to this Court that the plaintiffs are prepared to "try this case in the press," and since this involves the entity responsible for protecting the safety and property of the citizens of this division, this Court cannot allow that to happen. The plaintiffs' argument that a change of venue can cure the problem they would otherwise be allowed to create without action by this Court is not only unfair to the defendants who are entitled to get a fair trial in this division, but would result in unnecessary burden and expense to the judicial system. Therefore, this Court will grant that aspect of the defendant's motion dealing with the website and extra-judicial comments to the media.

---

[8] *Brown* at 427-428.

16

Having found that a gag order is appropriate in this case, the order must be "sufficiently narrow to eliminate substantially only that speech having a meaningful likelihood of materially impairing the court's ability to conduct a fair trial."[9]  As to those elements of the defendants' proposed protective order, the undersigned finds them to be overbroad and will modify the proposed order to reflect that which is contained in the allowable statements contained in Rule of Professional Conduct 3.6 and the language approved in *Brown, supra* at 431, and *Levine v. U.S. District Court,* 764 F.2d 590, 598-99 (9th Cir. 1985), that was cited with approval in *Brown.*[10]

Similarly, because the website not only contains comments and information that would violate Rule 4.4, it is and has been used as a vehicle by which to disseminate inappropriate information to the media and the public. Therefore, this Court will order the website to be taken down.[11]  A separate order will issue.

Thus done and signed this 18th day of September 2012.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[9]     *Brown,* at 429.

[10]    The Louisiana Rules of Professional are adopted by this district in its Local Rule 83.2.4.

[11]    Regrettably, because of the media attention, other entities have apparently picked up the hyperlinks and made them public so this Court's order may have come too late.

18