UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

KANE MARCEAUX, ET AL.          CIVIL ACTION NO. 6:12-cv-01532

VERSUS                         JUDGE HAIK

LAFAYETTE CONSOLIDATED         MAGISTRATE JUDGE HANNA
GOVERNMENT, ET AL.

## REPORT  AND  RECOMMENDATION

Currently pending before the Court is the defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Rec. Docs. 5, 64). The motion was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court.  The motion is opposed.  For the following reasons, it is recommended that the motion be granted in part and denied in part.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This lawsuit was brought by fifteen current or former police officers with the Lafayette police department under 42 U.S.C. §§ 1983 and 1988, seeking to recover monetary damages and other relief for alleged acts by their employer and/or fellow city employees that they claim constitutes retaliatory discharge, wrongful discharge,

and deprivation of procedural due process in violation of rights protected by the United States Constitution.  (Rec. Doc. 74 at ¶ 344).  The plaintiffs also seek to recover under Louisiana state law.  (Rec. Doc. 74 at ¶ 353).  In general, the plaintiffs contend that an alleged "Code of Silence" was imposed by Police Chief Jim Craft, Lafayette City-Parish Consolidated Government Chief Administrative Officer Dee Stanley, and others "in order to maintain control" of the Lafayette Police Department, and that the alleged "Stanley-Craft Organization" "perpetuat[ed] a permanent hostile work environment," by initiating "bogus internal complaint and bogus internal affairs investigations," strong-arming witnesses, manipulating statements, and testifying falsely for the purpose of defeating legitimate policies and ultimately seeking the termination of targeted officers who failed to comply with the "Code of Silence." (Rec. Doc. 74 at ¶¶ 44-48).  Thirteen defendants, including the City, the Police Department, and various individual City officials and police officers, all of whom are city employees, are named in the lawsuit.  The defendants deny the factual allegations of the plaintiffs' complaint and, in the pending motion, seek dismissal of the plaintiffs' claims for failure to state a claim upon which relief may be granted.

The plaintiffs' original complaint (Rec. Doc. 1) was thirty-eight pages long and contained 271 numbered paragraphs setting forth a variety of allegations against

Craft, Stanley, other defendants, and third parties many of which were controversial. Its filing was extensively covered by the local news media.

The defendants responded to the complaint with a motion to strike the allegedly redundant, immaterial, impertinent, and scandalous content of the complaint (Rec. Doc. 4) and, with the instant motion to dismiss, sought dismissal of the complaint for failure to state a claim. (Rec. Doc. 5).  A motion for sanctions (Rec. Doc. 13) and a motion for protective order (Rec. Doc. 18) quickly followed.[1]

Following a Rule 16 conference held on September 5, 2012 concerning the pending motions, the plaintiffs were afforded an opportunity to amend their complaint.  (Rec. Doc. 27).  The amended complaint, comprised of fifty-eight pages with 354 numbered paragraphs, added six new plaintiffs and seven new defendants. (Rec. Doc. 74).  The defendants supplemented their motion to dismiss (Rec. Doc. 64) and re-urged their motion to strike. (Rec. Doc. 65).

Following extensive briefing and lengthy oral argument, the defendants' motion to strike was granted in part and denied in part, with the undersigned striking a total of 102 paragraphs, 93 from the original complaint and nine from the amended

---

[1]     An evidentiary hearing was held on the motion for protective order, which was granted in part and denied in part.  (Rec. Doc. 48).  That ruling has been appealed by the plaintiffs. (Rec. Doc. 66).  The multiple motions for sanctions (Rec. Docs. 13, 18, 39) will be addressed in a single separate report and recommendation.

complaint, as scandalous, immaterial, or impertinent.[2]  (Rec. Doc. 77).  The pending

motion to dismiss has also been briefed extensively, and a lengthy oral argument was

held on October 16, 2012.  This report and recommendation addresses whether the

remainder of the plaintiffs' complaint, as amended, states a claim upon which relief

may be granted.

Despite being afforded an opportunity to amend the complaint, the plaintiffs

have provided this Court with a very lengthy complaint that is short on substantive

allegations which support a cause of action based on existing statutory or

constitutional law.  The plaintiffs have asserted claims for "money damages" under

42 U.S.C. §§1983 and 1988, arguing that the defendants have subjected them to

retaliatory discharge, deprivation of procedural due process, and wrongful discharge

and, in so doing, have infringed their rights protected by the First, Fourth, Fifth, and

Fourteenth Amendments to the United States Constitution.  (Rec. Doc. 74 at ¶¶ 1,

344, 352).  They have also asserted a conspiracy claim, which they contended at oral

argument was based on 42 U.S.C. §1985, and a claim for injunctive relief.  Finally,

they have asserted claims "pursuant to the laws of the State of Louisiana, including

Civil Code Articles 2315 and 2317 arising from the facts alleged" in the amended

complaint.  (Rec. Doc. 74 at ¶ 353).

---

[2]        That ruling has not been appealed, and the delays for appeal have expired.

-4-

Many of the claims are ambiguous.  In some instances, particularly in the original complaint, there is a complete absence of a specific claim, by a specific plaintiff, against a specific defendant.  In some articles, only official capacity claims are alleged against the individual defendants, yet in another article individual claims are alleged.[3]  All of the claims under §1983 appear to be brought only against the municipality,   (Rec. Doc. 74,¶ 352) yet in the identification of the individual defendants, it appears that there are individual capacity claims brought as well.  (Rec. Doc. 74 ¶¶ D-7-D-G).  Finally, there is no reference to particular state law causes of action beyond reference to the "laws of the State of Louisiana, including Civil Code Articles 2315 and 2317. . . ." (Rec. Doc. 74, ¶¶ C. 4, 353).  These problems were exacerbated rather than cured by the amendment; consequently, this Court sees nothing to be gained by allowing another amendment.

In support of their motion to dismiss, the defendants contend (1) that plaintiffs Hewitt, Briscoe, and Harding failed to state any claim whatsoever; (2) that plaintiffs Marceaux, Cormier, Poiencot, Myers, Thompson, and Stelly have not stated a claim for §1983 retaliation by a municipality; (3) that plaintiffs Marceaux, Cormier, Poiencot, Myers, Thompson, and Stelly have not stated a claim for §1983 supervisor

---

[3] Cf. Plaintiffs' amended complaint, Rec. Doc. 74, ¶ D-7.B. in which Durel is named only in his official capacity and ¶ D-7.O alleging his individual liability, with ¶¶ 352 and 353 where no individual liability is alleged at all.

liability; (4) that plaintiffs Marceaux, Cormier, Poiencot, Myers, Thompson, and Stelly have not stated a claim for §1983 discrimination; (5) that the plaintiffs have not stated a due process claim under the Fifth or Fourteenth Amendments; (6) that the plaintiffs have not stated First Amendment claims; (7) that the plaintiffs have not stated Fourth Amendment claims; (8) that the plaintiffs have not stated a claim for injunctive relief; (9) that many of the plaintiffs' claims have prescribed; (10) that, per La. Const. Art. X §12, the Lafayette Fire and Police Civil Service Board has exclusive jurisdiction over "employment related matters;" (11) that plaintiffs Sanchez, Polanco, Joseph, Ceaser, Taylor, and Roberts have not established constitutional violations; (12) that the plaintiffs have not stated state-law causes of action; and (13) that the plaintiffs have not stated a conspiracy cause of action.  The plaintiffs oppose the motion in all respects.

In order to best address the issues in a logical fashion, the analysis contained in this report will be divided into seven categories:  (1) the appropriate legal standard; (2) the §1983 elements applicable to the municipal entities and officials to determine if there is any type of claim alleged against each of the defendants; (3) the Constitutional violations cited as the bases for the claims of the plaintiffs to determine if any plaintiff has any claim against the remaining defendants; (4) the conspiracy

claims; (5) the state law claims; (6) prescription; and (7) the claims for injunctive relief.

## APPLICABLE SUBSTANTIVE LAW AND ANALYSIS

### I.   THE STANDARD FOR ANALYZING A RULE 12(B)(6) MOTION TO DISMISS

A motion to dismiss for failure to state a claim, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, is appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim.[4]  When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a district court must limit itself to the contents of the pleadings, including any attachments thereto.[5]  The court must accept all well-pleaded facts as true, and it must view them in the light most favorable to the plaintiff.[6]  However, conclusory allegations and unwarranted

---

[4]      *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[5]      *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[6]      *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted), quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

deductions of fact are not accepted as true,[7] and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[8]

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[9]  The allegations must be sufficient "to raise a right to relief above the speculative level,"[10] and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."[11]  "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[12]  If the plaintiff fails to

_____

[7]     *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982), citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974); *Collins v. Morgan Stanley*, 224 F.3d at 498.

[8]     *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

[9]     *Bell Atlantic v. Twombly*, 127 U.S. at 570.

[10]     *Bell Atlantic v. Twombly,* 127 U.S. at 555.

[11]     *Bell Atlantic v. Twombly,* 127 U.S. at 555, quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004).

[12]     *Bell Atlantic v. Twombly*, 127 U.S. at 555 (citations, quotation marks, and brackets omitted;).  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009).

allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."[13]

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14]   "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[15] Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim."[16]

## II.   THE SECTION 1983 CLAIMS

Section 1983 does not create substantive rights;[17] it is a procedural rule that provides a private cause of action for redressing a violation of federal law.  Therefore,

---

[13]      *Bell Atlantic v. Twombly*, 127 U.S. at 570.

[14]      *Ashcroft v. Iqbal*, 129 S.Ct. at 1949.

[15]      *Ashcroft v. Iqbal*, 129 S.Ct. at 1950.

[16]      *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009), quoting *Bell Atlantic v. Twombly*, 127 U.S. at 556.  See also *In Re Southern Scrap*, 541 F.3d 584, 587 (5th Cir. 2008).

[17]      *Southwestern Bell Telephone, LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008).

an underlying constitutional or statutory violation is a predicate to any theory of liability under §1983.[18]   Generally, three elements must be established in a §1983 action:  (1) deprivation of a right secured by federal law, (2) that occurred under color of state law, and (3) was caused by a state actor.[19]   However, the elements are more refined and specific in the context of the claims raised in this lawsuit.

### A.   SECTION 1983 LIABILITY FOR MUNICIPALITIES AND MUNICIPAL OFFICIALS IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES

Municipalities are not vicariously liable for violations committed by their employees, but they are liable when their official policies cause their employees to violate another person's constitutional rights.[20]   Therefore, a claim of municipal liability under § 1983 requires proof of three elements:  a policymaker, an official policy, and a violation of constitutional rights whose moving force is the policy or custom.[21]   The proper analysis of such claims requires an inquiry into two separate

---

[18]     *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989).

[19]     *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004).

[20]     *Jones v. Lowndes County, Miss.*, 678 F.3d 344, 349 (5th Cir. 2012); *Baker v. Putnal*, 75 F.3d at 200.

[21]     *Doe ex rel. Magee v. Covington County School Dist. ex rel. Keys*, 675 F.3d 849, 867 (5th Cir. 2012), quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation."[22]

A city's official policies include any persistent, widespread practice of city officials or employees that is not authorized by officially adopted and promulgated policy, but is so common and well settled as to constitute a custom that fairly represents municipal policy.[23]   In this case, the plaintiffs argue that the "Code of Silence" is such a policy.

