UNITED STATES OF DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| KANE MARCEAUX, GREG CORMIER, SCOTT POIENCOT, NORBERT MYERS, GABE THOMPSON, NOVEY STELLY, ULETOM P. HEWITT, REGINA BRISCOE AND ALEETA M. HARDING | CIVIL ACTION NO: 6:12-cv-01532 |
| VERSUS | JUDGE RICHARD T. HAIK, SR. |
| LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT; LAFAYETTE POLICE DEPARTMENT THROUGH THE LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT; LESTER JOSEPH "JOEY" DUREL, JR. IN HIS CAPACITY AS PRESIDENT OF THE LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT; DEE EDWARD STANLEY, INDIVIDUALLY AND IN HIS CAPACITY AS CHIEF ADMINISTRATIVE OFFICER OF THE LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT; JAMES P. "JIM" CRAFT, INDIVIDUALLY AND IN HIS CAPACITY AS CHIEF OF THE LAFAYETTE POLICE DEPARTMENT; AND GEORGE "JACKIE" ALFRED, INDIVIDUALLY AND IN HIS CAPACITY AS PATROL DIVISION COMMANDER OF THE LAFAYETTE POLICE DEPARTMENT | MAGISTRATE JUDGE PATRICK J. HANNA |

*******************************************************************************
### ANSWER TO ORIGINAL COMPLAINT

NOW INTO COURT, through undersigned counsel, come Defendants,

LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT ("LCG"), DEE EDWARD

STANLEY, INDIVIDUALLY, JAMES P. "JIM" CRAFT, INDIVIDUALLY, AND GEORGE

"JACKIE" ALFRED, INDIVIDUALLY, to Answer the Original Complaint filed on behalf of

Plaintiffs, Kane Marceaux, Greg Cormier, Scott Poiencot, Gabe Thompson, Nolvey Stelly, and

Uletom P. Hewitt, by denying each and every allegation contained therein except as made hereafter admitted.

<u>**PREAMBLE**</u>

Pursuant to Defendants' Motion to Strike, the Court struck the following paragraphs from Plaintiffs' original Complaint: ¶ 25 – 27, 30, 55 - 78, 82 – 106, 107-121, 147-162, and 242 – 250.  (Document 77). Pursuant to Defendants' Motion to Dismiss under F.R.C.P. 12(b)(6), the Court dismissed the following Plaintiffs: Norbert Meyers, Aleeta Harding, Gus Sanchez, Robert Polanco, Regina Briscoe, Raquel Roberts, Kencil Joseph, Donald Ceaser, and Paul Taylor, Jr. In addition, the Court dismissed the following Defendants:  Lester Joseph "Joey" Durel, Jr. in his official capacity as President of LCG, Dee Edward Stanley, in his official capacity as Chief Administrative Officer of LCG, James P. "Jim" Craft, in his official capacity as Chief of the Lafayette Police Department, George "Jackie" Alfred, in his official capacity as Major of the Lafayette Police Department, Levy Firmin, Ted Vincent, Randy Vincent, Ray Domingue, Dwayne Prejean, U.J. Prevost, and Keith Gremillion. (Documents 79 and 84). Insofar as Plaintiffs' original Complaint sets forth allegations relative to the stricken Paragraphs and\or dismissed Plaintiffs and Defendants, no response is required. Otherwise, Defendants, LCG, Stanley, individually, Craft, individually, and Alfred, individually, respond to Plaintiffs' original Complaint as follows.

<u>**ANSWER TO ORIGINAL COMPLAINT**</u>

*For ease of reference, Defendants have copied individual Paragraphs from Plaintiffs' Complaint prior to each response.*

## 1.

*This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and under the laws of the State of Louisiana, against Lafayette City-Parish Consolidated Government, Lafayette Police Department through the Lafayette City-Parish C3022 Consolidated Government, Lester Joseph "Joey" Durel, Jr. in his capacity as President of the Lafayette City-Parish Consolidated Government, Dee Edward Stanley, individually and in his capacity as Chief Administrative Officer of the Lafayette City-Parish Consolidated Government, James P. "Jim" Craft, individually and in his capacity as Chief of the Lafayette Police Department, and George "Jackie" Alfred, individually and in his capacity as Patrol Division Commander of the Lafayette Police Department.*

### ANSWER TO PARAGRAPH 1

Insofar as the allegations of Paragraph 1 relate to the proposed liability of Defendants herein, same are denied.

## 2.

*Plaintiffs, Kane Marceaux, Greg Cormier, Scott Poiencot, Gabriel Thompson, Norbert Myers, Novey Stelly, Uletom P. Hewitt, Regina Briscoe, and Aleeta M. Harding are present and former police officers of the Lafayette Police Department, and they are all competent adults of the full age of majority and consent, domiciled, living, and residing in the State of Louisiana, within parishes subtended by the geographical boundaries of the United States District Court in and for the Western District of Louisiana.*

### ANSWER TO PARAGRAPH 2

Paragraph 2 of the original Complaint is denied for lack of sufficient information to justify a belief therein.

## 3.

*The Plaintiffs adopt and restate those allegations contained in Paragraphs One through Two (2), in their entirety, as if fully copied in extenso herein.*

### ANSWER TO PARAGRAPH 3

Paragraph 3 of the original Complaint does not require a response; however, in an abundance of caution, same is denied.

**4.**

*Jurisdiction is based upon 28 U.S.C. §§ 1331, 1343, and 1367, and upon the pendent jurisdiction of this Court to entertain claims arising under state law.*

## ANSWER TO PARAGRAPH 4

Paragraph 4 is states a legal conclusion and therefore requires no response.

**5.**

*The Plaintiffs adopt and restate those allegations contained in Paragraphs One (1) through Four (4), in their entirety, as if fully copied in extenso herein.*

## ANSWER TO PARAGRAPH 5

Paragraph 5 of the original Complaint does not require a response; however, in an abundance of caution, same is denied.

**6.**

*Plaintiff Kane Marceaux was at all times relevant to this Complaint a legal citizen of the United States of America and a competent adult of the full age of majority and consent, domiciled, living, and residing in the Parish of Lafayette, State of Louisiana.*

## ANSWER TO PARAGRAPH 6

Paragraph 6 is denied for lack of sufficient information to justify a belief therein.

**7.**

*Plaintiff **Greg Cormier** was at all times relevant to this Complaint a legal citizen of the United States of America and a competent adult of the full age of majority and consent, domiciled, living, and residing in the Parish of St. Landry, State of Louisiana.*

## ANSWER TO PARAGRAPH 7

Paragraph 7 is denied for lack of sufficient information to justify a belief therein.

**8.**

*Plaintiff **Scott Poiencot** was at all times relevant to this Complaint a legal citizen of the United States of America and a competent adult of the full age of majority and consent, domiciled, living, and residing in the Parish of Lafayette, State of Louisiana.*

## ANSWER TO PARAGRAPH 8

Paragraph 8 is denied for lack of sufficient information to justify a belief therein.

### 9.

*Plaintiff* **Gabriel Thompson** *was at all times relevant to this Complaint a legal citizen of the United States f America and a competent adult of the full age of majority and consent, domiciled, living, and residing in the Parish of Lafayette, State of Louisiana.*

## ANSWER TO PARAGRAPH 9

Paragraph 9 is denied for lack of sufficient information to justify a belief therein.

### 10.

*Plaintiff* **Norbert Myers** *was at all times relevant to this Complaint a legal citizen of the United States of America and a competent adult of the full age of majority and consent, domiciled, living, and residing in the Parish of Lafayette, State of Louisiana.*

## ANSWER TO PARAGRAPH 10

Paragraph 10 does not require a response, because Plaintiff Norbert Meyers's claims have been dismissed. (Documents 79 and 84). In an abundance of caution, same is denied for lack of sufficient information to justify a belief therein.

### 11.

*Plaintiff* **Novey Stelly** *was at all times relevant to this Complaint a legal citizen of the United States of America and a competent adult of the full age of majority and consent, domiciled, living, and residing in the Parish of Lafayette, State of Louisiana.*

## ANSWER TO PARAGRAPH 11

Paragraph 11 is denied for lack of sufficient information to justify a belief therein.

### 12.

*Plaintiff* **Uletom P. Hewitt** *was at all times relevant to this Complaint a legal citizen of the United States of America and a competent adult of the full age of majority and consent, domiciled, living, and residing in the Parish of Lafayette, State of Louisiana.*

## ANSWER TO PARAGRAPH 12

Paragraph 12 is denied for lack of sufficient information to justify a belief therein.

### 13.

Plaintiff **Regina Briscoe** was at all times relevant to this Complaint a legal citizen of the United States of America and a competent adult of the full age of majority and consent, domiciled, living, and residing in the Parish of Lafayette, State of Louisiana.

## ANSWER TO PARAGRAPH 13

Paragraph 13 does not require a response, because Plaintiff Regina Briscoe's claims have been dismissed. (Documents 79 and 84). In an abundance of caution, same is denied for lack of sufficient information to justify a belief therein.

### 14.

Plaintiff **Aleeta M. Harding** was at all times relevant to this Complaint a legal citizen of the United States of America and a competent adult of the full age of majority and consent, domiciled, living, and residing in the Parish of Lafayette, State of Louisiana.

## ANSWER TO PARAGRAPH 14

Paragraph 14 does not require a response, because Plaintiff Aleeta M. Harding's claims have been dismissed. (Documents 79 and 84). In an abundance of caution, same is denied for lack of sufficient information to justify a belief therein.

### 15.

Defendant Lafayette City-Parish Consolidated Government is "a local government subdivision of the State of Louisiana ruled by a Home Rule Charter," which, through its President, "may appoint, suspend or remove all City-Parish Government employees" and "direct and supervise the administration of all departments, offices and agencies of the City-Parish Government," thereby making the said entity the public employer of the remaining party Defendants named herein. See, e.g., Batiste v. Bonin, 6:06-CV-1352, Rec. Doc. 27 (W.D.La. 06/13/07), --- F.Supp.2d ---, 2007 WL 1791219, pp. *2-4, citing, inter alia, "Home Rule Charter for the Lafayette City-Parish Consolidated Government," Art. IV, Sec. 3-09A(2)(3), City Council of the City of Lafayette v. Bowen, 649 So.2d 611 (La.App. 3 Cir.1994). See also, Cormier v. Lafayette City Parish Consol. Government, 6:09-CV-0703, Rec. Doc. 97 (W.D.La. 10/28/2011), --- F.Supp.2d ---, 2011 WL 5156862, fn. 6.

## ANSWER TO PARAGRAPH 15

Paragraph 15 of the original Complaint is denied to the extent it states a legal conclusion. Defendants admit that LCG is ruled by a Home Rule Charter.

### 16.

*Defendant Lester Joseph "Joey" Durel, Jr. (named in his official capacity) is the President of the Lafayette City-Parish Consolidated Government, a position which derives its power from the City of Lafayette's Home Rule Charter as authorized by La. Const. Art. VI, Sec. 5., and in that role Defendant "may appoint, suspend or remove all City-Parish Government employees" and shall "direct and supervise the administration of all departments, offices and agencies of the City-Parish Government." "Home Rule Charter for the Lafayette City-Parish Consolidated Government," Art. IV, Secs. 3-09A(2)(3), 4-01A, 4-13A.*

## ANSWER TO PARAGRAPH 16

Paragraph 16 of the original Complaint does not require a response, because Defendant, Lester Joseph "Joey" Durel, has been dismissed.  (Documents 79 and 84). In an abundance of caution, same is denied.

