UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| KANE MARCEAUX, GREG CORMIER, SCOTT POIENCOT, NORBERT MYERS, GABE THOMPSON, NOVEY STELLY, ULETOM P. HEWITT, REGINA BRISCOE AND ALEETA M. HARDING | CIVIL ACTION NO: 6:12-cv-01532 |
| VERSUS | JUDGE RICHARD T. HAIK, SR. |
| LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT; LAFAYETTE POLICE DEPARTMENT THROUGH THE LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT; LESTER JOSEPH "JOEY" DUREL, JR. IN HIS CAPACITY AS PRESIDENT OF THE LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT; DEE EDWARD STANLEY, INDIVIDUALLY AND IN HIS CAPACITY AS CHIEF ADMINISTRATIVE OFFICER OF THE LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT; JAMES P. "JIM" CRAFT, INDIVIDUALLY AND IN HIS CAPACITY AS CHIEF OF THE LAFAYETTE POLICE DEPARTMENT; AND GEORGE "JACKIE" ALFRED, INDIVIDUALLY AND IN HIS CAPACITY AS PATROL DIVISION COMMANDER OF THE LAFAYETTE POLICE DEPARTMENT | MAGISTRATE JUDGE PATRICK J. HANNA |

**************************************************************************

## ANSWER TO FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

NOW INTO COURT, through undersigned counsel, come Defendants,

LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT ("LCG"), DEE EDWARD

STANLEY, INDIVIDUALLY, JAMES P. "JIM" CRAFT, INDIVIDUALLY, AND GEORGE

"JACKIE" ALFRED, INDIVIDUALLY, to Answer the First Amended and Supplemental

Complaint filed on behalf of Plaintiffs, Kane Marceaux, Greg Cormier, Scott Poiencot, Gabe

1

Thompson, Nolvey Stelly, and Uletom P. Hewitt, by denying each and every allegation contained therein except as made hereafter admitted.

## **PREAMBLE**

Pursuant to Defendants' Motion to Strike, the Court struck the following paragraphs from Plaintiffs' First Amended and Supplemental Complaint: ¶ 114-116 and 345-350. (Document 77). Pursuant to Defendants' Motion to Dismiss under F.R.C.P. 12(b)(6), the Court dismissed the following Plaintiffs: Norbert Meyers, Aleeta Harding, Gus Sanchez, Robert Polanco, Regina Briscoe, Raquel Roberts, Kencil Joseph, Donald Ceaser, and Paul Taylor, Jr. In addition, the Court dismissed the following Defendants:  Lester Joseph "Joey" Durel, Jr. in his official capacity as President of LCG, Dee Edward Stanley, in his official capacity as Chief Administrative Officer of LCG, James P. "Jim" Craft, in his official capacity as Chief of the Lafayette Police Department, George "Jackie" Alfred, in his official capacity as Major of the Lafayette Police Department, Levy Firmin, Ted Vincent, Randy Vincent, Ray Domingue, Dwayne Prejean, U.J. Prevost, and Keith Gremillion. (Documents 79 and 84).  Insofar as Plaintiffs' First Amending and Supplemental Complaint sets forth allegations relative to the stricken Paragraphs and\or dismissed Plaintiffs and Defendants, no response is required. Otherwise, Defendants, LCG, Stanley, individually, Craft, individually, and Alfred, individually, respond to Plaintiffs' First Amended and Supplemental Complaint ("Supplemental Complaint") as follows.

Defendants also note that Plaintiffs have failed to serve or request waiver of service of the First Amended and Supplemental Complaint.

## ANSWER TO SUPPLEMENTAL COMPLAINT

*For ease of reference, Defendants have copied individual Paragraphs from Plaintiffs'*

*Complaint prior to each response.*

### 1.

*This is an action for money damages brought pursuant to 42 USC 1983, 42 USC 1988, the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and under the laws of the State of Louisiana, against the originally-named party Defendants, Lafayette City-Parish Consolidated Government, Lafayette Police Department through the Lafayette City-Parish Consolidated Government, Lester Joseph "Joey" Durel, Jr. in his capacity as President of the Lafayette City-Parish Consolidated Government, Dee Edward Stanley, individually and in his capacity as Chief Administrative Officer of the Lafayette City-Parish Consolidated Government, James P. "Jim" Craft, individually and in his capacity as Chief of the Lafayette Police Department, and George "Jackie" Alfred, individually and in his capacity as Patrol Division Commander of the Lafayette Police Department and the additionally/newly named party Defendants, Captain Ted Vincent, individually and in his capacity as a Captain in the Lafayette Police Department, Major Randy Vincent, individually and in his capacity as a Major in the Lafayette Police Department, Lt. Levy J. Firmin, individually and in his capacity as a Lieutenant in the Lafayette Police Department, Ray Domingue, individually and in his capacity as Human Resources Manager of the Lafayette City-Parish Consolidated Government, Lt. Dwayne Prejean, individually and in his capacity as a Lieutenant in the Lafayette Police Department, Detective UJ. Prevost, individually and in his capacity as a Detective in the Lafayette Police Department, and Sgt. Keith Gremillion, individually and in his capacity as a Sergeant in the Lafayette Police Department.*

### ANSWER TO PARAGRAPH 1

Insofar as the allegations of the preamble and Paragraph 1 relate to the proposed

liability of Defendants herein, same are denied.

### 2.

*Plaintiffs Kane Marceaux, Greg Cormier, Scott Poiencot, Gabriel Thompson, Norbert Myers, Novey Stelly, Uletom P. Hewitt, Regina Briscoe, Aleeta M. Harding, Gus Sanchez, Robert Polanco, Kencil D. Joseph, Donald Ceaser, Paul Taylor, Jr., and Raquel Roberts are present and former police officers of the Lafayette Police Department, and they are all competent adults of the full age of majority and consent, domiciled, living, and residing in the State of Louisiana, within parishes subtended by the geographical boundaries of the United States District Court in and for the Western District of Louisiana.*

**ANSWER TO PARAGRAPH 2**

Insofar as the allegations of Paragraph 2 relate to the proposed liability of Defendants herein, same are denied.

**3.**

*The Plaintiffs adopt and restate any/all allegations contained in Paragraphs One (1) through Two (2), in their entirety, as if fully copied in extenso herein.*

**ANSWER TO PARAGRAPH 3**

Paragraph 3 of the Supplemental Complaint does not require an answer.  In an abundance of caution, same is denied.

**4.**

*Jurisdiction is based upon 28 USC 1331, 28 USC 1343, 28 USC 1367, and upon the pendent, supplemental, and/or ancillary jurisdiction of this Honorable Court to entertain particular and specifically-alleged claims as arising under the laws of the State of Louisiana (i.e., "non-federal claims contained in the same action that are not otherwise supported by original jurisdiction"). See, e.g., United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), as cited in Mars Inc. v. Kabushiki-Kaisha Nippon Conlux, 24 F.3d 1368, 1374 (C.A.Fed. 1994).*

**ANSWER TO PARAGRAPH 4**

Paragraph 4 states a legal conclusion and therefore requires no response.

**5.**

*The Plaintiffs adopt and restate any/all allegations contained in Paragraphs One (1) through Four (4), in their entirety, as if fully copied in extenso herein.*

**ANSWER TO PARAGRAPH 5**

Paragraph 5 of the Supplemental Complaint does not require an answer.  In an abundance of caution, same is denied.

**6.**

*The following individuals are the named party Plaintiffs (both original and newly-added) to the above-captioned proceeding:*

   A. Kane Marceaux, who at all times relevant to this First Amended and Supplemental Complaint was a legal citizen of the United States of America and a competent adult of the full age of majority and consent, domiciled, living, and residing in the Parish of Lafayette, State of Louisiana;

   B. Greg Cormier, who at all times relevant to this First Amended and Supplemental Complaint was a legal citizen of the United States of America and a competent adult of the full age of majority and consent, domiciled, living, and residing in the Parish of Lafayette, State of Louisiana;

   C. Scott Poiencot, who at all times relevant to this First Amended and Supplemental Complaint was a legal citizen of the United States of America and a competent adult of the full age of majority and consent, domiciled, living, and residing in the Parish of Lafayette, State of Louisiana;

   D. Gabriel Thompson, who at all times relevant to this First Amended and Supplemental Complaint was a legal citizen of the United States of America and a competent adult of the full age of majority and consent, domiciled, living, and residing in the Parish of Lafayette, State of Louisiana;

   E. Norbert Myers, who at all times relevant to this First Amended and Supplemental Complaint was a legal citizen of the United States of America and a competent adult of the full age of majority and consent, domiciled, living, and residing in the Parish of Lafayette, State of Louisiana;

   F. Novey Stelly, who at all times relevant to this First Amended and Supplemental Complaint was a legal citizen of the United States of America and a competent adult of the full age of majority and consent, domiciled, living, and residing in the Parish of Lafayette, State of Louisiana;

   G. Uletom P. Hewitt, who at all times relevant to this First Amended and Supplemental Complaint was a legal citizen of the United States of America and a competent adult of the full age of majority and consent, domiciled, living, and residing in the Parish of Lafayette, State of Louisiana;

   H. Regina Briscoe, who at all times relevant to this First Amended and Supplemental Complaint was a legal citizen of the United States of America and a competent adult of the full age of majority and consent, domiciled, living, and residing in the Parish of Lafayette, State of Louisiana;

   I. Aleeta M. Harding, who at all times relevant to this First Amended and Supplemental Complaint was a legal citizen of the United States of America and a competent adult of the full age of majority and consent, domiciled, living, and residing in the Parish of Lafayette, State of Louisiana;

   J. Gus Sanchez, who at all times relevant to this First Amended and Supplemental Complaint was a legal citizen of the United States of America and a competent adult of the full age of majority and consent, domiciled, living, and residing in the Parish of Lafayette, State of Louisiana;

> K.      Robert Polanco, who at all times relevant to this First Amended and Supplemental Complaint was a legal citizen of the United States of America and a competent adult of the full age of majority and consent, domiciled, living, and residing in the Parish of Lafayette, State of Louisiana;

> L.      Kencil D. Joseph, who at all times relevant to this First Amended and Supplemental Complaint was a legal citizen of the United States of America and a competent adult of the full age of majority and consent, domiciled, living, and residing in the Parish of Lafayette, State of Louisiana;

> M.      Donald Ceaser, who at all times relevant to this First Amended and Supplemental Complaint was a legal citizen of the United States of America and a competent adult of the full age of majority and consent, domiciled, living, and residing in the Parish of Lafayette, State of Louisiana;

> N.      Paul Taylor, Jr., who at all times relevant to this First Amended and Supplemental Complaint was a legal citizen of the United States of America and a competent adult of the full age of majority and consent, domiciled, living, and residing in the Parish of Lafayette, State of Louisiana; and,

> O.      Rachel Roberts, who at all times relevant to this First Amended and Supplemental Complaint was a legal citizen of the United States of America and a competent adult of the full age of majority and consent, domiciled, living, and residing in the Parish of Lafayette, State of Louisiana.

## ANSWER TO PARAGRAPH 6

Defendants respond to the allegations of Paragraph 6 by stating that claims made by Plaintiffs, Meyers, Briscoe, Harding, Sanchez, Polanco, Joseph, Ceaser, Taylor, and Roberts, have been dismissed by this Court.   (Documents 79 & 84).  Paragraph 6 is denied in all other respects for lack of sufficient information to justify a belief therein.

### 7.

> The following individuals are the named party Defendants to the above-captioned proceeding:

> A.      Defendant Lafayette City-Parish Consolidated Government is "a local government subdivision of the State of Louisiana ruled by a Home Rule Charter," which, through its President, "may appoint, suspend or remove all City-Parish Government employees" and "direct and supervise the administration of all departments, offices and agencies of the City-Parish Government," thereby making the said entity the public employer of the remaining party Defendants named herein. See, e.g., Batiste v. Bonin, 6:06-CV-1352, Rec. Doc. 27 (W.D.La. 06/13/07), --- F.Supp.2d ---, 2007 WL 1791219, pp. *2-4, citing, inter alia, "Home Rule Charter for the Lafayette City-Parish Consolidated Government," Art. IV, Sec. 3-09A(2)(3), City Council

of the City of Lafayette v. Bowen, 649 So.2d 611 (La.App. 3 Cir.1994). See also, Cormier v. Lafayette City Parish Consol. Government, 6:09-CV-0703, Rec. Doc. 97 (W.D.La. 10/28/2011), ---- F.Supp.2d ---, 2011 WL 5156862, fn. 6.

      B.    Defendant Lester Joseph "Joey" Durel, Jr. (named in his official capacity) is the President of the Lafayette City-Parish Consolidated Government, a position which derives its power from the City of Lafayette's Home Rule Charter as authorized by La. Const. Art. VI, Sec. 5., and in that role Defendant "may appoint, suspend or remove all City-Parish Government employees" and shall "direct and supervise the administration of all departments, offices and agencies of the City-Parish Government." "Home Rule Charter for the Lafayette City- Parish Consolidated Government," Art. IV, Secs. 3-09A(2)(3), 4-01A, 4-13A.

      C.    Defendant Dee Edward Stanley (named in his individual and official capacities) is the Chief Administrative Officer of the Lafayette City-Parish Consolidated Government to whom, upon information and belief, whole or partial direction and supervision of the administration of all departments, offices and agencies of the City-Parish Government, including the Lafayette Police Department, has/have been (expressly, implicitly, or otherwise) assigned, ascribed, delegated, and/or otherwise conferred.

      D.    Defendant James P. "Jim" Craft (named in his individual and official capacities) is the Chief of the Lafayette Police Department, and, upon information and belief, is the progenitor (separately or collaboratively) of that Department's policies, procedures, customs, and/or practices, including those said policies / procedures which are identified herein as violating the Plaintiffs' constitutional rights, thereby making this Defendant liable for (i) affirmatively participating in acts that caused grave constitutional deprivation and/or (ii) implementing unconstitutional policies that causally resulted in Plaintiffs' injury. See, e.g., Thompkins v. Belt, Case 6:12-cv-01532-RTH-PJH Document 74 Filed 10/10/12 Page 8 of 57 PageID #: 1553 828 F.2d 298, 303 (5th Cir. 1987), Grandstaff v. City of Borger, 767 F.2d 161, 169-70 (5th Cir. 1985), cert. den., 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987), Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992).

      E.    Defendant George "Jackie" Alfred (named in his individual and official capacities) is the Patrol Division Commander of the Lafayette Police Department, and, upon information and belief, Defendant is (separately or collaboratively) the progenitor of that Department's policies, procedures, customs, and/or practices, including those said policies / procedures which are identified herein as violating the Plaintiffs' constitutional rights, thereby making this Defendant liable for (i) affirmatively participating in acts that caused grave constitutional deprivation and/or (ii) implementing unconstitutional policies that causally resulted in Plaintiffs' injury. See, e.g., Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987), Grandstaff v. City of Borger, 767 F.2d 161, 169-70 (5th Cir. 1985), cert. den., 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987), Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992).

