UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

KANE MARCEAUX, ET AL.   CIVIL ACTION NO. 12-cv-1532

VERSUS        JUDGE HAIK

LAFAYETTE CONSOLIDATED   MAGISTRATE JUDGE HANNA
GOVERNMENT, ET AL.

### *Report and Recommendations*
*(Rec. Docs. 13, 61)*

Before the undersigned, on referral from the district judge for report and recommendation, are two motions for sanctions filed by the defendants:  the Motion for Sanctions under Rule 11 and/or 28 U.S.C. § 1927 (Rec. Doc. 13) and the request for attorney fees and expenses that is made a part of a Motion for Protective Order/Motion to Strike (Rec. Doc. 61).  For the reasons set out below, it is the recommendation of the undersigned that the motion for attorneys fees and expenses be denied and the Motion for Sanctions under Rule 11 and/or 28 U.S.C. § 1927 be granted in part and denied in part.

### *Factual and Procedural Background*:

This lawsuit was brought by fifteen current or former police officers with the Lafayette police department (henceforth LPD), seeking to recover monetary damages and other relief for alleged actions by their employer and/or fellow city employees.  In general, the plaintiffs contend that an alleged "Code of Silence"

was imposed by Police Chief Jim Craft, Lafayette City-Parish Consolidated

Government Chief Administrative Officer Dee Stanley, and others "in order to

maintain control" of the LPD, and that the alleged "Stanley-Craft Organization"

"perpetuat[ed] a permanent hostile work environment" by initiating "bogus

internal complaint and bogus internal affairs investigations," strong-arming

witnesses, manipulating statements, testifying falsely for the purpose of defeating

legitimate policies, and ultimately seeking the termination of targeted officers who

failed to comply with the "Code of Silence."   Thirteen defendants, including the

city of Lafayette, the LPD, and various city officials and police officers, were

named in the original complaint.

Before this suit was filed, an investigation was undertaken by the LPD into

the alleged unauthorized release of confidential information by some of the

plaintiffs in this lawsuit.  That investigation was the subject of a state court

petition for a temporary restraining order and injunction in which plaintiffs'

counsel sought to enjoin Stanley, Craft, and Major Jesse Alfred from conducting

the investigation.  (Rec. Docs. 13-10, 13-11).  Although the TRO was initially

issued, following an evidentiary hearing, the TRO was dismissed by the state

district court on May 29, 2012, and suit was filed in this court six days later.  (Rec.

Docs. 1, 13-12, pp. 1, 29-31).

-2-

The plaintiffs' original complaint contained 271 numbered paragraphs setting forth a variety of allegations against Craft, Stanley, other defendants, and non-parties who were identified by name but against whom there was no viable cause of action even alleged.  Many of the allegations pertained to events which did not involve any of the named plaintiffs.  Summons was issued but the defendants were not served.  Instead, on June 8, a communication demanding a "Cease and Desist Order" was sent by plaintiffs' counsel to the individual council members for the Lafayette City-Parish Consolidated Government (henceforth LCG) in an effort to have them stop the LPD from conducting the investigation into the allegations of the unauthorized release of confidential information.  (Rec. Doc. 13-13).  The council members were told that, if they did not follow the "suggestions" set forth in the letter, plaintiffs' counsel would "be obligated to join each and every one of you, individually, as parties to the federal litigation."  (Rec. Doc. 13-13).

On July 6, 2012, defense counsel sent plaintiffs' counsel correspondence with a Motion for Sanctions in compliance with its obligations under Fed.R.Civ.P. 11(c)(2).  (Rec. Doc. 13-20).  On the same date, the defendants responded to the complaint with a motion to strike the allegedly redundant, immaterial, impertinent, and scandalous allegations in the complaint (Rec. Doc. 4) and sought dismissal of

the complaint pursuant to Rule 12(b)(6) for failure to state a claim.  (Rec. Doc. 5).

When it became clear that no remedial action would be taken by plaintiffs'

counsel, on July 31, 2012, the defendants filed their motion for sanctions under

Rule 11 and/or 28 U.S.C. § 1927.  (Rec. Doc. 13).  A motion for protective order

(Rec. Doc. 18) followed.

