5/8/2012

```
 1           MUNICIPAL FIRE AND POLICE CIVIL SERVICE
                         PUBLIC HEARING
 2
     * * * * * * * * * * * * * * * * * * * * * * * *
 3
     EDWARD MCLEAN
 4

 5   VERSUS

 6
     LAFAYETTE CONSOLIDATED GOVERNMENT (POLICE)
 7
     *********************************************************
 8

 9
                       APPEAL OF TERMINATION
10

11
         The public meeting of the Municipal Fire and
12
     Police Civil Service Board was held on Tuesday, May 8,
13
     2012, at the Municipal Civil Service Office, 705 West
14
     University Avenue, Lafayette, Louisiana, commencing at
15
     9:35 A.M.
16

17

18

19

20

21

22

23

24

25
```

EXHIBIT A

ORIGINAL

Page 1

5/8/2012

```
 1                      APPEARANCES

 2   BOARD:

 3
     MR. JASON BOUDREAUX, CHAIRMAN
 4   MR. RICHARD CHAPPUIS
     MR. SCOTT POIENCOT
 5   MR. DWIGHT PRUDHOMME

 6   MS. FREDRIKA ARNAUD, BOARD SECRETARY

 7

 8   REPRESENTING THE LAFAYETTE CITY-PARISH CONSOLIDATED
     GOVERNMENT:
 9
          MR. MICHAEL CORRY
10        ATTORNEY AT LAW
          BRINEY FORET CORRY
11        413 TRAVIS STREET
          LAFAYETTE, LOUISIANA   70503
12

13
     REPRESENTING EDWARD MCLEAN:
14
          MS. OLITA MAGEE
15        ATTORNEY AT LAW
          100 EAST VERMILION, SUITE 204
16        LAFAYETTE, LOUISIANA   70501

17

18   CO-COUNSEL REPRESENTING EDWARD MCLEAN:

19        MR. MURPHY BELL
          ATTORNEY AT LAW
20        660 NORTH FOSTER DRIVE, SUITE 214-A
          BATON ROUGE, LOUISIANA   70806
21

22

23

24

25
                                                    Page 2
```

```
 1          My response would direct the Board's attention to
 2          Exhibit C, our original brief, that shows that in
 3          fact Corporal McLean, on February 9th, 2011, was
 4          advised by Captain Ned Ewing of his
 5          predetermination hearing.  I would also direct
 6          the Board's -- and that was well within the 60
 7          days.  I would also direct the Board's attention
 8          to page four of our brief, where we cite the
 9          United States Supreme Court case of Cleveland
10          Board of Education versus Loudermill.  And, in
11          that, Loudermill referred to that opportunity to
12          be heard as a pre-termination hearing,
13          predetermination hearing, pre-suspension, pre-
14          demotion -- it is just the opportunity to be
15          heard.  Now, with regards to the issue of the
16          document that was attached to the brief of
17          Officer McLean, I would call Sergeant Gremillion
18          to testify.
19          SERGEANT KEITH GREMILLION, after having been duly
20          sworn, was examined and did testify as follows:
21   EXAMINATION BY MR. CORRY:
22   Q      Sergeant Gremillion, can you start off by giving
23          us your full name and business address for the
24          record?
25   A      Sergeant Keith Gremillion, Lafayette Police
```

CYNDA STIRLING WENTWORTH                                210 WATERFORD DRIVE
CERTIFIED COURT REPORTER              337.984.8102      LAFAYETTE, LA 70503

| | | |
|---|---|---|
| 1 | | Department, 900 East University Avenue. |
| 2 | Q | How long have you been with the police |
| 3 | | department? |
| 4 | A | 21 years. |
| 5 | Q | And what is your current position? |
| 6 | A | Sergeant in Internal Affairs. |
| 7 | Q | And how long have you been in that position? |
| 8 | A | Since 2006. |
| 9 | Q | So you were the sergeant in Internal Affairs |
| 10 | | during the Ed McLean investigation? |
| 11 | A | Yes. |
| 12 | Q | And as the sergeant in Internal Affairs, what is |
| 13 | | your role or duties, generally, generally and |
| 14 | | briefly? |
| 15 | A | Basically what I do is the day-to-day jobs, you |
| 16 | | know, assigning cases, dealing with lawsuits, |
| 17 | | attorneys and stuff like that. |
| 18 | Q | In the Ed McLean matter, what type of |
| 19 | | investigation was ordered by the Chief? |
| 20 | A | An administrative investigation. |
| 21 | Q | And what is the difference between an |
| 22 | | administrative investigation and a shift level |
| 23 | | investigation? |
| 24 | A | Well, it's a shift level and -- an administrative |
| 25 | | investigation is an investigation. But the shift |

