IN   THE  CIVIL DISTRICT   COURT

OF   THE   FIFTEENTH   JUDICIAL   DISTRICT

IN   AND   FOR   THE   PARISH  OF  LAFAYETTE

STATE   OF   LOUISIANA

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

KYLE MARCEAUX

VERSUS                              CIVIL DOCKET   NO.

LAFAYETTE PARISH                           20122899
CONSOLIDATED GOVERNMENT

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

The above-entitled case came up as a

Rule at the Lafayette Parish Courthouse,

Lafayette, Louisiana, before the

Honorable Judge, Kristian J. Earles,

on Tuesday, May 29, 2012.

APPEARANCES:

FOR THE PLAINTIFF:

Mr. Stephen Spring
Attorney at Law
733 East Airport Avenue, Suite 104
Baton Rouge, Louisiana 70806

FOR THE DEFENDANT:

Mr. Michael Corry
Attorney at Law
413 Travis Street
Lafayette, Louisiana 70503

EXHIBIT

C

1   OPEN COURT

2   HONORABLE JUDGE KRISTIAN EARLES

3   TUESDAY, MAY 29, 2012

4   RULE

5

6                    * * * * *

7

8        BY THE COURT:

9             Good morning.  We can go ahead and

10       take up Marceaux versus Lafayette

11       Consolidated Government.

12            Mr. Spring.

13       BY MR. SPRING:

14            Good morning, Your Honor.  We'd like

15       to call to the stand -- (interrupted)

16       BY MR. CORRY:

17            Judge, before we get started I'd like

18       to make some offerings on the record.

19       BY THE COURT:

20            Sure.

21       BY MR. CORRY:

22            Judge, Michael Corry here on behalf

23       of Lafayette Consolidated Government,

24       Police Chief Jim Craft, Major Jackie

25       Alfred, Chief Administrative Officer, Dee

26       Stanley.

27            Judge, first I would like to make

28       sure that we offer, file and introduce all

29       pleadings that were filed with the Clerk

30       on May 25th, 2012 which consists of our

31       answer to the petition for temporary

32       restraining order, the Motion to Dissolve

1   the temporary restraining order, the

2   Motion to Dismiss the petition for

3   preliminary injunction, request for

4   damages, attorney fees and cost for

5   wrongful issue, the opposition to the

6   temporary restraining order and

7   preliminary injunction with memorandum and

8   support, the Motion to Dismiss petition

9   for preliminary injunction and request for

10  damages, attorney fees and costs, the

11  Motion to Challenge the deficiency of the

12  bond with the incorporated memorandum, the

13  memorandum in support of the declinatory

14  exception of lack of subject matter

15  jurisdiction and dilatory exception of

16  prematurity, along with all memos,

17  exhibits and attachments, as well as the

18  Motion for instant subpoena.

19       It's my understanding that Your Honor

20  has not signed those orders because they

21  were filed late Friday, and it's also my

22  understanding that Your Honor has limited

23  the scope of this hearing to one

24  particular issue, and that those matters

25  would be dealt with at a later date if

26  need be.

27  **BY THE COURT:**

28       Let those matters be admitted into

29  the record.

30  **BY MR. SPRING:**

31       Your Honor, we'd like to offer, file

32  and introduce the entirety of the record

1   including the memorandum that was

2   submitted early this morning in addition

3   to the request for instanta subpoena, plus

4   the filings of Friday which include the

5   counts of retaliation allegations in the

6   Police Officers Bill of Rights, and I

7   believe another request for instanta

8   subpoena.

9   **BY THE COURT:**

10       Let them be admitted.

11   **BY MR. CORRY:**

12       Judge, in addition we would ask that

13   the petition for TRO with notice of

14   preliminary injunction filed by the

15   plaintiff be dismissed at this time with

16   prejudice.  And the reason being, Judge,

17   is pursuant to Louisiana Code of Civil

18   Procedure Article 3604, it shall state -

19   the order shall state why the order was

20   granted without notice and hearing.  The

21   order was signed, it's my understanding,

22   by another Judge in your absence, and the

23   order specifically prays for, filed by the

24   plaintiffs, that we be given a hearing

25   prior to that TRO being signed.

26       In addition, Judge, we were not given

27   proper notice because the plaintiffs, I

28   guess in an effort to call the media in,

29   hand-walked the pleadings they filed with

30   the Court and simply sent it to us via US

31   post, which means we got it the next day.