In order to assert a valid claim against an official in his individual capacity, a §1983 claimant must establish that the defendant was either personally involved in a constitutional deprivation or that his wrongful actions were causally connected to the constitutional deprivation.[24] "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."[25]   "A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements

---

[22]      *Doe ex rel. Magee* , 675 F.3d 867, quoting *Collins v. City of Harker Heights, Tex*. 503 U.S. 115, 120 (1992).

[23]      *Bishop v. Arcuri*, 674 F.3d 456, 467 (5th Cir. 2012).

[24]      *Jones v. Lowndes County, Miss*., 678 F.3d at 349.

[25]      *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001).

unconstitutional policies that causally result in the constitutional injury."[26]   To establish supervisor liability for constitutional violations committed by subordinate employees, the plaintiffs must show that the supervisor acted or failed to act with deliberate indifference to the violation of others' constitutional rights committed by their subordinates.[27]   Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action."[28]

The plaintiffs specifically asserted a claim for failure to properly train and supervise in the section of the amended complaint regarding state-law claims (Rec. Doc. 74 at ¶ 353), but it is not immediately apparent whether a §1983 claim for failure to properly supervise was also asserted as the only allegations in that regard against Stanley are found in his identification as a defendant.  (Rec. Doc. 74 at ¶ 7.C).

A municipality may incur §1983 liability for its employees' acts when a municipal policy of hiring or training causes those acts.[29]   When such a claim is asserted, the plaintiff must show (1) that the training or hiring procedures of the

---

[26]     *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011), quoting *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008).

[27]     *Porter v. Epps*, 659 F.3d 446; *Gates v. Texas*, 537 F.3d at 435.

[28]     *Porter v. Epps,* 659 F.3d at 447, quoting *Connick v. Thompson,* 131 S.Ct. 1350, 1360 (2011).

[29]     *Benavides v. County of Wilson*, 955 F.2d 968, 972 (5th Cir. 1992); *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010).

municipality's policymaker were inadequate; (2) that the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy; and (3) that the inadequate hiring or training policy directly caused the plaintiff's injury.[30]

A supervisor may be liable for failure to supervise or train if:  (1) the supervisor failed to supervise or train the subordinate officer; (2) a causal connection exists between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights.[31]


### B.    THE OFFICIAL CAPACITY CLAIMS

The plaintiffs have purportedly asserted §1983 official capacity claims against Lafayette City-Parish president Joey Durel, Lafayette City-Parish chief administrative officer Dee Stanley, the City's human resources manager Ray Domingue, Lafayette police chief Jim Craft, and police officers Jackie Alfred, Ted Vincent, Randy Vincent, Levy Firmin, Dwayne Prejean, U.J. Prevost, and Keith Gremillion.  (Rec. Doc. 74 at ¶ 1).  However, in the original and amended complaints, the plaintiffs state: "The plaintiffs hereby assert claims against LCG for damage and for the violations and

---

[30]     *Baker v. Putnal*, 75 F.3d at 200; *Benavides v. County of Wilson*, 955 F.2d at 972.

[31]     *Porter v. Epps*, 659 F.3d at 446; *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009); *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003).

injuries set forth above under 42 U.S.C. 1983."  (Rec. Doc 1, ¶ 268; Rec. Doc. 74, ¶

352).  The plaintiffs have also sued Lafayette City-Parish Consolidated Government

and the Lafayette Police Department through the Lafayette City-Parish Consolidated

Government.[32]

"A judgment in a §1983 lawsuit against an official in his official capacity

imposes liability against the entity he represents."[33]  Therefore, it is "well settled that

a suit against a municipal official in his or her official capacity is simply another way

of alleging municipal liability."[34]  When, as in this case, the government entity itself

is a defendant in the litigation, claims against specific individuals in their official

---

[32]      In both complaints (Rec. Doc. 1 at 1 and Rec. Doc. 74 at 2), the plaintiffs list
"Lafayette Police Department through the Lafayette City-Parish Consolidated Government" as a
separate defendant.  The Lafayette Police Department is an agency or department of the City that
does not function independently.  Therefore, after review of the Home Rule Charter, it has been
specifically held in this division of this district that neither the Lafayette Police Department nor the
Lafayette City Chief of Police have the legal capacity to be sued.  *Domingue v. Lafayette City Parish
Consolidated Government,* No. 05-2151, 2008 WL 728654, at *5 n. 13 (W.D. La. Mar. 17, 2008).
See also *Cormier v. Lafayette City Parish Consol. Government*, No. 6:09-cv-0703, 2011 WL
5156862, at *3 (W.D. La. Oct. 28, 2011), rev'd on other grounds, No. 11-31125, 2012 WL 4842272
(5th Cir. Oct. 12, 2012); *Batiste v. Bonin*, No. 06-1352, 2007 WL 1791219, at *4 (W.D. La. June 13,
2007).

[33]      *Deshotels v. Village of Pine Prairie*, No. 11-CV-2052, 2012 WL 1712358, at *4
(W.D. La. Apr. 13, 2012).

[34]      *Howell v. Town of Ball*, No. 12-951, 2012 WL 3962387, at *4 (W.D. La. Sept. 4,
2012), citing *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).

capacities are redundant, and for that reason, courts in this circuit have found it is appropriate to dismiss them.[35]

In keeping with this principle, the undersigned finds that the plaintiffs' claims against the individual defendants in their official capacities are redundant of the claims asserted against the City and that neither the Lafayette City Chief of Police nor the Lafayette City Police Department has the capacity to be sued under §1983. Accordingly, the undersigned recommends that the plaintiffs' claims against Joey Durel, Dee Stanley, Ray Domingue, Jim Craft, Jackie Alfred, Ted Vincent, Randy Vincent, Levy Firmin, Dwayne Prejean, U.J. Prevost, and Keith Gremillion in their official capacities be dismissed.[36]  The undersigned also recommends that the claims against the Lafayette City Police Department be dismissed.

---

[35]    See, e.g., *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) ("The district court was also correct in dismissing the allegations against all of the municipal officers and two of the employees of the Corps of Engineers in their official capacities, as these allegations duplicate claims against the respective governmental entities themselves."); *Flores v. Cameron County, Tex.*, 92 F.3d 258, 261(5th Cir. 1996).

[36]    Although the defendants did not move for dismissal of the official capacity claims against the individual defendants, the court is "authorized to consider the sufficiency of the complaint on its own initiative." *Guthrie v. Tifco Indus.*, 941 F.2d 374, 379 (5th Cir. 1991).

## C.  THE CLAIMS AGAINST THE CITY AND THE INDIVIDUAL CAPACITY CLAIMS AGAINST STANLEY AND CRAFT

As noted above, a claim of municipal liability under §1983 requires proof of a policymaker, an official policy, and a violation of constitutional rights motivated by the policy or custom.   In order to properly allege individual liability for a municipal official, the plaintiff must set forth facts that the defendant was either personally involved in a constitutional deprivation or that his wrongful actions were causally connected to the constitutional deprivation.[37]  A claim of supervisor liability requires that the plaintiff allege facts indicating the supervisor (1) affirmatively participated in the acts that cause the constitutional deprivation, or (2) he implemented unconstitutional policies that causally result in the constitutional injury. To establish supervisor liability for constitutional violations committed by subordinate employees, the plaintiffs must allege facts that show that the supervisor acted or failed to act with deliberate indifference to the violation of others' constitutional rights committed by their subordinates.[38]

The plaintiffs have presented allegations regarding a "Code of Silence," which they contend is a policy actually confected by defendants Stanley and Craft that resulted in a permanent hostile work environment in the police department and led

---

[37]     *Jones v. Lowndes County, Miss.*, 678 F.3d at 349.

[38]     See Footnotes 27 and 28, supra.

to adverse employment actions, including wrongful terminations, against police officers who failed to comply with the "Code of Silence."

The undersigned finds that sufficient facts have been alleged concerning the existence and enforcement of the "Code of Silence" to conclude that **some but not all** of the plaintiffs' claims against the City and the individual claims against Stanley and Craft withstand the defendants' challenge to the plaintiffs' complaint. Accordingly, the undersigned recommends that the defendants' motion to dismiss be denied to the extent it seeks dismissal of claims against the City and those against Stanley and Craft in their individual capacities. The same cannot be said for most of the remaining defendants.

### D.   *THE CLAIMS AGAINST DUREL IN HIS INDIVIDUAL CAPACITY*

In this case, although the allegations are ambiguous, conclusory, and devoid of any facts, and therefore are given no assumption of truth, the plaintiffs "possibly" asserted a claim against Lafayette City-Parish President Joey Durel in his individual capacity.  (Rec. Doc. 74 at ¶ 7.O, but *cf.* Rec. Doc. 74, ¶¶ 352 and 353).

In the portion of the amended complaint pertaining to state-law claims, the plaintiffs contend that Durel, **only in his official capacity**, along with several other defendants, failed to properly train, supervise, manage, or discipline defendants

Stanley, Craft, and Alfred and failed to correct the police "Code of Silence" (among other allegations), but these allegations are **not** made against him in regard to individual liability.

Supervisory officers such as Durel cannot be held liable under §1983 for the actions of their subordinates on any theory of vicarious liability; instead, only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under §1983.[39]  A state actor may be liable under § 1983 only if the plaintiff establishes that the defendant supervisory official was personally involved in the acts causing the deprivation of the plaintiff's constitutional rights or that a causal connection exists between an act of the official and the alleged constitutional violation.[40]

As the president of the Lafayette City-Parish Consolidated Government, Durel is the top-ranking supervisory officer in the city government.  Durel is presumably included with several other defendants in  the conclusory allegations that the "Defendants. . . have maintained, supported, and/or fostered a police 'Code of Silence'" and that "failure to honor this so-called 'code' is punished with severe employment-based retaliation." (Rec. Doc. 74, ¶¶ 12-13).  The complaint also alleges

_____

[39]     *Alton v. Texas A & M University*, 168 F.3d 196, 200 (5th Cir. 1999).

[40]     *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981).

-18-

that the defendants have "maintained various unwritten policies amount to policy, custom, conventional usages with complete indifference. . . to the requirements of the United States Constitution. . . ."  (Rec. Doc. 74 at ¶38).

However, the plaintiffs do not allege that Durel was a part of the alleged "Stanley-Craft organization" (Rec. Doc. 74 at ¶ 45) nor are there any allegations anywhere in the original complaint or in the amended complaint suggesting that Durel was directly involved in the specific acts and omissions that the plaintiffs claim violated their constitutional rights.  The plaintiffs' failure to include Durel among the alleged participants in the "Stanley-Craft Organization" removes him from the universe of persons who allegedly formulated the "Code of Silence" policy and disciplined those who failed to conform with that policy.

In this case, no specific allegations are made with regard to Durel, and he cannot be held vicariously liable for the actions of the city employees who may answer to him.  There are no allegations that any plaintiff was harmed because of specific actions or omissions by Durel.  Likewise, there are no facts supporting a conclusion that Durel actually played a part in formulating, applying, or enforcing the "Code of Silence" or in punishing police officers who did not comply with the "Code of Silence."