### 17.

*Defendant Dee Edward Stanley (named in his individual and official capacities) is the Chief Administrative Officer of the Lafayette City-Parish Consolidated Government to whom, upon information and belief, whole or partial direction and supervision of the administration of all departments, offices and agencies of the City-Parish Government, including the Lafayette Police Department, has/have been (expressly, implicitly, or otherwise) assigned, ascribed,delegated, and/or otherwise conferred.*

## ANSWER TO PARAGRAPH 17

Paragraph 17 of the original Complaint does not require a response, because Defendant, Dee Edward Stanley, is his official capacity as CAO of LCG, has been dismissed. (Documents 79 and 84).  Stanley remains in his individual capacity, and, as such, Paragraph 17 of the original Complaint is denied.

**18.**

*Defendant James P. "Jim" Craft (named in his individual and official capacities) is the Chief of the Lafayette Police Department, and, upon information and belief, is the progenitor (separately or collaboratively) of that Department's policies, procedures, customs, and/or practices, including those said policies / procedures which are identified herein as violating the Plaintiffs' constitutional rights, thereby making this Defendant liable for (i) affirmatively participating in acts that caused grave constitutional deprivation and/or (ii) implementing unconstitutional policies that causally resulted in Plaintiffs' injury. See, e.g., Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987), Grandstaff v. City of Borger, 767 F.2d 161, 169-70 (5th Cir.1985), cert. den., 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987), Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992).*

## ANSWER TO PARAGRAPH 18

Paragraph 18 of the original Complaint does not require a response, because Defendant, James P. "Jim" Craft, is his official capacity as Chief of the Lafayette Police Department, has been dismissed.  (Documents 79 and 84).  Craft remains in his individual capacity, and, as such, Paragraph 18 of the original Complaint is denied.

**19.**

*Defendant George "Jackie" Alfred (named in his individual and official capacities) is the Patrol Division Commander of the Lafayette Police Department, and, upon information and belief, Defendant is (separately or collaboratively) the progenitor of that Department's policies, procedures, customs, and/or practices, including those said policies / procedures which are identified herein as violating the Plaintiffs' constitutional rights, thereby making this Defendant liable for (i) affirmatively participating in acts that caused grave constitutional deprivation and/or(ii) implementing unconstitutional policies that causally resulted in Plaintiffs' injury. See, e.g., Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987), Grandstaff v. City of Borger, 767 F.2d 161, 169-70 (5th Cir. 1985), cert. den., 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987), Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992).*

## ANSWER TO PARAGRAPH 19

Paragraph 19 of the original Complaint does not require a response, because Defendant, George "Jackie" Alfred, is his official capacity as Major of the Lafayette Police Department, has been dismissed.  (Documents 79 and 84).  Alfred remains in his individual capacity, and, as such, Paragraph 19 of the original Complaint is denied.

**20.**

At all times herein relevant, Defendants Lester Joseph "Joey" Durel, Jr., Dee Edward Stanley, James P. Craft and George "Jackie" Alfred were employed by Defendant Lafayette City-Parish Consolidated Government, and these Defendants were acting under the color of state law and authority granted by the said local governmental authority.

### ANSWER TO PARAGRAPH 20

Insofar as Paragraph 20 of the original Complaint relates to the proposed liability of LCG, Stanley, individually, Craft, individually, and Alfred, individually, same are denied. Otherwise, Defendants, Durel, Stanley, Officially, Craft, Officially, and Alfred, Officially have been dismissed. (Documents 79 and 84).

**21.**

Suit against Defendant Lafayette City-Parish Consolidated Government is thus properly made for the claims asserted by these Plaintiffs, where the said local governmental authority (as employer for Durel, Stanley, Craft, and Alfred) is subtended within the exception to political subdivisions' immunity from suit, as set specifically forth and provided by La. Const. Art. XII, Sec. 10.

### ANSWER TO PARAGRAPH 21

Insofar as Paragraph 21 of the original Complaint relates to the proposed liability of LCG, Stanley, individually, Craft, individually, and Alfred, individually, same are denied. Otherwise, Defendants, Durel, Stanley, Officially, Craft, Officially, and Alfred, Officially have been dismissed. (Documents 79 and 84).

**22.**

In the alternative, and notwithstanding any claim or allegation heretofore made, defendants Lester Joseph "Joey" Durel, Jr., Dee Edward Stanley, James P. Craft and/or George "Jackie" Alfred were acting outside of and/or beyond the scope of their employment with defendant Lafayette City-Parish Consolidated Government and are thus individually liable for the tort, delicts, and intentional harm visited upon the Plaintiffs.

**ANSWER TO PARAGRAPH 22**

Insofar as Paragraph 22 of the original Complaint relates to the proposed liability of LCG, Stanley, individually, Craft, individually, and Alfred, individually, same are denied. Otherwise, Defendants, Durel, Stanley, Officially, Craft, Officially, and Alfred, Officially have been dismissed. (Documents 79 and 84).

**23.**

*The Plaintiffs adopt and restate those allegations contained in Paragraphs One (1) through Twenty-Two (22), in their entirety, as if fully copied in extenso herein.*

**ANSWER TO PARAGRAPH 23**

Paragraph 23 of the original Complaint does not require a response; however, in an abundance of caution, same is denied.

**24.**

*The following statement of facts is made upon the Plaintiffs' own knowledge, information, recollection and belief.*

**ANSWER TO PARAGRAPH 24**

Paragraph 24 of the original Complaint is denied.

**25.**

*The named Defendants have created, fostered, engendered, and otherwise generally ratified and supported a police department which is fundamentally "rotten to the core."*

**ANSWER TO PARAGRAPH 25**

Paragraph 25 of the original Complaint requires no response, as said Paragraph has been stricken. (Document 77).

**26.**

*Ironically, this phrase's "dictionary" definition makes use of an applied example involving police corruption: "Thoroughly bad, as in, 'It seems that this police unit is rotten to*

*the core, involved in numerous extortion schemes…'" Ammer, Christine, The American Heritage Dictionary of Idioms, "rotten to the core," Houghton Mifflin Company. 05 Jun. 2012. <http://dictionary.reference.com/browse/rotten to the core>.*

## ANSWER TO PARAGRAPH 26.

Paragraph 26 of the original Complaint requires no response, as said Paragraph has been stricken. (Document 77).

## 27.

*Along these lines, perhaps Marcellus' famous utterance from Hamlet could be paraphrased slightly: "Something is rotten in the City of Lafayette's Police Department." Hamlet, Act 1, Scene 4, l. 90.*

## ANSWER TO PARAGRAPH 27

Paragraph 27 of the original Complaint requires no response, as said Paragraph has been stricken. (Document 77).

## 28.

*In particular and without limitation, these Defendants, acting separately and in concert with each other, with other unnamed members of the Lafayette Police Department and/or the Lafayette City-Parish Consolidated Government, with certain members of the public, and with certain citizens of the City of Lafayette, State of Louisiana, have maintained and supported a police "Code of Silence" whereby regardless of an officer's gross misconduct, his/her fellow officers, as a matter of entrenched customary policy, do not report the misdeeds or otherwise testify against their comrade(s).*

## ANSWER TO PARAGRAPH 28

Paragraph 28 of the original Complaint is denied.

## 29.

*These Defendants, again acting separately and in concert with each other, with other unnamed members of the Lafayette Police Department and/or the Lafayette City-Parish Consolidated Government, with certain members of the public, and with certain citizens of the City of Lafayette, State of Louisiana, have employed disparate and discriminatory disciplinary policies and procedures, outright concealment of police misconduct, retaliations, retributions, and reprisals against those who report such misconduct, a gross distortion of the truth relating to instances of police misconduct, and a wholesale deliberate indifference to the Constitution of the United States of America, its Amendments, and the entire canon of federal and state laws*

*requiring fundamental fairness, decency, honesty, due process, and integrity in the police disciplinary system.*

## ANSWER TO PARAGRAPH 29

Paragraph 29 of the original Complaint is denied.

### 30.

*At the outset, Plaintiffs do not presently allege the Defendants were involved in any extortion schemes (as presupposed by the definition cited above); however, Plaintiffs do allege the Lafayette Police Department's customs, practices, policies, and procedures are so bad as to be "rotton to the core". The Lafayette City-Parish Consolidated Government (hereinafter sometimes "LCG") maintains a mandatory policy and procedures manual which sets forth the City's commitment to maintaining a work environment that is free from discrimination, where employees are able to devote their full attention and best efforts to their respective jobs.*

## ANSWER TO PARAGRAPH 30

Paragraph 30 of the original Complaint requires no response, as said Paragraph has been stricken. (Document 77).

### 31.

*Policy 2161.20 of this policy and procedures manual mandates, inter alia, that harassment, either intentional or unintentional, has no place in the LCG work environment.*

## ANSWER TO PARAGRAPH 31

Insofar as the allegations of Paragraph 31 relate to the proposed liability of these Defendants, same are denied. Insofar as the allegations of Paragraph 31 relate to terms of the LCG Policies and Procedurals Manual, Defendants respond by saying that any such Manual is a written instrument and is therefore the best and only evidence of its terms, provisions, conditions, policies, etcetera and said Manual is pled herein as if copied *in extenso*.

### 32.

*For purposes of this manual, harassment and/or discrimination includes: ...[D]isparate treatment...which interferes with an individual's work performance or creates an intimidating, hostile, or offensive work environment. All employees are prohibited from retaliating or threatening to retaliate in any way against anyone who has voiced a complaint or*

*participated in an investigation relating to harassment or discrimination. Harassment or discrimination constitutes a disciplinary infraction that shall be dealt with through the appropriate measures, up to and including discharge.*

## ANSWER TO PARAGRAPH 32

Insofar as the allegations of Paragraph 32 relate to the proposed liability of these Defendants, same are denied. Insofar as the allegations of Paragraph 32 relate to terms of the LCG Policies and Procedurals Manual, Defendants respond by saying that any such Manual is a written instrument and is therefore the best and only evidence of its terms, provisions, conditions, policies, etcetera and said Manual is pled herein as if copied *in extenso*.

### 33.

*In addition, Managers and Supervisors are responsible for adherence to this policy and its emanating harassment-free and discrimination-free workplace. A copy of the referenced policy and procedures requirement is annexed and attached hereto and otherwise incorporated herein as Exhibit "A."*

## ANSWER TO PARAGRAPH 33

Insofar as the allegations of Paragraph 33 relate to the proposed liability of these Defendants, same are denied. Insofar as the allegations of Paragraph 33 relate to terms of the LCG Policies and Procedurals Manual, Defendants respond by saying that any such Manual is a written instrument and is therefore the best and only evidence of its terms, provisions, conditions, policies, etcetera and said Manual is pled herein as if copied *in extenso*.

### 34.

*In addition, Policy 2161-2 promulgated as a conditions of employment for LCG, requires all employees, including Defendants Durel, Stanley, Craft, and Alfred, to refrain from:*

A.    *2.13 - Discrimination in matters relating to employment as prohibited by applicable Federal and State law;*
B.    *2.14 - Deliberate falsification of any form, record, or report;*
C.    *2.15 - Use of position with LCG to obtain preferential treatment or gain unfair  advantage in personal dealings with co-workers or with the public;*
D.    *Harassment of employees and/or other persons during working hours the work place, including, but not limited to, sexual harassment; and,*

> E.      *1.20 - To cooperate and assist in any work-related administrative investigation and to answer any related questions completely and truthfully.*

## ANSWER TO PARAGRAPH 34

Insofar as the allegations of Paragraph 34 relate to the proposed liability of these Defendants, same are denied. Insofar as the allegations of Paragraph 34 relate to terms of the LCG Policies and Procedurals Manual, Defendants respond by saying that any such Manual is a written instrument and is therefore the best and only evidence of its terms, provisions, conditions, policies, etcetera and said Manual is pled herein as if copied *in extenso*.