      F.    Defendant Ted Vincent (named in his individual and official capacities) is a Captain in the Lafayette Police Department, and, upon information and belief, Defendant is (separately or collaboratively) the progenitor of that Department's policies, procedures, customs, and/or practices, including those said policies / procedures which are identified herein as violating the Plaintiffs' constitutional rights, thereby making this Defendant liable for (i)

*affirmatively participating in acts that caused grave constitutional deprivation and/or (ii) implementing unconstitutional policies that causally resulted in Plaintiffs' injury. See, e.g., Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987), Grandstaff v. City of Borger, 767 F.2d 161, 169-70 (5th Cir. 1985), cert. den., 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987), Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992).*

      *G.    Defendant Randy Vincent (named in his individual and official capacities) is a Major in the Lafayette Police Department, and, upon information and belief, Defendant is (separately or collaboratively) the progenitor of that Department's policies, procedures, customs, and/or practices, including those said policies /procedures which are identified herein as violating the Plaintiffs' constitutional rights, thereby making this Defendant liable for (i) affirmatively participating in acts that caused grave constitutional deprivation and/or (ii) implementing unconstitutional policies that causally resulted in Plaintiffs' injury. See, e.g., Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987), Grandstaff v. City of Borger, 767 F.2d 161, 169-70 (5th Cir. 1985), cert. den., 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987), Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992).*

      *H.    Defendant Levy J. Firmin (named in his individual and official capacities) is a Lieutenant in the Lafayette Police Department, and, upon information and belief, Defendant is (separately or collaboratively) the progenitor of that Department's policies, procedures, customs, and/or practices, including those said policies / procedures which are identified herein as violating the Plaintiffs' constitutional rights, thereby making this Defendant liable for (i) affirmatively participating in acts that caused grave constitutional deprivation and/or (ii) implementing unconstitutional policies that causally resulted in Plaintiffs' injury. See, e.g., Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987), Grandstaff v. City of Borger, 767 F.2d 161, 169-70 (5th Cir. 1985), cert. den., 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987), Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992).*

      *I.    Defendant Ray Domingue (named in his individual and official capacities) is the Human Resources Manager of the Lafayette City-Parish Consolidated Government to whom, upon information and belief, whole or partial direction and supervision of the administration of all departments, offices and agencies of the City-Parish Government, including the Lafayette Police Department, has/have been (expressly, implicitly, or otherwise) assigned, ascribed, delegated, and/or otherwise conferred.*

      *J.    Defendant Dwayne Prejean (named in his individual and official capacities) is a Lieutenant in the Lafayette Police Department, and, upon information and belief, Defendant is (separately or collaboratively) the progenitor of that Department's policies, procedures, customs, and/or practices, including those said policies / procedures which are identified herein as violating the Plaintiffs' constitutional rights, thereby making this Defendant liable for (i) affirmatively participating in acts that caused grave constitutional deprivation and/or (ii) implementing unconstitutional policies that causally resulted in Plaintiffs' injury. See, e.g., Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987), Grandstaff v. City of Borger, 767 .2d 161, 169-70 (5th Cir. 1985), cert. den., 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987), Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992).*

      *K.    Defendant UJ. Prevost (named in his individual and official capacities) is a Detective in the Lafayette Police Department, and, upon information and belief, Defendant is*

*(separately or collaboratively) the progenitor of that Department's policies, procedures, customs, and/or practices, including those said policies / procedures which are identified herein as violating the Plaintiffs' constitutional rights, thereby making this Defendant liable for (i) affirmatively participating in acts that caused grave constitutional deprivation and/or (ii) implementing unconstitutional policies that causally resulted in Plaintiffs' injury. See, e.g., Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987), Grandstaff v. City of Borger, 767 F.2d 161, 169-70 (5th Cir. 1985), cert. den., 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987), Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992).*

*L.     Defendant Keith Gremillion (named in his individual and official capacities) is a Sergeant in the Lafayette Police Department, and, upon information and belief, Defendant is (separately or collaboratively) the progenitor of that Department's policies, procedures, customs, and/or practices, including those said policies / procedures which are identified herein as violating the Plaintiffs' constitutional rights, thereby making this Defendant liable for (i) affirmatively participating in acts that caused grave constitutional deprivation and/or (ii) implementing unconstitutional policies that causally resulted in Plaintiffs' injury. See, e.g., Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987), Grandstaff v. City of Borger, 767 F.2d 161, 169-70 (5th Cir. 1985), cert. den., 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987), Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992).*

*M.     At all times herein relevant, Defendants Lester Joseph "Joey" Durel, Jr., Dee Edward Stanley, James P. Craft and George "Jackie" Alfred were employed by Defendant Lafayette City-Parish Consolidated Government, and these Defendants were acting under the color of state law and authority granted by the said local governmental authority.*

*N.     Suit against Defendant Lafayette City-Parish Consolidated Government is thus properly made for the claims asserted by these Plaintiffs, where the said local governmental authority (as employer for Durel, Stanley, Craft, and Alfred) is subtended within the exception to political subdivisions' immunity from suit, as set specifically forth and provided by La. Const. Art. XII, Sec. 10.*

*O.     In the alternative, and notwithstanding any claim or allegation heretofore made, Defendants Lester Joseph "Joey" Durel, Jr., Dee Edward Stanley, James P. Craft, George "Jackie" Alfred, Captain Ted Vincent, Major Randy Vincent, Lt. Levy J. Firmin, Ray Domingue, Lt. Dwayne Prejean, Detective UJ. Prevost, and Sgt. Keith Gremillion were acting outside of and/or beyond the scope of their employment with Defendant Lafayette City-Parish Consolidated Government and are thus individually liable for the tort, delicts, and intentional harm visited upon the Plaintiffs.*

**ANSWER TO PARAGRAPH 7**

Insofar as Paragraph 7 relates to the proposed liability of Defendants, Durel, Stanley, in his official capacity as Chief Administrative Officer of LCG, Craft, in his official capacity as the Chief of the Lafayette Police Department, Alfred, in his official capacity as Major in the Lafayette Police Department, Ted Vincent, Randy Vincent, Levy Firmin, Ray Domingue,

9

Dwayne Prejean, U. J. Prevost, and Gremillion, no response is required as these Defendants have been dismissed by this Court.   (Documents 79 & 84).  With regard to the remaining allegations, Defendants, LCG, Stanley, individually, Craft, individually, and Alfred, individually, deny each and every allegation of Paragraph 7 except to admit that Stanley is the Chief Administrative Officer of LCG, Craft is the Chief of the Lafayette Police Department, and Alfred has retired from his position of Major in the Lafayette Police Department.

## 8.

*The Plaintiffs adopt and restate any/all allegations contained in Paragraphs One (1) through Seven (7), in their entirety, as if fully copied in extenso herein.*

### ANSWER TO PARAGRAPH 8

Paragraph 8 of the Supplemental Complaint does not require an answer.  In an abundance of caution, same is denied.

## 9.

*The following statement of facts is made upon the Plaintiffs' own knowledge, information, recorded recollection, personal recollection and/or belief:*

### ANSWER TO PARAGRAPH 9

Paragraph 9 of the Supplemental Complaint does not require an answer.  In an abundance of caution, same is denied.

## 10.

*The named Defendants have created, fostered, engendered, and otherwise generally ratified, affirmed, and supported a police department which has fundamentally failed to abide its duties with respect to the individual party Plaintiffs as present or former members of the Lafayette Police Department.*

### ANSWER TO PARAGRAPH 10

Paragraph 10 is denied.

## 11.

*The named Defendants have further created, fostered, engendered, and otherwise generally ratified, affirmed, and supported a police department which has fundamentally failed to abide its duties with respect to the citizenry of the City-Parish of Lafayette.*

### ANSWER TO PARAGRAPH 11

Paragraph 11 is denied.

## 12.

*In particular, and without limitation, the party Defendants, acting separately and/or in concert with each other, with other unnamed members of the Lafayette Police Department and/or the Lafayette City-Parish Consolidated Government, with certain members of the public, and/or with certain citizens of the City of Lafayette, State of Louisiana, have maintained, supported, and/or fostered a police "Code of Silence." See, e.g., Grandstaff v. City of Borger, 767 F.2d 161 (5th Cir. 1985) and Snyder v. Trepagnier, 142 F.3d 791, 797 (5th Cir. 1998).*

### ANSWER TO PARAGRAPH 12

Paragraph 12 is denied.

## 13.

*Through this "Code of Silence," gross and wanton acts of police misconduct are routinely and customarily left unreported by fellow officers, and in individual officer's failure to honor this so-called "code" is punished with severe employment-based retaliation. See, e.g., Trautman, Neal, Ph.D., "Truth about Police Code of Silence Revealed," Journal of the National Institute of Ethics (Feb. 2001) < http://www.ethicsinstitute.com/pdf/Code of Silence Facts Revealed.pdf>.*

### ANSWER TO PARAGRAPH 13

Paragraph 13 is denied.

## 14.

*This "Code of Silence" is also instrumental in preventing fellow officers from testifying against one another, with those who violate this unspoken "code" being subjected to internal castigation, retribution, reprisal, and all manner of retaliation, recrimination, and revenge.*

### ANSWER TO PARAGRAPH 14

Paragraph 14 is denied.

**15.**

The named Defendants, acting separately and/or in concert with each other, with other unnamed members of the Lafayette Police Department and/or the Lafayette City-Parish Consolidated Government, with certain members of the public, and with certain citizens of the City of Lafayette, State of Louisiana, have employed disparate and discriminatory disciplinary policies and procedures, outright concealment of police misconduct, retaliations, retributions, and reprisals against those who report such misconduct, a gross distortion of the truth relating to instances of police misconduct, and a wholesale deliberate indifference to the Constitution of the United States of America, its Amendments, and the entire canon of federal and state laws requiring integrity in the criminal justice system and fundamental fairness, decency, honesty, and due process in the police disciplinary system.

## ANSWER TO PARAGRAPH 15

Paragraph 15 is denied.

**16.**

The Lafayette City-Parish Consolidated Government (hereinafter sometimes "LCG") maintains a mandatory LCG Policy and Procedures Manual (PPM) which sets forth the City's commitment to maintaining a work environment that is free from discrimination, where employees are able to devote their full attention and best efforts to their respective jobs. Rec. Doc. 1-2.

## ANSWER TO PARAGRAPH 16

Insofar as the allegations of Paragraph 16 relate to the proposed liability of these Defendants, same are denied.  Insofar as the allegations relate to the terms set forth in LCG Policy and Procedures Manual, Defendants respond by saying that any such manual is a written instrument and is therefore the best and only evidence of its terms, provisions, conditions, policies, procedures, etc. and is pled herein as if copied *in extenso*.

**17.**

Policy 2161.20 of this LCG Policy and Procedures Manual (PPM) further mandates, inter alia, that both intentional and unintentional harassment is proscribed in the LCG work environment.

## ANSWER TO PARAGRAPH 17

Insofar as the allegations of Paragraph 17 relate to the proposed liability of these Defendants, same are denied.  Insofar as the allegations relate to the terms set forth in LCG

Policy and Procedures Manual, Defendants respond by saying that any such manual is a written instrument and is therefore the best and only evidence of its terms, provisions, conditions, policies, procedures, etc. and is pled herein as if copied *in extenso*.

<p style="text-align:center">18.</p>

For purposes of this LCG Policy and Procedures Manual (PPM), "harassment" and/or "discrimination" are defined to include the following: "...[D]isparate treatment...which interferes with an individual's work performance or creates an intimidating, hostile, or offensive work environment."

<p style="text-align:center">**ANSWER TO PARAGRAPH 18**</p>

Insofar as the allegations of Paragraph 18 relate to the proposed liability of these Defendants, same are denied.  Insofar as the allegations relate to the terms set forth in LCG Policy and Procedures Manual, Defendants respond by saying that any such manual is a written instrument and is therefore the best and only evidence of its terms, provisions, conditions, policies, procedures, etc. and is pled herein as if copied *in extenso*.

<p style="text-align:center">19.</p>

The LCG Policy and Procedures Manual (PPM) goes on to elaborate: "All employees are prohibited from retaliating or threatening to retaliate in any way against anyone who has voiced a complaint or participated in an investigation relating to harassment or discrimination."

<p style="text-align:center">**ANSWER TO PARAGRAPH 19**</p>

Insofar as the allegations of Paragraph 19 relate to the proposed liability of these Defendants, same are denied.  Insofar as the allegations relate to the terms set forth in LCG Policy and Procedures Manual, Defendants respond by saying that any such manual is a written instrument and is therefore the best and only evidence of its terms, provisions, conditions, policies, procedures, etc. and is pled herein as if copied *in extenso*.

**20.**

*Finally, both harassment and discrimination are stated to constitute "a disciplinary infraction that shall be dealt with through the appropriate measures, up to and including discharge."*

### ANSWER TO PARAGRAPH 20

Insofar as the allegations of Paragraph 20 relate to the proposed liability of these Defendants, same are denied.  Insofar as the allegations relate to the terms set forth in LCG Policy and Procedures Manual, Defendants respond by saying that any such manual is a written instrument and is therefore the best and only evidence of its terms, provisions, conditions, policies, procedures, etc. and is pled herein as if copied *in extenso*.

**21.**

*Managers and Supervisors within LCG are responsible for adhering unto these antiharassment and anti-discrimination policies, and these individuals are further responsible for implementing these policies in a way which will create emanating a harassment-free and discrimination-free workplace.*

### ANSWER TO PARAGRAPH 21

Insofar as the allegations of Paragraph 21 relate to the proposed liability of these Defendants, same are denied.  Insofar as the allegations relate to the terms set forth in LCG Policy and Procedures Manual, Defendants respond by saying that any such manual is a written instrument and is therefore the best and only evidence of its terms, provisions, conditions, policies, procedures, etc. and is pled herein as if copied *in extenso*.

**22.**

*In addition, Policy 2161-2, promulgated as a condition of employment for LCG, requires all employees, including Defendants Durel, Stanley, Craft, and Alfred, to refrain from:*

    *A.    2.13 - Discrimination in matters relating to employment as prohibited by applicable Federal and State law;*

    *B.    2.14 - Deliberate falsification of any form, record, or report;*

    *C.    2.15 - Use of position with LCG to obtain preferential treatment or gain*

14

*unfair advantage in personal dealings with co-workers or with the public;*

D.     *Harassment of employees and/or other persons during working hours and/or in the  work place, including, but not limited to, sexual harassment; and,*

E.     *1.20 - To cooperate and assist in any work-related administrative Investigation and to answer any related questions completely and truthfully.*

## ANSWER TO PARAGRAPH 22

Insofar as the allegations of Paragraph 22 relate to the proposed liability of these Defendants, same are denied.  Insofar as the allegations relate to the terms set forth in LCG Policy and Procedures Manual, Defendants respond by saying that any such manual is a written instrument and is therefore the best and only evidence of its terms, provisions, conditions, policies, procedures, etc. and is pled herein as if copied *in extenso*.