A Rule 16 conference was held on September 5, 2012 concerning the

pending motions at which the plaintiffs were afforded an opportunity to seek leave

to amend their complaint.  (Rec. Doc. 27).  The Court also ordered that, on receipt

and consideration of the amended complaint, defense counsel were to advise the

Court whether the pending motion to dismiss or the pending motion to strike

would go forward as presented or whether either would be amended/supplemented

based on the content of the amended pleading.  The same order deferred

consideration of the motion for sanctions pending ruling on the dispositive

motions.

The plaintiffs' first amended complaint was ultimately filed, adding six new

plaintiffs and seven new defendants.  It is comprised of fifty-eight pages, with 354

numbered paragraphs.  (Rec. Doc. 74).  The defendants reurged their motions to

strike and to dismiss.  (Rec. Docs. 64, 65).  Following extensive briefing and

lengthy oral argument, the motion to strike was granted in part and denied in part,

-4-

with the undersigned striking a total of 102 paragraphs (93 from the original

complaint and 9 from the amended complaint) as scandalous, immaterial, or

impertinent.[1]  (Rec. Doc. 77).

This Court issued a report and recommendation on the motion to dismiss

(Rec. Doc. 79), which recommended that all claims by all plaintiffs for injunctive

relief, § 1985 conspiracy claims, state law claims, claims predicated on alleged

violations of the Fourth Amendment, and claims predicated on alleged violations

of due process and equal protection rights under the Fifth and Fourteenth

Amendments be dismissed.  The Court recommended that the individual capacity

claims asserted against defendants Durel, Firmin, Ted Vincent, Randy Vincent,

Domingue, Prejean, Prevost, and Gremillion be dismissed, that the official

capacity claims against defendants Durel, Stanley, Craft, Alfred, Ted Vincent,

Randy Vincent, Firmin, Domingue, Prejean, Prevost, and Gremillion be dismissed,

and that the claims against the LPD, as a non-juridical entity, be dismissed.

Finally, this Court recommended that all claims asserted by plaintiffs Myers,

Harding, Sanchez, Polanco, Briscoe and Roberts be dismissed.  The

---

[1]       That ruling has not been appealed, and the delays for appeal have expired.

recommendations were adopted by the district court.[2]  (Rec. Doc. 84).

As a result, the claims in this case were reduced to six plaintiffs, who are or were employees of the City, brought under 28 U.S.C. § 1983 against the City, and individual capacity claims against two policymakers and one supervisor for the alleged violation of the plaintiffs' First Amendment free speech rights.  These violations allegedly resulted in adverse employment actions for which the plaintiffs seek compensation.

The defendants' two motions for sanctions (Rec. Docs. 13, 61[3]) were set for hearing on October 22, 2013.  Although plaintiffs' counsel requested that the matter be decided on briefs (Rec. Doc. 119-1, Ex.2), that request was denied in order that all parties be afforded adequate opportunity to be heard and offer any appropriate evidence on the issues presented by the motions.  No plaintiff attended the hearing, and plaintiffs' counsel presented no evidence.  The Court introduced two exhibits, both of which were letters sent to the Court by plaintiffs' counsel. (Rec. Doc. 119-1).  The defendants offered a number of exhibits that were already

---

[2]      That ruling was appealed, but the appeal was dismissed for lack of jurisdiction.

[3]      Record document 61 was a motion for protective order, which included a request for attorney fees and costs.  A partial ruling on the motion was made September 26, 2012, deferring ruling on the sanctions request pending the Court's ruling on other sanctions motions.  (Rec. Doc. 62)

in the record of these proceedings, some of which are filed under seal, without any objection from plaintiffs' counsel.  (Rec. Doc. 123, pp. 8-11).

With regard to the relief sought by the defendants in Rec. Doc. 61 for attorney's fees and costs, correspondence received from plaintiffs' counsel shortly after the document at issue was filed explaining the actions taken by them was introduced into evidence under seal.  (Rec. Doc. 119-1, Ex.1).  Satisfied with the explanation provided in that correspondence, the Court stated and does hereby recommend that the request for attorney fees and costs associated with Rec. Doc. 61 be DENIED, leaving for resolution only the Motion for Sanctions under Rule 11 and/or 28 U.S.C. § 1927 (Rec. Doc. 13).