Page 19

5/8/2012

| | | |
|---|---|---|
| 1 | | level investigation would go to the lieutenant of |
| 2 | | a shift, as where the administrative |
| 3 | | investigation would come to Internal Affairs. |
| 4 | Q | Is it safe to clarify for the Board's benefit |
| 5 | | that a shift level investigation is kind of a low |
| 6 | | investigation, maybe not a serious offense, and |
| 7 | | an administrative investigation is something more |
| 8 | | serious that entails Internal Affairs?  And if I |
| 9 | | need to get Chief Craft to explain it, I will be |
| 10 | | happy to do that.  If it is not something -- |
| 11 | A | It's more of a major policy violation, would be |
| 12 | | something that's handled by Internal Affairs. |
| 13 | Q | When we received the brief from counsel for |
| 14 | | Officer McLean dated February 1st, 2012, attached |
| 15 | | to it was an Exhibit A.  Did you receive a copy |
| 16 | | of that brief? |
| 17 | A | Yes. |
| 18 | Q | And did you see Exhibit A attached thereto? |
| 19 | A | Yes.  I did. |
| 20 | Q | Is this a memorandum, a form memorandum that is |
| 21 | | used in Internal Affairs? |
| 22 | A | Yes. |
| 23 | Q | Was that memorandum in any way related to the Ed |
| 24 | | McLean matter? |
| 25 | A | No.  It was not. |

Page 20

| | | |
|---|---|---|
| 1 | Q | And why wasn't it? |
| 2 | A | Because it was not a shift level investigation. |
| 3 | Q | And when you received a copy of that Exhibit A, |
| 4 | | did you do some investigation to determine how |
| 5 | | Officer McLean may have obtained a copy of it |
| 6 | | since it was not part of Internal Affair's |
| 7 | | investigation in this case? |
| 8 | A | Yes.  I did.  I went and looked at some recent |
| 9 | | shift level investigations.  And I located that |
| 10 | | particular form, the original. |
| 11 | Q | And did you determine that the submission, |
| 12 | | Exhibit A, attached to Officer McLean's brief had |
| 13 | | actually been taken out of another file and |
| 14 | | whited out? |
| 15 | A | Yes.  It had. |
| 16 | Q | And used in this matter for whatever reason? |
| 17 | A | Yes. |
| 18 | Q | Do you have any explanation as to how that |
| 19 | | memorandum was taken out of the file and brought |
| 20 | | before this Board's attention with it being |
| 21 | | whited out? |
| 22 | A | No.  I do not. |
| 23 | Q | It was not part of this investigation? |
| 24 | A | Correct.  And that actual investigation, that |
| 25 | | officer sustained discipline.  And that file -- |

Page 21

5/8/2012

```
 1      he did not appeal it.  So that file was in our
 2      office.
 3              MR. CORRY:
 4                  We would like to know where they got
 5              it from and why it was used in this matter,
 6              because it is not part of the IA file.
 7              CHAIRMAN BOUDREAUX:
 8                  You are the police department.
 9              Investigate it.
10              MR. CORRY:
11                  Do you know where it came from?
12              MS. MAGEE:
13                  As far as I'm concerned, it is
14              attorney/client privilege.  It was provided
15              to me by a client.  A client.
16              SERGEANT GREMILLION:
17                  Well, I just have to say that file
18              came from my office and it went to certain
19              individuals in the department who
20              investigated it, and that this form should
21              have never been released.  And it was
22              whited out when it was given, which is a
23              serious breach of integrity.
24              CHAIRMAN BOUDREAUX:
25                  You are talking about Exhibit A you
```

Page 22

```
 1                    R E P O R T E R ' S   P A G E
 2
 3          I, Bernie Trappey, Certified Court Reporter, in
 4   and for the State of Louisiana, the officer, as
 5   defined in Rule 28 of the Federal Rules of Civil
 6   Procedure and/or Article 1434(b) of the Louisiana Code
 7   of Civil Procedure, before whom this sworn testimony
 8   was taken, do hereby state on the record:
 9          That due to the interaction in the spontaneous
10   discourse of this proceeding, dashes (--) have been
11   used to indicate pauses, changes in thought, and/or
12   talkovers; that same is the proper method for a court
13   reporter's transcription of proceeding; that the
14   dashes (--) do not indicate that words or phrases have
15   been left out of this transcript; and that any words
16   and/or names which could not be verified through
17   reference material have been denoted with the phrase
18   "(phonetic)."
19
20
21                                    BERNIE TRAPPEY, CCR
22
23
24
25
```