32   When we were served - when my clients, the

1   government and the three (3) individuals
2   were served, they were served with the
3   order already being signed.  So pursuant
4   to the Code of Civil Procedure that's not
5   proper, we weren't given proper notice so
6   we ask that it be dismissed.
7        In addition, Judge, the pleadings
8   filed by these plaintiffs must, pursuant
9   to 360381, must support the pleading, must
10  support the petition with facts or
11  affidavits that support the allegations
12  made therein.  There are no facts and the
13  affidavit that was submitted is simply a
14  verification saying, "Yeah, I read the
15  petition.  I agree with it."  There are no
16  facts.  So for that reason the TRO should
17  not have been signed and we would ask that
18  it be dismissed as well.  We would ask
19  that the order be recalled on the first
20  point as well as the second.  Again, we
21  weren't given proper notice; we get served
22  with a pleading after the order is already
23  signed.
24       Judge, in addition, this Court lacks
25  subject matter jurisdiction for the
26  reasons we advise.  This is an employee
27  related matter.  Civil Service, pursuant
28  to the Louisiana constitution, has set
29  forth in Article 10, Section 12, that the
30  Civil Service Board is the entity that
31  hears employment related matters, which is
32  clearly what we have here.  This is simply

1  an attempt to stop an investigation.  They

2  claim that there's irreparable harm,

3  damage, injury or loss without any facts

4  to support that; that by having an

5  investigation go forward somehow they're

6  going to be damaged, they'll have some

7  injury or loss.  That's what they're

8  trying to do here; they're trying to stop

9  an investigation where not only --

10 (interrupted)

11 BY THE COURT:

12     Okay, I understand.

13 BY MR. CORRY:

14     Let me go forward.  In addition,

15 Judge, we think it's premature to have

16 this TRO before Your Honor and we would

17 ask that the order be recalled on the

18 subject matter as well as the prematurity

19 because, again, it goes to the Civil

20 Service Board.  Once the Civil Service

21 Board hears an appeal, if there's even

22 discipline -- I mean, nobody knows if

23 there's going to be discipline until the

24 investigation is complete, and once it's

25 complete then whatever comes out of that

26 they have the right to appeal that to the

27 Civil Service Board, the Civil Service

28 Board has a hearing and then perhaps it's

29 appealed.

30 BY THE COURT:

31     Okay, I'm going to stop you because

32 you're telling me things I already know.

KATHLEEN D. MATHEWS, C.C.R.
POST OFFICE BOX 1980, CROWLEY, LOUISIANA 70527
OFFICIAL, 16TH JUDICIAL DISTRICT COURT
PHONE: (337) 788-8811

Page 6

1   BY MR. CORRY:

2        Okay.

3   BY THE COURT:

4        I'm denying your Motion because I do

5   find having read the petition -- Judge

6   Clause signed it on my behalf after me

7   reviewing the petition.  And the petition

8   does set out basic facts which if

9   substantiated could lead to irreparable

10  harm.  And in our conference I informed

11  you of the specific issue which is any

12  threats or things such as that that

13  concern me.  The rest of the stuff, I

14  certainly agree with you that it's up to

15  the Civil Service Board and there's appeal

16  rights based on what the Civil Service

17  Board does at their hearings.  And I'm not

18  interfering with what the Civil Service

19  Board does.

20       So at this point the only thing I'm

21  here to decide is whether there's some

22  issues that would cause somebody's safety

23  to be in jeopardy.

24  BY MR. CORRY:

25       Okay.  Judge, along with that, you

26  know, I've seen the news, I've seen the

27  newspaper.  I haven't been provided, but

28  if they have tapes and/or transcripts and

29  they intend to use them in this hearing

30  this morning to question any of these

31  witnesses, we would ask right now that

32  Your Honor order a complete production of

1    any and all tapes taken by any of these

2    five (5) plaintiffs along with any

3    transcripts there may be so that we have

4    an opportunity to review those before

5    these officers are questioned.

6    BY THE COURT:

7        Do you have any tapes or recordings

8    of any of this stuff?

9    BY MR. SPRING:

10       I do have tapes, Your Honor; however,

11   with respect to that request, the purpose

12   of the tapes is solely prior inconsistent

13   statements so that in the event that a

14   witness does not answer truthfully, then

15   it will call into question the use of the

16   tapes if they do answer or perhaps they

17   don't remember.  I have no objection to

18   giving the example there as a recording

19   that's pertinent to the issue of officer

20   safety with Lee Gabriel Thompson and

21   defendant Alfred on 4/19 of this year.