-19-

Consequently, the undersigned finds that all of the plaintiffs have failed to allege sufficient facts supporting a legally cognizable §1983 claim, plausible on its face, against Durel in his individual capacity. Accordingly, the undersigned recommends that **all** of the plaintiffs' claims against Durel in his individual capacity be dismissed.

### E. *THE CLAIMS AGAINST DOMINGUE IN HIS INDIVIDUAL CAPACITY*

Ray Domingue, the City's Human Resources Manager, was sued both in his official and individual capacity. The plaintiffs allege that Domingue is a member of the "Stanley-Craft Organization" and that the "organization" has fostered a permanent hostile work environment in the police department. (Rec. Doc. 74 at ¶¶ 45-46). Although the plaintiffs contend that the members of the "organization" engaged in various "machinations" designed to defeat legitimate policies and ultimately terminate the employment of the persons targeted by the "organization" (Rec. Doc. 74 at ¶ 48), these allegations, standing alone, are too general and conclusory to form the basis for a valid individual claim against Domingue.

Furthermore, as noted previously, a plaintiff asserting a §1983 claim must establish that the defendant was either personally involved in a constitutional deprivation or that his wrongful actions were causally connected to an alleged

constitutional deprivation.[41]  The specific allegations set forth in the plaintiffs' complaints do not support the conclusion that Domingue did anything that resulted in the violation of a plaintiff's constitutional rights.  What is specifically alleged against Domingue is that plaintiff Gus Sanchez offered to pay $5 toward the cost of a lost radio and that the offer was declined by the Human Resources Department. (Rec. Doc. 74 at ¶ 215).  It is also alleged that Sanchez filed a complaint with the Human Resources Department, which was "brushed aside."  (Rec. Doc. 74 at ¶¶ 232, 234).  There is no allegation that Domingue handled either the payment for the radio or Sanchez's complaint.  No facts were alleged that might support the conclusion that Domingue formulated or enforced a policy of compliance with the alleged "Code of Silence" or of disciplining police officers who disagreed with the "Code of Silence." No dates were alleged, no documents were referred to, no meetings were documented, no facts of any kind were alleged.

Accordingly, the undersigned finds that none of the plaintiffs have alleged sufficient facts supporting a legally cognizable §1983 claim, plausible on its face, against Domingue in his individual capacity, and the undersigned recommends that **all** of the plaintiffs' claims against Domingue in his individual capacity be dismissed.

---

[41]     *Jones v. Lowndes County, Miss.*, 678 F.3d at 349.

### F.   THE CLAIMS AGAINST POLICE OFFICERS TED VINCENT, RANDY VINCENT, PREJEAN, PREVOST, AND GREMILLION IN THEIR INDIVIDUAL CAPACITIES

Just as was done with Domingue, the plaintiffs allege in conclusory fashion that police officers  Ted Vincent, Randy Vincent, Dwayne Prejean, U.J. Prevost, and Keith Gremillion are members of the "Stanley-Craft Organization" and that the "organization" has fostered a permanent hostile work environment in the police department.  (Rec. Doc. 74 at ¶¶ 45-46).  The plaintiffs contend that the members of the "organization" engage in various "machinations" designed to defeat legitimate policies, maintain a permanent hostile work environment in the police department, and ultimately terminate the employment of the persons targeted by the "organization."  (Rec. Doc. 74 at ¶ 48, 56).  Also as in the case of Domingue, there are very few facts alleged with regard to these defendants as to what might constitute such "machinations" or how these "machinations" resulted in a constitutional deprivation. There are no facts alleged which would arguably support a violation of anyone's constitutional rights by any of these officers.

### (1)   Ted and Randy Vincent

In the original complaint, there are allegations concerning conversations involving Ted Vincent and Randy Vincent but no specific allegations that actions or omissions by either of them violated any plaintiff's constitutional rights.

There are no allegations concerning Ted Vincent found in the amended complaint.  With regard to Randy Vincent, the amended complaint alleges only that he filed a complaint against plaintiff Kane Marceaux, which Marceaux believes was undertaken with a retaliatory motive, although the factual basis for such a motive is not stated in the complaint.  (Rec. Doc. 74 at ¶ 62).

### (2)   *Dwayne Prejean*

The original complaint contains no allegations that Dwayne Prejean took any action that violated any plaintiff's constitutional rights.  In the amended complaint, the plaintiffs allege that Dwayne Prejean was assigned to "shadow" plaintiff Donald Ceaser during a period of training and that, during this time period, Prejean lodged four allegedly false disciplinary complaints against Ceaser.  (Rec. Doc. 74 at ¶¶ 274-275).  As a result of these complaints, Internal Affairs, at the behest of Craft, demoted Caesar. (Rec. Doc. 74 ¶¶ 275-277). The "intermediate demotion" was allegedly presented by Craft to the then presiding chief of police and a member of the civil service board and he (Craft) convinced them to vote for demotion which was overturned and Caesar was reinstated to his position. (Rec. Doc. 74, ¶¶ 279-280). While the allegations do include that Caesar was temporarily demoted, it is clear Prejean had no such authority to order the demotion and that, if anything, he leveled false accusations at Caesar.

### *(3)* *U.J. Prevost*

The original complaint contains no allegations that U.J. Prevost took any action that violated any plaintiff's constitutional rights.  In the amended complaint, the plaintiffs allege that Officer Joey Prevost (who can only be presumed to be the same person as defendant U.J. Prevost) administered two polygraph examinations to plaintiff Greg Cormier, and misrepresented to the Civil Service Board on August 31, 2012 that Cormier suffered from a medical condition precluding him from taking a polygraph test.  (Rec. Doc. 74 at ¶¶ 76-79).

### *(4)* **Keith Gremillion**

The original complaint contains no allegations that Keith Gremillion took any action that violated any plaintiff's constitutional rights.  In the amended complaint, the plaintiffs allege that Gremillion served an administrative investigation complaint on plaintiff Kane Marceaux, told Marceaux that defendant Randy Vincent had filed a complaint against him, and failed to respond to Marceaux's request for information on the status of the complaint filed by Vincent.  (Rec. Doc. 74 at ¶¶ 61-64).  The plaintiffs also allege that, during a meeting in Gremillion's office, plaintiff Gus Sanchez was ordered to sign for a letter but told Gremillion that he was not comfortable doing so.  (Rec. Doc. 74 at ¶¶ 216-217).  It is not alleged that Gremillion ordered Sanchez to sign for the letter.  The date of the meeting is not alleged.

When these factual allegations are taken as true, as they must be for purposes of this motion, the allegations do not support a finding that any of these defendants violated any plaintiff's constitutional rights.  As noted previously, a plaintiff asserting a § 1983 claimant must establish that the defendant was either personally involved in a constitutional deprivation or that his wrongful actions were causally connected to an alleged constitutional deprivation.[42]  Adverse employment actions recognized by the Fifth Circuit are discharges, demotions, refusals to hire, refusals to promote, and reprimands.[43]  Under certain circumstances, transfers may also constitute adverse employment actions.[44]  However, the following are not adverse employment actions: accusations or criticism, investigations, psychological testing, false accusations, and polygraph examinations that do not have adverse results for the plaintiff.[45]  None of the allegations concerning these defendants constitute adverse employment actions.  Consequently, the actions taken by these six policemen that the plaintiffs complain about are not violations of constitutionally-protected rights.

---

[42]    *Jones v. Lowndes County, Miss.*, 678 F.3d at 349-350.

[43]    *Pierce v. Texas Dep't of Criminal Justice, Institutional Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994).

[44]    *Pierce v. Texas Dep't of Criminal Justice,* 37 F.3d at 1150; *Click v. Copeland*, 970 F.2d 106, 110 (5th Cir.1992).

[45]    *Breaux v. City of Garland*, 205 F.3d 150, 157-58 (5th Cir. 2000).

The undersigned finds that the facts set forth in the plaintiffs' complaints concerning defendants, Ted Vincent, Randy Vincent, Prejean, Prevost, and Gremillion are insufficient to support the conclusion that their actions violated any plaintiff's rights.  Accordingly, the undersigned finds that the plaintiffs have failed to allege sufficient facts supporting a legally cognizable §1983 claim, plausible on its face, against these defendants  in their individual capacities, and the undersigned recommends that **all** of the plaintiffs' individual capacity claims against these defendants be dismissed.

### G.   THE CLAIMS AGAINST FIRMIN IN HIS INDIVIDUAL CAPACITY

Defendant Levy Firmin is also included in the group of defendants alleged to have been a part of the "Stanley-Craft Organization" which fostered a permanent hostile work environment in the police department (Rec. Doc. 74 at ¶¶ 45-46), the members of which allegedly engaged in various "machinations" designed to defeat legitimate policies, maintain a permanent hostile work environment in the police department, and ultimately terminate the employment of the persons targeted by the "organization."  (Rec. Doc. 74 at ¶ 48, 56).

The pertinent specific facts alleged with regard to Firmin are that he gave false deficiencies to plaintiff Taylor, and as a result, Firmin re-assigned Taylor to a desk

at a location in the lobby of the police department which was described as a fire hazard, and in addition, Firmin was tasked with making Taylor either resign or retire. (Rec. Doc. 74 at ¶¶ 150, 308-309, 343).

Although not all duty transfers constitute adverse employment actions, transfers can constitute adverse employment actions if they are sufficiently punitive or if the new job is markedly less prestigious and less interesting than the old one.[46] For that reason, the undersigned concludes that at least one plaintiff has alleged factual allegations sufficient to find an adverse employment action was taken against him by Firmin. However, as set forth in Part III of this report, this Court finds that plaintiff Taylor has failed to state a claim upon which relief can be granted as he has not alleged factual support for the elements necessary.  The undersigned, therefore, recommends that the defendants' motion be granted with regard to the claims asserted against Firmin.

## H. THE CLAIMS AGAINST ALFRED IN HIS INDIVIDUAL CAPACITY.

In the original complaint, there are  allegations that Jackie Alfred's actions violated plaintiff Marceaux's constitutional rights.  Alfred is alleged to have retaliated against Marceaux by filing (or threatening to file) an Internal Affairs complaint

---

[46]     *Breaux v. City of Garland*, 205 F.3d at 157.

against Marceaux because he filed a complaint with the Civil Service Board complaining of the transfers he had received. (Rec. Doc. 1 ¶¶ 200, 211-219).  It is not clear exactly what type of proceeding the Internal Affairs complaint might trigger but, giving the plaintiff the benefit of the doubt for purposes of this motion, the undersigned finds this **may** constitute an adverse employment action.

The amended complaint also contains allegations concerning Alfred. Plaintiff Hewitt allegedly was made the subject of a false complaint, and at a pre-disciplinary hearing, he produced a recording that exonerated him of the accusations ostensibly because the accusations were exposed as false. (Rec. Doc. 74 ¶¶ 140-145).   The plaintiffs allege that Craft vetoed the findings and sustained the complaint, and as a result, Alfred  gave Hewitt a "bogus deficiency", which resulted in Hewitt being "punitively transferred" to Hell's Kitchen" by Alfred. (Rec. Doc. 74 ¶ 147-148).

The amended complaint also alleges that false complaints and retaliations ultimately resulting in Hewitt's termination were initiated by Alfred because he was displeased that Hewitt would not greet him. ( Rec. Doc. 74, ¶¶ 161-163).