### 35.

> *The mandate required of Defendants by their policies and procedures manual regarding discipline (Policy 2161-2, 4.1) is to administer progressive, corrective disciplinary action, including but not limited to reprimand, pay reduction, suspension, demotion, or termination, a copy of said policy incorporated and annexed hereto as Exhibit "B."*

## ANSWER TO PARAGRAPH 35

Insofar as the allegations of Paragraph 35 relate to the proposed liability of these Defendants, same are denied. Insofar as the allegations of Paragraph 35 relate to terms of the LCG Policies and Procedurals Manual, Defendants respond by saying that any such Manual is a written instrument and is therefore the best and only evidence of its terms, provisions, conditions, policies, etcetera and said Manual is pled herein as if copied *in extenso*.

### 36.

> *As enunciated in the LCG policy and procedures manual in Policy 120.1, a copy of which is incorporated and annexed hereto as Exhibit "C," the instrument's main impetus and purpose is to insure uniformity in the application of rules, benefits, discipline, etc. across departmental lines.*

## ANSWER TO PARAGRAPH 36

Insofar as the allegations of Paragraph 36 relate to the proposed liability of these Defendants, same are denied. Insofar as the allegations of Paragraph 36 relate to terms of the

LCG Policies and Procedurals Manual, Defendants respond by saying that any such Manual is a written instrument and is therefore the best and only evidence of its terms, provisions, conditions, policies, etcetera and said Manual is pled herein as if copied *in extenso*.

### 37.

*The Policies and procedures are not subject to individual interpretation: Directors, managers and supervisors are charged with the responsibility of making known the contents of the Manual to subordinate employees at all levels, since they are, by public pronouncement the "declared official policies of the Lafayette Consolidated Government…"*

### ANSWER TO PARAGRAPH 37

Insofar as the allegations of Paragraph 37 relate to the proposed liability of these Defendants, same are denied. Insofar as the allegations of Paragraph 37 relate to terms of the LCG Policies and Procedurals Manual, Defendants respond by saying that any such Manual is a written instrument and is therefore the best and only evidence of its terms, provisions, conditions, policies, etcetera and said Manual is pled herein as if copied *in extenso*.

### 38.

*There can be no changes, additions or deletions without the express approval of either President Lester Joseph "Joey" Durel, Jr. or Chief Administrative Officer Dee Edward Stanley.*

### ANSWER TO PARAGRAPH 38

Paragraph 38 of the original Complaint is denied.

### 39.

*The LCG Policy and Procedures Manual (PPM) is thus required to be carried out, implemented, and administered by Defendants Lafayette City-Parish Consolidated Government, Lafayette Police Department through the Lafayette City-Parish Consolidated Government, Lester Joseph "Joey" Durel, Jr. in his capacity as President of the Lafayette City-Parish Consolidated Government, Dee Edward Stanley, in his capacity as Chief Administrative Officer of the Lafayette City-Parish Consolidated Government, James P. Craft, individually and in his capacity as Chief of the Lafayette Police Department, and George "Jackie" Alfred, individually and in his capacity as Patrol Division Commander of the Lafayette Police Department.*

## ANSWER TO PARAGRAPH 39

Paragraph 39 of the original Complaint denied.

### 40.

*The Lafayette Police Department, has enacted and promulgated General Orders, consisting of approximately 459 pages of orders required to be adhered to by all employees of the Lafayette Police Department, including Defendants Craft and Alfred.*

## ANSWER TO PARAGRAPH 40

Insofar as the allegations of Paragraph 40 relate to the proposed liability of these Defendants, same are denied. Insofar as the allegations of Paragraph 40 relate to terms of the General Orders of the Lafayette Police Department, Defendants respond by saying that any such General Orders are a written instrument and are therefore the best and only evidence of its terms, provisions, conditions, policies, etcetera and said General Orders are pled herein as if copied *in extenso*.

### 41.

*Under the General Orders of the Lafayette Police Department (hereinafter referred to respectively as "GO" and "LPD"), violations of the GO require "progressive discipline  inclusive of dismissal, demotion, suspension, or other disciplinary action."*

## ANSWER TO PARAGRAPH 41

Insofar as the allegations of Paragraph 41 relate to the proposed liability of these Defendants, same are denied. Insofar as the allegations of Paragraph 41 relate to terms of the General Orders of the Lafayette Police Department, Defendants respond by saying that any such General Orders are a written instrument and are therefore the best and only evidence of its terms, provisions, conditions, policies, etcetera and said General Orders are pled herein as if copied *in extenso*.

**42.**

*Any Civil Service Law, City Ordinance, State Law, or Federal Law which is in conflict with any part of a Written Directive will automatically supersede that section of the Department's Written Directives.*

### ANSWER TO PARAGRAPH 42

Paragraph 42 of the original Complaint sets forth a legal conclusion and therefore does not require a response from Defendants. In an abundance of caution, same is denied.

**43.**

*According to the mandate of the GO, physical force shall only be used to the extent necessary to secure observance of law, or to restore order when the exercise of persuasion, advice, and warning is found to be insufficient to achieve police objectives.*

### ANSWER TO PARAGRAPH 43

Insofar as the allegations of Paragraph 43 relate to the proposed liability of these Defendants, same are denied. Insofar as the allegations of Paragraph 43 relate to terms of the General Orders of the Lafayette Police Department, Defendants respond by saying that any such General Orders are a written instrument and are therefore the best and only evidence of its terms, provisions, conditions, policies, etcetera and said General Orders are pled herein as if copied *in extenso*.

**44.**

*According to the mandate of the GO, all supervisors are required to enforce the rules, regulations and policies of the Lafayette Police Department: Supervisors shall not permit, or otherwise fail to permit, violations of the law, departmental rules, policies, or procedures.*

### ANSWER TO PARAGRAPH 44

Insofar as the allegations of Paragraph 44 relate to the proposed liability of these Defendants, same are denied. Insofar as the allegations of Paragraph 44 relate to terms of the General Orders of the Lafayette Police Department, Defendants respond by saying that any such

General Orders are a written instrument and is therefore the best and only evidence of its terms, provisions, conditions, policies, etcetera and said General Orders are pled herein as if copied *in extenso*.

**45.**

*According to the mandate of the GO, the LPD is a "quasi-military structure in order to clearly define the chain of command…"*

**ANSWER TO PARAGRAPH 45**

Insofar as the allegations of Paragraph 45 relate to the proposed liability of these Defendants, same are denied. Insofar as the allegations of Paragraph 45 relate to terms of the General Orders of the Lafayette Police Department, Defendants respond by saying that any such General Orders are a written instrument and are therefore the best and only evidence of its terms, provisions, conditions, policies, etcetera and said General Orders are pled herein as if copied *in extenso*.

**46.**

*According to the mandate of the GO, it is prohibited to deliberately falsify any police report, form, record or public document; it is also prohibited to use official positions to intimidate or entice any person, business or establishment.*

**ANSWER TO PARAGRAPH 46**

Insofar as the allegations of Paragraph 46 relate to the proposed liability of these Defendants, same are denied. Insofar as the allegations of Paragraph 46 relate to terms of the General Orders of the Lafayette Police Department, Defendants respond by saying that any such General Orders are a written instrument and are therefore the best and only evidence of its terms, provisions, conditions, policies, etcetera and said General Orders are pled herein as if copied *in extenso*.

**47.**

According to the mandate of the GO, all allegations of police misconduct to which Internal affairs (hereinafter referred to as "IA") requires a thorough, complete, and objective investigation of the allegations of misconduct.

### ANSWER TO PARAGRAPH 47

Insofar as the allegations of Paragraph 47 relate to the proposed liability of these Defendants, same are denied. Insofar as the allegations of Paragraph 47 relate to terms of the General Orders of the Lafayette Police Department, Defendants respond by saying that any such General Orders are a written instrument and are therefore the best and only evidence of its terms, provisions, conditions, policies, etcetera and said General Orders are pled herein as if copied *in extenso*.

**48.**

According to the mandate of the GO, all allegations of employee misconduct, whether from an internal or external source, shall be investigated; the Chief of Police, Defendant Craft, shall be notified when "any" complaint is made involving a departmental employee.

### ANSWER TO PARAGRAPH 48

Insofar as the allegations of Paragraph 48 relate to the proposed liability of these Defendants, same are denied. Insofar as the allegations of Paragraph 48 relate to terms of the General Orders of the Lafayette Police Department, Defendants respond by saying that any such General Orders are a written instrument and are therefore the best and only evidence of its terms, provisions, conditions, policies, etcetera and said General Orders are pled herein as if copied *in extenso*.

**49.**

According to the mandate of the GO, Officers which utilize non-lethal force or less-than lethal weapons shall report the incident in the departmental electronic reporting system in addition to the departmental Use of Force Report (CALEA- 1.3.6c,d).

## ANSWER TO PARAGRAPH 49

Insofar as the allegations of Paragraph 49 relate to the proposed liability of these Defendants, same are denied. Insofar as the allegations of Paragraph 49 relate to terms of the General Orders of the Lafayette Police Department, Defendants respond by saying that any such General Orders are a written instrument and are therefore the best and only evidence of its terms, provisions, conditions, policies, etcetera and said General Orders are pled herein as if copied *in extenso*.

### 50.

*Contrary to the mandates, supra, contained in both the Lafayette Consolidated Government's Policy and Procedure Manual and the Lafayette City Police Department's General Orders, the Defendants herein have maintained various unwritten policies amounting to policy, custom, conventional usages with complete indifference to the mandates set forth above as well as the requirements of the United States Constitution, the First, Fourth, Fifth, and Fourteenth Amendments, 42 U.S.C. 2000e-3(a), and 42 U.S.C. 1983, et seq.*

## ANSWER TO PARAGRAPH 50

Paragraph 50 of the original Complaint is denied.

### 51.

*These unwritten policies, customs, and/or conventional usages constitute a very deeply rooted and systemic "code of silence" wherein "regardless what the behavior, one police officer does not report or testify against another police officer." Snyder v. Trepagnier, 142 F.3d 791,797 (5th Cir. 1998).*

## ANSWER TO PARAGRAPH 51

Paragraph 51 of the original Complaint is denied.

### 52.

*Defendants, with knowledge, desire, and premeditation, contrary to their stated policies, maintain a disparate system of discipline in which internal affairs investigations which should be ordered are not; investigations which are ordered are manipulated to discriminate against officers of race; disparate disciplinary measures are handed out; clear violations subjecting officers to possible termination are white washed or covered up; and using the code of silence punitive measures are utilized under cover of "policy" changes.*

## ANSWER TO PARAGRAPH 52

Paragraph 52 of the original Complaint is denied.

### 53.

*These policies have long existed within the Lafayette Police Department through the Lafayette City-Parish Consolidated Government (hereinafter sometimes "LPD") and utilize, upon information and belief, illegal wiretapping using the Internal Affairs Department, coverups, falsification of police reports, assigning quotas to units for tickets, transferring officers to either the night shift or the north side of Lafayette, or both; disparate disciplinary procedures and results; and utilizing the Internal Affairs Department to intimidate, threaten, harass, and/or retaliate against officers exercising Constitutionally-protected rights.*

## ANSWER TO PARAGRAPH 53

Paragraph 53 of the original Complaint is denied.

### 54.

*To illustrate examples of how the code of silence in the LPD operates with the full knowledge and consent of Defendants Durel, Stanley, Craft, and Alfred, the following material facts are provided: Disparate Discipline and The Code of Silence.*

## ANSWER TO PARAGRAPH 54

Paragraph 54 of the original Complaint does not require a response; however, in an abundance of caution, same is denied.