## 23.

*Managers and Supervisors within LCG are mandated to administer progressive, corrective disciplinary action against those who violate these essential precepts, with such punishment including but not being limited to reprimand, pay reduction, suspension, demotion, and/or termination. See, e.g., Policy 2161-2, 4.1 [Rec. Doc. 1-3].*

## ANSWER TO PARAGRAPH 23

Insofar as the allegations of Paragraph 23 relate to the proposed liability of these Defendants, same are denied.  Insofar as the allegations relate to the terms set forth in LCG Policy and Procedures Manual, Defendants respond by saying that any such manual is a written instrument and is therefore the best and only evidence of its terms, provisions, conditions, policies, procedures, etc. and is pled herein as if copied *in extenso*.

## 24.

*The main impetus and purpose of the LCG Policy and Procedures Manual (PPM) is to insure uniformity in the application of rules, benefits, discipline throughout the various departments, agencies, and/or offices comprising the LCG—specifically including, without limitation, the Lafayette City Police Department. See, e.g., Policy 120.1 [Rec. Doc. 1-4].*

### ANSWER TO PARAGRAPH 24

Insofar as the allegations of Paragraph 24 relate to the proposed liability of these Defendants, same are denied.  Insofar as the allegations relate to the terms set forth in LCG Policy and Procedures Manual, Defendants respond by saying that any such manual is a written instrument and is therefore the best and only evidence of its terms, provisions, conditions, policies, procedures, etc. and is pled herein as if copied *in extenso*.

### 25.

*The aforesaid policies and procedures are not subject to individual interpretation: Directors, managers and supervisors are charged with the responsibility of making known the contents of the LCG Policy and Procedures Manual (PPM) to subordinate employees at all levels, since they are, by public pronouncement the "declared official policies of the Lafayette Consolidated Government…"*

### ANSWER TO PARAGRAPH 25

Insofar as the allegations of Paragraph 25 relate to the proposed liability of these Defendants, same are denied.  Insofar as the allegations relate to the terms set forth in LCG Policy and Procedures Manual, Defendants respond by saying that any such manual is a written instrument and is therefore the best and only evidence of its terms, provisions, conditions, policies, procedures, etc. and is pled herein as if copied *in extenso*.

### 26.

*There can be no changes, additions or deletions to the LCG Policy and Procedures Manual (PPM) or its stated policies / procedures without the express approval of either President Lester Joseph "Joey" Durel, Jr. or Chief Administrative Officer Dee Edward Stanley.*

### ANSWER TO PARAGRAPH 26

Paragraph 26 is denied.

### 27.

*The LCG Policy and Procedures Manual (PPM) is thus required to be carried out, implemented, and administered by Defendants Lafayette City-Parish Consolidated Government, Lafayette Police Department through the Lafayette City-Parish Consolidated*

*Government, Lester Joseph "Joey" Durel, Jr. in his capacity as President of the Lafayette City-Parish Consolidated Government, Dee Edward Stanley, in his capacity as Chief Administrative Officer of the Lafayette City-Parish Consolidated Government, James P. Craft, individually and in his capacity as Chief of the Lafayette Police Department, and George "Jackie" Alfred, individually and in his capacity as Patrol Division Commander of the Lafayette Police Department.*

## ANSWER TO PARAGRAPH 27

Insofar as the allegations of Paragraph 27 relate to the proposed liability of these Defendants, same are denied.  Insofar as the allegations relate to the terms set forth in LCG Policy and Procedures Manual, Defendants respond by saying that any such manual is a written instrument and is therefore the best and only evidence of its terms, provisions, conditions, policies, procedures, etc. and is pled herein as if copied *in extenso*.

### 28.

*The Lafayette Police Department, has enacted and promulgated General Orders, consisting of approximately 459 pages of orders required to be adhered to by all employees of the Lafayette Police Department, including Defendants Craft and Alfred.*

## ANSWER TO PARAGRAPH 28

Insofar as the allegations of Paragraph 28 relate to the proposed liability of these Defendants, same are denied.  Insofar as the allegations relate to the terms set forth in Lafayette Police Department General Orders, Defendants respond by saying that any such General Orders are a written instrument and are therefore the best and only evidence of its terms, provisions, conditions, policies, procedures, etc. and are pled herein as if copied *in extenso*.

### 29.

*Under the General Orders of the Lafayette Police Department (hereinafter referred to respectively as "GO" and "LPD"), violations of the GO require "progressive discipline inclusive of dismissal, demotion, suspension, or other disciplinary action."*

## ANSWER TO PARAGRAPH 29

Insofar as the allegations of Paragraph 29 relate to the proposed liability of these Defendants, same are denied.  Insofar as the allegations relate to the terms set forth in Lafayette

Police Department General Orders, Defendants respond by saying that any such General Orders are a written instrument and are therefore the best and only evidence of its terms, provisions, conditions, policies, procedures, etc. and are pled herein as if copied *in extenso*.

<div align="center">30.</div>

*Any Civil Service Law, City Ordinance, State Law, or Federal Law which is in conflict with any part of a Written Directive will automatically supersede that section of the Department's Written Directives.*

<div align="center">**ANSWER TO PARAGRAPH 30**</div>

Insofar as the allegations of Paragraph 30 relate to the proposed liability of these Defendants, same are denied.  Insofar as the allegations relate to the terms set forth in Lafayette Police Department General Orders of "written directives," Defendants respond by saying that any such General Orders or "written directives" are a written instruments and are therefore the best and only evidence of its terms, provisions, conditions, policies, procedures, etc. and are pled herein as if copied *in extenso*.

<div align="center">31.</div>

*According to the mandate of the GO, physical force shall only be used to the extent necessary to secure observance of law, or to restore order when the exercise of persuasion, advice, and warning is found to be insufficient to achieve police objectives.*

<div align="center">**ANSWER TO PARAGRAPH 31**</div>

Insofar as the allegations of Paragraph 31 relate to the proposed liability of these Defendants, same are denied.  Insofar as the allegations relate to the terms set forth in Lafayette Police Department General Orders, Defendants respond by saying that any such General Orders are a written instrument and are therefore the best and only evidence of its terms, provisions, conditions, policies, procedures, etc. and are pled herein as if copied *in extenso*.

**32.**

*According to the mandate of the GO, all supervisors are required to enforce the rules, regulations and policies of the Lafayette Police Department: Supervisors shall not permit, or otherwise fail to permit, violations of the law, departmental rules, policies, or procedures.*

## ANSWER TO PARAGRAPH 32

Insofar as the allegations of Paragraph 32 relate to the proposed liability of these Defendants, same are denied.  Insofar as the allegations relate to the terms set forth in Lafayette Police Department General Orders, Defendants respond by saying that any such General Orders is a written instrument and is therefore the best and only evidence of its terms, provisions, conditions, policies, procedures, etc. and is plead herein as if copied *in extenso*.

**33.**

*According to the mandate of the GO, the LPD is a "quasi-military structure in order to clearly define the chain of command…"*

## ANSWER TO PARAGRAPH 33

Insofar as the allegations of Paragraph 33 relate to the proposed liability of these Defendants, same are denied.  Insofar as the allegations relate to the terms set forth in Lafayette Police Department General Orders, Defendants respond by saying that any such General Orders are a written instrument and are therefore the best and only evidence of its terms, provisions, conditions, policies, procedures, etc. and are pled herein as if copied *in extenso*.

**34.**

*According to the mandate of the GO, it is prohibited to deliberately falsify any police report, form, record or public document; it is also prohibited to use official positions to intimidate or entice any person, business or establishment.*

## ANSWER TO PARAGRAPH 34

Insofar as the allegations of Paragraph 34 relate to the proposed liability of these Defendants, same are denied.  Insofar as the allegations relate to the terms set forth in Lafayette Police Department General Orders, Defendants respond by saying that any such General Orders

are a written instrument and are therefore the best and only evidence of its terms, provisions, conditions, policies, procedures, etc. and are pled herein as if copied *in extenso*.

<div align="center">35.</div>

*According to the mandate of the GO, all allegations of police misconduct to which Internal Affairs (hereinafter referred to as "IA") requires a thorough, complete, and objective investigation of the allegations of misconduct.*

<div align="center">**ANSWER TO PARAGRAPH 35**</div>

Insofar as the allegations of Paragraph 35 relate to the proposed liability of these Defendants, same are denied.  Insofar as the allegations relate to the terms set forth in Lafayette Police Department General Orders, Defendants respond by saying that any such General Orders are a written instrument and are therefore the best and only evidence of its terms, provisions, conditions, policies, procedures, etc. and are pled herein as if copied *in extenso*.

<div align="center">36.</div>

*According to the mandate of the GO, all allegations of employee misconduct, whether from an internal or external source, shall be investigated; the Chief of Police, Defendant Craft, shall be notified when "any" complaint is made involving a departmental employee.*

<div align="center">**ANSWER TO PARAGRAPH 36**</div>

Insofar as the allegations of Paragraph 36 relate to the proposed liability of these Defendants, same are denied.  Insofar as the allegations relate to the terms set forth in Lafayette Police Department General Orders, Defendants respond by saying that any such General Orders are a written instrument and are therefore the best and only evidence of its terms, provisions, conditions, policies, procedures, etc. and are pled herein as if copied *in extenso*.

<div align="center">37.</div>

*According to the mandate of the GO, Officers which utilize non-lethal force or less-than lethal weapons shall report the incident in the departmental electronic reporting system in addition to the departmental Use of Force Report.*

## ANSWER TO PARAGRAPH 37

Insofar as the allegations of Paragraph 37 relate to the proposed liability of these Defendants, same are denied.  Insofar as the allegations relate to the terms set forth in Lafayette Police Department General Orders, Defendants respond by saying that any such General Orders are a written instrument and are therefore the best and only evidence of its terms, provisions, conditions, policies, procedures, etc. and are pled herein as if copied *in extenso*.

### 38.

*Contrary to the mandates, supra, contained in both the Lafayette Consolidated Government's Policy and Procedure Manual and the Lafayette City Police Department's General Orders, the Defendants herein have maintained various unwritten policies amounting to policy, custom, conventional usages with complete indifference to the mandates set forth above as well as the requirements of the United States Constitution, the First, Fourth, Fifth, and Fourteenth Amendments, 42 U.S.C. 2000e-3(a), and 42 U.S.C. 1983, et seq.*

## ANSWER TO PARAGRAPH 38

Paragraph 38 is denied.

### 39.

*These unwritten policies, customs, and/or conventional usages constitute a very deeply rooted and systemic "code of silence" wherein "regardless what the behavior, one police officer does not report or testify against another police officer." Snyder v. Trepagnier, 142 F.3d 791, 797 (5th Cir. 1998).*

## ANSWER TO PARAGRAPH 39

Paragraph 39 is denied.

### 40.

*Defendants, with knowledge, desire, and premeditation, contrary to their stated policies, maintain a disparate system of discipline in which internal affairs investigations which should be commenced are not; ordered investigations are manipulated to discriminate against officers of race; widely disparate disciplinary measures are handed out; clear violations subjecting certain "favored" officers to possible termination are whitewashed or covered up; and the Code of Silence's most punitive measures are used under the cover of "policy" changes.*

## ANSWER TO PARAGRAPH 40

Paragraph 40 is denied.

**41.**

These disparate policies have long-existed within the Lafayette Police Department through the Lafayette City-Parish Consolidated Government (hereinafter sometimes "LPD") and utilize, upon information and belief, illegal wiretapping using the Internal Affairs Department, cover-ups, falsification of police reports, assigning quotas to units for tickets, transferring officers to either the night shift or the north side of Lafayette, or both; disparate disciplinary procedures and results; and utilizing the Internal Affairs Department to intimidate, threaten, harass, and/or retaliate against officers exercising Constitutionally-protected rights.

### ANSWER TO PARAGRAPH 41

Paragraph 41 is denied.

**42.**

It is established that "if a person is subjected to ongoing harassment, that is continual, and a permanent condition of the workplace, then prescription does not begin to run until the conduct causing the damage is abated." King v. Phelps Dunbar, L.L.P., 98-1805, pp. 8-9, (La.6/4/99), 743 So.2d 181, 188, citing Huckabay v. Moore, 142 F.3d 233, 239 (5th Cir.1998), Bustamento v. Tucker, 607 So.2d 532, 542 (La. 1992).

### ANSWER TO PARAGRAPH 42

Paragraph 42 of the Supplemental Complaint sets forth a legal conclusion and therefore requires no response from these Defendants.    In an abundance of caution, same is denied.

**43.**

Defendant, Chief James Craft became the interim Chief of Police in and for the City of Lafayette in approximately 2006, becoming permanently installed in 2007.

### ANSWER TO PARAGRAPH 43

Paragraph 43 is admitted.

**44.**

In order to maintain control throughout the Lafayette Police Department, Craft and Stanley established a de facto organization within the Lafayette Police Department.

### ANSWER TO PARAGRAPH 44

Paragraph 44 is denied.

**45.**

Although there are published and established policies, rules and regulations, this de facto organization (hereinafter referred to as "Stanley-Craft") includes the following members: Ray Domingue, Department of Human Resources; Captain Kelly Gibson; Major George "Jackie" Alfred; Captain Levy Firmin; Captain Ted Vincent; Major Randy Vincent; former Captain Dwayne Arceneaux; Lt. Bert Bejsovec; Lt. Ron Czajkowski; Lt. Reggie Thomas (predecessor of Plaintiff Scott Poiencot on the Lafayette Municipal Fire & Police Civil Service Board); Lt. Dwayne Prejean; Sgt. Mark Francis; Sgt. Keith Gremillion; Cpl. Joey Prevost; and others.

### ANSWER TO PARAGRAPH 45

Paragraph 45 is denied.

**46.**

Acting in concert within the LPD, whenever any outside officer(s) is targeted by any member of this crew, the organization which has maintained a permanent presence within the LPD perpetuating a permanent hostile work environment, actively combines its members, authority, and resources towards the ultimate end of terminating the targeted officer.

### ANSWER TO PARAGRAPH 46

Paragraph 46 is denied.

**47.**

In furtherance of the organization's objective, bogus internal complaints and bogus internal affairs investigations are lodged against the targeted officer.

### ANSWER TO PARAGRAPH 47

Paragraph 47 is denied.

**48.**

Members of the Stanley-Craft organization strong-arm witnesses, manipulate statements, testify falsely, among myriad other machinations, all geared towards the objectives of defeating the legitimate policies, procedures and due process mandates, resulting in the termination of the target of the organization.

### ANSWER TO PARAGRAPH 48

Paragraph 48 is denied.

**49.**

For example, in order to obviate claims of racial discrimination, Major George "Jackie" Alfred and former Captain Dwayne Arceneaux initiate complaints against the targeted African American officers.

## ANSWER TO PARAGRAPH 49

Paragraph 49 is denied.

### 50.

*Sgt. Mark Francis and Lt. Reggie Thomas participated by assisting Alfred and Arceneaux.*

## ANSWER TO PARAGRAPH 50

Paragraph 50 is denied.