***The Applicable Legal Standards:***

Under Rule 11(c)(1), appropriate sanctions may be imposed by the court on "any attorney, law firm, or party that is found to have violated the rule or is responsible for the violation."  Under 28 U.S.C. § 1927, only an "attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Based on the record and the evidence submitted, this Court finds no basis to award sanctions against

the plaintiffs personally, and therefore, this opinion will focus on the actions of plaintiffs' counsel, Christopher Alexander and Stephen Spring, under both rules of law.[4]

***Rule 11 Sanctions***:

Rule 11(b) provides in part:

(b) Representations to the Court.  By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Placed at issue in this motion is whether plaintiffs' counsel violated either

---

[4]      See *Skidmore Energy Inc. v. KPMG* 455 F.3d 564, 567-68 (5th Cir. 2006) setting forth when it is appropriate to sanction a party.

subpart (b)(1), (b)(2), or (b)(3).[5]  A violation of any subpart justifies sanctions as each provides an independent basis for sanctions.  *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796,802-04 (5th Cir. 2003) (en banc); *F.D.I.C. v. Maxxam,* 523 F.3d 566, 577 (5th Cir. 2008).

Although decided before the 1993 amendments to Rule 11, in *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866, 874 (5th  Cir. 1988) (en banc), the Fifth Circuit stated:

> A construction of Rule 11 which evaluates an attorney's conduct at the time a "pleading, motion, or other paper" is signed is consistent with the intent of the rule makers and the plain meaning of the language contained in the rule.  Like a snapshot, Rule 11 review focuses upon the instant when the picture is taken-when the signature is placed on the document.

The *Thomas* "snapshot" rule ensures that Rule 11 liability is assessed only for a violation existing at the moment of filing.  *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 570 (5th Cir. 2006).

In deciding whether a pleading has been filed for *any* improper purpose under subpart (b)(1), "the standard under which the attorney is measured is an objective, not subjective, standard of reasonableness under the circumstances."

---

[5]      Rule 11(c)(2) provides the requirements for the separate filing, content, and service of the motion for sanctions, as well as the safe harbor provisions.  This Court finds that the defendants did comply with the provisions of Rule 11(c)(2).  (Rec. Doc. 13-20).

*Jenkins v. Methodist Hospital of Dallas, Inc.,* 478 F.3d 255, 264 (5th Cir. 2007) (en

banc) (quoting *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d at 802) (quoting

*Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1024 (5th Cir. 1994)).  If it

is objectively ascertainable that an attorney submitted a paper to the court for any

improper purpose, even if the paper contains nonfrivolous representations or

papers well grounded in fact and law, sanctions may still be warranted.  *Whitehead*

*v. Food Max of Miss., Inc.,* 332 F.3d at 805; *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d at

584 (citing *National Association of Government Employees v. National*

*Federation of Federal Employees,* 844 F.2d 216, 224 (5th Cir. 1988).

"Accordingly, an attorney's good faith will *not*, by itself, protect against the

imposition of Rule 11 sanctions."  *Jenkins v. Methodist Hospital of Dallas, Inc.,*

478 F.3d at 264 (citing *Childs v. State Farm*, 29 F.3d at 1024) (emphasis in

original).  To determine whether a party pursued an illegitimate purpose to

increase costs or harass a party, the court must identify "unusual circumstances"

that support an inference of such purposes by looking to "objectively ascertainable

circumstances rather than subjective intent," one example of which is excessive

filing.  *F.D.I.C. v. Maxxam, Inc.,* 523 F.3d 581, 585-86 (citations omitted).

　　　In determining whether an individual has complied with his or her

obligations of reasonable inquiry into the facts and law, the court may look to a

number of factors:

> The determination of whether a reasonable inquiry into the facts has
> been made in a case will, of course, be dependent upon the particular
> facts; however, the district court may consider such factors as the
> time available to the signer for investigation; the extent of the
> attorney's reliance upon his client for the factual support for the
> document; the feasibility of a prefiling investigation; whether the
> signing attorney accepted the case from another member of the bar or
> forwarding attorney; the complexity of the factual and legal issues;
> and the extent to which development of the factual circumstances
> underlying the claim requires discovery.  As to the determination of
> whether a reasonable inquiry into the law has been made, a district
> court may consider the time available to the attorney to prepare the
> document; the plausibility of the legal view contained in the
> document; the pro se status of a litigant; and the complexity of the
> legal and factual issues raised.

*Thomas v. Capital Security Services, Inc.,* 836 F.2d at 875-76.