22   I'd be more than happy to give them a copy

23   of it to review.  If you want to give them

24   time to review it it might facilitate and

25   expedite the hearing, because I intend to

26   call Major Alfred.

27   BY THE COURT:

28       So that's the only one that you have

29   that regards officer safety --

30   (interrupted)

31   BY MR. SPRING:

32       Well, I have other tapes, Your Honor,

1    but they -- (interrupted)

2    BY THE COURT:

3         Pertain to the other issues?

4    BY MR. SPRING:

5         For purposes of the direct allegation

6    that goes directly to the heart of the

7    matter -- (interrupted)

8    BY THE COURT:

9         Do y'all have the ability to listen?

10   What is it, on a CD?

11   BY MR. SPRING:

12        Yes, Your Honor.

13   BY THE COURT:

14        Do y'all have -- (interrupted)

15   BY MR. CORRY:

16        We can find it.  We'll get the

17   ability to listen to it, Judge.

18   BY THE COURT:

19        I think it would be pertinent for me

20   to take a little recess and let you do

21   that, hear that prior to.  Maybe just ten

22   (10) or fifteen (15) minutes.  I don't

23   know how long the conversation is, but

24   I'll let you review that first before any

25   witnesses testify.

26   BY MR. CORRY:

27        And, Judge, are you ordering

28   production of all those tapes?

29   BY THE COURT:

30        No, I'm ordering the ones pertinent

31   for today's testimony.  Regular discovery

32   will apply to everything else.

1  BY MR. CORRY:

2      All right.

3          BREAK - 9:43 A.M.

4          RESUMED - 10:16 A.M.

5  BY THE COURT:

6      All right, we can go back on the

7  record in the civil matter of Marceaux

8  versus Lafayette Consolidated Government.

9      You had an opportunity to review --

10 (interrupted)

11 BY MR. CORRY:

12     I have, Judge, and we would ask that

13 the tape be authenticated by the person

14 that made the tape.  And if it can be

15 authenticated we have no objection to Your

16 Honor listening to the entire tape.

17 BY MR. SPRING:

18     That's fine, Your Honor.  For the

19 limited purpose of authentication we would

20 like to call Officer Gabriel Thompson to

21 the stand.

22 BY THE COURT:

23     Okay.

24 WHEREUPON,

25     OFFICER GABRIEL THOMPSON,

26 was called upon as a witness, and after having been

27 first duly sworn, was examined and testified as

28 follows:

29 DIRECT EXAMINATION BY MR. SPRING:

30 Q.  Would you state your name and business address

31 for the Court, please?

32 BY THE WITNESS:

1   A.   Gabriel Thompson, and my business address is

2   900 East University Avenue, Lafayette, Louisiana

3   with the Lafayette Police Department.

4   Q.   And what is your occupation?

5   A.   I am a lieutenant in the patrol division.

6   Q.   And how long have you been with the Police

7   Department?

8   A.   Twenty-two (22) years.

9   Q.   I'd like to direct your attention to April 19th

10  of this year.  Did you have occasion to conduct a

11  discussion with Major George Jackie Alfred?

12  A.   Yes, sir.

13  Q.   Can you tell me what time of the day that was,

14  morning or afternoon?

15  A.   It was in the morning.

16  Q.   And during that conversation did you record

17  that conversation?

18  A.   Yes, sir, I did.

19  Q.   Did you use a device -- What device did you

20  use?

21  A.   A digital recorder.

22  Q.   Can you be more specific?

23  A.   It's a black digital recorder, just a basic

24  digital -- (interrupted)

25  Q.   A Memo-pen?

26  A.   Yes, sir, Memo-pen.

27  Q.   And is that device capable of recording both

28  sides of the conversation?

29  A.   Yes, sir, it is.

30  Q.   And on that date did you record the entirety

31  of the conversation?

32  A.   Yes, sir.

1  Q.   So when you started the tape recording until

2  the termination of the conversation did you stop it

3  in any way?

4  A.   Yes, sir, I did.

5  Q.   No, during the conversation?

6  A.   Oh, during the conversation; no, sir.

7  Q.   From the beginning to the end did you stop the

8  recorder at any time?

9  A.   No, sir.

10  Q.   So the recording that was made is the entirety

11  of the conversation?