Punitive transfers and terminations do constitute adverse employment actions, and because the plaintiffs allege Alfred's personal and direct involvement in the actions tied to the plaintiff's exercise of their First Amendment rights, the plaintiffs have alleged sufficient facts to state a cause of action against Alfred in his individual

capacity under § 1983. Therefore, the undersigned recommends the defendants' motion be denied as to the claims against Alfred.

## I.    *CONCLUSION AND RECOMMENDATIONS AS TO PART II*

(1)    Considering the factual allegations contained in the original and amending complaints, this Court concludes that the plaintiffs' claims under §1983 against the defendants Durel, Stanley, Craft, Domingue, Alfred, Ted Vincent, Randy Vincent, Prejean, Prevost, and Gremillion in their official capacity are redundant inasmuch as the Lafayette Parish Consolidated Government is a named defendant. In addition, the Lafayette City Police Department and the Chief of the Lafayette City Police lack the legal capacity to be sued.  Therefore, the undersigned recommends these claims against these defendants be dismissed as to all plaintiffs.

(2)    Considering the factual allegations contained in the original and amending complaints, this Court concludes that the plaintiffs have failed to state a cause of action for which relief can be granted under §1983 against Durel, Domingue, Firmin, Ted Vincent, Randy Vincent, Prevost, and Gremillion in their individual capacities.  Therefore, the undersigned recommends these claims against these defendants be dismissed as to all plaintiffs.

(3)    Considering the factual allegations contained in the original and amending complaints, this Court concludes that at least some of the plaintiffs have stated a cause of action for which relief can be granted under §1983 against the Lafayette City Parish Consolidated Government, and against defendants Stanley, Craft, and Alfred in their individual capacities.

## III.    THE CONSTITUTIONAL VIOLATIONS CLAIMED

### A.    *FOURTH AMENDMENT*

The Fourth Amendment, which was made applicable to the States by the Fourteenth Amendment, states that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ."  A seizure of property occurs when "there is some meaningful interference with an individual's possessory interests in that property."[47]  In this case, the plaintiffs allege that their §1983 claim is predicated upon violation of the Fourth Amendment.

The plaintiffs do not expressly state a factual basis for their Fourth Amendment claim.  The defendants argue (Rec. Doc. 5-1 at 17-18) that this claim rests upon the

---

[47]    *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009), quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *Soldal v. Cook County*, 506 U.S. 56, 61 (1992).

plaintiffs' allegation that the defendants illegally wiretapped the plaintiffs, and the plaintiffs do not disagree.  The amended complaint contains only one paragraph addressing the topic of the alleged illegal wiretapping.  (Rec. Doc. 74 at 19, 41). There, it is alleged only that the police department "upon information and belief" uses "illegal wiretapping using the Internal Affairs Department."  (Rec. Doc. 74 at ¶ 41). Neither the original complaint nor the amended complaint contains an allegation that any defendant illegally wiretapped or monitored the telephone calls of any plaintiff.

In the original complaint, however, the plaintiffs allege that the Internal Affairs section of the Lafayette Police Department conducted systemic eavesdropping by means of non-consensual wire intercept apparatus.  (Rec. Doc. 1 at ¶ 255).  It is alleged that Internal Affairs was "monitoring and recording ALL telephone calls throughout the entire Lafayette Police Department."  (Rec. Doc. 1 at ¶ 256).  The plaintiffs allege that they have all used the telephones in the department's building and, consequently, their communications have been intercepted or monitored without one-party consent in contravention of the provisions of 18 U.S.C. § 2510, *et seq*. (Rec. Doc. 1 at ¶ 259).

The defendants contend that, if these allegations are true, the plaintiffs have failed to state a claim because the department's conduct falls within a statutory exception.  Although 18 U.S.C. § 2510 provides a civil cause of action and statutory

damages to individuals whose wire or oral communications are intercepted, 18 U.S.C. § 2510(5)(a) exempts law enforcement personnel from the scope of the statute when communications are monitored in the ordinary course of business.  This exemption is necessary "due to the need to preserve and to accurately recall messages pertaining to emergencies or to official police business."[48]

The plaintiffs respond to this argument, suggesting that the statute permits only the monitoring of calls on "established designated lines."  In fact, however, there is no such language in the statute.  Furthermore, the plaintiffs have not alleged that there was any selective monitoring of department telephones.  Instead, they alleged that "Internal Affairs was monitoring and recording ALL telephone calls throughout the entire Lafayette Police Department."  This allegation supports a conclusion that every telephone call into and out of the department was being monitored in the ongoing course of police business.  The undersigned finds that this activity falls within the scope of the law enforcement exclusion to the wiretapping statute.

Accordingly, the undersigned finds that the plaintiffs have failed to allege facts sufficient to state a legally cognizable §1983 claim, plausible on its face, predicated

---

[48]    *Norwood v. City of Hammond*, No. Civ. A. 99-879, 2000 WL 158455, at *2 (E.D. La. Feb. 10, 2000).

on the violation of the Fourth Amendment.  For that reason, the undersigned recommends that **all** of the plaintiffs' Fourth Amendment claims be dismissed.

### B.   FIFTH AMENDMENT DUE PROCESS

The plaintiffs contend that their §1983 claim is predicated on a violation of Fifth Amendment rights.  (Rec. Doc. 74 at ¶ 1).  "The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"[49]  Since the Fifth Amendment proscribes deprivation of life, liberty, or property without due process of law by federal actors while the Fourteenth Amendment proscribes such action by state actors, the plaintiffs' Fifth Amendment claim is presumably a reiteration of their contention that they were deprived of procedural due process under the Fourteenth Amendment.  There is, however, no dispute that all of the defendants are city employees and therefore state actors.  The plaintiffs have not alleged that any federal actor has deprived them of any rights.  For that reason, the plaintiffs have failed to allege the facts necessary to support a Fifth Amendment due process claim that is cognizable by this Court.

---

[49]     *Dusenbery v. U.S.*, 534 U.S. 161, 167 (2002).

Accordingly, the undersigned finds that the plaintiffs have not alleged a plausible §1983 claim based upon a violation of the Fifth Amendment, and the undersigned recommends that **all** of the plaintiffs' claims that are predicated upon a violation of the Fifth Amendment be dismissed.

### C.   *FOURTEENTH AMENDMENT*

The Fourteenth Amendment protects an individual's substantive due process, procedural due process, and equal protection rights.

### (1)   *Substantive Due Process*

Substantive due process bars arbitrary, wrongful government action regardless of the fairness of the procedures used to implement them.[50]  "To succeed with a claim based on substantive due process in the public employment context, the plaintiff must show two things:  (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious."[51] In order to validly assert a substantive due process claim premised on the loss of government employment, a government employee must assert a property interest in

---

[50]      *Lewis v. University of Texas*, 665 F.3d 625, 630-631 (5th Cir. 2011); *Marco Outdoor Advertising, Inc. v. Regional Transit Authority*, 489 F.3d 669, 673 n. 3 (5th Cir. 2007).

[51]      *Moulton v. Cty. of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993).

continued employment.[52]  In other words, only government employees who can show that they have a property interest in continued employment are entitled to the substantive due process protections of the Fourteenth Amendment.   At-will employees do not have a property interest in continued employment under the Fourteenth Amendment's Due Process Clause.[53]

None of the plaintiffs in this lawsuit have asserted substantive due process claims, and none of them have alleged that they have a property interest in their employment.  Accordingly, the undersigned finds that no plaintiff has asserted a valid substantive due process claim.  The undersigned therefore recommends that the defendants' motion to dismiss be granted with regard to **all** of the plaintiffs' substantive due process claims.

### (2)   *Procedural Due Process*

To establish a violation of the Fourteenth Amendment's guarantee of procedural due process, a plaintiff must prove that (1) he was deprived of a life, liberty, or property interest (2) without the process that was due.[54]  "[D]ue process is

---

[52]     See, e.g., *Bolton v. City of Dallas, Tex.*, 472 F.3d 261, 263 (5th Cir. 2006); *Lollar v. Baker*, 196 F.3d 603, 607 (5th Cir. 1999); *Cabrol v. Town of Youngsville*, 106 F.3d 101, 105 (5th Cir. 1997).

[53]     *Rodriguez v. Escalon*, 90 Fed. App'x 776, 779 (5th Cir. 2004).

[54]     *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 & n. 3, 542 (1985); *Welch v. Thompson*, 20 F.3d 636, 639 (5th Cir. 1994); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th

flexible and calls for such procedural protections as the particular situation demands."[55]   In any case, however, whenever (1) a state actor (2) deprives (3) a person (4) of a protected interest, some sort of procedural protection must be provided.[56]   The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.[57]

Although the plaintiffs broadly allege in a conclusory fashion that they are asserting due process claims (Rec. Doc. 74 at ¶ 1), there are no allegations specifically alleging that any particular plaintiff actually had a property interest, or that he or she was deprived of a property interest, or that he or she was denied the opportunity to be heard at a meaningful time and in a meaningful manner.  To the contrary, the complaints are replete with references to hearings, administrative proceedings, and lawsuits.  For example, plaintiffs Myers and Stelly currently have grievances pending before the Lafayette Municipal Fire and Police Civil Service Board (Rec. Doc. 74 at ¶¶ 96-97, ¶¶ 105-107); Hewitt currently has appeals pending before the Civil Service Board (Rec. Doc. 74 at ¶¶ 155, 161) and his termination is

---

Cir. 1994).

[55]     *Texas Faculty Ass'n v. University of Texas at Dallas*, 946 F.2d 379, 384 (5th Cir. 1991), quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

[56]     *Texas Faculty Ass'n v. Univ. of Texas*, 946 F.2d at 383.

[57]     See, e.g., *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Crowe v. Smith,* 151 F.3d 217, 230-31 (5th Cir. 1998).

now on appeal to the Civil Service Board (Rec. Doc. 74 at ¶ 161); and Sanchez was scheduled for a pre-disciplinary hearing before he was terminated. (Rec. Doc. 74 at ¶ 245).

The Lafayette Municipal Fire and Police Civil Service Board is empowered under La. Const. Art. X, § 12(B) to exclusively "hear and decide all removal and disciplinary cases" involving public officials and employees. The decisions of the board are subject to judicial review by the court of appeal where the commission is located.  There are no allegations the process employed by this body is inadequate or otherwise unconstitutional under the Fourteenth Amendment.

Based on the allegations set forth in the plaintiffs' complaints, the undersigned finds that the plaintiffs have not alleged a sufficient factual basis for their procedural due process claims.  Accordingly, the undersigned recommends that the defendants' motion to dismiss be granted with regard to **all** the plaintiffs' procedural due process claims.

### (3)   *Equal Protection*

The equal protection clause of the Fourteenth Amendment requires that persons similarly situated be treated the same way.[58]   To state a claim for intentional

---

[58]      *Dudley v. Angel*, 209 F.3d 460, 463 (5th Cir. 2000).

discrimination under §1983, a plaintiff must allege that a state actor intentionally discriminated against him because of his membership in a protected class.[59]  It is undisputed that the actions that the plaintiffs complain about were taken by state actors, since all of the defendants are governmental entities or employees.  But facts supporting the other elements must also be alleged.