### PARAGRAPH 55-78

### 55.

*During Mardi Gras 2010, a rookie police officer who was found to have utilized excessive force upon a teenager; this rookie officer's conduct was recorded and published on youtube.com.*

### 56.

*In response, this officer was ordered by Defendant Craft to serve a five (5) day suspension from duty without pay.*

**57.**

Several weeks after Mardi Gras 2010, at or near April 2010, during Lafayette's Festival International de Louisiane, a disabled, homeless one-legged citizen was arrested and and cuffed.

**58.**

The individual was located at the LPD's command bus where the disabled and handcuffed male was sitting in a chair awaiting transport.

**59.**

While waiting for transport, Defendant Craft, who had apparently consumed at least one(1) recent alcoholic beverage, encountered the arrested and disabled homeless man.

**60.**

Upon encountering this individual, the arrested individual began telling Defendant Craft that the police were no good as well as cussing at Craft.

**61.**

Craft, upon hearing these insults, jumped upon the disabled man and began to choke him, all while telling the individual he wasn't going to talk to Craft like that because he was the Chief of Police.

**62.**

After choking the individual for approximately thirty (30) seconds, Craft's wife came to the aid of the homeless man, removed Craft from him, placed Craft into a vehicle, and drove him away.

**63.**

While Craft was being pulled away to his vehicle, a fellow officer, Jimmy Richard, asked Craft if he were going to file a "use of force" report for the incident, since the LPD General Orders mandate the execution and submission of such a form.

**64**.

Craft laughed while riding away from the scene.

**65.**

Officer Jimmy Richard, at the time, was the Senior Defense Tactics training officer for the Lafayette Police Department as well as the Acadiana and St. Martin Law Enforcement Academies, well versed in LPD's requirement that a use of force report must be

filed whenever non-lethal force is used against a citizen, particularly when closed-hand techniques and/or neck restraints which can cause serious death or injury are used.

## 66.

Upon information and belief, Officer Scott Rummel of the LPD was hand-picked by Craft to write the mandatory police report for the arrest of the disabled man.

## 67.

The report which Rummel wrote and submitted, falsely and completely omitted the entire encounter between Craft and the homeless and disabled individual.

## 68.

Officers who were present and witnessed this incident included Officer Chris Starling, Monty Potier, Lance LeBlanc, and Scott Rummel.

## 69.

This incident and its aftermath epitomizes the Defendants' administration of the Case 6:12-cv-01532 Document 1 Filed 06/05/12 Page 13 of 38 PageID #: 13Lafayette Police Department: Any member of the LPD who is perceived as a threat to theestablished order by defendants Durel, Stanley, Craft, and/or Alfred receives retaliation,reprisals, and retribution, while any member of the LPD who actively works to conceal theDepartment's gross mismanagement and wholesale failure to comply with applicable laws is given prestigious awards, commendations, and career advancement.

## 70.

Since the incident, Lance LeBlanc, who was, at the time of the incident, in either patrol or unusual occurrences, was promoted to Supervisor for criminal investigations and adult crimes, a prestigious position within the department.

## 71.

Since the incident, Monty Potier, who was in traffic, at the time of the incident, was upgraded to unusual occurrences which controls extra curricular events outside the department for events such as the Festival International de Louisiane, Susan G. Coleman Run, Festival Acadian and other such events, another prestigious position within the Department.

## 72.

Since the incident, Scott Rummel, was advanced from patrol into the prestigious position of recruiter for the Lafayette Police Department.

**73.**

Since the incident; however, Jimmy Richard, was removed by Defendant Craft from his position as Sr. Defensive Tactics Instructor for the Lafayette Police Department and the Acadiana and St. Martin Law Enforcement Academies.

**74.**

Some time after the Craft incident with the homeless, disabled individual, Officer Chris Starling was conducting an in-service training workshop for officers.

**75.**

By that time, the rookie policeman whom Craft gave five (5) days suspension without pay was being discussed by a group of LPD officers as an example of disparate discipline within the Department (as contrasted to the Craft incident wherein no punishment whatsoever was given).

**76.**

When Starling heard the conversation, he inquired of the group if they wanted to know the real story about the incident between Craft and the one-legged homeless man.

**77.**

With that, Starling independently related the essential facts which are set forth above.

**78.**

Upon information and belief, Craft's full-scale beat down of a defenseless, unarmed, onelegged homeless and disabled man has been completely covered up, and no discipline has ever been undertaken or even considered.

### RESPONSE TO PARAGRAPHS 55 THROUGH 78

Paragraphs 55 through 78 of the original Complaint do not require an Answer as they have been stricken pursuant to this Court's Order. (Document 77).

**79.**

In his capacity as President of Lafayette City-Parish Consolidated Government, Lester Joseph "Joey" Durel, Jr. supervises and direct all departments, offices, and agencies in the LCG, including the LPD, and the directors of all departments are appointed by and serve at the pleasure of the President. Exhibit "A," Section 3-09A.

**ANSWER TO PARAGRAPH 79**

Insofar as the allegations of Paragraph of the original Complaint relate to Defendant Durel, Defendants respond by saying that Defendant Durel has been dismissed pursuant to this Court's Order. (Document 79 and 84).   In an abundance of cause, same are denied.

**80.**

*In turn, Defendant Craft is the appointed "top cop" in the LPD, and he is thus delegated  and charged with promulgation and enforcement of the City's PPM's and LPD's General Orders.*

**ANSWER TO PARAGRAPH 80**

Paragraph 80 of the original Complaint is denied.

**81.**

*Unfortunately, Craft continues to maintain a widespread policy of disparate discipline within the department to such a degree, that Defendants CGL, LPD, Durel, and Stanley know, knew, or should have known of this policy (or, at a minimum, possessed constructive notice thereof), such that Defendants CGL, LPD, Durel, and Stanley knew there was a substantial risk of both disparate discipline and the "prevalent recklessness" which foretells the existence of a police code of silence.*

**ANSWER TO PARAGRAPH 81**

Paragraph 81 of the original Complaint is denied.

**<u>PARAGRAPHS 82-121</u>**

**82.**

*In approximately November 2011, a black officer of the LPD was under investigation for allegations of criminal conduct.*

**83.**

*The investigation cleared this black officer of the alleged allegation; however, during the investigation the black officer was honest and related that on the night in question he had consumed a couple of drinks before driving home.*

**84.**

This officer received a three (3) day suspension without pay from Defendant Craft for conduct unbecoming an officer.

**85.**

At approximately the same time, a white officer and member of the LPD's SWAT team had remained at a local Lafayette establishment with three (3) other LPD officers consuming alcoholic beverages after 2:00 AM.

**86.**

The majority of the SWAT officers were white.

**87.**

Under applicable law, it is illegal for any establishment to dispense alcoholic beverages, including policemen, after 2:00 AM.

**88.**

When these officers, who were consuming alcohol after the 2:00 AM curfew, left the establishment, one of the officers drove approximately half a mile and passed out behind the wheel.

**89.**

This officer was not arrested for driving a vehicle while under possible impairment from alcoholic beverages; instead, fellow officers removed him from the vehicle and brought him home.

**90.**

During a subsequent Internal Affairs investigation, the four (4) SWAT officers were interviewed.

**91.**

Upon information and belief, these officers, contrary to the Lafayette Consolidated Government's PPM's and Lafayette Police Department's General Order requirements to tell the truth, denied any knowledge of the consumption of alcoholic beverages on the morning in question after 2:00 AM.

**92.**

Further, the officer conducting the IA investigation, upon learning of the drinking after 2:00 AM, issued a summons to the bar's owner for possible criminal infraction.

**93.**

Upon information and belief, policemen, including Defendant Craft, are preferred customers of the establishment.

**94.**

On or about January 18, 2012, Craft discussed the IA investigation of the white SWAT officer and colleagues with other officers.

**95.**

During this meeting, Craft acknowledged that the white SWAT officer was drunk and operated his vehicle intoxicated before he passed out at the wheel.

**96.**

Lt. Ron Czajkowski related that the officers who initially came into contact with the passed out SWAT officer stated the intoxicated, passed-out officer was "out of it."

**97.**

Later during this conversation, Craft appeared to be attempting to minimize the bar owner's involvement by stating that he (Craft) did not know if the bar owner had even broken the law by remaining open past 2:00 AM.

**98.**

Lt. Dewayne Prejean, appointed by Craft as the Chief of the LPD Internal Affairs Department, participated during this meeting.

**99.**

Prejean acknowledged that the officers under investigation had lied to IA; however, Prejean stated that if the members of the SWAT squad, were disciplined for lying during an internal investigation, their credibility for testifying in court in criminal proceedings would be severely compromised.

**100.**

Subsequent to this meeting, another was had between Plaintiff, Greg Cormier, and Captain Ron Czajkowski regarding the SWAT matter in approximately February of 2012.

**101.**

Although the normal procedure for pre-disciplinary, Loudermill hearings is that the investigator from Internal Affairs attends, the investigator in this matter was not allowed to participate in the hearing.

**102.**

During this conversation, Cormier referenced the earlier meeting with Prejean, Czajkowski, Major Randy Vincent, and Craft on January 18, 2012.

**103.**

Captain Czajkowski stated that Craft was opposed to issuing the bar owner a summons for violating the 2:00 AM closing law, agreeing that the summons should have been issued; however, as Czajkowski stated, the bar owner "is connected."

**104.**

At the end of the white SWAT member's investigation, he received a one (1) day suspension.

**105.**

No other officer who partook and accompanied him past 2:00 AM or lied to the Internal Affairs investigation, as established by Lt. Dewayne Prejean, received any discipline.

**106.**

Although the public statements made by Defendant Craft regarding his Internal Affairs Department suggest that it is a neutral, unbiased and beyond reproach unit, in actuality it is used as an arm for reprisals, retaliations, and reprimands for those officers who do not take passes for the team (i.e., a textbook example of the police "code of silence").

**107.**

On or about March 15, 2012, Plaintiff Scott Poiencot engaged in a conversation with Captain Ted Vincent, former head of the Lafayette Internal Affairs Section.

**108.**

Captain Vincent is not only the brother-in-law of Defendant Craft, but the Captain in charge of the LPD Metro Narcotics section.

**109.**

Vincent related to Poiencot that all of the hard work he had put into the Internal Affairs Section to revamp policies and procedures of the Internal Affairs Section to make it unbiased and beyond reproach had been ruined when Craft appointed its present head, Dewayne Prejean.

**110.**

According to Vincent, with his hard work, the IA Section had achieved integrity; however, the appointment of Prejean removed any integrity the unit formerly had.

**111.**

According to Vincent, Prejean was promoted to Internal Affairs by Craft after a deal was struck with Prejean's wife.

**112.**

According to Vincent, Prejean's wife, a practicing attorney, represented police officers against Craft in the Lafayette Municipal Fire & Police Civil Service Board successfully.

**113.**

As a result, a deal was struck that Prejean would be promoted to head of the Internal Affairs Section if Prejean's wife would refuse to accept any more police officers as clients.

**114.**

Sgt. Mark Francis on February 16, 2012, similarly confirmed the Craft-Prejean deal.

**115.**

Vincent stated that Prejean should leave the Internal Affairs Department. Prejean since it is staffed with the wrong people and Prejean is in the wrong place with no administrative nor investigative experience.

**116.**

Presently, Internal Affairs is not adhering to the Departmental rules as a result of Prejean chopping up pieces of the Standard Operating Procedures Manual of the Internal Affairs Section.

**117.**

In fact, neither Defendant Craft nor the present Internal Affairs Section have any knowledge of their own rules and regulations.