### 51.

*The targeting of officers was not limited by these participants to African-American officers only and included other officers of different national origins.*

## ANSWER TO PARAGRAPH 51

Paragraph 51 is denied.

### 52.

*Before Captain Dwayne Arceneaux retired, the quid pro quo for his aid and assistance was unlimited overtime charges to the City of Lafayette by him.*

## ANSWER TO PARAGRAPH 52

Paragraph 52 is denied.

### 53.

*Arceneaux was investigated for payroll fraud from Arceneaux's downtown detail for bar room security (while actually being at his home) which was confirmed by Cpl. Sean Arwood; however, Craft took no corrective action at all.*

## ANSWER TO PARAGRAPH 53

Paragraph 53 is denied.

### 54.

*Lt. Reggie Thomas, while a member of the Lafayette Civil Service Board, furthered the objectives of the Stanley-Craft organization by providing misinformation and disinformation to LPD officers and civilian civil service employees under a bogus Internal Affairs investigation initiated by the organization.*

24

## ANSWER TO PARAGRAPH 54

Paragraph 54 is denied.

### 55.

*In addition, Thomas further provided misinformation and disinformation to those officers wishing to complain about the permanent hostile work environment and other wrongs in the LPD to the Lafayette Civil Service Board.*

## ANSWER TO PARAGRAPH 55

Paragraph 55 is denied.

### 56.

*A primary purpose of the Stanley-Craft organization is to maintain the permanent hostile work environment existing to defeat the applicable guaranteed substantive and procedural Constitutional, and statutory rights and protections to both police and civilian civil service  employees within the Lafayette Police Department.*

## ANSWER TO PARAGRAPH 56

Paragraph 56 is denied.

### 57.

*The following are particularized claims of facts evidencing disparate, retaliatory, and discriminatory actions as undertaken by the various party Defendants against the named party Plaintiffs.*

## ANSWER TO PARAGRAPH 57

Paragraph 57 is denied.

### 58 through 72 – KANE MARCEAUX

### 58.

*Mr. Marceaux has suffered disparate treatment, myriad acts of retaliation, and an abundance of discriminatory actions committed against him by the various party Defendants.*

## ANSWER TO PARAGRAPH 58

Paragraph 58 is denied.

<center>59.</center>

Mr. Marceaux re-alleges and re-avers those relevant portions of his original Complaint [Rec. Doc. 1] wherein such acts of disparate treatment, practical applications of the "Code of Silence" and other enumerated acts of misconduct vis-à-vis Mr. Marceaux were alleged with particularity.

<center>**ANSWER TO PARAGRAPH 59**</center>

Paragraph 59 is denied.

<center>60.</center>

Mr. Marceaux further alleges that on or about June 26, 2012, he became the subject of an administrative investigation authorized by Chief Jim Craft.

<center>**ANSWER TO PARAGRAPH 60**</center>

Defendants admit that Marceaux became the subject of an administrative investigation on or about June 26, 2012, which was ultimately not-sustained as per the letter to Marceaux dated September 24, 2012.

<center>61.</center>

On that same date, Marceaux was personally served at his residence by Sgt. Keith Gremillion.

<center>**ANSWER TO PARAGRAPH 61**</center>

Paragraph 61 is admitted.

<center>62.</center>

Sgt. Gremillion advised Marceaux that Major Randy Vincent had filed a complaint against Marceaux citing the following general orders: Off Duty Police Related and Non-Police Related Employment (LPD General Order 203.3 and General Conduct LPD GO 201.2).

<center>**ANSWER TO PARAGRAPH 62**</center>

Paragraph 62 is denied for lack of sufficient information to justify a belief herein.

<center>63.</center>

Despite a sincere belief that this investigation was undertaken purely in retaliation, Marceaux cooperated fully in all respects.

<center>**ANSWER TO PARAGRAPH 63**</center>

Paragraph 63 is denied.

<center>26</center>

**64.**

*On or about September 6, 2012, Marceaux requested the status of this investigation; however, neither Sgt. Keith Gremillion nor Lt. Dwayne Prejean has responded to Marceaux's requests.*

**ANSWER TO PARAGRAPH 64**

Paragraph 64 is denied for lack of sufficient information to justify a belief herein.

**65.**

*Pursuant to the Police Officer's Bill of Rights, this investigation has now exceeded the allotted amount of time it may proceed (e.g., 60 days).*

**ANSWER TO PARAGRAPH 65**

Paragraph 65 is denied.

**66.**

*Accordingly, the investigation is an absolute nullity.*

**ANSWER TO PARAGRAPH 66**

Paragraph 66 is denied.

**67.**

*At best, this incident reveals a notable lack of attention to duty by the Lafayette Police Department Internal Affairs Unit as operated by and under Defendant Craft.*

**ANSWER TO PARAGRAPH 67**

Paragraph 67 is denied.

**68.**

*At worst, this incident reveals a investigation which was instituted for the sole and exclusive purpose of harassing Marceaux—a fact evidenced by the investigators' unwillingness and/or inability to move forward with a timely investigation of the purported wrongdoing.*

**ANSWER TO PARAGRAPH 68**

Paragraph 68 is denied.

**69.**

*In point of fact, Marceaux committed no wrongdoing whatsoever in regard to this alleged incident, and the emanating investigation was caused, directed, incited, propounded, and generally made by and at the direction of Defendant Craft acting in retaliation against Marceaux for participation in the above-captioned lawsuit.*

### ANSWER TO PARAGRAPH 69

Paragraph 69 is denied.

### 70.

*In this vein, it is also worthy of note that Defendant Greg Cormier previously served upon the investigatory board assigned to investigate Marceaux.*

### ANSWER TO PARAGRAPH 70

Paragraph 70 is denied for lack of sufficient information to justify a belief herein.

### 71.

*While ensconced on that board, Cormier received a letter of reprimand from Craft for having exceeded the allotted time for an investigation (in an unrelated matter) by three (3) days.*

### ANSWER TO PARAGRAPH 71

Defendants admit that Cormier has received a letter of reprimand in the past for having exceeded the allotted time for an investigation in an unrelated matter. Paragraph 71 is denied in all other respects for lack of sufficient information to justify a belief herein.

### 72.

*On the other hand, the present investigation against Marceaux remains pending more than fifteen (15) days past the delay, and no disciplinary action has been taken against the presiding investigators, and Marceaux's investigation languishes in an outstanding state.*

### ANSWER TO PARAGRAPH 72

Paragraph 72 is denied.

### <u>73 through 81 - GREG CORMIER</u>

### 73.

*Mr. Cormier has suffered disparate treatment, myriad acts of retaliation, and an abundance of discriminatory actions committed against him by the various party Defendants.*

### ANSWER TO PARAGRAPH 73

Paragraph 73 is denied.

## 74.

*Mr. Cormier re-alleges and re-avers those relevant portions of his original Complaint [Rec. Doc. 1] wherein such acts of disparate treatment, practical applications of the "Code of Silence" and other enumerated acts of misconduct vis-à-vis Mr. Cormier were alleged with particularity.*

## ANSWER TO PARAGRAPH 74

Paragraph 74 is denied.

## 75.

*Mr. Cormier further alleges that on August 8, 2012, he was served with a notice of investigation for allegedly releasing a confidential internal affairs document to an unauthorized person.*

## ANSWER TO PARAGRAPH 75

Paragraph 75 is denied. Defendants further respond by saying that Cormier was served on or about May 15, 2012 with notice of an investigation relative to the unauthorized release of a confidential Internal Affairs document.

## 76.

*Officer Joey Prevost, charged with administering a polygraph exam to Mr. Cormier in connection with this investigation, misrepresented to the Civil Service Board on "August 31, 2012 that Mr. Cormier suffered from a medical condition which precluded his fitness to take the polygraph exam."*

## ANSWER TO PARAGRAPH 76

Paragraph 76 is denied.

## 77.

*At the hearing before the Civil Service Board on August 31, 2012, the actual recording of the pre-polygraph interview between Mr. Cormier and Officer Prevost was played.*

## ANSWER TO PARAGRAPH 77

Paragraph 77 is admitted to the extent a portion of the recording was played, rather than the entirety of the recording.

## 78.

*This recording confirms that Mr. Cormier suffered from no medical condition and Officer Prevost had misrepresented material facts before the Board regarding Mr. Cormier's fitness.*

## ANSWER TO PARAGRAPH 78

Paragraph 78 is denied as written.

### 79.

*Mr. Cormier was ultimately administered a polygraph exam by Officer Prevost, which he failed.*

## ANSWER TO PARAGRAPH 79

Paragraph 79 is admitted.

### 80.

*Shortly thereafter Mr. Cormier underwent an independent Psychological Stress Evaluation which he passed.*

## ANSWER TO PARAGRAPH 80

Paragraph 80 is denied for lack of sufficient information to justify a belief therein.

### 81.

*Upon information and belief, the Officer who actually released the document has been neither investigated nor disciplined in any manner. Mr. Cormier has been terminated due to this incident despite his insistence that he has done nothing improper.*

## ANSWER TO PARAGRAPH 81

Paragraph 81 is denied.

### 82 through 84 – SCOTT POIENCOT

### 82.

*Mr. Poiencot has suffered disparate treatment, myriad acts of retaliation, and an abundance of discriminatory actions committed against him by the various party Defendants.*

## ANSWER TO PARAGRAPH 82

Paragraph 82 is denied.

### 83.

*Mr. Poiencot re-alleges and re-avers those relevant portions of his original Complaint [Rec. Doc. 1] wherein such acts of disparate treatment, practical applications of the "Code of Silence" and other enumerated acts of misconduct vis-à-vis Mr. Poiencot were alleged with particularity.*

### ANSWER TO PARAGRAPH 83

Paragraph 83 is denied.

### 84.

*Mr. Poiencot further alleges that after the filing of the instant lawsuit, Chief Craft has instituted at least three baseless (3) administrative investigations against him.  These investigations ultimately resulted in Mr. Poiencot's termination from the Department despite a complete lack of evidence of wrongdoing and despite Poiencot's stellar law enforcement career up to this point.  Further, legal proceedings have been instituted in State District Court to have Mr. Poiencot removed from the Civil Service Board.*

### ANSWER TO PARAGRAPH 84

Paragraph 84 is denied.

### 85 through 91 – GABRIEL THOMPSON

### 85.

*Mr. Thompson has suffered disparate treatment, myriad acts of retaliation, and an abundance of discriminatory actions committed against him by the various party Defendants.*

### ANSWER TO PARAGRAPH 85

Paragraph 85 is denied.

### 86.

*Mr. Thompson re-alleges and re-avers those relevant portions of his original Complaint [Rec. Doc. 1] wherein such acts of disparate treatment, practical applications of the "Code of Silence" and other enumerated acts of misconduct vis-à-vis Mr. Thompson were alleged with particularity.*

### ANSWER TO PARAGRAPH 86

Paragraph 86 is denied.

### 87.

*Mr. Thompson further alleges that he has been forced into retirement as the result of at least two (2) baseless investigations initiated against him by the Craft administration.*

### ANSWER TO PARAGRAPH 87

Paragraph 87 is denied.

## 88.

*Despite a total dearth of evidence of misconduct against him, Mr. Thompson was investigated for allegedly disclosing a confidential internal affairs document to a third party and for conducting an unauthorized investigation in violation of the policy of the Lafayette Police Department.*

## ANSWER TO PARAGRAPH 88

Paragraph 88 is denied.

## 89.

*The Officer actually responsible for the disclosure of the document has been neither investigated nor disciplined in any manner, and Mr. Thompson has never engaged in any unauthorized investigation.*

## ANSWER TO PARAGRAPH 89

Paragraph 89 is denied.

## 90.

*Mr. Cormier was given the choice of either retiring or being terminated; he chose the former.*

## ANSWER TO PARAGRAPH 90

Paragraph 90 is denied.

## 91.

*The described actions were orchestrated by Chief Craft despite his knowledge that Mr. Thompson's wife is dying of cancer.*

## ANSWER TO PARAGRAPH 91

Paragraph 91 is denied.

## 92 through 99 - NORBERT MYERS

## 92.

*Mr. Myers has suffered disparate treatment, myriad acts of retaliation, and an abundance of discriminatory actions committed against him by the various party Defendants.*

## 93.

*Mr. Myers re-alleges and re-avers those relevant portions of his original Complaint [Rec. Doc. 1] wherein such acts of disparate treatment, practical applications of the "Code of Silence" and other enumerated acts of misconduct vis-à-vis Mr. Myers were alleged with particularity.*

### 94.

*Mr. Myers further alleges that Chief Craft openly belittled him in front of his peers and personnel from other agencies when Mr. Meyers disagreed with Craft regarding whether another officer had performed an investigation satisfactorily.*

### 95.

*Shortly thereafter, Mr. Myers was served with an internal memorandum issued by Chief Craft questioning his fitness for duty and ordering an investigation into same.*

### 96.

*In January, 2011 Mr. Myers filed a grievance against Chief Craft with the Civil Service Board alleging that the action taken against him (Myers) was purely retaliatory because he had taken up for a fellow officer.*

### 97.

*This grievance is currently pending before the Board.*

### 98.

*Since this incident, Chief Craft has routinely and regularly belittled Mr. Myers before his peers up until the time of Mr. Myers' retirement earlier this year.*

### 99.

*These actions were taken in direct retaliation for defending a fellow officer who in fact had conducted a good investigation into the incident in question.*

### ANSWER TO PARAGRAPHS 92 THROUGH 99 RELATIVE TO MYERS

The claims of Plaintiff, Norbert Myers, have been dismissed by this Court and therefore require no response.  (Documents 79 & 84).

### 100 through 116 – NOLVEY STELLY

### 100.

*Mr. Stelly has suffered disparate treatment, myriad acts of retaliation, and an abundance of discriminatory actions committed against him by the various party Defendants.*

### ANSWER TO PARAGRAPH 100

Paragraph 100 is denied.

### 101.

*Mr. Stelly re-alleges and re-avers those relevant portions of his original Complaint [Rec. Doc. 1] wherein such acts of disparate treatment, practical applications of the "Code of Silence" and other enumerated acts of misconduct vis-à-vis Mr. Stelly were alleged with particularity.*

### ANSWER TO PARAGRAPH 101

Paragraph 101 is denied.

### 102.

*Mr. Stelly further alleges that, since the instant lawsuit was filed, he was subjected to a discriminatory transfer despite accommodations being afforded to other officers who had similar issues and therefore, like Mr. Stelly, desired to remain in their assigned positions.*

### ANSWER TO PARAGRAPH 102

Paragraph 102 is denied.

### 103.

*Mr. Stelly has been given no explanation as to why he was not afforded the same accommodations that other officers have been afforded.*

### ANSWER TO PARAGRAPH 103

Paragraph 103 is denied.

### 104.

*This transfer has caused great hardship to Mr. Stelly and his family.*

### ANSWER TO PARAGRAPH 104

Paragraph 104 is denied.