As to the type of sanction imposed under Rule 11, the court "should utilize the least severe sanction that furthers the purposes of Rule 11 and is the least severe sanction adequate to such purpose." *Jenkins v. Methodist Hospital of Dallas, Inc.*, 478 F.3d at 265 (quoting *Thomas v. Capital Security Services, Inc.* 836 F.2d at 878.  "On the other hand, sanctions should be 'sufficient to deter repetition of [similar] conduct.'" *Id.* (quoting Fed. R. Civ. P. 11(c)(2) now Rule 11(c)(4)).

**Section 1927 Sanctions:**

Under 28 U.S.C. § 1927, sanctions may be imposed against an attorney who

"so multiplies the proceedings in any case unreasonably and vexatiously."  In

order to impose sanctions under § 1927, the court must find "evidence of bad faith,

improper motive, or reckless disregard of the duty owed to the court."  *Gonzalez v.*

*Fresenius Medical Care North America*, 689 F.3d 470, 479 (5th Cir. 2012)

(quoting *Edwards v. General Motors Corp.* 153 F.3d 242, 246 (5th Cir. 1998)).

The court must make detailed factual findings that the actions of counsel in

multiplying the proceedings were both unreasonable and vexatious, the latter of

which requires a showing of improper purpose.  *F.D.I.C. v. Calhoun,* 34 F.3d

1291, 1297, 1300-1301 (5th Cir. 1994)*; F.D.I.C. v. Conner*, 20 F.3d 1376, 1384 (5th

Cir. 1994).  However, "when an attorney's conduct is so obviously unreasonable

that a court can infer an 'improper purpose' from the fact that the attorney

persisted in it, it is unnecessary for the court to explain at length why the

vexatiousness prong has been met." *Ratliff v. Stewart*, 508 F.3d 225, 234 (5th Cir.

2007).  As the *Ratliff* court explained:

> 'Improper purpose' does not necessarily refer to bad faith or intent to
> harass.  Vexation implies something broader than that.  To 'vex' is
> defined, among others things, as 'to bring trouble or distress to,' 'to
> subject to mental suffering,' or 'to irritate or annoy,' as well as 'to
> tease or torment.'  Webster's Third New International Dictionary of
> the English Language 2548 (1981).  Consistent with this, in *Calhoun*
> we did not hold that the only way to establish an 'improper purpose'
> is by showing bad faith.  Indeed, any 'reckless disregard of the duty
> owed to the court' can suffice. *Edwards v. Gen. Motors Corp*., 153

F.3d 242, 246 (5th Cir.1998).

*Id.* at 235 n. 13.

The court's factual findings "must (1) identify sanctionable conduct and distinguish it from the reasons for deciding the case on the merits, (2) link the sanctionable conduct to the size of the sanctions, and (3) differentiate between sanctions awarded under different statutes. *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 526 (5th Cir. 2002); *Cambridge Toxicology Group, Inc. v. Exnicios*, 495 F.3d 169, 180-181 (5th Cir. 2007).

### ANALYSIS AND DISCUSSION

The original complaint filed June 5, 2012 was verified by the affidavits of four[6] of the nine named plaintiffs, who confirmed that they had read the complaint and that all of the allegations of fact within it were true and correct.  (Rec. Doc. 2). Some of those factual allegations, whether true or not, involved non-parties, had nothing to do with the substance of this civil rights lawsuit and were a continuation of the same type of statements and accusations contained in multiple letters sent by plaintiffs' counsel before suit was filed.  (Rec. Docs. 13-16, 13-18). One month later, the defendants filed a Motion to Strike and a Motion to Dismiss

---

[6]     The record contains the verification affidavits of Kane Marceaux, Greg Cormier, Scott Poiencot, and Gabriel Thompson.  (Rec. Doc. 2).

for Failure to State a Claim in which this was pointed out in great detail.  (Rec. Docs. 4-5).

On September 5, 2012, in an expedited Rule 16 status conference, this Court addressed its concern over the tone and tenor of the dialogue between the lawyers and the parties up to that point and the negative impact their actions were having on people who were not parties to this lawsuit.  (Rec. Doc. 25, Ex. 1,2 and 3, Rec. Doc. 63, pp. 4, 12-15).  All were apprised that such conduct would not be tolerated and both sides indicated their understanding.  (Rec. Doc. 63, p. 4).  Plaintiffs' counsel indicated that he intended to amend the complaint to add additional plaintiffs and agreed that could be accomplished in fifteen days.  (Rec. Doc. 63, p. 5-8).  At that time, this Court stated:

> [I]f the plaintiffs are going to amend to, (a) I assume bring in new parties, and, (b) perhaps address some of the things that were raised in your motion that would make them moot, that would save us both a lot of work, and I would strongly hint at them that if they made such an amendment, cleaning up some of that stuff would be in their best interest.  (Id. p.8).