12  A.   That is correct.

13  Q.   Now, with respect to the CD that's been

14  produced, has that conversation been altered,

15  edited or in anyway enhanced or any modification of

16  any kind -- (interrupted)

17          **BY MR. CORRY:**

18              Judge, I would just enter an

19          objection.  I'm not sure how he can answer

20          that question if it hadn't been played.  I

21          think the entirety of the conversation has

22          to be played for him to authenticate it.

23          **BY THE COURT:**

24              Well, I'll let you lay a little more

25          foundation.  I don't know who made this

26          CD.  I know he made the recording on the

27          pen, but how did it get transferred and so

28          forth.

29          **BY MR. CORRY:**

30              Okay.

31  **BY MR. SPRING - CONTINUED:**

32  Q.   The copy that's on there, is the copy complete

1   and the entirety of the conversation; is that

2   correct?

3   **BY THE WITNESS:**

4   A.   Yes, sir.

5   Q.   And you've listened to this?

6   A.   Yes, sir, I have.

7   Q.   Is this the entirety of the conversation --

8   (interrupted)

9   A.   Yes, sir.

10   Q.   -- that you had with Major Alfred on April 19th

11   of 2012?

12   A.   Yes, sir.

13              **BY THE COURT:**

14                  Do you withdraw your objection?

15           **BY MR. CORRY:**

16                  No, Judge.

17           **BY THE COURT:**

18                  Overruled.

19           **BY MR. SPRING:**

20                  Do you want me to play the tape, Your

21           Honor?

22           **BY THE COURT:**

23                  Do y'all have a means of playing it

24           in -- (interrupted)

25           **BY MR. SPRING:**

26                  If there's no objection I'd like to

27           offer, introduce and file into the record

28           -- (interrupted)

29           **BY MR. CORRY:**

30                  Judge, I'd like an opportunity to

31           question him.

32              **BY THE COURT:**

1        Yeah, go ahead.

2   **THE WITNESS WAS TENDERED.**

3   **CROSS EXAMINATION BY MR. CORRY:**

4   Q.  Officer Thompson, did Major Alfred know that

5   you were recording his conversation?

6   **BY THE WITNESS:**

7   A.  No, sir, he did not.

8   Q.  Is it a practice of your's to record

9   conversations with Major Alfred?

10  A.  No, sir.

11  Q.  What was the purpose of recording this

12  conversation with Major Alfred?

13  A.  On that particular morning, sir, there had

14  been several issues going on at the Police

15  Department, and just to protect myself in having

16  the conversation I opted to record that

17  conversation.

18  Q.  And he didn't know?

19  A.  No, sir, he did not.

20  Q.  Who else in the chain of command knew that you

21  were recording Major Alfred?

22  A.  Noone, sir.

23  Q.  Was anybody else present?

24  A.  No, sir.

25  Q.  How did the conversation get from your

26  microphone or from your dictation microphone - you

27  said a Memo-pen.  How did it get from that device

28  to this CD and Stephen?

29      **BY MR. CORRY:**

30          You were holding up a CD; is this the

31          only copy or is there a separate copy.

32      **BY MR. SPRING:**

1              Well, that's an identical copy of

2          this that I have.

3    BY MR. CORRY - CONTINUED:

4    Q.   How did it get to the CD?

5    BY THE WITNESS:

6    A.   I don't know, sir, because it's not my pen.

7    Q.   Okay, so it wasn't your recording device?

8    A.   That's correct.

9    Q.   Whose recording device was it?

10   A.   Officer Scott Pousson.

11   Q.   So Officer Scott Pousson.  Is Officer Scott

12   Pousson within your chain?

13   A.   Yes, sir, he is.

14   Q.   What is your rank?

15   A.   Lieutenant.

16   Q.   And what is Officer Pousson's?

17   A.   Corporal.

18   Q.   Corporal.  And Officer Pousson is a member of

19   the Lafayette Fire and Police Civil Service Board?

20   A.   Yes, sir, he is.

21   Q.   Did Officer Pousson request that you record

22   Major Alfred?

23   A.   No, sir.

24   Q.   Who requested that you record him?

25   A.   Noone did, sir.

26   Q.   Why did you use Officer Pousson's Memo-pen?

27   A.   Because I don't have a digital recorder.

28   Q.   And how did you get that Memo-pen?

29   A.   I got it from Officer Pousson.

30   Q.   You asked him for it?

31   A.   Yes, sir.

32   Q.   Did you tell him the purpose that you were

1    using it?

2    A.   No, sir, I did not.

3    Q.   Let me go back to my original question.  After

4    you finished the recording on April 19th, 2012 where

5    you didn't inform your Major that you were

6    recording this conversation, what did you do with

7    the Memo-pen?