When an employment discrimination claim is brought under §1983, the evidentiary framework used in Title VII cases to determine whether the defendant intentionally discriminated against the plaintiff is utilized.[60]   Intentional discrimination can be established through direct or circumstantial evidence.[61]  Therefore, a plaintiff must either produce direct evidence of intentional discrimination or satisfy the three steps of *McDonnell Douglas Corp. v. Green*,[62] which together make out a circumstantial case for intentional discrimination.

Under *McDonnell Douglas*, an employee must first make out a *prima facie* case of discrimination by showing that:  (1) she is a member of a protected class, (2) she

---

[59]     *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999); *Washington v. Davis*, 426 U.S. 229, 247–48 (1976).

[60]     *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999).

[61]     *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007); *Wallace v. Methodist Hospital System*, 271 F.3d 212, 219 (5th Cir. 2001).

[62]     *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).

was qualified for her position, (3) she suffered an adverse employment action, and (4) she was replaced by someone outside the protected class or, in cases alleging disparate treatment, that others similarly situated were treated more favorably.[63]  If the employee satisfies those four criteria, successfully establishing a *prima facie* case of discrimination, a presumption of intentional discrimination arises, and the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.[64]

As indicated below, this Court concludes that while only one of the plaintiffs has **possibly** alleged a constitutional violation under the equal protection clause, that claim is prescribed on its face, and therefore, the undersigned recommends that **all** claims based on deprivation of equal protection rights under the Fourteenth Amendment be dismissed.

### D.   *FIRST AMENDMENT FREE SPEECH*

---

[63]      See, e.g., *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 184 (5th Cir. 1999); *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005); *Okoye v. University of Texas Houston Health Science Center*, 245 F.3d 507, 512-13 (5th Cir. 2001); *Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001).  See, also, *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047–1048 (5th Cir. 1996) (the standard for determining whether a *prima facie* case of discrimination has been established is the same under Title VII and Section 1983 equal protection claims).

[64]      *Alvarado v. Tex. Rangers*, 492 F.3d at 611.

The plaintiffs contend that the defendants violated their First Amendment right to free speech by terminating their employment, retaliating against them, or imposing other adverse employment actions because the plaintiffs did not adhere to the alleged "Code of Silence."  "It is well established that a public employee may not be discharged for exercising his or her right to free speech under the first amendment."[65] To establish such a claim, a plaintiff must prove the following elements:  (1) that he suffered an adverse employment decision, (2) that his speech involved a matter of public concern, (3) that his interest in speaking outweighed the governmental defendant's interest in promoting efficiency, and (4) that the protected speech motivated the defendant's conduct.[66]

With regard to the second element of the requisite analysis, the Court must engage in a two-step evaluation, first determining whether the plaintiff was speaking as a citizen rather than as an employee and next whether the speech was on a topic of public concern.[67]  The determination of whether a public employee's speech addresses a matter of public concern is not a factual issue; it is a question of law to be decided

---

[65]     *Thompson v. City of Starkville, Miss.*, 901 F.2d 456, 460 (5th Cir. 1990).

[66]     *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011); *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004).

[67]     *Davis v. McKinney*, 518 F.3d 304, 311-12 (5th Cir. 2008).

-40-

by the court.[68]   Although the distinction between matters of public concern and matters of private concern is not always clear, matters of public concern are generally considered to be "any matter of political, social, or other concern to the community."[69]   To determine whether a statement addresses a matter of public concern, the content, form, and context of a given statement, as revealed by the whole record must be considered.[70]

A matter of public concern is something that is a subject of legitimate news interest.[71]  Speech relates to a matter of public concern if it contributes to an informed dialog in a democratic society or contributes informed opinions on important public issues.[72]  Speech may be related to public concerns if it is made against the backdrop of public debate.[73]  Political speech,[74] protests against racial discrimination,[75] speech

---

[68]     *Coughlin v. Lee*, 946 F.2d 1152, 1156 (5th Cir. 1991).

[69]     *Thompson v. City of Starkville*, 901 F.2d at 461.

[70]     *Thompson v. City of Starkville*, 901 F.2d at 461, citing *Connick v. Myers*, 461 U.S. 138, 147-48 (1983).  See also *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1577 (5th Cir. 1989)

[71]     *Oscar Renda Contracting, Inc. v. City of Lubbock, Tex.*, 463 F.3d 378, 382 (5th Cir. 2006), citing *City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004).

[72]     *Shatkin v. University of Texas at Arlington*, No. 4:06-CV-882-Y, 2009 WL 614788, at *4 (N.D. Tex. Mar. 10, 2009), citing *San Diego v. Roe*, 543 U.S. at 82-83.

[73]     *Salge v. Edna Independent School District*, 411 F.3d 178, 187 (5th Cir. 2005).

[74]     *Blackwell v. Laque*, 275 Fed. App'x 363, 369-70 (5th Cir. 2008).

[75]     *Charles v. Grief*, 522 F.3d 508, 514 (5th Cir. 2008).

addressing public safety issues,[76] statements addressing official misconduct,[77] and testimony in judicial proceedings[78] are all matters of public concern.

On the other hand, "when an employee speaks about matters that are of personal interest only, the speech does not address matters of public concern."[79] An employee's complaints about his job or working conditions, as well as speech pertaining to internal personnel disputes are strictly personal and are not protected under the First Amendment.[80]

To establish a claim for retaliation because of a plaintiff's exercise of his First Amendment rights, the same four elements must be shown:  first, the plaintiff must suffer an adverse employment decision; second, the plaintiffs' speech must involve a matter of public concern; third, the plaintiffs' interest in commenting on matters of public concern must outweigh the defendant's interest in promoting efficiency; and fourth, the plaintiff's speech must have motivated the defendant's action.[81]

---

[76]     *Davis v. Allen Parish School District*, 210 Fed. App'x 404, 410 (5th Cir. 2006).

[77]     *Charles v. Grief*, 522 F.3d at 514.

[78]     *Kinney v. Weaver*, 367 F.3d at 367.

[79]     *Benningfield v. City of Houston*, 157 F.3d 369, 375 (5th Cir. 1998); *Johnston v. Harris County*, 869 F.2d at 1577.

[80]     *Davis v. McKinney*, 518 F.3d at 313; *Burge v. Pearl River County, Mississippi*, 103 Fed. App'x 823, 826 (5th Cir. 2004); *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001).

[81]     *Breaux v. City of Garland*, 205 F.3d at 156; *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999).

As set forth below, this Court concludes that some of the plaintiffs have properly alleged a constitutional violation under the First Amendment. Applying the elements necessary to properly allege a constitutional deprivation under the First Amendment, this Court will look to the allegations of each plaintiff.

### (1) *PLAINTIFFS MARCEAUX, POIENCOT, THOMPSON, CORMIER, STELLY, AND HEWITT HAVE STATED PLAUSIBLE FREE SPEECH CLAIMS*

Plaintiff Kane Marceaux alleges that he was transferred from the DEA Task Force to Metro Narcotics in retaliation for complaining to Craft that Metro Narcotics conducted inadequate investigations. (Rec. Doc. 1 at ¶ 180). Since Marceaux was not working in Metro Narcotics when his complaints were made, the undersigned will assume for purposes of this motion that his complaints addressed issues of public concern and were not simply complaints about working conditions. Marceaux also alleges he was denied the opportunity to work full time after the transfer and was ordered to work light duty, however, the light duty positions were then eliminated by Craft. (Rec. Doc. 74, ¶¶ 185, 193).

Plaintiff Scott Poiencot alleges that, after he appeared as a plaintiff in the original complaint filed in this lawsuit, Craft initiated three investigations against him, ultimately resulting in his termination. (Rec. Doc. 74 at 25, ¶ 83).

-43-

Plaintiffs Gabriel Thompson and Greg Cormier both allege that, the day after filing a state court lawsuit, they were transferred in retaliation for filing the suit and reassigned to work on the north side of Lafayette or on night duty.  (Rec. Doc. 1 at ¶¶ 231, 234-235).

Plaintiff Novey Stelly alleges that, after the instant lawsuit was filed, he was punished with a duty transfer.  (Rec. Doc. 74 at ¶¶ 102, 111-112).

Although this part of his claim may possibly be prescribed, Plaintiff Uletom P. Hewitt alleges that he was punitively transferred to a duty station on the north side of Lafayette, which he alleges is referred to by Lafayette police officers as "Hell's Kitchen."  (Rec. Doc. 74 at ¶ 148.) This transfer came about after he presented evidence at a hearing that a complaint lodged against him by Craft was false. (Rec. Doc. 74 ¶¶ 141-148).   He also alleges he was wrongfully terminated based on false complaints and investigations lodged after he filed multiple appeals. (Rec. Doc. 74 ¶ 161)

The undersigned finds that these plaintiffs have alleged sufficient facts to state plausible § 1983 claims predicated on an alleged violation of their First Amendment rights.

Thompson, Cormier, and Stelly all expressly allege that they were transferred in retaliation for filing the original complaint in this lawsuit.  Filing a lawsuit is a type

-44-

of speech[82] that also implicates the petition clause of the First Amendment.[83]  Whether viewed through the free speech prism or through the petition clause prism, the analysis remains the same since "[t]he Fifth Circuit. . . require[s] a public employee seeking redress under the right to petition prong of the First Amendment to establish a public interest."[84]  The original complaint in this lawsuit alleged widespread corruption in the police department.  If allegations of corruption are true, they are matters of public concern and outweigh the government's interest in efficiency.[85]

Marceaux allegedly complained of inappropriate investigations by the Lafayette Metro Narcotics Department and that he was transferred in retaliation for for making those complaints, was ordered to take light duty and then his light duty position was terminated by Craft based on a "new policy".  It is questionable whether his complaints are a matter of public concern with a legitimate news interest rather than speech concerning the job or working conditions.   Although discovery may

---

[82]    See, *Rathjen v. Litchfield*, 878 F.2d 836, 842 (5th Cir. 1989).

[83]    *Whitehurst v. Abel*, No. 3:93CV185-D-O, 1995 WL 1945562, at *6 (N.D. Miss. Jan. 13, 1995).

[84]    *Whitehurst v. Abel*, 1995 WL 1945562, at *6.

[85]    *Breaux v. City of Garland*, 205 F.3d at 157, citing *Teague v. City of Flower Mound*, 179 F.3d 377, 381 (5th Cir. 1999); *Brawner v. City of Richardson*, 855 F.2d 187, 191-92 (5th Cir. 1988) ("The disclosure of misbehavior by public officials is a matter of public interest and therefore deserves constitutional protection, especially when it concerns the operation of a police department." [Footnotes omitted.])

reveal to the contrary, at this stage of this litigation, the plaintiffs' allegations must be taken as true.  "Because the speech at issue complained of misconduct within the police department, it should be classified as speech addressing a matter of public concern."[86] Therefore, for purposes of this motion, his complaints are presumed to be public speech and protected by the First Amendment.

Although not all duty transfers are adverse employment actions, transfers that involve significant deprivation may be adverse employment actions.[87]  A transfer may be equivalent to a demotion and consequently an adverse employment action even without resulting in a decrease in pay, title, or grade if the new position proves to be objectively worse than the prior position, such as being less prestigious, less interesting, or providing less room for advancement.[88]

With regard to Poiencot, although investigations are not adverse employment actions, termination of employment is an adverse employment action.  Poiencot alleged both that he was terminated and also that he was terminated because he filed the lawsuit, thus alleging that his protected speech motivated the defendant's conduct.  (Rec. Doc. 74 at ¶ 84).