**118.**

According to Vincent, during a meeting between Craft and Prejean, they called Vincent to get the information they needed in regards to the rules because neither one knew.

**119.**

According to Captain Vincent, the Internal Affairs Section has a long history of lying.

**120.**

In addition, the present Internal Affairs Section of the LPD, as evidenced by the disparate treatment of the black officer and white Swat officer, supra, is known within the LPD as having a record of same.

**121.**

Despite Vincent's apparent warnings to Craft, Vincent related that Defendant Craft needs to worry about the present IA Section and read all the IA reports, which apparently, Defendant Craft has chosen not to do. Internal Affairs Section, Defendant Craft, and Their Track Record.

## ANSWER TO PARAGRAPHS 82 THROUGH 121

Paragraphs 82 through 121 of the original Complaint do not require an Answer as they have been stricken pursuant to this Court's Order. (Document 77).

**122.**

In 2011, Major Glenn Dartez, head of the LPD homicide division was present at the scene of a homicide off duty in his LPD vehicle with a female companion of dubious credentials.

## ANSWER TO PARAGRAPH 122

Paragraph 122 is denied for lack of sufficient information to justify a belief therein.

## 123.

*At the scene, the alleged suspect asked Dartez for help.*

### ANSWER TO PARAGRAPH 123

Paragraph 123 is denied for lack of sufficient information to justify a belief therein.

## 124.

*Dartez told the suspect he was off-duty, call 911 for assistance, and he (Dartez) exited the scene with his female companion in-tow.*

### ANSWER TO PARAGRAPH 124

Paragraph 124 is denied for lack of sufficient information to justify a belief therein.

## 125.

*The assigned homicide investigator, Detective David LeBlanc, subsequently at the crime scene learned that Major Dartez had been present on the scene prior to LeBlanc's arrival and left.*

### ANSWER TO PARAGRAPH 125

Paragraph 125 is denied for lack of sufficient information to justify a belief therein.

## 126.

*The following Monday, Plaintiff Greg Cormier, when learning of Dartez's transgression of the LPD General orders, suggested that Detective LeBlanc needed to report Dartez's presence through the chain of command immediately.*

### ANSWER TO PARAGRAPH 126

Paragraph 126 is denied for lack of sufficient information to justify a belief therein.

**127.**

*Detective LeBlanc reported Dartez to Sgt. Lance LeBlanc, his superior.*

**ANSWER TO PARAGRAPH 127**

Paragraph 127 is denied for lack of sufficient information to justify a belief therein.

**128.**

*Both Detective LeBlanc and Sgt. LeBlanc went to Captain Randy Vincent and Lt. Mac Gallien.*

**ANSWER TO PARAGRAPH 128**

Paragraph 128 is denied for lack of sufficient information to justify a belief therein.

**129.**

*After approximately two months, both LeBlancs reported the incident again because nothing was ever done in regard to Dartez's transgression.*

**ANSWER TO PARAGRAPH 129**

Paragraph 129 is denied for lack of sufficient information to justify a belief therein.

**130.**

*This time the matter was reported to Captain Randy Vincent and Lt. Mac Gallien; again, nothing happened.*

**ANSWER TO PARAGRAPH 130**

Paragraph 130 is denied for lack of sufficient information to justify a belief therein.

32

## 131.

On or about January 12, 2012, Plaintiffs Gregory Cormier and Gabriel Thompson had a  conversation with Officer Lance LeBlanc.

### ANSWER TO PARAGRAPH 131

Paragraph 131 is denied for lack of sufficient information to justify a belief therein.

## 132.

Lance LeBlanc related the above facts regarding the twice reported incident to Captain Randy Vincent and Lt. Mac Gallien.

### ANSWER TO PARAGRAPH 132

Paragraph 132 is denied for lack of sufficient information to justify a belief therein.

## 133.

Although Detective David LeBlanc attempted to interview Dartez's female companion, a witness in the homicide case, Major Dartez prevented LeBlanc's access to Dartez's female companion by providing LeBlanc with her statement, since Dartez maintained a superior rank.

### ANSWER TO PARAGRAPH 133

Paragraph 133 is denied for lack of sufficient information to justify a belief therein.

## 134.

Eventually the Dartez incident became known by the news media, and as a result, the facts became public knowledge.

### ANSWER TO PARAGRAPH 134

Paragraph 134 is denied for lack of sufficient information to justify a belief therein.

**135.**

Up to the point of public disclosure by the media, the entire incident had been covered up.

**ANSWER TO PARAGRAPH 135**

Paragraph 135 of the original Complaint is denied.

**136.**

When the news reported the incident, Defendant Craft went to Sgt. Mark Francis, who at times acted as the Public Information Officer for the LPD.

**ANSWER TO PARAGRAPH 136**

Paragraph 136 is denied for lack of sufficient information to justify a belief therein.

**137.**

On February 16, 2012, Sgt. Mark Francis engaged in a conversation in the parking lot of the LPD with Plaintiffs Scott Poiencot, Greg Cormier, and Gabriel Thompson.

**ANSWER TO PARAGRAPH 137**

Paragraph 137 is denied for lack of sufficient information to justify a belief therein.

**138.**

During that conversation, Sgt. Francis related that Francis had spoken to Defendant Craft about the incident, and Francis related that Craft attempted to delay any investigation of Dartez to allow Dartez to obtain retirement.

**ANSWER TO PARAGRAPH 138**

Paragraph 138 is denied for lack of sufficient information to justify a belief therein.

**139.**

Further, Craft apparently told Francis that he (Craft) did not know of the incident.

34

### ANSWER TO PARAGRAPH 139

Paragraph 139 of the original Complaint is denied.

### 140.

*Francis related that he told Craft that there was no way that Francis could attempt to smooth things in the media because he (Francis) did not personally believe that Craft knew nothing about the incident.*

### ANSWER TO PARAGRAPH 140

Paragraph 140 is denied for lack of sufficient information to justify a belief therein.

### 141.

*Francis related that if Dartez could have made his anniversary date, Dartez would have received substantial benefits from his retirement and sick leave; however, if fired, Dartez would have lost those benefits.*

### ANSWER TO PARAGRAPH 141

Paragraph 140 is denied for lack of sufficient information to justify a belief therein.

### 142.

*Even with the delay, Dartez fell three (3) days short of his anniversary date.*

### ANSWER TO PARAGRAPH 142

Paragraph 142 is denied for lack of sufficient information to justify a belief therein.

### 143.

*An internal affairs investigation was ultimately ordered (due exclusively to the medias' persistent inquests); however, Dartez was allowed to retire, and no discipline was ever rendered.*

### ANSWER TO PARAGRAPH 143

Paragraph 143 is denied for lack of sufficient information to justify a belief therein.

### 144.

*Interestingly, the failure of Captain Randy Vincent to report the Dartez matter to Defendant Craft, assuming arguendo Craft's version, was a violation of the LPD General Orders.*

### ANSWER TO PARAGRAPH 144

Paragraph 144 of the original Complaint is denied.

### 145.

*To date, neither investigation nor discipline was ever given by Defendant Craft to Captain Randy Vincent for his failure to report the incident.*

### ANSWER TO PARAGRAPH 145

Paragraph 145 of the original Complaint is denied.

### 146.

*Interestingly, Captain Randy Vincent is Craft's next door neighbor.*

### ANSWER TO PARAGRAPH 146

Paragraph 146 is denied.

### PARAGRAPHS 147-162

### 147.

*In approximately 2007, Captain Angelo Iorio was the supervisor in Metro narcotics.*

### 148.

*Captain John Babin of the Lafayette Sheriff's Office informed Iorio that the unit was going to attempt to make a buy of illegal substance from one of Iorio's relatives, and in turn, Iorio tipped off his relative.*

36

**149.**

The attempted purchase was sabotaged, and Iorio later confessed to Plaintiff Scott Poiencot.

**150.**

The incident was duly reported to Defendant Craft.

**151.**

No criminal investigation was ever ordered.

**152.**

Upon information and belief, Iorio received three (3) days suspension.

**153.**

Thereafter, Iorio found employment at the St. Martinville Parish Sheriff's Office.

**154.**

Upon information and belief, Iorio's services were terminated by the Sheriff's Office amidst allegations of possible misconduct.

**155.**

After Iorio's separation from the Sheriff's Office, Defendant Craft rehired Iorio and placed him in charge of the LPD evidence room.

**156.**

After Iorio's engagement in the evidence room, some LPD evidence went missing, and IA was called in to investigate.

**157.**

During the investigation, there was an allegation that another officer might have removed the evidence.

**158.**

This other officer, when confronted by IA, was asked who, if anyone did he think might have removed the evidence.

**159.**

*IA confronted this officer because he was handling the criminal case whose evidence went missing.*

**160.**

*This officer related to IA that he believed it was Iorio who removed it, and the officer further related that it was his belief that Iorio removed it to frame the officer because the officer had earlier in his career arrested the same Iorio relative for illegal drugs to whom Iorio had leaked confidential information from the Metro Narcotics drug force.*

**161.**

*After this officer's statement, upon information and belief, the IA investigation was terminated and no further investigation was conducted.*

**162.**

*Upon information and belief, no discipline was ever given to anyone in the LPD.*

## ANSWER TO PARAGRAPHS 147 THROUGH 162

Paragraphs 147 through 162 of the original Complaint do not require an Answer as they have been stricken pursuant to this Court's Order. (Document 77).

**163.**

*On or about July 28, 2011, an officer of the LPD obtained a recording from a drug informant.*

## ANSWER TO PARAGRAPH 163

Paragraph 163 is denied for lack of sufficient information to justify a belief therein.

**164.**

*The tape recording consisted of a bad guy speaking with regard to an ongoing federal drug investigation.*

## ANSWER TO PARAGRAPH 164

Paragraph 164 is denied for lack of sufficient information to justify a belief therein.

### 165.

*According to the snitch, an LPD officer had tipped him off that the federal authorities were coming after him for his drug dealing.*

## ANSWER TO PARAGRAPH 165

Paragraph 165 is denied for lack of sufficient information to justify a belief therein.

### 166.

*The officer brought the tape recording to Captain Ted Vincent and reported its contents.*

## ANSWER TO PARAGRAPH 166

Paragraph 166 is denied for lack of sufficient information to justify a belief therein.

### 167.

*When Vincent received it, upon information and belief, Vincent related that he had gotten the same information two months prior.*

## ANSWER TO PARAGRAPH 167

Paragraph 167 is denied for lack of sufficient information to justify a belief therein.

### 168.

*The following day, Defendant Craft, Captain Ted Vincent, Officer White, and Plaintiff Kane Marceaux met regarding this matter.*

**ANSWER TO PARAGRAPH 168**

Paragraph 168 is denied for lack of sufficient information to justify a belief therein.

**169.**

*After Defendant Craft listened to the entire tape in which it was related a certain Lafayette Police Officer had informed an alleged drug dealer that the feds were coming after him, Craft ordered Plaintiff Marceaux to retain the tape and put it in his desk drawer.*

**ANSWER TO PARAGRAPH 169**

Paragraph 169 of the original Complaint is denied.

**170.**

*Further investigation revealed that the suspected officer was listed as a friend of the sister of the alleged bad guy on Facebook; in addition, the suspected officer was found to be listed as a friend on Facebook with a female who had been arrested with evidence of a kilo of cocaine.*

**ANSWER TO PARAGRAPH 170**

Paragraph 170 is denied for lack of sufficient information to justify a belief therein.

**171.**

*Following Defendant Craft's order, the tape was retained in a desk drawer by Marceaux.*

**ANSWER TO PARAGRAPH 171**

Paragraph 171 is denied for lack of sufficient information to justify a belief therein.