### 105.

*Mr. Stelly filed an internal grievance over this discriminatory transfer, which was denied.*

### ANSWER TO PARAGRAPH 105

Paragraph 105 is admitted.

### 106.

*Mr. Stelly then filed a grievance before the Civil Service Board.*

### ANSWER TO PARAGRAPH 106

Paragraph 106 is admitted.

### 107.

*The Hearing on the matter has been delayed due to defense counsel's representation to the Board on September 11 that this Honorable Court's stand down order precluded the Board from hearing the matter.*

### ANSWER TO PARAGRAPH 107

Paragraph 107 is denied.

### 108.

*It remains currently pending.*

### ANSWER TO PARAGRAPH 108

Paragraph 108 is admitted.

### 109.

*The described transfer was particularly questionable in light of the Outstanding Performance Evaluation Mr. Stelly had received shortly before his transfer.*

### ANSWER TO PARAGRAPH 109

Paragraph 109 is denied.

### 110.

*Captain Myers, Mr. Stelly's supervisor who had issued the evaluation, was harassed repeatedly by Chief Craft regarding Mr. Stelly's performance and in fact rejected the evaluation multiple times.*

### ANSWER TO PARAGRAPH 110

Paragraph 110 is denied.

### 111.

*Mr. Stelly further alleges that he has been burdened with greatly increased responsibilities, despite the fact that officers similarly situated have not been so burdened.*

### ANSWER TO PARAGRAPH 111

Paragraph 111 is denied.

## 112.

*These increased duties include assuming the full responsibilities for multiple positions in the Department and a generally increased workload.*

### ANSWER TO PARAGRAPH 112

Paragraph 112 is denied.

## 113.

*Despite the described discriminatory and retaliatory treatment, Mr. Stelly performed these added burdens superbly and received from Captain Mike Stelly a recommendation that he be named "supervisor of the month."*

### ANSWER TO PARAGRAPH 113

Paragraph 113 is denied.

### 114 through 116

## 114.

*Neither Captain Stelly nor Mr. Stelly have received any acknowledgment or response from Chief Craft or anybody else for this recognition.*

## 115.

*Mr. Stelly further alleges that he has been followed by Major Alfred in his vehicle while off duty for no apparent reason, causing Mr. Stelly great concern.*

## 116.

*Mr. Stelly further alleges that he personally overheard Chief Craft tell Officer Levy Furman, while looking at Mr. Stelly, that the latter was shredding paper, that "The way things are going here, you better shred everything.*

### ANSWER TO PARAGRAPHS 114 THROUGH 116

Paragraphs 114 through 116 of the Supplemental Complaint have been stricken

pursuant to this Court Order, and therefore require no response.  (Document 77)

### 117 through 164 – ULETOM P. HEWITT

## 117.

*Mr. Hewitt has suffered disparate treatment, myriad acts of retaliation, and an abundance of discriminatory actions committed against him by the various party Defendants.*

### ANSWER TO PARAGRAPH 117

Paragraph 117 is denied.

## 118.

*Mr. Hewitt re-alleges and re-avers those relevant portions of his original Complaint [Rec. Doc. 1] wherein such acts of disparate treatment, practical applications of the "Code of Silence" and other enumerated acts of misconduct vis-à-vis Mr. Hewitt were alleged with particularity.*

### ANSWER TO PARAGRAPH 118

Paragraph 118 is denied.

## 119.

*Mr. Hewitt further alleges that in 2007 he responded to Jack Gardner's Oil Change located on Johnston Street in Lafayette in reference to a Black female patron complaining about the service she had received.*

### ANSWER TO PARAGRAPH 119

Paragraph 119 is denied for lack of sufficient information to justify a belief therein.

## 120.

*The owner had a history of suing the police department and upon contact with Plaintiff became verbally abusive threatening Plaintiff with bodily harm.*

### ANSWER TO PARAGRAPH 120

Paragraph 120 is denied for lack of sufficient information to justify a belief therein.

## 121.

*As a result, the owner was going to be arrested by Plaintiff.*

### ANSWER TO PARAGRAPH 121

Paragraph 121 is denied for lack of sufficient information to justify a belief therein.

## 122.

*Upon making his intentions known, Plaintiff was told by his superior white officers that he could not arrest the owner, although the owner's conduct mandated arrest.*

### ANSWER TO PARAGRAPH 122

Paragraph 122 is denied for lack of sufficient information to justify a belief therein.

## 123.

*After the incident, the owner filed a complaint against Plaintiff.*

### ANSWER TO PARAGRAPH 123

Paragraph 123 is denied for lack of sufficient information to justify a belief therein.

## 124.

*The complaint was investigated by the assigned investigator, Lt. Donald Ceaser who concluded that Plaintiff had conducted himself appropriately and in accordance with the policies of procedures of the Department.*

### ANSWER TO PARAGRAPH 124

Paragraph 124 is denied for lack of sufficient information to justify a belief therein.

## 125.

*Despite Lt. Caeser's finding, Major George "Jackie" Alfred and Chief James Craft vetoed Caesar's findings and sustained the complaint.*

### ANSWER TO PARAGRAPH 125

Paragraph 125 is denied for lack of sufficient information to justify a belief therein.

## 126.

*Plaintiff received a counseling form and informed he had no right of appeal.*

## ANSWER TO PARAGRAPH 126

Paragraph 126 is denied for lack of sufficient information to justify a belief therein.

### 127.

*Trusting what his superior officers told him, Plaintiff did not appeal.*

## ANSWER TO PARAGRAPH 127

Paragraph 127 is denied for lack of sufficient information to justify a belief therein.

### 128.

*In October of 2007, Plaintiff responded to a noise complaint at Cypress Shadows Apartment complex in Lafayette.*

## ANSWER TO PARAGRAPH 128

Paragraph 128 is denied for lack of sufficient information to justify a belief therein.

### 129.

*Plaintiff ultimately located the source of the noise which was emitting from an apartment with the door wide open.*

## ANSWER TO PARAGRAPH 129

Paragraph 129 is denied for lack of sufficient information to justify a belief therein.

### 130.

*Plaintiff yelled several times announcing he was a police officer, but received no response.*

## ANSWER TO PARAGRAPH 130

Paragraph 130 is denied for lack of sufficient information to justify a belief therein.

## 131.

*Due to the suspicious circumstances, Plaintiff entered the apartment to investigate for possible foul play.*

### ANSWER TO PARAGRAPH 131

Paragraph 131 is denied for lack of sufficient information to justify a belief therein.

## 132.

*Upon walking across the threshold, Plaintiff discovered an intoxicated white female unconscious on the sofa.*

### ANSWER TO PARAGRAPH 132

Paragraph 132 is denied for lack of sufficient information to justify a belief therein.

## 133.

*Plaintiff awoke the female and advised her to turn down her television's volume.*

### ANSWER TO PARAGRAPH 133

Paragraph 133 is denied for lack of sufficient information to justify a belief therein.

## 134.

*Plaintiff departed the apartment after issuing a verbal warning.*

### ANSWER TO PARAGRAPH 134

Paragraph 134 is denied for lack of sufficient information to justify a belief therein.

## 135.

*The female later filed a complaint falsely alleging Plaintiff had broken into her apartment and attempted to solicit a date.*

### ANSWER TO PARAGRAPH 135

Paragraph 135 is denied for lack of sufficient information to justify a belief therein.

### 136.

*Despite the falsity of the claim, known by Defendants, Plaintiff was placed on administrative leave for three months pending an internal and criminal investigation.*

### ANSWER TO PARAGRAPH 136

It is admitted that Uletom Hewitt was placed on administrative leave for three months beginning March 25, 2011.

### 137.

*During the pre-disciplinary hearing Hewitt provided the board with a one-party consent audio recording Plaintiff had made of the entire incident.*

### ANSWER TO PARAGRAPH 137

Paragraph 137 is denied for lack of sufficient information to justify a belief therein.

### 138.

*Although Plaintiff was exonerated, he never received notice the allegation was not sustained in his personnel file.*

### ANSWER TO PARAGRAPH 138

Paragraph 138 is denied for lack of sufficient information to justify a belief therein.

### 139.

*Plaintiff returned to work.*

### ANSWER TO PARAGRAPH 139

Paragraph 139 is denied as it is vague with regard to the time period during which Hewitt allegedly returned to work, such that Defendants cannot appropriately respond.

**140.**

*In 2008, Defendant Craft requested volunteers to work extra duty for that year's crawfish festival.*

### ANSWER TO PARAGRAPH 140

Paragraph 140 is denied for lack of sufficient information to justify a belief therein.

**141.**

*Sgt. Paul Taylor, requested Plaintiff volunteer for the assignment.*

### ANSWER TO PARAGRAPH 141

Paragraph 141 is denied for lack of sufficient information to justify a belief therein.

**142.**

*Plaintiff stated that he did not want to volunteer, but would assist if ordered.*

### ANSWER TO PARAGRAPH 142

Paragraph 142 is denied for lack of sufficient information to justify a belief therein.

**143.**

*Sgt. Taylor filed a complaint against Plaintiff for insubordination.*

### ANSWER TO PARAGRAPH 143

Paragraph 143 is denied for lack of sufficient information to justify a belief therein.

**144.**

*During the pre-disciplinary hearing, Plaintiff produced his one-party, consensual recording of the conversation with Sgt. Taylor.*

## ANSWER TO PARAGRAPH 144

Paragraph 144 is denied for lack of sufficient information to justify a belief therein.

### 145.

*As a result of the recording, and only as a result of the recording, Plaintiff was cleared of the complaint by the Human Resources Department.*

## ANSWER TO PARAGRAPH 145

Paragraph 145 is denied for lack of sufficient information to justify a belief therein.

### 146.

*Although cleared of the complaint, Defendant Craft vetoed this finding and sustained the complaint.*

## ANSWER TO PARAGRAPH 146

Paragraph 146 is denied for lack of sufficient information to justify a belief therein.

### 147.

*Plaintiff received a deficiency from Defendant Major George "Jackie" Alfred.*

## ANSWER TO PARAGRAPH 147

Paragraph 147 is denied for lack of sufficient information to justify a belief therein.

### 148.

*As a result of the bogus deficiency, Plaintiff was punitively transferred to the northside of Lafayette referred to internally by LPD officers as "Hell's Kitchen."*

## ANSWER TO PARAGRAPH 148

Paragraph 148 is denied.

### 149.

*In December of 2009, Plaintiff was accused with inciting a riot at Acadiana Mall by a white employee of the mall.*

### ANSWER TO PARAGRAPH 149

Paragraph 149 is denied for lack of sufficient information to justify a belief therein.

### 150.

*The complaint, contrary to general orders, was received by Defendant, Levy Firmin, Firmin alleged Plaintiff caused a riot by yelling there was a bomb in the mall.*

### ANSWER TO PARAGRAPH 150

Paragraph 150 is denied for lack of sufficient information to justify a belief therein.

### 151.

*The allegation was false, as reflected in the actual investigative report; however, Plaintiff received a five day suspension which he appealed.*

### ANSWER TO PARAGRAPH 151

Paragraph 151 is denied for lack of sufficient information to justify a belief therein.

### 152.

*His appeal is still pending with the Lafayette Civil Service Board without adjudication.*

### ANSWER TO PARAGRAPH 152

Defendants admit that Hewitt has appealed his termination of August 30, 2011.

### 153.

*In March of 2011, Plaintiff was placed on administrative leave ordered by Defendant Craft for a "fit for duty" evaluation.*

### ANSWER TO PARAGRAPH 153

Defendants admit that Uletom Hewitt was placed on administrative leave in March, 2011.

## 154.

*While on administrative leave, another complaint and investigation was launched against Plaintiff falsely alleging Plaintiff manipulated his in-dash police unit camera system.*

### ANSWER TO PARAGRAPH 154

Paragraph 154 is denied for lack of sufficient information to justify a belief therein.

## 155.

*After receiving a seven day suspension, Plaintiff appealed to the Civil Service Board. The appeal is still pending without adjudication.*

### ANSWER TO PARAGRAPH 155

Paragraph 155 is admitted to the extent the appeal remains pending.

## 156.

*Plaintiff was immediately placed on administrative leave.*

### ANSWER TO PARAGRAPH 156

Paragraph 156 is denied for lack of sufficient information to justify a belief therein. Defendants admit that Hewitt was placed on administrative leave in March 2011.

## 157.

*Although Plaintiff was determined to be "fit for duty", the form issued by the evaluator contained a written mistake which was corrected by the evaluator with the insertion of a hand written correction initialed by the evaluator.*

### ANSWER TO PARAGRAPH 157

Paragraph 157 is admitted.

## 158.

*Defendant Craft, after receiving Plaintiff's "fit for duty" clearance, refused to accept the evaluation stating he could not "verify" the report. Craft ordered a second "fit for duty" evaluation.*

## ANSWER TO PARAGRAPH 158

Paragraph 158 is admitted to the extent that Hewitt was sent for a second fit-for-duty evaluation on or about June 21, 2011. Paragraph 158 is otherwise denied.

### 159.

*After ordering the second evaluation, Craft ordered three armed, white LPD officers to transport Plaintiff to a Baton Rouge facility for this "second" evaluation.*

## ANSWER TO PARAGRAPH 159

Paragraph 159 is denied.

### 160.

*Before the "fit for duty" results of the second evaluation were received, a number of new complaints and investigations were initiated against Plaintiff.*

## ANSWER TO PARAGRAPH 160

Paragraph 160 is denied for lack of sufficient information to justify a belief therein.

### 161.

*These complaints were used to terminate Plaintiff which is now under appeal at the Civil Service Board.*

## ANSWER TO PARAGRAPH 161

Paragraph 161 is denied, except to admit that Hewitt has appealed his August 30, 2011 termination to the Lafayette Fire and Police Civil Service Board.

### 162.

*Under applicable and mandatory Civil Service statutes and regulations, Defendant Craft is required to submit to the Civil Service Board a "personnel action" form for each of the administrative leaves Craft ordered against Plaintiff. To date, Craft has ignored these statutory mandates.*

## ANSWER TO PARAGRAPH 162

46

Paragraph 162 is denied.

## 163.

*The complaints, investigations, and retaliations were initiated by Defendant, Major George "Jackie" Alfred, because he was displeased with Plaintiff who declined to greet Alfred when he was encountered.*

## ANSWER TO PARAGRAPH 163

Paragraph 163 is denied.

## 164.

*Plaintiff preferred to pass Alfred in silence.*

## ANSWER TO PARAGRAPH 164

Paragraph 164 is denied for lack of sufficient information to justify a belief therein.