Plaintiffs' counsel confirmed their understanding of the court's message. The defendants were instructed to alert the court upon receipt and review of the amended pleading whether any of the issues raised in the pending motions to strike and to dismiss had been corrected and/or become moot.  Again, plaintiffs'

counsel confirmed their agreement with the Court's protocol.  (Rec. Doc. 63, pp. 9-10).

On September 14, at the initial hearing on the defendants' motion for protective order, and before the amended complaint was filed, despite this Court having discussed its concern over the very subject a week earlier at the status conference, the plaintiffs' counsel (without advance notice to defense counsel) issued two subpoenas that were quashed in their entirety.  (Rec. Doc. 45).  This Court ordered that "neither the subpoena itself, the document(s) attached to the subpoena nor any documents or information responsive to the subpoena" were to be produced to the parties, their attorneys or to third persons.  (Id.)  A separate hearing on the subject matter of the subpoenas was conducted *in camera* in which it was discerned that confidential information which came into the possession of plaintiffs' counsel that did not involve any claims in this litigation was given to the press for no acceptable reason.  (Rec. Doc. 58).[7]

Ten days later, on September 24, 2012, the plaintiffs filed a motion for leave

_____

[7]     It is recommended that the district court review the transcript of this proceeding filed under seal at Rec. Docs. 58 and 60 for more specific details.  Although they initially denied providing the information to the press, plaintiffs' counsel have recently admitted doing so. (Rec. Doc. 58, p. 8 and Doc.129)

to amend/correct the complaint.[8]  The defendants filed a Supplemental Motion to Dismiss (Doc. 64) and re-urged the Motion to Strike (Doc. 65) per the Court's instruction.  Despite the Court's suggestion and the opportunity to amend the original complaint, with knowledge of the arguments made in the defense motions for sanctions, to strike and to dismiss, the plaintiffs nevertheless filed pleadings containing allegations having no bearing upon the subject matter of the litigation, unnecessary and redundant paragraphs, as well as impertinent and scandalous assertions, and claims for relief to which they are not and could not be entitled.

The amended Complaint did not fully and completely replace the original pleading, stating instead that the plaintiffs "amend, revise, restate, and generally supplement" their original complaint (Rec. Doc. 74, p. 2) while re-alleging and re-averring "those relevant portions of" the original complaint.  (Rec. Doc. 74,¶¶. 59, 74, 86, 93, 101, 118, 166, 183, 209, 255, 262, 272, 298, 317).  Although the plaintiffs represented in brief "that *all* of the objectionable allegations identified by Defendants" had been removed by way of the amended pleading, each plaintiff

_____

[8]       The Amended/Corrected Complaint was filed under seal as Doc. 55 because there was confidential information contained within it so a motion for leave to file a revised amended and supplemental Complaint (Doc. 70) was granted (Doc. 73), and the First Amended and Supplemental Complaint that was properly redacted was filed October 10, 2012.  (Doc. 74).

expressly re-alleged and re-averred "relevant portions" of the original complaint without identifying which parts from the original pleading survived and which did not.

At the hearing on the motions to dismiss and to strike, the Court questioned whether the first supplemental and amending complaint was intended to supercede the original complaint in some respects or not.  (Rec. Doc. 83, p. 7).  The response from plaintiffs' counsel was that his "appreciation of the supplemental is that to the extent that it may be inconsistent with allegations contained in the original complaint that was filed, that the supplemental allegations would control."  (See colloquy at Rec. Doc. 83, p. 8-13).  Declining to decide what the plaintiffs believed to be relevant, the Court was left to assume that all of the original complaint was adopted and incorporated by reference in the amended complaint.[9] (Rec. Doc. 77, p. 5).