8    A.   I returned it to Officer Pousson.

9    Q.   And what did he do with it?

10   A.   That, you would have to ask him, sir.  I don't

11   know.

12   Q.   Okay.  So you don't have any idea that what's

13   on this tape is something that you recorded or

14   something that he recorded?

15   A.   No, sir, I had the opportunity to review the

16   disc.

17              **BY MR. CORRY:**

18                   Judge, I think the Court needs to

19              hear the entire disc before it can make a

20              determination.

21              **BY THE COURT:**

22                   I agree.

23              **BY MR. CORRY:**

24                   Okay.

25              **BY THE COURT:**

26                   Do y'all have a method of playing it?

27                   You can go ahead and step down now.

28              You can step down and we'll call you back

29              up again.

30              **BY MR. SPRING:**

31                   Your Honor, I can call Officer

32              Pousson to connect the dots if you want.

1        BY THE COURT:

2           No, he's reviewed the tape and I'm

3        satisfied that what he heard is what he

4        recorded.

5        BY MR. CORRY:

6           It's about seventeen (17) minutes,

7        Judge.

8    WHEREUPON, RECORDED CD WAS PLAYED IN OPEN

9  COURT AND INTRODUCED INTO THE RECORD.

10        BY THE COURT:

11           You're going to offer your copy into

12        the record?

13        BY MR. SPRING:

14           Yes, sir.

15        BY MR. CORRY:

16           No objection.

17        BY THE COURT:

18           Let it be admitted.

19  CROSS EXAMINATION BY MR. CORRY - CONTINUED:

20  Q.  Officer Thompson, did you read Major Alfred's

21  Police Officers Bill of Rights before you recorded

22  it?

23  BY THE WITNESS:

24  A.  No, sir, I did not.

25  Q.  Was that the conversation?

26  A.  Yes, sir.

27  Q.  In it's entirety?

28  A.  Yes, sir.

29  Q.  Is that the way it was on the recorder when

30  you gave it to Officer Pousson?

31  A.  Yes, sir.

32        BY MR. CORRY:

1          I don't have any further questions.

2          Judge, I would like an opportunity to

3     question Officer Pousson as to how it got

4     from the recorder to the disc.

5     **BY THE COURT:**

6          Sure.  Mr. Spring, do you have any

7     further questions?

8     **BY MR. SPRING:**

9          Not at this time with respect to

10    authentication of the tape, Your Honor.

11    **THE WITNESS WAS EXCUSED.**

12          **BY THE COURT:**

13          Okay, call your next witness.

14    WHEREUPON,

15          **OFFICER SCOTT POUSSON,**

16    was called upon as a witness, and after having been

17    first duly sworn, was examined and testified as

18    follows:

19    **DIRECT EXAMINATION BY MR. SPRING:**

20    Q.   Officer Pousson, can you state your full name

21    and business address, please?

22    **BY THE WITNESS:**

23    A.   My name is Officer Scott Pousson, 900 East

24    University Avenue, Lafayette, Louisiana.

25    Q.   And you're a police officer?

26    A.   Yes, sir, I am.

27    Q.   How long have you been a police officer?

28    A.   For fourteen (14) years.

29    Q.   And you've heard the testimony of Gabe

30    Thompson relative to borrowing a Memo-pen from you?

31    A.   Yes, sir.

32    Q.   Can you describe the pen to us, please?

1    A.   (Witness shows pen to Court and counsel.)

2    Q.   And that's a digital recorder?

3    A.   Yes, sir.

4    Q.   And you've heard his testimony regarding the

5    conversations now reduced and offered into evidence

6    on a CD?

7    A.   Yes, sir.

8    Q.   Did you have occasion to receive that pen from

9    Officer Thompson?

10   A.   Yes, sir.

11   Q.   And when you received that pen into your

12   custody what did you do?

13   A.   I burned it to a disc and held it for safe

14   keeping.

15   Q.   And you've heard the tape recording and you

16   reviewed that tape recording; is that correct?

17   A.   Yes, sir.

18   Q.   And you heard the tape recording in Court

19   today being played?

20   A.   Yes, sir.

21   Q.   And that is the identical copy of the entirety

22   of the conversation which was provided to you by

23   Officer Thompson; is that correct?

24   A.   Yes, sir.

25        BY MR. SPRING:

26             I tender the witness, Your Honor.

27        BY THE COURT:

28             Okay.

29   THE WITNESS WAS TENDERED.

30   CROSS EXAMINATION BY MR. CORRY:

31   Q.   Officer Pousson, how long have you been with

32   the Lafayette Police Department?