---

[86]     *Brawner v. City of Richardson*, 855 F.2d at 192.

[87]     See, e.g., *Serna v. City of San Antonio*, 244 F.3d 479, 482-83 (5th Cir. 2001).

[88]     See, e.g., *Porter v. Valdez*, 424 Fed. App'x 382, 387 (5th Cir. 2011); *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999).

Cormier (Rec. Doc. 74 at ¶ 81) and Hewitt (Rec. Doc. 74 at ¶ 161) also both allege that they were terminated from their employment which is an adverse employment action. Cormier's termination is allegedly in retaliation for filing a lawsuit. Hewitt filed multiple appeals to the Civil Service Board (Rec. Doc. 74, ¶ 152-155) in which he apparently challenges false allegations/investigations. For purposes of this motion, the undersigned construes the appeals to the Civil Service Board to constitute public speech. He alleges he was wrongfully placed on administrative leave by Craft and required to undergo two "fit for duty" evaluations which he allegedly passed. (Rec. Doc. 74, ¶¶ 156-160). Afterwards, new complaints and investigations were used as a basis to terminate him. (Rec. Doc. 74, ¶ 161).

Accordingly, the undersigned finds that the facts alleged by plaintiffs Marceaux, Thompson, Poiencot, Cormier, Stelly, and Hewitt are sufficient to state a plausible §1983 claim predicated upon an alleged violation of their First Amendment rights. The undersigned recommends that, with regard to these claims, the defendants' motion to dismiss be denied.

### (2) *PLAINTIFFS TAYLOR, CEASER, AND JOSEPH HAVE FAILED TO STATE PLAUSIBLE CLAIMS*

Plaintiff Paul Taylor, Jr. alleges that, after returning to work following medical leave, he was assigned to "shadow" defendant Firmin and that, during that time

period, Firmin harassed Taylor "in every possible manner" including forcing him to sit at a desk in the lobby in such a manner as to constitute a fire hazard.  (Rec. Doc. 74 at ¶¶ 299-309).  Taylor also alleges that Craft tasked Firmin with "finding a way to force Taylor to resign or retire."  (Rec. Doc. 74 at 313).  The amended complaint does not allege whether Taylor has in fact retired, resigned, or been terminated.

Plaintiff Donald Ceaser alleges that he was "forced to retire" after being persecuted following his miscalendaring a police department meeting.  (Rec. Doc. 74 at ¶ 294).

The claims asserted by these two plaintiffs seem to be constructive discharge claims.  "To show constructive discharge, an employee must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign."[89]  Whether a reasonable employee would feel compelled to resign depends on the facts of each case, but the following factors are relevant, either singly or in combination:  (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or

---

[89]     *Finch v. Fort Bend Independent School Dist.*, 333 F.3d 555, 562 (5th Cir. 2003).  See, also, *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994).

(7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not.[90]  An employee suffers an adverse employment action if a reasonable employee would have found the challenged action materially adverse, which means that the action might have dissuaded a reasonable worker from making or supporting a discrimination charge.[91]

Plaintiff Kencil D. Joseph  alleges that he was "targeted for termination" (Rec. Doc. 74 at ¶ 263) and is currently appealing his termination to the Civil Service Board (Rec. Doc. 74 at ¶ 270). He does not allege the basis for his termination.

As noted previously, establishing a claim for violation of an employee's right to free speech requires a showing that (1) the employee suffered an adverse employment decision, (2) the employee's speech involved a matter of public concern, (3) the employee's interest in speaking outweighed the governmental defendant's interest in promoting efficiency, and (4) the protected speech motivated the defendant's conduct.

The factual allegations concerning these three plaintiffs do meet the requirement of properly alleging an adverse employment action.  However, neither

---

[90]    *Barrow v. New Orleans*, 10 F.3d at 297.

[91]    *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).  See, also, *Owens v. Louisiana State Dept. of Health and Hospitals*, No. 07-743-JJB-DLD, 2007 WL 4442269, at *5 (M.D. La. Dec. 14, 2007).

the original nor the amended complaint set forth any factual allegations as to what speech these plaintiffs may have uttered that would be considered a matter of public concern.  There are no specific allegations that any of these three said something in violation of the Code of Silence or spoke out publicly, i.e filed suit.  Although Caesar and Taylor are described as "political adversaries" of Craft, there is no allegation that either of them ever said anything to anybody about alleged corruption in the department, or anything critical of Craft that may have led to what they allege are adverse employment actions. Without these allegations, there is no way to evaluate the final two elements necessary to establish a cause of action.

Accordingly, the undersigned finds that plaintiffs Taylor, Ceaser and Joseph, have not alleged sufficient facts to state plausible §1983 claims.  The undersigned therefore recommends that the defendants' motion be granted with regard to these plaintiffs' claims.

### (3)   *PLAINTIFF MYERS HAS FAILED TO STATE A CLAIM*

Plaintiff Norbert Myers does not directly allege that the defendants took actions against him because he failed to comply with the alleged Code of Silence.  However, Myers does allege that Craft belittled him in front of his peers and initiated an investigation questioning his fitness for duty because Myers defended a fellow police officer. (Rec. Doc. 74 at ¶¶ 92-99).  Myers also alleges that he retired from the police

force earlier this year.  (Rec. Doc. 74 at ¶ 98).  However, he does not allege that he was forced to retire or that he decided to retire because of any alleged adverse treatment by the defendants.

Accusations and criticism are not adverse employment actions.[92]  Therefore, even if it is true that Myers was belittled by Craft because he defended another police officer, Craft's action was not an adverse employment action. Being terminated from one's employment undoubtedly is an adverse employment action, but Myers does not allege that he was involuntarily terminated, nor does he allege that his retirement was motivated by the defendants' reaction to his exercise of his free speech rights. Consequently, he fails to satisfy the fourth element of the analysis.

Additionally, Myers has not alleged that anything he said in defense of his coworker was a matter of public concern.  As noted previously, a matter of public concern is something with legitimate news interest but does not include speech concerning the job or working conditions.  Myers has not alleged the content of his defense of his coworker.  Accordingly, it is not possible to determine whether his allegedly protected speech did or did not concern a matter of public interest or was solely related to working conditions and, for that reason, not protected speech. Myers has failed to satisfy the second element of the requisite analysis.

---

[92]    *Breaux v. City of Garland*, 205 F.3d at 157-58.

The undersigned finds that Myers has not stated a plausible §1983 claim premised upon alleged violations of the First Amendment and therefore recommends that the defendants' motion to dismiss be granted with regard to the claims asserted by plaintiff Norbert Myers.

### 4.   *PLAINTIFF SANCHEZ HAS FAILED TO STATE A CLAIM*

Plaintiff Gus Sanchez alleges that he was treated differently from other police officers when he lost a lost a department radio in October 2008.  (Rec. Doc. 74 at ¶¶ 210-253).  As noted above, the equal protection clause of the Fourteenth Amendment requires that persons similarly situated be treated the same way.  To state an equal protection claim, however, a plaintiff must allege, as a threshold matter, that he is a member of a protected class.[93]  Sanchez makes no such allegation.  Accordingly, the undersigned finds that he has not stated a plausible equal protection claim.

Sanchez also alleges that Craft initiated an investigation against him in November 2009 because Sanchez allegedly disobeyed a direct order.  (Rec. Doc. 74 at ¶ 222).  It is not clear whether the November 2009 incident is related to the October 2008 incident.  To the extent that Sanchez is attempting to state a First Amendment violation with these allegations, he has failed because there is no   adverse

---

[93]     *Williams v. Bramer*, 180 F.3d at 705.

employment action.  As noted previously, the Fifth Circuit has held that initiating an investigation is not an adverse employment action.[94]

Sanchez also alleges that he was scheduled for a pre-disciplinary hearing on February 14, 2012 (Rec. Doc. 74 at ¶ 245) but does not state what the subject of the hearing was.  It is not clear whether this was related in any way to the 2008 or 2009 incidents.  Sanchez also alleges that he was terminated from his position as a police officer in March 2012.  (Rec. Doc. 74 at ¶ 249).

Sanchez does not allege why he was terminated, and he does not allege that he was terminated because he failed to comply with the Code of Silence, he does not allege that he made any statements of any kind that might be construed as addressing a matter of public concern nor has he alleged that his protected speech motivated the defendants' decision to terminate his employment.  Accordingly, Sanchez has not satisfied two of the critical requirements for a § 1983 claim based on an alleged violation of the First Amendment.

To the extent that Sanchez may have been attempting to state a claim for violation of his First Amendment rights, he has failed to satisfy the necessary criteria. The undersigned therefore recommends that the defendants' motion to dismiss be granted with regard to the claims asserted by plaintiff Gus Sanchez.

---

[94]     *Benningfield v. City of Houston*, 157 F.3d at 376.

### 5.   *PLAINTIFF POLANCO HAS FAILED TO STATE A CLAIM*

Plaintiff Robert Polanco alleges that he is a bilingual translator with an ethnic Spanish background.  (Rec. Doc. 74 at ¶ 257).  He alleges that he was made the subject of racial profiling, disparaging racial remarks, and other undisclosed acts of discrimination.  (Rec. Doc. 74 at ¶ 256).  The only factual example provided in support of that conclusory allegation, however, is that he was called "little taco" by his coworkers.  (Rec. Doc. 74 at ¶ 257).   Polanco also alleges that he was reprimanded a year and a half following an incident.  (Rec. Doc. 74 at ¶ 258).  He does not explain the nature of the incident, state when it occurred, or reveal the content of the letter of reprimand.  He simply complains about the delay in receiving the reprimand.

There are no allegations concerning Polanco that support a claim based on the First Amendment.  To the extent that his allegations might be construed as attempting to state an equal protection claim, he has not included any factual allegations to support  the required elements.

To state such a claim, a plaintiff must allege that he is a member of a protected class and was intentionally discriminated against by a state actor.  When a plaintiff contends that he has been discriminated against in his employment in violation of the equal protection clause of the Fourteenth Amendment, the evidentiary framework for

Title VII cases is used to determine whether the defendant intentionally discriminated against the plaintiff.[95]  Therefore, a plaintiff must either produce direct evidence of intentional discrimination or satisfy the three steps of *McDonnell Douglas Corp. v. Green*,[96] which together make out a circumstantial case for intentional discrimination.

Under *McDonnell Douglas*, an employee makes out a *prima facie* case of discrimination by showing that: (1) he is a member of a protected class, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) he was replaced by someone outside the protected class or, in cases alleging disparate treatment, that others similarly situated were treated more favorably.

The amended complaint contains insufficient allegations to satisfy these criteria.  First, Polanco has not alleged that he is a member of a protected class.  His allegations that he is of Spanish heritage and worked as a bilingual translator are insufficient to show that he is a member of a protected class.  Second, Polanco has not alleged that he was qualified for the position he occupied.  Third, Polanco has not alleged an adverse employment action related to his membership in a protected class.  Being formally reprimanded is an adverse employment action, but Polanco has not alleged that he was reprimanded because of his Spanish heritage.  He alleged only

---

[95]     *Lawrence v. Univ. of Tex.*, 163 F.3d at 311.