**172.**

*Subsequently, Plaintiff Marceaux was diagnosed with a heredity medical condition which caused him to take sick leave.*

### ANSWER TO PARAGRAPH 172

Paragraph 172 is denied for lack of sufficient information to justify a belief therein.

### 173.

*At that time, rather than retain the tape, it was witnessed by Plaintiff Greg Cormier and another LPD officer and placed into evidence.*

### ANSWER TO PARAGRAPH 173

Paragraph 173 is denied for lack of sufficient information to justify a belief therein.

### 174.

*Defendant Craft never ordered any investigation.*

### ANSWER TO PARAGRAPH 174

Paragraph 174 of the original Complaint is denied.

### 175.

*Instead, in April 2012, when it was discovered that Plaintiff Cormier knew of the tape by witnessing its placement into an evidence bag and filed in evidence, Defendant Craft attempted to say that the lack of investigation was caused by waiting for the tape to be enhanced by Plaintiff Marceaux.*

### ANSWER TO PARAGRAPH 175

Paragraph 175 of the original Complaint is denied.

### 176.

*At no time did Craft ever request any enhancement of the tape during the meeting described above.*

### ANSWER TO PARAGRAPH 176

Paragraph 176 of the original Complaint is denied.

**177.**

*This incident is recently a topic of conversation inside the LPD.*

### ANSWER TO PARAGRAPH 177

Paragraph 177 is denied for lack of sufficient information to justify a belief therein.

**178.**

*As a result of Craft's failure to order an investigation, as is required by Craft's own general orders, the officer who was accused by the drug informant has been denied the opportunity to clear his name.*

### ANSWER TO PARAGRAPH 178

Paragraph 178 of the original Complaint is denied.

**179.**

*As a result of Plaintiff Marceaux's sickness and despite his expressed desire not to retire but to continue to work as a police officer assigned to a DEA taskforce, Captain Ted Vincent, on or about April 24, 2012, informed Plaintiff that he probably could have continued working on theDEA task force; however, Captain Vincent was mad and upset with Marceaux over an investigation.*

### ANSWER TO PARAGRAPH 179

Paragraph 179 is denied for lack of sufficient information to justify a belief therein.

**180.**

*Vincent stated he could not take the pressure from the US Attorney's Office which is why Marceaux was removed from the DEA task force. Marceaux had complained to Defendant Craft previously about the way Metro Narcotics was being operated (i.e. inadequate investigations), Marceaux was transferred from DEA to Metro Narcotics, although being told it was not discipline.*

### ANSWER TO PARAGRAPH 180

Paragraph 180 is denied for lack of sufficient information to justify a belief therein.

**181.**

Furthermore, when Captain Vincent discovered Marceaux's illness, he apologized for the recall from DEA and affirmed it happened because Vincent was mad about Marceaux's complaint to Craft pursuant to Craft's "open door" policy.

## ANSWER TO PARAGRAPH 181

Paragraph 181 is denied for lack of sufficient information to justify a belief therein.

**182.**

On the same date, Vincent affirmed that if Marceaux had not been recalled from DEA, he could have done the job even with Marceaux's illness.

## ANSWER TO PARAGRAPH 182

Paragraph 182 is denied for lack of sufficient information to justify a belief therein.

**183.**

Vincent further stated Craft had made a bad decision putting Marceaux in undercover operations while he was on sick leave.

## ANSWER TO PARAGRAPH 183

Paragraph 183 is denied for lack of sufficient information to justify a belief therein.

**184.**

Vincent characterized the undercover assignment as a bone thrown to Marceaux from Craft.

## ANSWER TO PARAGRAPH 184

Paragraph 184 is denied for lack of sufficient information to justify a belief therein.

**185.**

After the transfer, Plaintiff Marceaux was denied the opportunity to return to full time service; rather, Marceaux was ordered to take "light duty" assignments.

## ANSWER TO PARAGRAPH 185

Paragraph 185 is denied for lack of sufficient information to justify a belief therein.

**186.**

Plaintiff Marceaux filed a grievance with the Lafayette Consolidated Government through both the procedure detailed in its PPM's and in accordance with LPD's General Orders.

## ANSWER TO PARAGRAPH 186

Paragraph 186 is overly vague to the extent it is impossible to answer. Subject thereto, denied for lack of sufficient information to justify a belief therein.

**187.**

Marceaux met with Dee Edward Stanley eventually who inquired if Marceaux would retire under medical retirement.

## ANSWER TO PARAGRAPH 187

Paragraph 187 is denied for lack of sufficient information to justify a belief therein.

**188.**

Marceaux indicated he wanted to work, not retire; further, he informed Stanley that as a result of the termination of the former light duty policy, the absence of clear policies that LCGwas in violation of the Americans with Disabilities Act.

## ANSWER TO PARAGRAPH 188

Paragraph 188 is denied for lack of sufficient information to justify a belief therein.

**189.**

*For that reason, Marceaux had filed an EEOC complaint.*

**ANSWER TO PARAGRAPH 189**

Paragraph 189 is admitted. Further, the EEOC complaint was dismissed.

**190.**

*Stanley informed Marceaux that whether or not he went back to work would be decided by Defendant Craft.*

**ANSWER TO PARAGRAPH 190**

Paragraph 190 is denied for lack of sufficient information to justify a belief therein.

**191.**

*Stanley stated he hated to lose Marceaux with his record of achievements in law enforcement.*

**ANSWER TO PARAGRAPH 191**

Paragraph 191 is denied for lack of sufficient information to justify a belief therein.

**192.**

*While on sick leave at his house, Marceaux received from Defendant Craft a special undercover assignment with full time duty for three days.*

**ANSWER TO PARAGRAPH 192**

Paragraph 192 of the original Complaint is denied for lack of sufficient information to justify a belief therein.

**193.**

*After the assignment, Marceaux was ordered to take sick leave since his "light duty" assignment was no longer available according to Defendant Craft by virtue of a "new*

*policy," despite the fact that the practice over the preceding twenty (20) years allowed for light duty.*

## ANSWER TO PARAGRAPH 193

Paragraph 193 of the original Complaint is denied.

### 194.

*For example, Captain Ted Vincent had hip replacement surgery and was allowed to work from home with full pay.*

## ANSWER TO PARAGRAPH 194

Paragraph 194 is denied for lack of sufficient information to justify a belief therein.

### 195.

*When Officer Bobby Vincent experienced health problems, he was allowed to work, without any pre testing for the position as required by internal LPD regulations as Courthouse liaison as a corporal replacing his brother, Randy Vincent, who formerly maintained that position with a much higher rank.*

## ANSWER TO PARAGRAPH 195

Paragraph 195 is denied for lack of sufficient information to justify a belief therein.

### 196.

*Ted, Randy, and Bobby Vincent are all brothers and police officers with LPD.*

## ANSWER TO PARAGRAPH 196

Paragraph 196 is admitted.

### 197.

*On April 3, 2012, Marceaux filed the EEOC complaint.*

## ANSWER TO PARAGRAPH 197

Paragraph 197 is denied for lack of sufficient information to justify a belief therein.

### 198.

*Immediately the next day, he received a telephone call from Captain Ted Vincent who informed him that he had been transferred and was now working for Vincent even though Marceaux had been illegally transferred one month before in contravention of the policies of the General Orders from metro narcotics to the detective bureau in adult crimes. 199. Again, no adherence to the General Orders was followed for this transfer.*

## ANSWER TO PARAGRAPH 198

Paragraph 200 is denied for lack of sufficient information to justify a belief therein.

### 199.

*Again, no adherence to the General Orders was followed for this transfer.*

## ANSWER TO PARAGRAPH 199

Paragraph 199 of the original Complaint is denied.

### 200.

*On April 18, 2012, Marceaux filed a complaint with the Lafayette Municipal Fire & Police Civil Service Board alleging retaliation and a violation of the written directives and professional standards relative to his transfers required by the General Orders.*

## ANSWER TO PARAGRAPH 200

Paragraph 200 is overly vague to the extent it is impossible to answer. Subject thereto, denied for lack of sufficient information to justify a belief therein.

### 201.

*Further, Marceaux related that he did not believe he would receive a fair investigation of his complaint by the Internal Affairs section.*

### ANSWER TO PARAGRAPH 201

Paragraph 201 is denied for lack of sufficient information to justify a belief therein.

### 202.

*On the same date, Plaintiff Greg Cormier filed a complaint with the Civil Service board for payroll fraud within the Department. Payroll fraud is a criminal offense; however, neither IA nor the Civil Service Board investigated the matter.*

### ANSWER TO PARAGRAPH 202

Paragraph 202 is denied for lack of sufficient information to justify a belief therein.

### 203.

*Defendants assigned the "investigation" to Human Resources of the LCG as per the order of Defendant Dee Edward Stanley, contrary to the General Orders of the LPD.*

### ANSWER TO PARAGRAPH 203

Paragraph 203 of the original Complaint is denied.

### 204.

*On April 20, 2012, Defendant Alfred informed related to Plaintiff Gabriel Thompson that Cormier better be technically sound on his payroll fraud complaint.*

### ANSWER TO PARAGRAPH 204

Paragraph 204 of the original Complaint is denied.

### 205.

*Alfred related he had just returned from City Hall and they (City Hall) were already planning a defense.*

### ANSWER TO PARAGRAPH 205

Paragraph 205 of the original Complaint is denied.

**206.**

Alfred related they would attempt to state the alleged wrongdoer was "on call" so that he was not required to put down the hours he claimed for overtime enrichment.

### ANSWER TO PARAGRAPH 206

Paragraph 206 is denied.

**207.**

Alfred further stated that if someone turned in overtime slips to him without any hours, Alfred would immediately reject such claims.

### ANSWER TO PARAGRAPH 207

Paragraph 207 of the original Complaint is denied.

**208.**

Alfred stated he would castigate the alleged offender on "night duty" when it was over.

### ANSWER TO PARAGRAPH 208

Paragraph 208 of the original Complaint is denied.

**209.**

Alfred also stated he would "chap" the ass of the higher officer who approved the undocumented, approved and paid overtime requests, but only after the matter was finished being investigated.

### ANSWER TO PARAGRAPH 209

Paragraph 209 of the original Complaint is denied.

**210.**

Although within the Department overtime claims are the most scrutinized forms in the department, these were not scrutinized, approved and paid.

### ANSWER TO PARAGRAPH 210

Paragraph 210 is denied.

**211.**

*The following day, on April 19, 2012, Defendant Captain George "Jackie" Alfred engaged a conversation with Plaintiff Gabriel Thompson.*

**ANSWER TO PARAGRAPH 211**

Paragraph 211 is denied for lack of sufficient information to justify a belief therein.

**212.**

*In that conversation, Alfred was outraged that Marceaux had exercised his statutory and Constitutional right to file a complaint with the civil service board, a public body.*

**ANSWER TO PARAGRAPH 212**

Paragraph 212 of the original Complaint is denied.

**213.**

*Alfred stated he was going to make some changes around the Department and he did not care if it was called retaliation because it was coming.*

**ANSWER TO PARAGRAPH 213**

Paragraph 213 of the original Complaint is denied.

**214.**

*Alfred related that he told Defendant Craft one of Alfred's conditions was that he (Alfred) could do whatever he thought was fit.*

**ANSWER TO PARAGRAPH 214**

Paragraph 214 is denied for lack of sufficient information to justify a belief therein.

**215.**

*Alfred further stated he wasn't playing any games: That Marceaux had falsely accused him of violating policy by illegally transferring him.*

**ANSWER TO PARAGRAPH 215**

Paragraph 215 of the original Complaint is denied.