## 165 through 181 – REGINA BRISCOE

## 165.

*Ms. Briscoe has suffered disparate treatment, myriad acts of retaliation, and an abundance of discriminatory actions committed against her by the various party Defendants.*

## 166.

*Ms. Briscoe re-alleges and re-avers those relevant portions of her original Complaint [Rec. Doc. 1] wherein such acts of disparate treatment, practical applications of the "Code of Silence" and other enumerated acts of misconduct vis-à-vis Ms. Briscoe were alleged with particularity.*

## 167.

*Ms. Briscoe further alleges that in the middle of 2009, she was ordered by Lt. Levy Firmin to train Sgt. Bradge Ridge the duties of communications supervisor, which was a position Briscoe currently occupied since July of 2006.*

## 168.

*Once Sgt, Ridge was properly trained by Briscoe, she (Briscoe) was stripped of her powers and duties which she previously performed.*

## 169.

*Briscoe 's job then became very docile and she basically sat in a chair for two years.*

**170**.

*This caused great emotional harm to Briscoe due to the tremendous amount of stress, embarrassment and anxiety this "new" position caused her.*

**171.**

*Briscoe was forced to seek medical attention on numerous occasions based on the disparate treatment by her superiors.*

**172.**

*Briscoe 's medical treatment is readily confirmable.*

**173.**

*Briscoe evaluations went from very good to competent during this period.*

**174.**

*This poor evaluation prompted Briscoe to report this misconduct to LCG Human Resources.*

**175.**

*In addition Lt. Firmin had Briscoe removed from a position as a Hostage Negotiator which she cared deeply for.*

**176.**

*Lt. Firmin also openly criticized Briscoe in meetings with subordinates telling her she was a poor supervisor.*

**177.**

*This is totally contradictive when one considers Briscoe's past evaluation and also the fact that she named supervisor of the quarter in 2007 by Chief Jim Craft.*

**178.**

*In May 0f 2010, Briscoe went out on medical stress leave under the recommendation of her physician.*

**179.**

*After being on stress leave for nine months Briscoe decided that she could no longer return to work at the LPD due to the hostile working environment and disparate treatment displayed Lt. Levy Firmin and Sgt. Brade Ridge.*

**180.**

*Three months following Briscoe's retirement, she was diagnosed with cancer.*

**181.**

*It should be noted that Lt. Firmin is a known racist at the Lafayette Police Department and had displayed a Dixie Flag in his office which is known to Firmin's visitors and co-workers to be a sign of affiliation / allegiance / sympathy for the Knights of the Ku Klux Klan.*

### ANSWER TO PARAGRAPHS 165 THROUGH 181 RELATIVE TO BRISCOE

The claims of Plaintiff, Regina Briscoe, have been dismissed by this Court and therefore require no response.  (Documents 79 & 84).  In an abundance of caution, Defendants deny Paragraphs 165 through 181.

### 182 through 207 – ALEETA M. HARDING

**182.**

*Ms. Harding has suffered disparate treatment, myriad acts of retaliation, and an abundance of discriminatory actions committed against her by the various party Defendants.*

**183.**

*Ms. Harding re-alleges and re-avers those relevant portions of her original Complaint [Rec. Doc. 1] wherein such acts of disparate treatment, practical applications of the "Code of Silence" and other enumerated acts of misconduct vis-à-vis Ms. Harding were alleged with particularity.*

**184.**

*Ms. Harding further alleges that in February 2008, Officer Guy Lebreton sent a mass email to police personnel asking individual opinion about incentive pay.*

**185.**

*Every incentive Lebreton listed regarded police officers.*

**186.**

*Harding responded to the e-mail and Chief Craft did not like what she said.*

**187.**

*In Harding 's response, she indicated that the civilian personnel are always left out of the formula for incentives and that she did not believe in the merit raises spoken of in the e-mail.*

**188.**

*The Chief then responded to Harding's e-mail to officer Lebreton.*

**189.**

*Before ending his response to Harding, Chief Craft indicated: "Services employees who want incentive pay (if implemented) can apply to become a police officer…"*

**190.**

*Plaintiff Harding shows the position of Supervisor of Departmental Records position was eliminated as retaliation by Chief Craft.*

**191.**

*When the previous supervisor retired in 2010, Harding learned through outside sources that Chief Craft planned to eliminate the position rather than run the risk of it being filling by Harding.*

**192.**

*In furtherance of this objective, the Chief did what he could to delay Harding from getting the Supervisor of Departmental Records position when it became available in approximately June 2010.*

**193.**

*Despite many years of a successful seniority list, Craft picked this occasion to question the list's efficacy.*

**194.**

*As indicated, the Supervisor of Departmental Records retired around June of 2010.*

**195.**

*According to the official Police and Fire Seniority list, Harding was next in line to fill this position.*

**196.**

Instead of giving Harding the provisional appointment upon the retirement of the Supervisor, it was given to another employee.

### 197.

Further, that "other" employee received the increase in pay until approximately the end of 2010 of upon her retirement at the end of December of same year.

### 198.

On June 14, 2010, after the Supervisor retired, the Chief wrote a letter to the local Fire and Police Civil Service Board.

### 199.

The letter stated, "It is herein requested that the Board re-examine the way the above  (Police Departmental Seniority List) is administered, because there appear to be a discrepancy between the actual Departmental Service of clerical employees and the order of their names on the list."

### 200.

In August of 2010, the Chief sends an e-mail indicating: "This position was one of the vacancies that LCG will not fill at this time - It will not be in the 10-11 budget". ...We hope this is temporary and at some point, the position would be re-activated."

### 201.

Craft also indicated in this e-mail that he made an official request to regarding the status of the official roster.

### 202.

Once Craft eliminated the position, no one heard about a seniority list again: His job of retaliation was done.

### 203.

Harding met with the Chief when she heard he wanted to eliminate this position.

### 204.

Harding even said to him that he could have eliminated the assistant position instead of the head Records Supervisor position.

### 205.

*Harding told him there is very little promotion for civilian employees and he responded by saying we knew that when they took their job.*

### 206.

*Harding told him when she took the job, she also knew about the top position in Records (Supervisor of Departmental Records).*

### 207.

*Unfortunately, Chief Craft was unrelenting: He just did not want to see Harding in this position.*

### ANSWER TO PARAGRAPHS 182 THROUGH 207 RELATIVE TO HARDING

The claims of Plaintiff, Aleeta M. Harding, have been dismissed by this Court and therefore require no response.  (Documents 79 & 84).  In an abundance of caution, Defendants deny the allegations set forth in Paragraphs 182 through 207. Insofar as Paragraphs 182 through 207 relate to letters, e-mails, and other documents, Defendants respond by saying that any such documents are written instruments and therefore are the best and only evidence of their terms, provisions, conditions, etc. and are pled herein as if copied in extenso.

### 208 through 253 – GUS SANCHEZ

### 208.

*Mr. Sanchez has suffered disparate treatment, myriad acts of retaliation, and an abundance of discriminatory actions committed against him by the various party Defendants.*

### 209.

*Mr. Sanchez adopts and alleges any/all of those relevant portions of the original Complaint [Rec. Doc. 1] wherein such acts of disparate treatment, practical applications of the "Code of Silence" and other enumerated acts of misconduct were alleged against the party defendants with particularity.*

### 210.

Mr. Sanchez further alleges that on October 18, 2008, Sanchez misplaced a radio after a SWAT call out.

### 211.

Sanchez notified his supervisor as soon as he knew it was missing and filled out the required paperwork.

### 212.

Five (5) months later Sanchez received a request from Chief Craft that he must repay the Lafayette Consolidated Government $3,112.75.

### 213.

Sanchez was instructed to make arrangements to pay the radio in full despite the fact he was disputing it.

### 214.

The order Sanchez was given did not have an amount of a time frame in which the radio must be repaid in full.

### 215.

Sanchez made an offer of $5 which was declined by Human Resources.

### 216.

Sanchez was ordered to sign for a sealed envelope from City Hall in Sgt. Gremillions office.

### 217.

Sanchez told Sgt Gremillion that he was not comfortable signing for the letter and he wrote refused on the letter and returned the letter to City Hall.

### 218.

On November 4, 2009, Sanchez was ordered to a meeting in the Chief's office after he had called in sick to work the day before and that day due to the flu.

### 219.

*Sanchez arrived at the PD and his attorney, Mr. Danny Landry, met him there.*

### 220.

*As Sanchez and his counsel started to walk in, Mr. Landry was stopped by Lt. Phil Fontenot and was told the Chief just wanted to meet with Sanchez.*

### 221.

*The meeting was attended by Chief Craft, Maj. Alfred, and Lt Fontenot.*

### 222.

*Chief Craft said he wanted to speak frankly and wanted to know why Sanchez had disobeyed a direct order.*

### 223.

*Sanchez explained to him he followed his order and he was said it was not acceptable.*

### 224.

*Sanchez advised him that he did not conduct an investigation to see if Sanchez was negligent, he responded by saying he was going to suspend Sanchez for 60 days while he conducted an investigation.*

### 225.

*Sanchez told him he could not do that because it was past the 60 days of notification and Sanchez was not going to sign an extension.*

### 226.

*During this meeting the Chief raised his voice at Sanchez, stood over Sanchez, and banged the table as he spoke.*

### 227.

*Sanchez was ordered in the meeting to report to City Hall and sign for the letter that stated Sanchez was to pay $25.00 per pay check for the radio.*

### 228.

On November 5, 2009, Sanchez returned to work and was ordered to Maj. Jakie Alfred's office and was given discipline, which he said it was not discipline and that the Chief was unaware of it.

**229.**

The letter stated Sanchez's conduct during the meeting with Chief Craft was Conduct Unbecoming an Officer.

**230.**

Ultimately, Sanchez was relieved of Duty for thirty (30) days from SWAT and Mounted Patrol.

**231.**

On November 9, 2009, Sanchez went to IA and filed a Conduct Unbecoming an Officer against Chief Craft.

**232.**

On November 10, 2009, Sanchez went to Human Resources and filed a complaint stating Sanchez was working in a hostile work environment due to the way the Chief spoke to him behind closed doors.

**233.**

As evidence, Sanchez submitted a taped conversation he had with Lt. Fontenot on 11/08/2009 stating the Chief was out of line, and the Chief hates when people "hide" behind the rules.

**234.**

Chief Craft was disciplined by Mr. Dee Stanley for conduct unbecoming but the HR complaint was brushed aside due to Maj. Alfred testifying that the environment is not hostile.

**235.**

Since this incident the Chief lost his duty weapon while at a two week conference out of town.

**236.**

The Chief called up a Det. Shawn Arwood and had him write a false report about his vehicle being broken into.

### 237.

Usually there is a B.O.L.O about a lost/stolen police hand gun, but there was not one done until I brought it up to my sergeant.

### 238.

The Chief was forced to pay for the weapon, but the report was done in hopes he did not have to pay for it.

### 239.

As far as radio's being lost, Chief Benoit of the Park Rangers lost his radio and was not made to pay for it: They simply took another Park Rangers radio and gave it to him, the Park Ranger was given a refurbished radio.

### 240.

Chief Benoit's radio was also paid for by the Homeland security grant that paid for mine.

### 241.

Sgt Paul Taylor (aka Lumberjack) recently lost his radio and duty weapon, he found his duty weapon but not his radio.

### 242.

Sgt Taylor was just given a letter of reprimand for misplacing the radio and not forced to pay for the radio.

### 243.

Sanchez has been told of several radios that have gone missing and no one has been made to pay for them.

### 244.

Sanchez was told this information by former Communication Supervisor Brenda Bergeron.

### 245.

*On February 14, 2012, Sanchez was scheduled for his Pre-Disciplinary hearing.*

**246.**

*On February 15, 2012, Sanchez went to the Police Dept to sign for the hearing.*

**247.**

*After Sanchez signed, Det. Chasity Arwood stated Chief Craft wanted my cell phone records.*

**248.**

*At Sanchez's hearing, Mr. Goode brought up the fact that the records were asked for after the hearing was set and Chief Craft stated that he always continues the investigation even after the hearing is set and after the hearing is had.*

**249.**

*The Chief made the decision to terminate Sanchez on March 13, 2012, after Sanchez was terminated Sanchez was summoned back to the Police Dept approximately 3 weeks later for a second Pre-Disciplinary.*

**250.**

*This hearing was for not providing Sanchez's phone records and contacting IA witnesses.*

**251.**

*Mr. Goode again brought up the fact that the hearing was already set when the records were asked for, and Sanchez made phone calls to their "witnesses" after the hearing.*

**252.**

*Sanchez was exonerated from this second set of investigation.*

**253.**

*The Chief said the hearing was needed to close the case.*


## <u>ANSWER TO PARAGRAPHS 208 THROUGH 253 RELATIVE TO SANCHEZ</u>

The claims of Plaintiff, Gus Sanchez, have been dismissed by this Court and therefore require no response.  (Documents 79 & 84).  In an abundance of caution, Defendants deny the allegations set forth in Paragraphs 208 through 253, except to admit that Sanchez appeared for a pre-disciplinary hearing on or about February 27, 2012, and Sanchez was terminated on or about March 16, 2012.

## 254 through 260 – ROBERT POLANCO

### 254.

*Mr. Polanco has suffered disparate treatment, myriad acts of retaliation, and an abundance of discriminatory actions committed against him by the various party Defendants.*

### 255.

*Mr. Polanco adopts and alleges any/all of those relevant portions of the original Complaint [Rec. Doc. 1] wherein such acts of disparate treatment, practical applications of the "Code of Silence" and other enumerated acts of misconduct were alleged against the party Defendants with particularity.*

### 256.

*Mr. Polanco further alleges he was made subject of racial profiling, disparaging racial remarks, and other acts of discrimination.*

### 257.

*Polanco notes that while on scene with supervisors he would be called "little taco" due to his Spanish ethnic background. (bilingual translator).*

### 258.

*Polanco was given a Letter of Reprimand for an incident that happened approximately 1 1/2 years to the day of incident.*

### 259.

*Polanco was able to obtain the evidence from his Internal Affairs Investigation that clearly shows proof he was in no wrongdoing, but was still given harsh discipline.*

<div align="center">**260.**</div>

Mr. Polanco alleges myriad other, similar events which transpired during his tenure with the Lafayette Police Department.

<div align="center">### ANSWER TO PARAGRAPHS 254 THROUGH 260 RELATIVE TO POLANCO</div>

The claims of Plaintiff, Robert Polanco, have been dismissed by this Court and therefore require no response.  (Documents 79 & 84).  In an abundance of caution, Defendants deny the allegations set forth in Paragraphs 254 through 260.

<div align="center">### 261 through 270 – KENCIL D. JOSEPH</div>

<div align="center">**261.**</div>

Mr. Joseph has suffered disparate treatment, myriad acts of retaliation, and an abundance of discriminatory actions committed against him by the various party Defendants.

<div align="center">**262.**</div>

Mr. Joseph adopts and alleges any/all of those relevant portions of the original Complaint [Rec. Doc. 1] wherein such acts of disparate treatment, practical applications of the "Code of Silence" and other enumerated acts of misconduct were alleged against the party Defendants with particularity.

<div align="center">**263.**</div>

Mr. Joseph further alleges that he was targeted for termination by the Stanley-Craft organization.

<div align="center">**264.**</div>

Plaintiff's supervisor, Lt. Joseph Lange, inquired about an incident for which Plaintiff was unaware he was under investigation by the Internal Affairs Department.