Recognizing that a motion to strike under Rule 12(f) "is a drastic remedy," which is infrequently granted, only when the allegations are prejudicial to the defendant or immaterial to the lawsuit, this Court struck over 100 paragraphs of

---

[9]      "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985)).  *See also Jones v. Herlin*, 2013 WL 823420 *2 (W.D.La.2013).

the original and amended complaints as redundant, immaterial, impertinent, or
scandalous, as those terms are used in Rule 12(f).  Of that total, 93 of the stricken
paragraphs were in the original pleading and 9 were in the amended complaint.
(Rec. Doc. 77)

Redundant matter consists of allegations that constitute a needless repetition
of other averments in the pleading.  C. Wright & A. Miller, 5C Fed. Prac. &
Proc.3d § 1382.  Immaterial matter is that which has no essential or important
relationship to the claim for relief or the defenses being pleaded.  *Id.* Immateriality
is established by showing that the challenged allegations "can have no possible
bearing upon the subject matter of the litigation."  *Bayou Fleet Partnership, LLC
v. St. Charles Parish*, No. 10–1557, 2011 WL 2680686, at *5 (E.D. La. Jul. 8,
2011).  Impertinent matter consists of statements that do not pertain, and are not
necessary, to the issues in question; while scandalous matter is that which
improperly casts a derogatory light on someone, most typically on a party to the
action.  C. Wright & A. Miller, 5C Fed. Prac. & Proc.3d § 1382.  "The granting of
a motion to strike scandalous matter is aimed, in part, at avoiding prejudice to a
party by preventing a jury from seeing the offensive matter or giving the
allegations any other unnecessary notoriety inasmuch as, once filed, pleadings
generally are public documents and become generally available."  *Id.*

This Court found that the allegations set forth in four articles of the original complaint were scandalous, as that term is used for purposes of Rule 12(f), because they served no purpose other than to cast the LPD in a poor light.  The Court found that the allegations set forth in ¶¶ 55-78, 82-106, 107-121, 147-162, and 242-250 of the original complaint were immaterial as they had no bearing upon the subject matter of the litigation and were unrelated to the events giving rise to any of the plaintiffs' claims.  The Court found that the allegations set forth in three articles of the amended complaint were also immaterial as they were unrelated to the events that led to that particular plaintiffs' claim against his employer and coworkers.  Finally, the Court found that five articles of the amended complaint were impertinent as they had no factual allegations but were comprised of legal argument interpreting a legal decision that is not controlling precedent in this case.

After striking these allegations, the Court evaluated the remaining allegations original and amended complaint under Rule 12(b)(6).  In some instances, particularly in the original complaint, there was a complete absence of a specific claim, by a specific plaintiff, against a specific defendant.  Despite the length of the pleadings, the allegations were insufficient to support the plaintiffs' claims for injunctive relief, § 1985 conspiracy claims, state law claims, claims

-19-

predicated upon alleged violations of the Fourth Amendment, alleged violations of the plaintiffs' due process and equal protection rights under the Fifth and Fourteenth Amendments, and all of those claims were dismissed by the Court. The official capacity claims by the plaintiffs against eleven defendants were dismissed, and the individual capacity claims against eight defendants were dismissed.  Finally, the Court dismissed all claims asserted by six plaintiffs.  (Rec. Doc. 79, 84).

As a consequence of the pleadings filed by the plaintiffs' counsel, *after* the status conference, the undersigned conducted three hearings (Rec. Docs. 40, 49, 76), and drafted two opinions (Rec. Doc. 77, 79), including a Report and Recommendation on the motion to dismiss which was 73 pages in length, essentially doing what the plaintiffs' counsel should have done in drafting and amending the pleadings.  The plaintiffs' pleadings as drafted and filed provoked the filing of eight motions by the defendants.  (Rec. Docs. 4, 5, 13, 18, 19, 61, 64, 65).

The Court could find that, at the time of the filing of the original complaint, based on the actions of plaintiffs' counsel prior to filing this suit combined with the allegations contained in the original complaint, that the original complaint was filed for an "improper purpose."  However, after having given the plaintiffs'

counsel direction at multiple hearings and an opportunity to cure the problems with the complaint, the amendment did not cure anything since plaintiffs' counsel declined to remove any of the allegations that this Court found scandalous, immaterial, and impertinent or amend out claims that had no factual or legal basis thus needlessly increasing the costs of litigation and causing unnecessary delay. Further, considering the actions of plaintiffs' counsel issuing the subpoenas that were ultimately quashed, and that which is set forth in the transcripts found at Rec. Docs. 58 and 60, after having been addressed by this Court a week earlier, constitute "objectively ascertainable circumstances" from which it may be inferred that the original pleading, along with the amendment which did not amend out certain allegations, would harass at least one of the parties.  Therefore, this Court finds there has been a violation of subpart (b)(1) of Rule 11.