1    **BY THE WITNESS:**

2    A.   Ten (10) years.

3    Q.   How many conversations prior to this one did

4    you allow your pen to be used to record officers?

5    A.   I've been recording conversations at the

6    Lafayette Police Department for probably since

7    2006.

8    Q.   Is your pen always the recording device that's

9    used by your fellow officers?

10           **BY MR. SPRING:**

11              Your Honor, I'm going to object to

12           the relevance.  I don't know what the

13           relevance of 2006 is -- (interrupted)

14           **BY THE COURT:**

15              Overruled.  I'll let a few questions

16           in as long as we don't get off the

17           subject.

18   **BY MR. CORRY - CONTINUED:**

19   Q.   Is your pen always the one, your recording

20   device, always the one used by your fellow officers

21   when they record conversations with other officers

22   when those other officers don't know they're being

23   recorded?

24   **BY THE WITNESS:**

25   A.   I'm not sure what other recording devices

26   other officers have utilized to record other

27   officers.

28   Q.   Is this the only time that you've allowed your

29   recording device to be used by another officer?

30   A.   I'm not sure.  I'd have to go back and check

31   the files.

32   Q.   What files?

1   A.   The audio files I keep.

2   Q.   The audio files you keep.  And where are those

3   audio files kept?

4   A.   They're stored on a portable hard drive.

5   Q.   Of a Lafayette Consolidated Government

6   computer?

7   A.   No, sir.

8   Q.   Your personal computer?

9   A.   No, sir.

10   Q.   A Lafayette Police Department computer?

11   A.   No, sir.

12   Q.   Whose computer?

13   A.   It's on a portable external hard drive.

14   Q.   And who owns that?

15   A.   I do.

16   Q.   Why did Officer Gabe Thompson use your pen to

17   record Major Alfred?

18           **BY MR. SPRING:**

19               I'm going to object as asked and

20             answered.  He said he didn't have one and

21             he borrowed it from him, Judge.

22           **BY THE COURT:**

23               Overruled.

24   **BY MR. CORRY - CONTINUED:**

25   Q.   Why did he use your pen?

26   **BY THE WITNESS:**

27   A.   Apparently he didn't have one at the time.

28   Q.   Did you ask him to record Major Alfred?

29   A.   No, sir.

30   Q.   You did not?

31   A.   No, sir.

32   Q.   Did you hear Officer Thompson testify he

1   didn't know what you were going to do with the

2   recording after he recorded it?

3   A.   I think so; yes, sir.

4   Q.   Why did you burn it to a CD?

5   A.   Because it was something that needed to be

6   kept.

7   Q.   For what?

8   A.   Apparently it's become a hot topic right now.

9   Q.   I want to know why you kept it.

10   A.   Because it was in my possession.

11   Q.   So you allow your recording device to be used

12   by a fellow officer who doesn't know why he's

13   recording it, you take control of that device and

14   then you download it to a CD?

15          **BY MR. SPRING:**

16              I'm going to object to the form of

17          the question.  He said he didn't know why

18          he was recording it.  Officer Thompson

19          testified he was recording it for his own

20          protection, as I recall.

21          **BY THE COURT:**

22              Sustained.

23   **BY MR. CORRY - CONTINUED:**

24   Q.   Did you take the recording on that pen and

25   download it to your hard drive or to a disc?

26   **BY THE WITNESS:**

27   A.   I'm not understanding the question.

28   Q.   Did you take the recording that was on that

29   pen by Officer Thompson of Major Alfred and

30   download to a CD or to your hard drive or some

31   other device?

32   A.   It's on an external hard drive and disc.

1    Q.   And what did you do with that disc?

2    A.   That disc is in Mr. Spring's possession right

3    now.

4    Q.   When did you give that to Mr. Spring, before

5    or after this lawsuit was filed?

6    A.   I don't recall.

7    Q.   You don't recall.  Did you give a copy of that

8    recording to anyone else other than officer Spring

9    - I mean, excuse me, attorney Spring?

10   A.   I don't believe so.

11   Q.   Huh?

12   A.   I don't believe so.

13   Q.   Are you sure?

14   A.   No, sir, I'm not sure.  That's why I said I

15   don't believe so.