[96]     *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802-05.

that he was called "little taco" because of his heritage.  Being called such a name is not an adverse employment action.  Finally, Polanco has not alleged that persons not of Spanish heritage did not receive reprimands or did not received delayed reprimands like the one he complains about.

In summary, Polanco has not alleged facts sufficient to state a plausible § 1983 claim predicated upon a violation of the First or Fourteenth Amendments.  The undersigned therefore recommends that the defendants' motion to dismiss be granted with regard to the claims asserted by plaintiff Robert Polanco.

### E.   *CONCLUSION AND RECOMMENDATIONS AS TO PART III.*

(1)   Based on the allegations contained in the original and amended complaints, this Court concludes that none of the plaintiffs have alleged a claim upon which relief can be granted against any remaining defendant based on alleged violations of the Fourth or Fifth Amendment.  Likewise, none of the plaintiffs have stated a claim for which relief can be granted against any defendant based on violations of the procedural or substantive due process provisions of the Fourteenth Amendment.  Therefore, this Court recommends that **all** claims of **all** plaintiffs based on these allegations be dismissed.

(2)    Based on the allegations contained in the original and amended complaints, this Court concludes that plaintiffs Marceaux, Cormier, Poiencot, Thompson, Stelly, and Hewitt, have pled sufficient facts to establish a claim under §1983 based on alleged violations of their First Amendment rights.  Accordingly, this Court recommends that the defendants' motion be DENIED with regard to these claims.

(3)    Based on the allegations contained in the original and amended complaints, this Court concludes that plaintiffs Joseph, Caesar, Taylor, Myers, Sanchez, and Polanco have failed to state a claim upon which relief can be granted under §1983.  Therefore, this Court recommends that their claims be dismissed.


IV.    **SECTION 1985 CONSPIRACY CLAIM**

The plaintiffs allege that Lafayette police chief Jim Craft, Lafayette City-Parish Consolidated Government's chief administrative officer Dee Stanley, and others formed a "de facto organization" within the Lafayette Police Department "in order to maintain control" which "perpetuat[ed] a permanent hostile work environment" and used "bogus internal complaint and bogus internal affairs investigations," strong-armed witnesses, manipulated statements, and testified falsely for the purpose of defeating legitimate policies and ultimately seeking the termination of targeted

officers.[97]  Although the plaintiffs do not expressly allege in their complaint that this "organization" was a conspiracy under 42 U.S.C. §1985, the plaintiffs' counsel averred during oral argument that these allegations were intended to state a cause of action under §1985.  Therefore, the plaintiffs' conspiracy claim will be construed as a claim under §1985.[98]

Part of the Civil Rights Act of 1871, 42 U.S.C. §1985 creates a private civil remedy for three prohibited forms of conspiracy to interfere with civil rights. Subsection (1) prohibits conspiracies to prevent federal officers from performing the duties of their offices "by force, intimidation, or threat;" Subsection (3) prohibits conspiracies to "depriv[e] . . . any person or class of persons the equal protection of the laws" and those aimed at preventing a person from lawfully voting; and

---

[97]       Rec. Doc. 74 at 44-48.

[98]       The undersigned notes, for the sake of completeness, that the plaintiffs' allegations do not satisfy the element of a conspiracy claim under § 1983 or under state law.  "The elements of civil conspiracy are (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right."  *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999).  Therefore, a plaintiff must show that the defendants agreed to commit an illegal act by identifying the illegal objective of the agreement supported with facts rather than conclusory allegations.  *Rodriguez v. Neeley*, 169 F.3d 220, 222 (5th Cir. 1999).  To recover under a conspiracy theory of liability under Louisiana law, a plaintiff must prove that an agreement existed to commit an illegal or tortious act; the act was actually committed and resulted in plaintiff's injury; and there was an agreement as to the intended outcome or result.  *Crutcher-Tufts Resources, Inc. v. Tufts*, 2009-1572 (La. App. 4 Cir. 04/28/10), 38 So.3d 987, 991; *Butz v. Lynch*, 97–2166 (La. App. 1 Cir. 04/08/98), 710 So.2d 1171.  Insufficient factual allegations are set forth in the plaintiffs' original and amended complaints to establish either a § 1983 conspiracy or a Louisiana state-law conspiracy.

Subsection (2) concerns conspiracies directed at the right of participation in federal judicial proceedings.[99]

Section 1985(1) protects federal officials and is not applicable to state officials such as the plaintiffs in this lawsuit.[100]  While §1985(1) prohibits conspiracies "to prevent, by force, intimidation, or threat" a federal officer from discharging his duties or to injure him because of his lawful discharge of his duties, there is no allegation in the plaintiffs' complaint that any of the plaintiffs in this case is a federal officer. The undersigned therefore finds that the plaintiffs have not alleged facts sufficient to state a valid claim under 42 U.S.C. § 1985(1).

In the Fifth Circuit, a § 1985(3) claim must allege that "(1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by a

---

[99]    *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 149 (5th Cir. 2010).

[100]    *Benningfield v. City of Houston*, 157 F.3d at 378-379.

racial animus."[101]   In this case, however, the plaintiffs have not alleged that the "Stanley-Craft organization" was motivated by racial animus, alleging instead that the conspiracy's motivation was to silence the voices of those who would disagree with it, resulting in a violation of the plaintiffs' free speech rights.   Accordingly, the undersigned finds that the plaintiffs have not alleged facts sufficient to state a valid claim under §1985(3).

The first part of §1985(2) prohibits conspiracies to deter witnesses from attending court or testifying, punish witnesses who have so attended or testified, or injure jurors, while the second part of the statute prohibits conspiracies to deny any citizen equal protection of the laws or to injure a citizen for his efforts to ensure the rights of others to equal protection.[102]   When a claim is asserted under the equal protection portion of §1985(2), the class-based animus requirement of §1985(3) applies.[103]   Again, the plaintiffs have not alleged that the "Stanley-Craft organization" was motivated by racial animus.   Accordingly, the undersigned finds that the

---

[101]     *Wong v. Stripling*, 881 F.2d 200, 202-03 (5th Cir. 1989).  See, also, e.g., *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010).

[102]     *Bryant v. Military Department of Mississippi*, 597 F.3d 678, 687 (5th Cir. 2010).

[103]     *Daigle v. Gulf State Utils. Co.*, 794 F.2d 974, 979 (5th Cir. 1986) (noting the parallel language in §§ 1985(2) and 1985(3) prohibiting certain conduct with an intent to deny "equal protection of the laws").

plaintiffs have not alleged facts sufficient to state a valid claim under the equal protection portion of §1985(2).

The remaining portion of §1985(2) requires a showing that a conspiracy exists. "Conspiracy is a required element of a cause of action under §1985(2), and the failure to allege a conspiracy necessitates dismissal for failure to state a claim."[104]   A conspiracy requires the involvement of two or more persons, but the employees of an entity are not considered to be "persons" separate from such entity for conspiracy purposes.[105]   Therefore, "[u]nder the intracorporate conspiracy doctrine, alleged concerted action by employees or officials of the same entity or organization cannot constitute a conspiracy for purposes of § 1985."[106]  The Fifth Circuit has held that just as employees of a corporation cannot conspire together, employees of the same governmental agency cannot conspire together.[107]   Applying the doctrine, courts have barred §1985 claims against a public school board and its officials,[108] against a public

---

[104]    *Perkins v. Gregg County, Texas*, No. 6:94 CV 328, 1995 WL 836051, at *5 (E.D. Tex. Dec. 6,1995).

[105]    *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994).

[106]    *Hilliard v. Ferguson*, 30 F.3d at 653.  See, also, *Benningfield v. Houston*, 157 F.3d at 378.

[107]    *Hilliard v. Ferguson*, 30 F.3d at 653.  Although *Hilliard* addresses conspiracies under 42 U.S.C. § 1985(3), rather than § 1985(2), the language of the two provisions on the subject of conspiracy is identical.

[108]    *Hilliard v. Ferguson*, 30 F.3d at 653.

university and its officials,[109] and against the City of Houston, Texas and its police

chief.[110]  Significantly with regard to the allegations made in this lawsuit, courts in

the Fifth Circuit have held that "[b]ecause a unit of government and its employees are

deemed to constitute a single legal entity, governmental entities and their employees

cannot conspire among themselves."[111]

In this case, all of the defendants named in the suit are the City and city

employees.  Therefore, the intracorporate conspiracy doctrine bars the plaintiffs'

conspiracy claim under §1985(2) unless the complaint contains sufficient facts to

support the conclusion that a possible exception to the doctrine applies.  When an

individual acts for his own personal purposes rather than for a corporation or other

entity, he becomes an independent actor who can conspire with a corporation or

governmental agency.[112]   In this case, however, there are no allegations in the

complaint suggesting that any of the individual defendants were acting for their own

personal purposes rather than in the course and scope of their employment with the

---

[109]     *Chambliss v. Foote*, 562 F.2d 1015 (5th Cir. 1977), *aff'g*, 421 F.Supp. 12, 15 (E.D. La. 1976).

[110]     *Swilley v. City of Houston*, 457 Fed. App'x 400, 402 (5th Cir. 2012).

[111]     *Jackson v. Signh*, No. Civ. A. No. H–06–2920, 2007 WL 2818322, at *11 (S.D. Tex. Sept. 25, 2007).  See, also *Britt v. Jackson County, Miss.*, No. 1:11-cv-00074-HSO-JMR, 2012 WL 2460534, at *8 (S.D. Miss. June 27, 2012) (holding that a county and its officials, agents, and employees constitute a single legal entity, which cannot conspire with itself).

[112]     *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 603 (5th Cir. 1981).

-62-

Lafayette police department at any relevant time.  Accordingly, the undersigned finds that the plaintiffs have not alleged facts sufficient to state a valid conspiracy claim under the portion of §1985(2) that prohibits interference with judicial activities.

Because the undersigned has concluded that the plaintiffs have not stated a valid conspiracy claim under 42 U.S.C. §1985(1), §1985(2), or §1985(3), the undersigned recommends that any such claim asserted in the plaintiffs' complaint be dismissed.

## V.   STATE LAW CLAIMS

The plaintiffs assert claims under "the laws of the State of Louisiana, including Civil Code Articles 2315 and 2317," seeking to recover for the defendants' "negligence, intentional negligence[,] and negligence *per se* under Louisiana law." (Rec. Doc. 74 at ¶ 353).  Despite having been afforded the opportunity to revise their original complaint, and having done so, the plaintiffs have not articulated a factual basis for a state-law intentional tort claim.  Therefore, their state law claims must be dismissed.