**216.**

*In truth and fact, Marceaux related that he had been retaliated against by a Major (i.e., Alfred).*

**ANSWER TO PARAGRAPH 216**

Paragraph 216 of the original Complaint is denied.

**217.**

*Defendant Craft, who was present at the civil service hearing, told Civil Service that IA should handle it because Internal Affairs is fair and doesn't sweep things under the rug.*

**ANSWER TO PARAGRAPH 217**

Paragraph 217 is admitted.

**218.**

*Marceaux stated that not only could he not get a fair shake with IA, he believed Craft was potentially culpable.*

**ANSWER TO PARAGRAPH 218**

Paragraph 218 is denied for lack of sufficient information to justify a belief therein.

**219.**

*Alfred further stated he was going to file an Internal Affairs complaint against Marceaux, ostensibly in retaliation.*

**ANSWER TO PARAGRAPH 219**

Paragraph 219 is denied.

**220.**

*On or about May 23, 2012, Plaintiffs received a temporary restraining order in the Fifteenth Judicial District Court premised upon alleged violations of the Policeman's Bill of*

*Rights relative to target letters from Internal Affairs for an alleged leak of an Internal Affairs document to the Civil Service Board in another matter.*

### ANSWER TO PARAGRAPH 220

Paragraph 220 is denied for lack of sufficient information to justify a belief therein.  Defendants admit that Plaintiffs obtained a temporary restraining order in the Fifteenth Judicial District Court on or about May 23, 2012.  The District Court later dissolved the TRO as wrongfully issued and dismissed plaintiffs' claims, with prejudice.

### 221.

*Dewayne Prejean, head of the IA section of the LPD informed Plaintiff Gabriel Thompson that the IA was ordered by Defendant Dee Stanley, not Defendant Craft, to conduct the "investigation."*

### ANSWER TO PARAGRAPH 221

Paragraph 221 is denied for lack of sufficient information to justify a belief therein.

### 222.

*According to Prejean, Defendant Craft did not have his hand in the notice at all: The notice, transmitted by Defendant Alfred, as Craft's designate, was supplemented with an additional notice from Prejean, indicating all subjects would be required to testify under polygraph.*

### ANSWER TO PARAGRAPH 222

Paragraph 222 is denied for lack of sufficient information to justify a belief therein.

### 223.

*According to the General Orders of the LPD and the Internal Affairs policies and procedures for LPD, only Defendant Craft and initiate an IA investigation, not Defendant Stanley.*

## ANSWER TO PARAGRAPH 223

Insofar as the allegations of Paragraph 223 relate to the proposed liability of these Defendants, same are denied. Insofar as the allegations of Paragraph 223 relate to terms of the LCG Policies and Procedurals Manual, Defendants respond by saying that any such Manual is a written instrument and is therefore the best and only evidence of its terms, provisions, conditions, policies, etcetera and said Manual is pled herein as if copied *in extenso*.

### 224.

*Despite the language of the Policeman's Bill of Rights ( La. R.S. 40:2525) that there shall be no penalty nor threat of any penalty for the exercise of any law enforcement officer of his rights, Defendant Craft undertook an act of retaliation to remove Plaintiff Poiencot from his current position.*

## ANSWER TO PARAGRAPH 224

Paragraph 224 of the original Complaint is denied.

### 225.

*On the very day that the Court ordered Defendants restrained, Defendant Craft, Chief of the Lafayette Police Department, without any legitimate factual basis or any other purpose but retaliation,  etribution, and reprisal ordered one of Craft's subordinates, Plaintiff Captain Norbert Myers, to remove Poiencot from his current position.*

## ANSWER TO PARAGRAPH 225

Paragraph 225 of the original Complaint is denied.

### 226.

*Craft further told Captain Meyers that if he (Captain Meyers) didn't remove Poiencot, he (Craft) would.*

## ANSWER TO PARAGRAPH 226

Paragraph 226 of the original Complaint is denied.

**227.**

*Craft, without any factual basis whatsoever, ordered this retaliation upon Craft's erroneous assumption that Poiencot in an exchange with a citizen named Mr. Duane Belfour was "knocking his (Craft's) dick in the dirt".*

**ANSWER TO PARAGRAPH 227**

Paragraph 227 of the original Complaint is denied.

**228.**

*Craft, a long time friend of the complaining citizen, conducted no investigation of the complaint; had Craft ordered an investigation, as required by the General Orders, he would have determined that the entire encounter between Scott Poiencot and Balfour was recorded.*

**ANSWER TO PARAGRAPH 228**

Paragraph 228 of the original Complaint is denied.

**229.**

*The recording completely refutes all allegations, exonerating Poiencot of the allegations made by Craft.*

**ANSWER TO PARAGRAPH 229**

Paragraph 229 is denied for lack of sufficient information to justify a belief therein.

**230.**

*As a result of the immediate retaliation Poiencot received, he filed a complaint with the LPD IA against Craft; however, to date, no action has been taken.*

**ANSWER TO PARAGRAPH 230**

Paragraph 230 is denied for lack of sufficient information to justify a belief therein.

**231.**

*The day after Plaintiffs filed in State Court for the temporary restraining order, and in accord with the statements of Defendant Alfred on April 19, 2012, Plaintiffs Cormier and*

54

*Thompson were transferred as retaliation by assigning the targeted officers assignment in the north side of Lafayette or working night shifts or both.*

## ANSWER TO PARAGRAPH 231

Paragraph 231 of the original Complaint is denied.

### 232.

*There are a substantial number of officers who are single parents, and the purpose or protocol of these retaliatory transfers (i.e., north side, nights, or both) is to disrupt the family life of these officers by disrupting the schedules they have been maintaining which is conducive to their family life.*

## ANSWER TO PARAGRAPH 232

Paragraph 232 of the original Complaint is denied.

### 233.

*If any police officer is targeted for retaliation, the normal "unwritten" policy of Defendant Craft is a transfer to the north side of Lafayette, transfer to night duty, or both transfer to night duty in north side Lafayette.*

## ANSWER TO PARAGRAPH 233

Paragraph 233 of the original Complaint is denied.

### 234.

*The day after Plaintiffs sought to enforce their legitimate rights under the Policeman's Bill of Rights, Plaintiffs Greg Cormier and Gabriel Thompson were noticed that they were being transferred to north side of Lafayette.*

## ANSWER TO PARAGRAPH 234

Paragraph 234 of the original Complaint is denied.

### 235.

*In addition, as an additional punitive measure, Plaintiff Cormier was informed he was also being reassigned to "night duty."*

## ANSWER TO PARAGRAPH 235

Paragraph 235 of the original Complaint is denied.

**236.**

Since the joinder of Plaintiff Novey Stelly in the original District Court proceeding, he has not escaped retaliation.

### ANSWER TO PARAGRAPH 236

Paragraph 236 of the original Complaint is denied.

**237.**

Stelly's unit with the LPD received new weapons (i.e., Glock pistols) of a new version.

### ANSWER TO PARAGRAPH 237

Paragraph 237 is denied for lack of sufficient information to justify a belief therein.

**238.**

These new versions require, upon information and belief, precise and correct back straps, otherwise the weapons will not fire, thus endangering officers' lives.

### ANSWER TO PARAGRAPH 238

Paragraph 238 is denied for lack of sufficient information to justify a belief therein.

**239.**

Stelly contacted the chain of command requesting that all members of his unit receive the appropriate firearms training in order to safely use these new version weapons.

### ANSWER TO PARAGRAPH 239

Paragraph 239 is denied for lack of sufficient information to justify a belief therein.

**240.**

On or about June 3, 2012, Stelly was ordered to surrender his new weapon and take his old weapon back, while other members of his unit retained their new versions.

## ANSWER TO PARAGRAPH 240

Paragraph 240 is denied for lack of sufficient information to justify a belief therein.

## PARAGRAPHS 241-250

### 241.

*Upon information and belief, no firearms training for anyone has been ordered.*

### 242.

*On January 25, 2012, Plaintiff Scott Poinecot engaged in a conversation with Police Officer Chase Guidry.*

### 243.

*During the conversation, Lt. Brian Racca and Lt. Calvin Floyd had issued quotas for ticket writing to their subordinates.*

### 244.

*Guidry confirmed that Officer Zurrick Guillory had filed a complaint with Internal Affairs about the Quotas.*

### 245.

*Guidry related he was contacted by Sgt. Keith Gremillon of the IA Section tasked with investigating this allegation.*

### 246.

*It should be noted that assigning quotas is specifically banned by applicable Louisiana law (La. R.S. 40: 2401.1).*

### 247.

*According to Guidry, Gremillion was attempting to downplay the alleged violation and steer the investigation to elicit certain answers apparently desired by Gremillion to downplay the quota issue.*

**248.**

In addition, the officers who failed to meet the assigned quotas, upon information and belief, were penalized in their personnel files.

**249.**

The ATAC unit was required under the quota to issue ten traffic and one OWI arrest per night to meet the set "evaluation" standards.

**250.**

To date, upon information and belief, no criminal investigation was ordered.

## ANSWER TO PARAGRAPHS 241 THROUGH 250

Paragraphs 241 through 250 of the original Complaint require no response, as said

Paragraphs have been stricken. (Document 77).

**251.**

It should be noted that the complainant, Officer Zurrick Guillory, successfully prevailed in his Civil Service hearing against Defendant James Craft and Defendant LCG.

## ANSWER TO PARAGRAPH 251

Paragraph 251 of the original Complaint is denied.

**252.**

Plaintiffs Uletom P. Hewitt, Regina Briscoe and Aleeta M. Harding have been subjected to the disparate disciplinary policies of the Defendants coupled with retaliation and the Code of silence removing them from the LPD in contravention of their Constitutional rights and in violation of 42 U.S.C. 1983 and the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

## ANSWER TO PARAGRAPH 252

Plaintiff, Hewitt, Briscoe, and Harding have been dismissed pursuant to this

Court's Order and therefore Paragraph 252 of the original Complaint requires no response.

(Document 79 and 84).  In an abundance of caution, same is denied.

**253.**

Plaintiffs anticipate the joinder of additional Plaintiffs and reserve the right to amend this original complaint by supplementing the individual facts surrounding the Plaintiffs identified above, along with additional Plaintiffs who may wish to join in this complaint. Illegal Wiretapping in Contravention of 18 U.S.C. 2510, et seq.

### ANSWER TO PARAGRAPH 253

Paragraph 253 of the original Complaint does not require a response; however, in an abundance of caution, same is denied.

### PARAGRAPHS 254-266

**254.**

In the past, a change of administration in the LPD occurred as the result of allegations that the former administration had illegally engaged in non consensual wire intercepts commonly referred to as Title III violations.

**255.**

After assurances from the LPD that there would be no infractions, Plaintiffs allege that there has been a systemic eavesdropping, non consensual wire intercept apparatus operated by the Internal Affairs section of the LPD.

**256.**

On or about March 15, 2012, Captain Ted Vincent, related personal knowledge that Internal Affairs was monitoring and recording ALL telephone calls throughout the entire Lafayette Police Department. He related that Sgt. Brad Ridge of the LPD, its IT person, witnessed ongoing wiretaps on telephones within the building which popped up on Dewayne Prejean's computer.

**257.**

Seeing Ridge looking, Prejean immediately reduced the images on the screen. Vincent related that one of the intercepts contained a conversation of a female support staffer of the LPD having an argument with her boyfriend.

**258.**

All Plaintiffs have, at various times throughout the past twelve months, utilized phones within the Lafayette Police Department building.

**259.**

Plaintiffs aver that their wire communications were intercepted and/or monitored without one party consent in contravention of the provisions of 18 U.S.C. 2510, et seq. giving rise to damages, punitive damages, reasonable attorney's fees and all costs.

**260.**

Under the PPM's of Defendant Lafayette Consolidated Government, the General Orders of the Lafayette Police Department, and the duty of a supervisory member of the LPD, Vincent should have reported this conduct.

**261.**

Ironically, on June 4, 2012, Defendant Craft issued a new general order, Number 12.1making it a termination offense to consensually record another officer without authorization from  ********** [sic].

**262.**

Defendant Craft issued this general order despite that fact that under both federal and Louisiana law, only one party consent is necessary to record either oral or wire Communications.

**263.**

According to the General Orders, any general order which conflicts with applicable state or federal law is void.

**264.**

Plaintiffs suggest that this General Order—which is void ab initio—as issued on June 4, 2012, is further evidence of retaliation against all Plaintiffs.

**265.**

Additionally, Plaintiffs would aver that the ongoing wiretapping by Internal Affairs identified by Captain Vincent is in direct conflict with the new General Order issued on June 4, 2012.

**266.**

Upon information and belief, nothing will be done by Defendant Craft or the Defendants to address the apparent criminal violations by Internal Affairs.

## ANSWER TO PARAGRAPHS 254 THROUGH 266

Plaintiffs' claims under the Fourth Amendment of the United States Constitution have been dismissed, such that Paragraphs 254 through 266 do not require a response. (Documents 77 and 84). In an abundance of caution, Defendants deny Paragraphs 254 through 266.

### 267.

*The Plaintiffs adopt and restate those allegations contained in Paragraphs One (1) through Two Hundred Sixty-Seven (267), in their entirety, as if fully copied in extenso herein. 268. The Plaintiffs hereby assert claims against LCG for damages and for the violations and injuries set forth above under 42 U.S.C. 1983.*

### ANSWER TO PARAGRAPH 267

Paragraph 267 of the original Complaint does not require a response; however, in an abundance of caution, same is denied.

### 268.

*The Plaintiffs hereby assert claims against LCG for damages and for the violations and injuries set forth above under 42 U.S.C. 1983.*

### ANSWER TO PARAGRAPH 268

Paragraph 268 of the original Complaint does not require a response; however, in an abundance of caution, same is denied.

### 269.

*In addition to the causes of action set forth above, the Plaintiffs assert causes of action against Lafayette City-Parish Consolidated Government, Lafayette Police Department through the Lafayette City-Parish Consolidated Government, Lester Joseph "Joey" Durel, Jr. in his capacity as President of the Lafayette City-Parish Consolidated Government, Dee Edward Stanley, in his capacity as Chief Administrative Officer of the Lafayette City-Parish Consolidated Government, James P. Craft, individually and in his capacity as Chief of the Lafayette Police Department, and George "Jackie" Alfred, individually and in his capacity as Patrol Division Commander of the Lafayette Police Department, pursuant to the laws of the tate of Louisiana, including Civil Code Articles 2315 and 2317 arising from the facts alleged above and those proven at trial, including but not limited to:*

A. *Failure to properly train Stanley, Craft, and Alfred;*

B. *Failure to properly supervise Stanley, Craft, and Alfred;*

C. *Failure to implement adequate and proper management over Stanley, Craft, and Alfred;*

D. *Failure to implement and carry out proper discipline over Stanley, Craft, and Alfred;*

E. *Negligent selection, appointment, and retention of Stanley, Craft, and Alfred;*

F. *Failure to conduct appropriate and adequate internal investigations;*

G. *Failure to correct a police "code of silence";*

H. *Failure to provide a meaningful avenue for independent and impartial internal investigations;*

I. *Vicarious liability for the acts and omissions of Stanley, Craft, and Alfred under the doctrine of respondeat superior and La. C.C. Art. 2317;*

J. *All other acts and omissions which constitute actionable injury, including negligence, intentional negligence and negligence per se under Louisiana law.*

### ANSWER TO PARAGRAPH 269

Insofar as the allegations of Paragraph 269 of the original Complaint relate to any claims by Plaintiffs Myers, Briscoe, and Harding, and claims under the Fourth, Fifth, and Fourteenth Amendments, claims for injunctive relief, §1985 conspiracy claims, and Louisiana State Law claims, no response is required as these claims have been dismissed pursuant to this Court's Order.  (Document 79 and 84). Paragraph 269 is denied in all other respects.

### 270.

*As a proximate result of the acts and omissions of all of the Defendants, separately, jointly, and/or in concert, Plaintiffs Kane Marceaux, Greg Cormier, Scott Poiencot, Gabriel Thompson, Norbert Myers, Novey Stelly, Uletom P. Hewitt, Regina Briscoe, and Aleeta M.Harding suffered injuries to include physical injuries, emotional distress, embarrassment, humiliation, and mental anguish in connection with the deprivation of their constitutional and statutory rights and acts and omissions causing injury to them. These damages include but are not limited to:*

A. *Violation of their constitutional rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution;*

B. *Past, present, and future pain and suffering;*

C. *Past, present, and future mental anguish;*

D. *Past, present, and future emotional distress,*

E. *Past, present, and future embarrassment;*

F. *Past, present, and future loss of life's enjoyment;*

G. *Past, present, and future loss of career opportunities;*

*H. Past, present, and future lost wages;*
*I. Past, present, and future loss of earning potential;*
*J. Expenses, expert fees and expenses, and attorneys' fees*
*K. Compensatory damages;*
*L. Punitive damages against parties subject to same; and,*
*M. Such other damages which were caused by the aforesaid circumstances and*
    *which were sustained by the Plaintiffs.*

## ANSWER TO PARAGRAPH 270

Insofar as the allegations of Paragraph 270 of the original Complaint relate to any claims by Plaintiffs Myers, Briscoe, and Harding, and claims under the Fourth, Fifth, and Fourteenth Amendments, claims for injunctive relief, §1985 conspiracy claims, and Louisiana State Law claims, no response is required as these claims have been dismissed pursuant to this Court's Order.  (Document 79 and 84). Paragraph 270 is denied in all other respects.

## 271.

*Plaintiffs Kane Marceaux, Greg Cormier, Scott Poiencot, Gabriel Thompson, Norbert Myers, Novey Stelly, Uletom P. Hewitt, Regina Briscoe, and Aleeta M. Harding seek injunctive relief ordering the defendants, their agents, and employees to take appropriate affirmative steps to train and to prevent personnel, including Stanley, Craft, and Alfred from engaging in the practices complained of herein and permanently enjoining the Defendants from violating the civil and constitutional rights of Plaintiffs Kane Marceaux, Greg Cormier, Scott Poiencot, Gabriel Thompson, Norbert Myers, Novey Stelly, Uletom P. Hewitt, Regina Briscoe, and Aleeta M. Harding or other citizens.*

## ANSWER TO PARAGRAPH 271

Insofar as the allegations of Paragraph 271 of the original Complaint relate to any claims by Plaintiffs Myers, Briscoe, and Harding, and claims under the Fourth, Fifth, and Fourteenth Amendments, claims for injunctive relief, §1985 conspiracy claims, and Louisiana State Law claims, no response is required as these claims have been dismissed pursuant to this Court's Order.  (Document 79 and 84). Paragraph 271 is denied in all other respects.

## AFFIRMATIVE DEFENSES

### I.

Defendants specifically aver any and all affirmative defenses specifically enumerated in Federal Rule of Civil Procedure, Rule 8, which are applicable to this case and\or any and all other affirmative defenses recognized by the jurisprudence, and these are pled herein as if copied herein *in extenso* to the extent they apply.

### II.

Specifically, Defendants plead immunity pursuant to La. R.S. 9:2800 (Public Body Immunity); La. R.S. 9:2792.4 (Political Subdivision Immunity); La. R.S. 9:2798.1 (Public Official Immunity); La. R.S. 13:5105; La. R.S. 13:5106; La. R. S. 13:5112; La. R.S. 42:1441, *et seq.* (Political Subdivision Immunity); and La. C. Cr. P. art. 201-232 as to any specific State Law claims, if applicable.

### III.

Defendants are entitled to discretionary immunity for their discretionary acts pursuant to La. R.S. 9:2791.1.

### IV.

The policies and customs of the Lafayette Police Department relevant to Plaintiffs' allegations were not constitutionally infirm or deliberately indifferent to the rights of Plaintiffs.

### V.

As a separate and complete defense to the matters asserted herein, to the extent that Dee Edward Stanley, James "Jim" Craft, and George "Jackie" Alfred are sued in their individual capacities, they are entitled to qualified immunity.

VI.

Defendants allege, in the alternative, the fault and negligence of other persons, including but not limited to Plaintiffs, for whom these Defendants are not responsible, in bar of, and in diminution of any of, any recovery to which Plaintiffs may be entitled.

VII.

Should Defendants be successful in the defense of this action, under 42 U.S.C. §1988, they are entitled to attorneys' fees and litigation courts associated with the defense of this matter.

VIII.

Defendants further aver that Plaintiffs are not entitled an award of attorneys' fees and\or any award of civil penalties in this matter.

VIX.

Defendants plead the limitation of legal interest and court costs in accordance with La. R. S. 13:5112.

X.

Plaintiffs have failed to mitigate their alleged damages.

XI.

Plaintiffs have failed to state a claim upon which relief can be granted.

XII.

Defendants specifically plead violations of Federal Rule of Civil Procedure Rule 11, in order to recover sanctions, attorneys' fees, and costs, because the allegations of Plaintiffs' Complaint are clearly uninvestigated, frivolous, and have been brought purely for harassment.

XIII.

Defendants request a trial by jury on all issues so triable.

WHEREFORE, Defendants, LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT ("LCG"), DEE EDWARD STANLEY, INDIVIDUALLY, JAMES P. "JIM" CRAFT, INDIVIDUALLY, AND GEORGE "JACKIE" ALFRED, INDIVIDUALLY, pray that the foregoing Answer be deemed good and sufficient, that after all legal delays and due proceedings are had, there be Judgment rendered herein in favor of Defendants and against Plaintiffs, Kane Marceaux, Scott Poiencot, Greg Cormier, Gabe Thompson, Nolvey Stelly, and Uletom Hewitt, at Plaintiffs' costs. Defendants further pray that this Court award Defendants reasonable expenses incurred, including attorneys' fees.

**AND FOR ALL OTHER GENERAL AND EQUITABLE RELIEF TO WHICH DEFENDANTS MAY BE ENTITLED.**

Respectfully submitted:

**BRINEY FORET CORRY, LLP**


BY:_____s/ Michael P. Corry_____
        **MICHAEL P. CORRY – 20764**
        **PATRICK J. BRINEY – 03467**
        **HALLIE P. COREIL - 33764**
        413 Travis Street
        Suite 200
        Post Office Box 51367
        Lafayette, Louisiana 70505-1367
        Telephone:  (337) 237-4070
        Facsimile:  (337) 233-8719
**ATTORNEY FOR DEFENDANTS, LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT, DEE EDWARD STANLEY, INDIVIDUALLY, JAMES P. "JIM" CRAFT, INDIVIDUALLY, AND GEORGE "JACKIE" ALFRED, INDIVIDUALLY**

## <u>CERTIFICATE</u>

This is to certify that on March 1, 2013, I presented the foregoing to the Clerk of the

Court for filing and uploading to the CM/ECF system which will send notification of such filing

to the following:

springlaw@gmail.com                    jca@jcalaw.us

ralexander@deep-south.com          hanna_orders@lawd.uscourts.gov

and I hereby certify that I have mailed by United States Postal Service the document to the

following non-CM/ECF participant or pro se defendant:

**None.**

_____s/Michael P. Corry_____

MICHAEL P. CORRY- 20764