<div align="center">**265.**</div>

At the time of this inquiry, the supervisor was aware of the apparent investigation; however, Plaintiff was not advised until several days later that he was under investigation for the same incident.

<div align="center">**266.**</div>

*On February 12, 2012, Plaintiff worked a vehicular crash in which two females were involved, arriving after the accident had happened. Plaintiff completed his investigation and submitted the report to his superior officer, Sgt. Scott Morgan, who approved the report.*

### 267.

*In March of 2012, Plaintiff was contacted by Lt. Joseph Lange who related that the driver stated in Plaintiff's accident report was in dispute by one of the females now alleging the driver was not included in Plaintiff's report.*

### 268.

*Lt. Lange, Plaintiff's superior officer, ordered him to change the report and show the Hispanic male as a passenger in the vehicle, not the driver as Plaintiff had formerly written in the approved report.*

### 269.

*Lange advised Plaintiff several times that he (Lange) did not remember the Hispanic male being at the accident. Following the direct orders of his superior officer, Plaintiff went to the computer technical section of the LPD and typed every word dictated by Joseph Lange.*

### 270.

*Lt. Lange's supervisor is Defendant, George "Jackie" Alfred. Plaintiff, an African American male, is presently appealing his termination to the Civil Service Board.*

### ANSWER TO PARAGRAPH 261 THROUGH 270 RELATIVE TO JOSEPH

The claims of Plaintiff, Kencil D. Joseph, have been dismissed by this Court and therefore require no response. (Documents 79 & 84). In an abundance of caution, Defendants deny the allegations set forth in Paragraphs 261 through 270.

### 271 through 296 – DONALD CEASER

### 271.

*Mr. Ceaser has suffered disparate treatment, myriad acts of retaliation, and an abundance of discriminatory actions committed against him by the various party Defendants.*

### 272.

Mr. Ceaser adopts and alleges any/all of those relevant portions of the original Complaint [Rec. Doc. 1] wherein such acts of disparate treatment, practical applications of the "Code of Silence" and other enumerated acts of misconduct were alleged against the party Defendants with particularity.

## 273.

Mr. Ceaser further alleges that in 2004 he was a Sergeant and a nine (9) year veteran of the Lafayette Police Department's patrol division.

## 274.

During this tenure, Mr. Ceaser was assigned Cpl. Dwayne Prejean as a "shadow" for Ceaser's activities as a Sergeant—effectively what was supposed to be a period of training for Prejean.

## 275.

During this training, Prejean lodged four (4) surreptitious (and false) disciplinary complaints against Ceaser—all stemming from a supposed dereliction of duties.

## 276.

As a result of the initial charges, Internal Affairs demoted Ceaser from Sergeant to Corporal.

## 277.

Although these charges were all eventually dismissed—and Ceaser was restored to his prior rank of Sergeant—Ceaser learned during the second-level appeal that his intermediate demotion was the concoction of Defendant Craft.

## 278.

In particular, Defendant Craft convened a meeting without Ceaser or Ceaser's attorney and discussed with the presiding chief of police (at the time) and a member of the civil service board what type of punishment should be imposed to serve Ceaser's "best interest."

## 279.

Craft determined that a demotion (based upon unfounded and ultimately disproven allegations) was the appropriate sanctions, and Craft convinced the participating members to vote in this manner.

## 280.

Again, Ceaser's "best interest" punishment as concocted by Craft (with the aid of Prejean) was eventually overturned, and Ceaser was reinstated as a Sergeant.

**281.**

Some six (6) years later, in March, 2010, Ceaser inadvertently wrote down the wrong time for a department interdivisional meeting—showing up at 3:00 PM rather than 1:00 PM.

**282.**

Despite having a longstanding, fifteen (15) year tenure, Ceaser was made the subject of a Shift Level Investigation concerning this missed meeting.

**283.**

This investigation was concocted solely and exclusively by Defendants Craft and Alfred.

**284.**

This minor infraction was converted into a wholesale prosecution based upon Craft's desire to prevent Ceaser from the inevitable promotion from Lieutenant to the rank of Captain.

**285.**

Rather than engage in a protracted legal battle costing many thousands of dollars, Ceaser chose to retire.

**286.**

Ceaser applied for two (2) weeks of accrued leave, at the end of which he advised Craft that he would retire.

**287.**

In conjunction with advising Craft, Ceaser also turned in all of his departmental gear (Unit, Uniforms, Office Keys, Gate Pass, etc,) and prepared the required documents for his final date of departure.

**288.**

Before Ceaser could reach his date of retirement, Craft advised that if the pending investigation (re: missing a scheduled office meeting) were not resolved through a written statement of acknowledgement that Ceaser would be terminated before his date of retirement—a date which at that time was less than a week away.

**289.**

In lieu of being actually terminated in regard to a miscalendared meeting, Ceaser moved up his retirement date and departed the LPD several days ahead of the originally-scheduled retirement date.

**290.**

At times prior to this event regarding the miscaledared meeting, Ceaser had been placed under surveillance by members of the LPD.

**291.**

Ceaser's whereabouts were routinely reported to Craft and made subject of "write-ups" and verbal warnings—all despite there being no express or even tacit misconduct of any sort.

**292.**

Ceaser witnessed Capt. Dwayne Arceneaux parked several doors down from Ceaser's home while Ceaser was on adjusted time off: Arceneaux was watching Ceaser's house in order to find some basis upon which to institute a prosecution.

**293.**

Events such as these continued until the eventual investigation which led to Ceaser's early retirement, as discussed above.

**294.**

It is alleged Craft and others believed Ceaser was an individual who was adverse to the Craft administration, and Ceaser was placed under enormous scrutiny until the most minor violation could be found—a miscalendared meeting—and Ceaser could be forced to retire.

**295.**

It is alleged Craft hoped to rid the department of conscientious, law-abiding officers such as Ceaser in order that he (Craft) might have a free reign to continue engaging in known acts of corruption, misdealing, and all manner of other misdeeds without the ever-watchful eye of those Craft identified as his political adversaries—such as Mr. Ceaser.

**296.**

The foregoing allegations are made in conjunction with and in view of the other attendant facts as circumstances as revealed through the other officers' factual renditions—all of which collectively paint a portrait revealing precisely the type of conduct Craft and his cohorts employed in order to maintain their positions in the LPD despite widespread corruption.

## ANSWER TO PARAGRAPHS 271 THROUGH 296 RELATIVE TO CEASER

The claims of Plaintiff, Donald Ceaser, have been dismissed by this Court and therefore require no response.  (Documents 79 & 84).  In an abundance of caution, Defendants deny the allegations set forth in Paragraphs 271 through 296, except to admit that Ceaser retired on or about April 8, 2010.

## 297 through 315 – PAUL TAYLOR, JR.

**297.**

Mr. Taylor has suffered disparate treatment, myriad acts of retaliation, and an abundance of discriminatory actions committed against him by the various party Defendants.

**298.**

Mr. Taylor adopts and alleges any/all of those relevant portions of the original Complaint [Rec. Doc. 1] wherein such acts of disparate treatment, practical applications of the "Code of Silence" and other enumerated acts of misconduct were alleged against the party Defendants with particularity.

**299.**

Mr. Taylor further alleges that on or about January 2011, he met with Chief Craft, Major Jackie Alfred, Captain Norbert Meyers, and Lieutenant Gabriel Thompson concerning his return to duty as an LPD officer.

**300.**

Taylor was out on sick leave for a medical procedure that did not go according to plan.

**301.**

Taylor was called to the subject meeting for a determination of whether he were medically fit to return to duty.

### 302.

Craft initially advised Taylor that there was no light duty at the police department, and Craft would not allow Taylor to return to duty with limited conditions.

### 303.

Taylor cited prior circumstances wherein Craft had made just such accommodations for other officers—including Officers Kim Gates (white / female), Monte Potier (white / male), Aaron Thibodeaux (white / male), Rusty Guidry (white / male), Brent Taylor (white / male), and Ted Vincent (white / male).

### 304.

Based upon this rendition, Craft reluctantly agreed to permit Taylor to return to work via a shadowing program.

### 305.

Craft assigned Taylor to "shadow" Lieutenant Levy Firmin, a known political ally of Craft.

### 306.

From the outset Firmin harassed Taylor in every possible manner.

### 307.

Taylor made such arbitrary requirements as actually calling Firmin and "reporting in" each time Taylor entered and left the building.

### 308.

Firmin began issuing deficiency notices to Taylor for not completing payroll—even though Taylor had never been training in these functions, and it was Firmin's duty—not Taylor's—to maintain these records.

### 309.

Firmin reassigned Taylor from an office into a desk which sat in the office lobby—a place Taylor remained until the Lafayette Fire Department Arson Investigator, Alton Trahan, notified Craft the desk in the lobby posed a hazard.

**310.**

Thereafter, Craft notified Firmin via email that "the experiment is over" and that Taylor should be allowed to return to his (Taylor's) original office.

**311.**

It is alleged this "experiment" was nothing more than a per se act of retaliation against Taylor for being "aligned" with Craft's opponents.

**312.**

It is alleged Craft believed Taylor was an individual who was adverse to the Craft administration, and Taylor was placed under enormous scrutiny—literally being assigned as the "shadow" to one of Craft's staunchest supporters in Firmin.

**313.**

It is alleged Firmin was tasked with the "experiment" of finding a way to force Taylor to resign or retire in order that Craft may rid his office of someone who was adverse to Craft's known malfeasance.

**314.**

It is alleged Craft hoped to rid the department of conscientious, law-abiding officers such as Taylor in order that he (Craft) might have a free reign to continue engaging in known acts of corruption, misdealing, and all manner of other misdeeds without the ever-watchful eye of those Craft identified as his political adversaries—such as Mr. Taylor.

**315.**

The foregoing allegations are made in conjunction with and in view of the other attendant facts as circumstances as revealed through the other officers' factual renditions—all of which collectively paint a portrait revealing precisely the type of conduct Craft and his cohorts employed in order to maintain their positions in the LPD despite widespread corruption.

**ANSWER TO PARAGRAPHS 297 THROUGH 315 RELATIVE TO TAYLOR**

The claims of Plaintiff, Paul Taylor, Jr., have been dismissed by this Court and therefore require no response.  (Documents 79 & 84).  In an abundance of caution, Defendants deny the allegations set forth in Paragraphs 297 through  315.

### 316 through 340 – RAQUEL ROBERTS

#### 316.

*Ms. Roberts has suffered disparate treatment, myriad acts of retaliation, and an abundance of discriminatory actions committed against her by the various party Defendants.*

#### 317.

*Ms. Roberts adopts and alleges any/all of those relevant portions of the original Complaint [Rec. Doc. 1] wherein such acts of disparate treatment, practical applications of the "Code of Silence" and other enumerated acts of misconduct were alleged against the party Defendants with particularity.*

#### 318.

*Ms. Roberts further alleges she was employed with the Lafayette PD for seventeen and one half years.*

#### 319.

*Roberts retired on March 10, 2011.*

#### 320.

*During the time Roberts was employed with the above listed department, she was sexually harassed by numerous employees, treated unfairly and disciplined unfairly.*

#### 321.

*Roberts was suspended on numerous occasions without proof that she was at fault.*

#### 322.

*On these occasions Roberts was exonerated by civil service.*

#### 323.

*During the time that Reginald Thomas was the civil service president, Roberts was advised that officers could not fight write ups through civil service however later found that she was lied to.*

**324.**

*During Roberts' employment, she was advised that she was being transferred to another zone, by Jim Craft, who was major at that time, which would make it almost impossible for my husband at the time and myself to take care of our child due to the time differences in our schedules.*

**325.**

*Roberts went to Jim Craft's office, with Capt Feutch, now deceased, and Sergeant Andy Fontenot to speak with Craft about the situation he was placing Roberts' family in.*

**326.**

*As Roberts was explaining the situation, Craft advised Roberts that it was not up to the Lafayette Police Department to find a babysitter for our child.*

**327.**

*Roberts explained that there was no reason to transfer her and Craft ordered Roberts to leave his office.*

**328.**

*Days later, Roberts was contacted by internal affairs stating that Craft had filed a complaint against her for insubordination as proceeded with their investigation.*

**329.**

*It was brought to their attention that Roberts had audio taped the entire conversation and the audio tape was submitted to them.*

**330.**

*Later, a pre-disciplinary hearing was scheduled in the chief's office, at the time the Chief was Huntley.*

**331.**

*Craft was still not aware of the audio taped until it was played for him and Roberts was then exonerated from his complaint.*

### 332.

*After this incident, Craft began suspending Roberts without proof that she had done anything wrong and internal affairs officers were lying to civil service in order to obtain more time to investigate her.*

### 333.

*Craft has called Roberts into his office numerous times merely to advise her that she was not the type of officer he wished to have employed at his department.*

### 334.

*It should be noted that Roberts was allowed to work with the Lafayette City Marshalls Office, on loan by Chief Hundley, and Deputy City Marshall Timmy Picard overheard a conversation held in the hallway by Craft and other officers.*

### 335.

*The question was asked if Craft and Roberts were "getting along" and Craft responded that Roberts was being protected for the time being.*

### 336.

*Once Craft made chief, he began investigations on Roberts for complaints; however, even though it was the complainants word against Roberts, with no evidence, Roberts i would be found guilty and suspended.*

### 337.

*The reason Roberts left was due to the fact that she had just been given a fifteen day suspension for something she did not do and Craft had already started two or three more investigations against her.*

### 338.

*Roberts had been fighting for her job for years due to Craft's hatred and his revenge for making him look bad when Roberts had audio taped him.*

### 339.

*After Roberts' fifteen day suspension was finished, Roberts was placed on stress leave by her doctor, for the second time; however, during her time on stress leave, she was contacted by Major Jackie Alfred advising that Roberts needed to be in Alfred's office on March 10, 2011.*

### 340.

*Roberts questioned Alfred as to whether or not she needed to bring all her gear and he stated that Roberts should--meaning that Roberts was being terminated.*

### ANSWER TO PARAGRAPHS 316 THROUGH 340 RELATIVE TO ROBERTS

The claims of Plaintiff, Raquel Roberts, have been dismissed by this Court and therefore require no response.  (Documents 79 & 84).  In an abundance of caution, Defendants deny the allegations set forth in Paragraphs 316-340.

### 341.

*Plaintiffs continue to anticipate the joinder of additional party Plaintiffs in this litigation, and Plaintiffs also continue to anticipate the joinder of additional party Defendants in this litigation.*

### ANSWER TO PARAGRAPH 341

Paragraph 341 of the Supplemental Complaint does not require an answer.  In an abundance of caution, same is denied.

### 342.

*Accordingly, Plaintiffs again specifically reserve any/all rights they may have to seek amendment / revision of the instant First Amended and Supplemental Complaint, and Plaintiffs specifically reserve any/all rights they may have to join additional party Plaintiffs and party Defendants as the facts determined through civil pretrial discovery may justify. See, e.g., FRCP 19, 20.*

### ANSWER TO PARAGRAPH 342

Paragraph 342 of the Supplemental Complaint does not require an answer.  In an abundance of caution, same is denied.

### 343.

*Plaintiffs further reserve any/all right they may have to serve a supplemental pleading setting out any transaction, occurrence, or event that happens after the date of the instant First Amended and Supplemental Complaint. See, e.g., FRCP 15(d).*

### ANSWER TO PARAGRAPH 343

Paragraph 343 of the Supplemental Complaint does not require an answer.  In an abundance of caution, same is denied.

### 344.

*Plaintiffs aver their present First Amended and Supplemental Complaint sets forth claims for retaliatory discharge, deprivation of procedural due process, wrongful discharge, punitive damages, and other related and attendant claims, all as articulated, recognized, and supported in the matter of Bradley v. Ramsey, 329 F.Supp.2d 617 (W.D.N.C. 2004).*

### ANSWER TO PARAGRAPH 344

Paragraph 344 of the Supplemental Complaint does not require an answer.  In an abundance of caution, same is denied.

### 345 through 350

### 345.

*In Bradley, the plaintiff was a small town's police chief who was suspended and eventually fired from his position after complaining publicly about the mayor's "illegal and unethical behavior."*

### 346.

*In response to a lawsuit bearing a factual predicate similar in many ways to the present litigation, the defendants in Bradley moved for judgment on the pleadings and to dismiss pursuant to FRCP 12(b)(6).*

### 347.

*The lion's share of the defendants' bases for dismissal were denied, with the court noting: It would be difficult to conceive of a legitimate interest the government would have in concealing corruption, and whatever that interest may be, it clearly does not outweigh Plaintiff's interest in speaking." Bradley v. Ramsey, 329 F.Supp.2d at 623.*

### 348.

*Further, the Bradley court opines the plaintiff's allegation that he was terminated "'because' he exercised his right to free speech" was sufficient to state "a claim for retaliatory discharge in violation of the First Amendment." Id.*

**349.**

*Although the present lawsuit certainly involves a wide range of misconduct by the Defendants (including multiple retaliatory and discriminatory acts), at the core this litigation addresses a systematic endeavor whereby individual police officers who reported corruption within the Lafayette Police Department were targeted for retaliation.*

**350.**

*As such, Plaintiffs expressly assert those claims and causes of action attendant unto the facts pled with specificity above and which are synonymous with those claims acknowledged and ratified in Bradley v. Ramsey.*

**ANSWER TO PARAGRAPHS 345 THROUGH 350**

Paragraphs 345 through 350 were stricken pursuant to this Court's Order and therefore do not require a response. (Document 77).

**351.**

*The Plaintiffs adopt and restate any/all allegations contained in Paragraphs One (1) through Three Hundred Fifty (350) in their entirety, as if fully copied in extenso herein.*

**ANSWER TO PARAGRAPH 351**

Paragraph 351 of the Supplemental Complaint does not require an answer.  In an abundance of caution, same is denied.

**352.**

*The Plaintiffs hereby assert claims against LCG for damages and for the violations and injuries set forth above under 42 U.S.C. 1983.*

**ANSWER TO PARAGRAPH 352**

Paragraph 352 of the Supplemental Complaint does not require an answer.  In an abundance of caution, same is denied.

### 353.

In addition to the causes of action set forth above, the Plaintiffs assert causes of action against Lafayette City-Parish Consolidated Government, Lafayette Police Department through the Lafayette City-Parish Consolidated Government, Lester Joseph "Joey" Durel, Jr. in his capacity as President of the Lafayette City-Parish Consolidated Government, Dee Edward Stanley, in his capacity as Chief Administrative Officer of the Lafayette City-Parish Consolidated Government, James P. Craft, individually and in his capacity as Chief of the Lafayette Police Department, George "Jackie" Alfred, individually and in his capacity as Patrol Division Commander of the Lafayette Police Department, Captain Ted Vincent, individually and in his capacity as a Captain in the Lafayette Police Department, Major Randy Vincent, individually and in his capacity as a Major in the Lafayette Police Department, Lt. Levy J. Firmin, individually and in his capacity as a Lieutenant in the Lafayette Police Department, Ray Domingue, individually and in his capacity as Human Resources Manager of the Lafayette City-Parish Consolidated Government, Lt. Dwayne Prejean, individually and in his capacity as a Lieutenant in the Lafayette Police Department, Detective UJ. Prevost, individually and in his capacity as a Detective in the Lafayette Police Department, and Sgt. Keith Gremillion, individually and in his capacity as a Sergeant in the Lafayette Police Department, all pursuant to the laws of the State of Louisiana, including Civil Code Articles 2315 and 2317 arising from the facts alleged above and those proven at trial, including but not limited to:

A.  Failure to properly train Stanley, Craft, and Alfred;
B.  Failure to properly supervise Stanley, Craft, and Alfred;
C.  Failure to implement adequate and proper management over Stanley, Craft, and Alfred;
D.  Failure to implement and carry out proper discipline over Stanley, Craft, and Alfred;
E.  Negligent selection, appointment, and retention of Stanley, Craft, and Alfred;
F.  Failure to conduct appropriate and adequate internal investigations;
G.  Failure to correct a police "Code of Silence";
H.  Failure to provide a meaningful avenue for independent and impartial internal investigations;
I.  Vicarious liability for the acts and omissions of Stanley, Craft, and Alfred under the doctrine of respondeat superior and La. C.C. Art. 2317;
J.  All other acts and omissions which constitute actionable injury, including negligence, intentional negligence and negligence per se under Louisiana law.

### ANSWER TO PARAGRAPH 353

73

The allegations of Paragraph 353 as they relate to claims under the Fourth, Fifth, and Fourteenth Amendments, injunctive relief, §1985 Conspiracy, and State law claims, claims by plaintiffs, Myers, Harding, Sanchez, Polanco, Briscoe, Roberts, Joseph, Ceaser, and Taylor, and claims against defendants, Durel, Stanley, in his official capacity as CAO of LCG, Craft, in his official capacity as Chief of the Lafayette Police Department, Alfred, in his official capacity as Major of the Lafayette Police Department, Captain Ted Vincent, Major Randy Vincent, Firmin, Domingue, Prejean, Prevost, and Gremillion require no response as they have been dismissed pursuant to this Court's Order (Documents 79 and 84).  Otherwise, Paragraph 353 of the Supplemental Complaint is denied.

### 354.

*As a proximate result of the acts and omissions of all of the Defendants, separately, jointly, and/or in concert, Plaintiffs* **Kane Marceaux**, **Greg Cormier**, **Scott Poiencot**, **Gabriel Thompson**, **Norbert Myers**, **Novey Stelly**, **Uletom P. Hewitt**, **Regina Briscoe**, **Aleeta M. Harding**, **Gus Sanchez**, **Robert Polanco**, **Kencil D. Joseph**, **Donald Ceaser**, **Paul Taylor, Jr.**, *and* **Raquel Roberts** *suffered injuries to include physical injuries, emotional distress, embarrassment, humiliation, and mental anguish in connection with the deprivation of their constitutional and statutory rights and acts and omissions causing injury to them. These damages include but are not limited to:*

A. *Violation of their constitutional rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution;*
B. *Past, present, and future pain and suffering;*
C. *Past, present, and future mental anguish;*
D. *Past, present, and future emotional distress,*
E. *Past, present, and future embarrassment;*
F. *Past, present, and future loss of life's enjoyment;*
G. *Past, present, and future loss of career opportunities;*
H. *Past, present, and future lost wages;*
I. *Past, present, and future loss of earning potential;*
J. *Expenses, expert fees and expenses, and attorneys' fees*
K. *Compensatory damages;*
L. *Punitive damages against parties subject to same; and,*
M. *Such other damages which were caused by the aforesaid circumstances and which were sustained by the Plaintiffs.*

**ANSWER TO PARAGRAPH 354**

The allegations of Paragraph 354 as they relate to claims under the Fourth, Fifth, and Fourteenth Amendments, injunctive relief, §1985 Conspiracy, and State law claims, claims by plaintiffs, Myers, Harding, Sanchez, Polanco, Briscoe, Roberts, Joseph, Ceaser, and Taylor, and claims against defendants, Durel, Stanley, in his official capacity as CAO of LCG, Craft, in his official capacity as Chief of the Lafayette Police Department, Alfred, in his official capacity as Major of the Lafayette Police Department, Captain Ted Vincent, Major Randy Vincent, Firmin, Domingue, Prejean, Prevost, and Gremillion require no response as they have been dismissed pursuant to this Court's Order (Documents 79 and 84).  Otherwise, Paragraph 359 of the Supplemental Complaint is denied.

### 355.

*Plaintiffs* **Kane Marceaux**, **Greg Cormier**, **Scott Poiencot**, **Gabriel Thompson**, **Norbert Myers**, **Novey Stelly**, **Uletom P. Hewitt**, **Regina Briscoe**, **Aleeta M. Harding**, **Gus Sanchez**, **Robert Polanco**, **Kencil D. Joseph**, **Donald Ceaser**, **Paul Taylor, Jr.**, *and* **Raquel Roberts** *seek injunctive relief ordering the party Defendants, their agents, and employees to take appropriate affirmative steps to train and to prevent personnel, including Stanley, Craft, and Alfred from engaging in the practices complained of herein and permanently enjoining the Defendants from violating the civil and constitutional rights of Plaintiffs Kane Marceaux, Greg Cormier, Scott Poiencot, Gabriel Thompson, Norbert Myers, Novey Stelly, Uletom P. Hewitt, Regina Briscoe, Aleeta M. Harding, Gus Sanchez, Robert Polanco, Kencil D. Joseph, Donald Ceaser, Paul Taylor, Jr., Raquel Roberts and/or other citizens.*

### ANSWER TO PARAGRAPH 355

The allegations of Paragraph 355 as they relate to claims under the Fourth, Fifth, and Fourteenth Amendments, injunctive relief, §1985 Conspiracy, and State law claims, claims by plaintiffs, Myers, Harding, Sanchez, Polanco, Briscoe, Roberts, Joseph, Ceaser, and Taylor, and claims against defendants, Durel, Stanley, in his official capacity as CAO of LCG, Craft, in his official capacity as Chief of the Lafayette Police Department, Alfred, in his official capacity as Major of the Lafayette Police Department, Captain Ted Vincent, Major Randy Vincent, Firmin, Domingue, Prejean, Prevost, and Gremillion require no response as they have been

dismissed pursuant to this Court's Order (Documents 79 and 84).  Otherwise, Paragraph 355 of the Supplemental Complaint is denied.

## AFFIRMATIVE DEFENSES

### I.

Defendants specifically aver any and all affirmative defenses specifically enumerated in Federal  Rule of Civil Procedure, Rule 8, which are applicable to this case and\or any and all other affirmative defenses recognized by the jurisprudence, and these are pled herein as if copied herein *in extenso* to the extent they apply.

### II.

Specifically, Defendants plead immunity pursuant to La. R.S. 9:2800 (Public Body Immunity); La. R.S. 9:2792.4 (Political Subdivision Immunity); La. R.S. 9:2798.1 (Public Official Immunity); La. R.S. 13:5105; La. R.S. 13:5106; La. R. S. 13:5112; La. R.S. 42:1441, *et seq.* (Political Subdivision Immunity); and La. C. Cr. P. art. 201-232 as to any specific State Law claims, if applicable.

### III.

Defendants are entitled to discretionary immunity for their discretionary acts pursuant to La. R.S. 9:2791.1.

### IV.

The policies and customs of the Lafayette Police Department relevant to Plaintiffs' allegations were not constitutionally infirm or deliberately indifferent to the rights of Plaintiffs.

### V.

As a separate and complete defense to the matters asserted herein, to the extent that Dee Edward Stanley, James "Jim" Craft, and George "Jackie" Alfred are sued in their individual capacities, they are entitled to qualified immunity.

## VI.

Defendants allege, in the alternative, the fault and negligence of other persons, including but not limited to Plaintiffs, for whom these Defendants are not responsible, in bar of, and in diminution of any of, any recovery to which Plaintiffs may be entitled.

## VII.

Should Defendants be successful in the defense of this action, under 42 U.S.C. §1988, they are entitled to attorneys' fees and litigation courts associated with the defense of this matter.

## VIII.

Defendants further aver that Plaintiffs are not entitled an award of attorneys' fees and\or any award of civil penalties in this matter.

## VIX.

Defendants plead the limitation of legal interest and court costs in accordance with La. R. S. 13:5112.

## X.

Plaintiffs have failed to mitigate their alleged damages.

## XI.

Plaintiffs have failed to state a claim upon which relief can be granted.

## XII.

Defendants specifically plead violations of Federal Rule of Civil Procedure Rule 11, in order to recover sanctions, attorneys' fees, and costs, because the allegations of Plaintiffs' Complaint are clearly uninvestigated, frivolous, and have been brought purely for harassment.

<div align="center">XIII.</div>

Defendants request a trial by jury on all issues so triable.

WHEREFORE, Defendants, LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT ("LCG"), DEE EDWARD STANLEY, INDIVIDUALLY, JAMES P. "JIM" CRAFT, INDIVIDUALLY, AND GEORGE "JACKIE" ALFRED, INDIVIDUALLY, pray that the foregoing Answer be deemed good and sufficient, that after all legal delays and due proceedings are had, there be Judgment rendered herein in favor of Defendants and against Plaintiffs, Kane Marceaux, Scott Poiencot, Greg Cormier, Gabe Thompson, Nolvey Stelly, and Uletom Hewitt, at Plaintiffs' costs. Defendants further pray that this Court award Defendants reasonable expenses incurred, including attorneys' fees.

**AND FOR ALL OTHER GENERAL AND EQUITABLE RELIEF TO WHICH DEFENDANTS MAY BE ENTITLED.**

Respectfully submitted:

**BRINEY FORET CORRY, LLP**

BY: _____s/ Michael P. Corry_____
        **MICHAEL P. CORRY – 20764**
        **PATRICK J. BRINEY – 03467**
        **HALLIE P. COREIL - 33764**
        413 Travis Street
        Suite 200
        Post Office Box 51367
        Lafayette, Louisiana 70505-1367
        Telephone:  (337) 237-4070
        Facsimile:  (337) 233-8719
**ATTORNEY FOR DEFENDANTS, LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT, DEE EDWARD STANLEY, INDIVIDUALLY, JAMES P. "JIM" CRAFT, INDIVIDUALLY, AND GEORGE "JACKIE" ALFRED, INDIVIDUALLY**

<u>**CERTIFICATE**</u>

This is to certify that on March 1, 2013, I presented the foregoing to the Clerk of the

Court for filing and uploading to the CM/ECF system which will send notification of such filing

to the following:

springlaw@gmail.com

jca@jcalaw.us

ralexander@deep-south.com

hanna_orders@lawd.uscourts.gov

and I hereby certify that I have mailed by United States Postal Service the document to the

following non-CM/ECF participant or pro se defendant:

**None.**

          _____ s/Michael P. Corry_____
            MICHAEL P. CORRY- 20764