In addition, in both the original and amended complaints, there are multiple claims and legal contentions which are unwarranted by existing law and which fail to state viable claims for relief under any objective measure.  In what comes down to a civil rights case brought under 28 U.S.C. § 1983 for which there is ample legal authority from this circuit, the complaint, even after amendment, failed in most respects to comply with that authority.  The Report and Recommendation of this Court illustrates this in great detail and the reasoning is incorporated here.  By

way of example, the plaintiffs' attorneys alleged violations of the Fifth

Amendment to support their claims under § 1983.  However, there are no federal

actors anywhere in the complaint.  The plaintiffs' attorneys claim entitlement to

relief based on a conspiracy under 42 U.S.C. § 1985, yet there are no factual

allegations to ascertain a cause of action under any section of that statute.  The

plaintiffs' attorneys alleged state law negligence claims which are statutorily

barred by Louisiana worker's compensation statutes.

The plaintiffs' attorneys refer to violations of the clients' rights "under the

First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution"

while, in most cases, alleging no facts against a specific defendant which would

support such claims especially under the Fourth, Fifth, and Fourteenth

Amendments.  (Rec. Docs. 1, p. 35; 74, p. 53).  This Court notes these same claims

suffered from the same deficiencies in recent cases filed by these same attorneys in

other districts in this state.  See *Andel v. City of Mandeville,* 2013 WL 5350609 *3

(E.D.La. 2013); *McLin v. Ard,* 2013 WL 5798989 *1 (M.D.La. 2013).

Applying the factors from *Thomas,* the plaintiffs' attorneys had plenty of

time available to prepare the documents; the facts necessary to properly allege the

claims came from the plaintiffs themselves, i.e. adverse employment actions, and

the plausibility of some of the legal views in the documents are not warranted by

existing law or a good faith reason to extend, modify, or reverse existing law. Finally, the pertinent factual and legal issues are not that complex.  Under the facts and circumstances of this case, this Court finds the papers presented by way of the original and amended complaint were not presented after reasonable inquiry and therefore, as the signers of those documents, plaintiffs' counsel are in violation of the provisions of subpart (b)(2) of Rule 11.  This Court declines to make any findings as to subpart (b)(3) of Rule 11, given the violations of subparts (b)(1) and (b)(2).

As to the request for sanctions under 28 U.S.C. § 1927, while the actions and failures to act by plaintiffs' counsel relative to the presentation of the pleadings filed with the court unreasonably multiplied the proceedings, this Court pretermits any discussion of the vexatiousness of the actions of plaintiffs' counsel, *as it pertains to multiplying the proceedings,* in light of its findings pertaining to violations of subpart (b)(1) under Rule 11, and therefore, recommends this aspect of the motion be denied.

Having found that a Rule 11 violation has occurred, the next determination is what sanctions would be "the least severe sanction that furthers the purposes of Rule 11 and is the least severe sanction adequate to such purpose. . .[yet] 'sufficient to deter repetition of [similar] conduct.'"  *Jenkins v. Methodist Hospital*

*of Dallas, Inc.*, 478 F.3d at 265 (quoting *Thomas v. Capital Security Services, Inc.* 836 F.2d at 878 and Fed.R.Civ.P. 11(c)(2) now Rule 11(c)(4)).

According to the Advisory Committee Note,  the Court has discretion to (1) strike the offending paper;  (2) issue an admonition, reprimand or censure; (3) require the attorney to participate in seminars or educational programs; (4) impose a fine payable to the court; (5) refer the matter to disciplinary authorities; and (6) award attorneys' fees and/or expenses to the opposing side.  Fed.R.Civ.P. 11 Advisory Committee's Note, 146 F.R.D. 583, 587–88 (1993); see also *Thomas v. Capital Services, Inc.,* 836 F2d at 877-78*; Traina v. United States,* 911 F.2d 1155, 1158 (5th Cir. 1990); *Bullard v. Chrysler Corp.,* 925 F.Supp 1180, 1190 (E.D.Tx. 1996).

The Advisory Committee Note also indicates the court may consider "whether the improper conduct was willful or negligent;  whether it was part of a pattern of activity or an isolated event;  whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in terms of time and expense; whether the responsible person was trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case;

-24-

[and] what amount is needed to deter similar activity by other litigants." *Id*.;
*Bullard v. Chrysler Corp.,* 925 F.Supp at 1190.

  The filing of the original complaint was willfully done as was the filing of
the amended complaint. Failing to remove the nearly one hundred frivolous,
immaterial, impertinent and scandalous allegations by way of the amended
complaint, after being cautioned to do so by the Court, was also willfully done
resulting in significant amounts of the court's time and resources being devoted to
removing allegations which did not belong in this litigation. While there is some
evidence that the allegations could have been intended to cause injury to persons
who are not parties to the litigation, this factor is not determinative of the sanction
to be imposed. This Court has found multiple cases in which one or both of the
attorneys for the plaintiffs have made similar allegations that the defendants,
including entities which cannot be sued under § 1983, violated multiple
amendments to the Constitution with no factual support for those contentions
requiring motions to dismiss to be brought under Fed.R.Civ.P. 12(b)(6).[10]  Thus,
the allegations in this case are not a single isolated event. Both attorneys are

---

   [10] *Andel v. City of Mandeville,* 2013 WL 5350609 (E.D.La. 2013); *McLin v. Ard,* 2013 WL 5798989 (M.D.La. 2013); *Patin v. Bellard,* 6:10-cv-650 (Rec. Doc. 1, 24); *Day et al v. Children & Family Services, et al,* 2:12-cv-2844 (Rec. Doc. 1, 8); *Beary v. State of Louisiana,* 3:04-cv-348, Rec. Docs. 1, 29, 39); *Wilfong et al v. State of Louisiana Board of Ethics, et al,* 3:11-cv-0128 (Rec. Docs. 1-1, 5, 23, 25).

trained in the law and yet both persisted in pursuing claims that had no legal or
factual basis which has resulted in significant expense to the taxpayers of the City
of Lafayette who ultimately provide the funding for the defense of this case.

According to the Supreme Court, "the central purpose of Rule 11 is to deter
baseless filings in district court and thus, . . .streamline the administration and
procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384,
393 (1990). The Advisory Committee Note states "[t]he rule continues to require
litigants to 'stop and think' before initially making legal or factual contentions. It
also, however, emphasizes the duty of candor by subjecting litigants to potential
sanctions for insisting upon a position after it is no longer tenable . . ."
Fed.R.Civ.P. 11 *Advisory Committee Note,* 146 F.R.D. 583, 584-85 (1993).

Putting aside the hours spent in writing briefs and opinions, there were in
excess of 10 hours spent in hearings dealing with the allegations raised in the
pleadings. The Court recommends that a fine of $2,500.00 be imposed on counsel
for the plaintiff, jointly, to deter them from filing similar pleadings in the future
which require judicial resources to be needlessly expended. Similarly, the Court
recommends that, for the violation of Rule 11(b)(1), a like amount of $2,500.00 be
assessed as reimbursement of fees and expenses to the defendants who were
represented by multiple attorneys at each hearing. This Court finds that such an

-26-

assessment is a reasonable amount that does not represent even 25% of the amount of fees and expenses actually incurred by the defendants as of September 20, 2012.[11]

Finally, given the pattern and history of the filings that have been made in this and other cases, and noting that there are other cases pending in this district that involve similar allegations, this Court recommends an admonishment and reprimand be issued by the district court to satisfy Rule 11's purpose of deterring future violations.

## *RECOMMENDATIONS*

For the foregoing reasons, and based on the record, the applicable law, and the arguments of the parties, it is the recommendation of the undersigned that the defendants' request for attorney fees and expenses made a part of the Motion for Protective Order/Motion to Strike (Rec. Doc. 61) be DENIED.

It is also the recommendation of the undersigned that the Motion for Sanctions under Rule 11 (Rec. Doc. 13) be GRANTED, and that sanctions under 28 U.S.C. § 1927 be DENIED.  More specifically, it is the recommendation of the undersigned that plaintiff's counsel, Christopher Alexander and Stephen Spring, be fined jointly in the amount of $2500.00 to be payable to the court, be ordered to

---

[11]     Rec. Doc. 50.

-27-

jointly reimburse the defendants $2500.00 and to be admonished against filing any future pleadings that violate any provision of Rule 11(b) and reprimanded for what was filed in this case in the original and amended complaint.

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of court.  A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglas v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana this 9th day of January 2014.

_____
Patrick J. Hanna
United States Magistrate Judge

-28-