16   Q.   Possibly you gave it to other people?

17   A.   Yes, sir, it is.

18   Q.   Who would the other possibilities be?

19   A.   I'm not sure.

20   Q.   Let me ask you this: you're a Lafayette police

21   officer, correct?

22   A.   Yes, sir.

23   Q.   You're a resource officer?

24   A.   Yes, sir.

25   Q.   And you also serve as one (1) of the five (5)

26   members of the Lafayette Police and Fire Civil

27   Service Board?

28   A.   Yes, sir.

29   Q.   How long have you been in that role?

30   A.   Since August of last year.

31   Q.   And it's your job to be an unbiased judge on

32   that board, correct?

1   A.  Yes, sir.

2   Q.  Was there anything else on that recording

3   device other than the conversation between Gabe

4   Thompson and Major Jackie Alfred when you received

5   it back from Officer Thompson?

6   A.  I'm unsure.  I'm unsure.

7   Q.  Did you give him any recordings on that device

8   when you gave him the pen to use to record Major

9   Alfred?

10   A.  Did I give him any recordings?

11   Q.  Was there any recording on the device?

12   A.  I'm not sure.

13   Q.  Did you read Major Alfred his Police Officer

14   Bill of Rights before that recording was made?

15   A.  No, sir.

16         **BY MR. CORRY:**

17           That's all I have, Judge.

18         **BY THE COURT:**

19           No redirect?

20         **BY MR. SPRING:**

21           Just a couple of questions.

22   **THE WITNESS WAS TENDERED.**

23   **REDIRECT EXAMINATION BY MR. SPRING:**

24   Q.  You said that you've been a member of the

25   Civil Service Board; is that correct?

26   **BY THE WITNESS:**

27   A.  Yes, sir.

28   Q.  It's my understanding there are cases on

29   appeal that have taken - that are still pending a

30   year-and-a-half after being filed; is that correct?

31         **BY MR. CORRY:**

32           Object to relevance, Judge.

1    BY THE WITNESS:

2    A.   Yes, sir.

3          BY THE COURT:

4              Sustained.

5    BY MR. SPRING - CONTINUED:

6    Q.   Are you a member of the Internal Affairs

7    section?

8    BY THE WITNESS:

9    A.   No, sir, I'm not.

10   Q.   You're not authorized to conduct

11   investigations on behalf of the Lafayette Police

12   Department via Internal Affairs are you?

13   A.   No, sir, I'm not.

14          BY MR. SPRING:

15              I have no further questions.

16          BY THE COURT:

17              All right, you can step down.  Thank

18          you.

19   THE WITNESS WAS EXCUSED.

20          BY MR. CORRY:

21              Judge, at this time Lafayette

22          Consolidated Government Chief

23          Administrative Officer, Dee Stanley,

24          Police Chief James Craft and Major Jackie

25          Alfred would move to have this matter,

26          once again, dismissed with prejudice.  If

27          that's their smoking gun and that's the

28          threat that they claim, Officer Thompson

29          laughed no less than twenty-two (22) times

30          on that tape.  There was nothing on that

31          tape that was threatening.  There was

32          nothing on that tape that would follow the

1    statute of Code of Civil Procedure Article

2    3604 and 3603 that says there must be

3    specific facts showing immediate and

4    irreparable injury, loss or damage.  This

5    is an investigation -- (interrupted)

6    BY THE COURT:

7        I understand your point.

8    BY MR. SPRING:

9        Your Honor, I haven't finished

10    presenting my case.

11    BY THE COURT:

12        That was my point.

13        What other witnesses do you intend to

14    call?

15    BY MR. SPRING:

16        I'd like to call Major Alfred to the

17    stand and I'd also like to call officers

18    who heard the threat and how they took the

19    threat.  Certainly that's relevant in

20    determination -- (interrupted)

21    BY THE COURT:

22        And when you say "threat", the threat

23    that you allege was made on the disc?

24    BY MR. SPRING:

25        This stuff has gotten personal, and

26    when it becomes personal a lot of stuff

27    can happen; a lot of animosity, even

28    fighting and shooting.  (Interrupted)

29    BY MR. CORRY:

30        Judge -- (interrupted)

31    BY MR. SPRING:

32        That's coming from a Major of the

1   Department who is supposed to set an

2   example and he's out there making – it

3   sounds like a threat to me when he says

4   he's not playing any games.  So how it's

5   interpreted by these officers --

6   (interrupted)

7   BY THE COURT:

8       Well, I heard the tape in it's

9   entirety.  Is there anything in addition

10  to what I heard that you need to present?

11  BY MR. SPRING:

12      I'd like to put Major Alfred on the

13  stand so he can testify with respect to

14  mandatory obligations from the policies

15  and procedure manual from the City of

16  Lafayette that requires no harassment, no

17  retaliation -- (interrupted)

18  BY THE COURT:

19      I don't think it's necessary.

20  BY MR. CORRY:

21      That doesn't go to the irreparable

22  injury.

23  BY THE COURT:

24      No, I don't think it's --

25  (interrupted)

26  BY MR. CORRY:

27      I mean, we've heard the tape.

28  BY THE COURT:

29      I heard the tape.  Is there anything

30  outside the course and scope of that tape

31  that you intend to introduce into evidence

32  or testimony about this?

1   BY MR. SPRING:

2       That his discussion is a retaliation

3   because he bases it upon no transfer.

4   This is all relative to a complaint that

5   was made at a Civil Service Board --

6   (interrupted)

7   BY MR. CORRY:

8       Judge, I would object.  That goes

9   outside -- (interrupted)

10  BY MR. SPRING:

11      Can I finish?

12  BY MR. CORRY:

13      -- the scope of what we're here for.

14  BY MR. SPRING:

15      Can I finish, please?

16  BY MR. CORRY:

17      Excuse me.  I'm directing my comments

18  to the Judge.

19  BY MR. SPRING:

20      Well, you're interrupting me.  I'd

21  like to at least finish -- (interrupted)

22  BY MR. CORRY:

23      Well, Judge -- (interrupted)

24  BY MR. SPRING:

25      -- what I'm saying.

26  BY THE COURT:

27      Okay, hold on.  Hold on.

28      Okay, finish your statement.

29  BY MR. SPRING:

30      What's referenced in the tape is a

31  complaint that was made with the Civil

32  Service Board who is empowered to

1   investigate.  Obviously, Major Alfred

2   takes that to heart, as he stated, because

3   it was a public forum.  Every officer has

4   a right to make a complaint with the Civil

5   Service Board on retaliation.  And with

6   respect to that, Chief Craft issued – this

7   was from Kane Marceaux who was the one

8   that made the complaint the day before.

9   Chief Craft sent him an email indicating

10  he had violated policy.  Not Kane Marceaux

11  but Chief Craft.  So it certainly seems to

12  me it's relevant in terms of how they take

13  a threat.  And this is a man that's in

14  charge of the department making those

15  kinds of statements, Judge.  It's how they

16  perceive it.

17  **BY THE COURT:**

18      So, at this point you have no

19  additional evidence of any other threats

20  other than what you allege was made on

21  this CD?

22  **BY MR. SPRING:**

23      With respect to the TRO, yes.  But we

24  also have evidence with respect to

25  reprisals and retaliation.  We filed

26  supplemental -- (interrupted)

27  **BY THE COURT:**

28      I understand that.  That's part of

29  the ongoing lawsuit.  But as far as for

30  the TRO, I am going to grant your Motion

31  to Dismiss the TRO and everything else

32  will follow, first of all, through Civil

1  Service and then through appeals and then

2  through this suit.

3  **BY MR. CORRY:**

4  At plaintiff's cost?

5  **BY THE COURT:**

6  At plaintiff's cost.

7  **BY MR. CORRY:**

8  Thank you, Judge.  I'll prepare a

9  judgement and circulate it to Mr. Spring.

10  **BY THE COURT:**

11  And it just may be said for the

12  record that I didn't find anything here

13  that would be considered a threat to

14  anybody in the department.

15  **BY MR. CORRY:**

16  Thank you, Judge.

17  **BY MR. SPRING:**

18  Your Honor, we would respectfully

19  object for the record.  Thank you.

20  **BY THE COURT:**

21  I understand.

22

23  **THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.**

24

25

26

27

28

29

30

31

32

CERTIFICATE

STATE OF LOUISIANA

PARISH OF LAFAYETTE

I, Kathleen D. Mathews, C.C.R., do hereby certify that I am a duly appointed, qualified, and acting Official Court Reporter for the Fifteenth Judicial District Court in and for the Parishes of Acadia, Lafayette, Vermilion, the State of Louisiana.

I further certify that the foregoing thirty (30) pages is a true and correct transcript of the proceedings entered into the record, held in the captioned cause and that said transcript is a true and correct transcription of my stenographic notes then and there taken.

KATHLEEN D. MATHEWS, C.C.R.

Official Court Reporter