Article 2315 is the seminal statute for Louisiana tort law.  Article 2317 modifies Article 2315 by expressly making employers liable for the torts of their employees.  Under the Louisiana Workers' Compensation Act, La. R.S. 23:1032,

however, an employee injured while in the course and scope of his employment is generally limited to the recovery of workers' compensation benefits as his exclusive remedy against his employer and may not sue his employer in tort.  The workers' compensation statute represents a compromise by which the employer and employee both surrender valuable rights, with the employee agreeing to accept the certainty of workers' compensation benefits as his exclusive remedy in exchange for surrendering his right to seek tort recovery from his employer.[113]  This principle also immunizes employees against negligence claims by their co-workers.[114]

At the hearing, counsel for the defendants stated that Lafayette police officers are covered under the state worker's compensation scheme.   The jurisprudence confirms this fact.[115]  Accordingly, the plaintiffs in this lawsuit are statutorily barred

---

[113]    *Harris v. Wal-Mart Stores, Inc.*, 205 F.3d 847, 849 (5th Cir. 2000).  See, also, *Benoit v. Turner Industries Group, L.L.C.*, 2011-1130 (La. 01/24/12), 85 So.3d 629, 634.

[114]    *White v. Monsanto Co.*, 585 So.2d 1205, 1208 (La. 1991) ("LSA–R.S. 23:1032 makes worker's compensation an employee's exclusive remedy for a work-related injury caused by a co-employee, except for a suit based on an intentional act.")

[115]    See, e.g., *Fontenot v. Patterson Ins.*, 2009-0669 (La. 10/29/09), 23 So.3d 259, in which the Lafayette City-Parish Consolidated Government filed a third-party demand and intervention against the defendants, seeking reimbursement of workers' compensation benefits paid to a city police officer who was injured in an automobile accident while on duty; *LeBlanc v. Lafayette Consol. Government*, 2007-1608 (La. App. 3 Cir. 05/28/08), 983 So.2d 1022, which involved a dispute concerning the prescription of workers' compensation benefits for a Lafayette city police officer whose eye was injured in an accident sustained while he was in the course and scope of his employment; *Breaux v. City of Lafayette*, 610 So.2d 157, 158 (La. App. 3 Cir. 1992), which states that the plaintiff, a Lafayette city police officer, received workers' compensation benefits for injuries sustained in the line of duty.

from suing their employer, Lafayette Consolidated City-Parish Government, or their co-employees, the remaining defendants named in the complaint, for their alleged state-law negligence unless the factual allegations of their complaint establish that they can rely on the intentional tort exclusion.

The only exception to the exclusivity rule is that an employee may sue his employer to recover for intentionally inflicted injuries.[116]  In all other respects, as expressly stated in the pertinent statute, "[t]his exclusive remedy is exclusive of *all* claims. . . ."[117]  Although the plaintiffs contend that they are entitled to recover for "intentional negligence" (Rec. Doc. 74 at ¶ 353(J)), their complaint contains no factual allegations supporting any intentional tort claims.

Therefore, the undersigned concludes that, in light of the facts alleged by the plaintiffs in their complaint, the plaintiffs have not stated a claim for state-law negligence that is cognizable by this court, and the undersigned therefore recommends that the plaintiffs' state-law claims be dismissed.

## VI.  PRESCRIPTION

---

[116]     La. R.S. 23:1032(B).

[117]     La. R.S. 23:1032(A)(1)(b).  [Emphasis added.]

-65-

The defendants argue that certain of the plaintiffs' claims have prescribed and, for that reason, those plaintiffs' claims should be dismissed.  "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."[118]  Therefore, a complaint is subject to dismissal for failure to state a claim upon which relief can be granted if it is apparent from the face of the complaint that the applicable prescriptive period has expired.[119]  However, even when a prescription defense is pleaded, a motion to dismiss remains subject to the traditional rule that the motion to dismiss cannot be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.[120]

Because there is no federal statute of limitations for § 1983 claims, the forum state's statute of limitations for personal injury claims is borrowed and applied.[121]  In Louisiana, the one-year prescriptive period established in Civil Code Article 3492

---

[118]     *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

[119]     *White v. Padgett*, 475 F.2d 79, 82 (5th Cir. 1973); *Cross v. Lucius*, 713 F.2d 153 (5th Cir. 1983).

[120]     *Cross v. Lucius*, 713 F.2d at 156.

[121]     See, e.g., *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007); *Piotrowski v. City of Houston*, 51 F.3d at 514 n. 5; *Rodriguez v. Holmes*, 963 F.2d 799, 803 (5th Cir. 1992).

applies to § 1983 claims.[122]  "Although state law controls the statute of limitations for § 1983 claims, federal law determines when a cause of action accrues."[123]  Under the federal standard, a cause of action accrues when "the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured."[124]

The claims asserted by plaintiff Aleeta M. Harding, on the face of the complaint, have prescribed.  She alleges that, in February 2008, she responded to an e-mail concerning incentive pay (Rec. Doc. 74 at ¶ 184) and that her response resulted in her being denied a promotion in June 2010 following her supervisor's retirement (Rec. Doc. 74 at ¶ 192) and again when the interim supervisor retired in December 2010 (Rec. Doc. 74 at ¶ 197) since the supervisor's position was eliminated from the next year's budget by action taken in August 2010 (Rec. Doc. 74 at ¶ 200).  Consequently, all actions that she complains about occurred more than one year before this lawsuit was filed.

---

[122]     *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998), citing *Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir. 1989).

[123]     *Rodriguez v. Holmes*, 963 F.2d at 803, citing *Brummet v. Camble*, 946 F.2d 1178, 1184 (5th Cir. 1991).

[124]     *Rodriguez v. Holmes*, 963 F.2d at 803, citing *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987); *Jacobsen v. Osborne*, 133 F.3d at 319; *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998).

The claims asserted by plaintiff Raquel Roberts also appear, on the face of the complaint, to have prescribed, since all of the events that she complains about occurred prior to her retirement from the police department on March 10, 2011 (Rec. Doc. 74 at ¶ 319), a date that is more than one year before this suit was filed.

Regina Briscoe implicitly alleges that she has a claim based on race discrimination in violation of her equal protection rights under the Fourteenth Amendment. (Rec. Doc. 74 ¶¶ 175-181).  She fails to allege, however, that she is a member of a protected class, an omission that if not present would be fatal to that claim.  Based on the specific factual allegations, all of the actions which may give rise to this cause of action occurred in 2009.  (Rec. Doc. 74 ¶¶ 167-177).  Briscoe took medical leave as a result of those actions in May of 2010, and nine months later (February 2011) "she decided" she could not return to work and retired, i.e. more than a year before this lawsuit was filed.

Although the plaintiffs also allege that all of their claims are timely under a continuing tort theory (Rec. Doc. 74 at ¶42), Harding's claim accrued when she was allegedly passed over for promotion and certainly no later than when the position she sought was eliminated.  Since she knew at that time that there was no possibility of promotion to the eliminated position, she knew or should have known that she was injured, and she has alleged no later acts or omissions by any of the defendants in

support of her claim.  Accordingly, her claim is not impacted by the continuing tort theory.  The undersigned finds that the face of the complaint reveals that her claim has prescribed, further finds that Harding has no possibility of recovering on her claim, and further finds that Harding has not stated a claim upon which relief can be granted by this court.  Accordingly, the undersigned recommends that Harding's claim be dismissed.

The continuing tort theory is also unavailable to Roberts and Briscoe.  Both allege that they retired more than one year before this suit was filed due to the actions of the defendants.  Their allegations are that they knew, not later than the date of their retirement, that they had been injured and this motivated their decision to retire.  The undersigned finds that the face of the complaint reveals that their claims have prescribed, further finds that Roberts and Briscoe have no possibility of recovering on their claims, and further finds that Roberts and Briscoe have not stated a claim upon which relief can be granted by this court.  Accordingly, the undersigned recommends that Roberts's and Briscoe's claims be dismissed.

With regard to the claims asserted by the other plaintiffs, the undersigned finds that it is not apparent from the face of the complaint that the claims are prescribed, especially in light of the plaintiffs' alleging continuing acts or omissions in support

of their claims.   Accordingly, the undersigned recommends that the claims of plaintiffs Harding, Briscoe, and Roberts be dismissed.

## VII.   THE PLAINTIFFS' CLAIM FOR INJUNCTIVE RELIEF

The plaintiffs have asserted a claim for injunctive relief.  (Rec. Doc. 74 at pp. 54-55).   The defendants argue that this claim should be dismissed because the plaintiffs lack standing to assert it, while the plaintiffs argue that their request for injunctive relief is not a separate claim but merely a part of their prayer for relief.

"To have standing to sue for injunctive relief, a party must:  (1) have suffered an injury-in-fact; (2) establish a causal connection between the injury-in-fact and a complained-against defendant's conduct; (3) show that it is likely, not merely speculative, that a favorable decision will redress the injury-in-fact; and (4) demonstrate either continuing harm or a real and immediate threat of repeated injury in the future."[125]  In this case, the plaintiffs have not shown that each and every one of the defendants participated in each of the acts claimed by each and every plaintiff as having caused injury.  Additionally, many of the plaintiffs are no longer employed by the City and, therefore, can no longer be subjected to adverse employment actions

---

[125]     *Funeral Consumers Alliance, Inc. v. Service Corp. Intern.*, 695 F.3d 330, 342 (5th Cir. 2012), citing *James v. City of Dallas, Tex.*, 254 F.3d 551, 563 (5th Cir. 2001).

by the defendants.  A plaintiff has standing to seek injunctive relief only when there is a real and immediate, not merely conjectural or hypothetical, threat of continuing harm or repeated injury.[126]  In this case, the plaintiffs cannot satisfy that requirement. For this reason, the undersigned finds that the plaintiffs have not stated a claim for injunctive relief upon which relief can be granted.  To the extent that the defendants seek dismissal of the plaintiffs' claim for injunctive relief, the undersigned does, therefore, recommend that the motion be granted.

## CONCLUSION

In summary, the undersigned recommends that the defendants' motion to dismiss be granted in part and denied in part.  More particularly, the undersigned recommends that:

1.   The defendants' motion be GRANTED with regard to **all** of the plaintiffs' claims for injunctive relief, §1985 conspiracy claims, the state-law claims, claims predicated upon alleged violations of the Fourth Amendment; claims predicated upon alleged violations of their due process and equal protection rights under the Fifth and Fourteenth Amendments and that these claims be DISMISSED.

---

[126]   *Quinn v. Roach*, 326 Fed. App'x 280, 293 (5th Cir. 2009).

2.      The defendants' motion be GRANTED with regard to the claims asserted against defendants Durel, Stanley, Craft, Alfred, Ted Vincent, Randy Vincent, Firmin, Domingue, Prejean, Prevost, and Gremillion in their official capacities, as well as the claims against the Lafayette City Police Department to the extent it is named as a specific defendant and that these claims be DISMISSED.

3.      The defendants' motion be GRANTED with regard to the claims asserted against defendants Durel, Firmin, Ted Vincent, Randy Vincent, Domingue, Prejean, Prevost, and Gremillion in their individual capacities and that these claims be DISMISSED.

4.      The defendants' motion be GRANTED with regard to the claims asserted by plaintiffs Myers, Harding, Sanchez, Polanco, Briscoe and Roberts  and that these claims be DISMISSED.

5.      The defendants' motion be, in all other respects, DENIED.

If these recommendations are accepted,  the plaintiffs' claims are reduced to six employees' claims against the City, two alleged policymakers, and one supervisor for the alleged violation of their First Amendment free speech rights, seeking compensation for the adverse employment actions that allegedly occurred as a result of those violations.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana on November 28th, 2012.

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE