UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **KANE MARCEAUX, *ET AL.*,**<br>    *Plaintiffs*,<br><br>*v*.<br><br>**LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT, *ET AL.*,**<br>    *Defendants*. | **CIVIL NO.: 6:12-CV-01532 RTH-PJH**<br>**JUDGE: RICHARD THEODORE HAIK, SR.**<br>**MAGISTRATE: PATRICK JOHN HANNA** |

**MEMORANDUM IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT—KANE MARCEAUX [REC. DOC. 141]**

**NOW INTO COURT**, through undersigned counsel, come the Plaintiffs herein, **Kane Marceaux**, **Greg Cormier**, **Scott Poiencot**, **Gabriel Thompson**, **Norbert Myers**, **Novey Stelly**, **Uletom P. Hewitt**, **Regina Briscoe**, and **Aleeta M. Harding**, who file this Memorandum in Opposition to Defendants' "Motion for Summary Judgment—Kane Marceaux" [Rec. Doc. 141], as filed by Defendants Lafayette City-Parish Consolidated Government, Dee Edward Stanley, Individually, James P. "Jim" Craft, Individually, and George "Jackie" Alfred, Individually, and who, with respect to same, do hereby allege, aver, depose, attest, state, and claim as follows:

**I.    PREAMBLE:**

A century-old axiom retold by Harvard Law Professor Alan Dershowitz (among others) advises young lawyers: "If the facts are on your side, pound the facts.  If the law is on your side, pound the law.  If neither the facts nor the law are on your side, pound the table!"[1]  In keeping with this Dershowitz adage, Defendants' collective summary judgment motions "pound" neither

---

[1] Ruben Navarrette Jr., *Pounding the Table About Border Episode*, Fort Worth Star-Telegram, March 4, 2007, at E3. *See also*, <http://quoteinvestigator.com/2010/07/04/legal-adage/>.

the facts nor the law. Instead, the lion's share of their "extensive briefing"[2] is given over to "pounding" the individual Plaintiffs—besmirching and often ridiculing the good name and reputation of these valiant officers who were willing to step forward (at extraordinary personal and professional expense) and shine the light of truth upon a police department plagued by rampant misconduct, malfeasance, and widespread, systemic corruption. After the dust settles, it remains unmistakably clear that Plaintiffs have set forth compelling and compensable claims which cannot be supplanted by *any* amount of character assassination (or general obfuscation). Plaintiffs were purposely and intentionally harmed by the Defendants, and this summary judgment motion *must* be denied in favor of granting Plaintiffs their day in court.

## II. SYLLABUS:

The party moving for summary judgment is responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery which show the lack of a genuine issue of material fact for trial.[3] If the moving party fails to meet this burden, "**the motion must be denied, regardless of the nonmovant's response**."[4] Further, where material facts are in dispute, "the Court must view the facts and draw reasonable inferences in the light most favorable to the plaintiff."[5] Finally, and perhaps most significantly, determinations of credibility have no place in summary judgment: Since "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," and "trial courts must act with caution in granting summary judgment," it is therefore appropriate for a trial court to simply "deny summary judgment in a case were there is reason to believe that the better course would be to proceed to a

---

[2] Covering some one thousand eighty-eight (1,088) total pages.
[3] Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995).
[4] Tubacex, Inc. v. M/V Risan, 45 F.3d at 954, emphasis added, *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
[5] Priority Staffing, Inc. v. Regions Bank, 11-0667 (W.D.La. 9/30/2013), --- F.Supp.2d ---, 2013 WL 5462239, p. *2.

full trial."[6]

Defendants have filed four (4) summary judgment motions,[7] all of which generally seek a summary dismissal of Plaintiffs' constitutional claims and a finding that Defendants are entitled to qualified immunity. Defendants' "extensive briefing" can be synthesized into a small handful of predominantly red-herring non-issues which are raised and re-raised, stated and restated in myriad different ways. The result is a filing replete with *ad hominem* assaults upon Plaintiffs' character and integrity but markedly bereft of any genuinely undisputed issues of material fact tending to show Defendants are "entitled to judgment as a matter of law."[8]

Defendants' so-called "Clandestine Recordings Issue" is a prime example of just such a provocative non-issue, seized upon and reiterated *ad nauseam* throughout all four (4) of their supporting memoranda. Defendants take an accepted practice—interpersonal, one-party consent recording—which is completely legal for individuals, fully ethical for lawyers, and not even addressed by a General Order of the Lafayette Police Department until March 13, 2013, and they use the fact that some of the party Plaintiffs, including Marceaux, engaged in this practice as self-evident "proof" that each Plaintiff "was a bad colleague."[9] Further, conveniently omitted from Defendants' disparaging remarks regarding the Plaintiffs' one-party consent recordings is the simple, unavoidable fact that virtually all of the recordings were created and made long *before* the March 13, 2013, effective date of General Order 201.2 (formalizing Special Order 12.1).

Defendants further seize upon some minor confusion in the Plaintiffs' depositions regarding the specific precinct known colloquially as "Hell's Kitchen." Plaintiffs Poiencot,

---

[6] Granite State Ins. Co. v. Tyler, 08-1958, 09-0065 (W.D.La. 07/09/2010), --- F.Supp.2d ---, 2010 WL 2757239, p. *1, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L .Ed.2d 202 (1986).
[7] Rec. Docs. 141-144.
[8] F.R.C.P. 56(a).
[9] Rec. Doc. 141-2, p. 28.

Cormier, and Thompson were all transferred to Precinct 4 effective June 10, 2012—a move made in *direct* retaliation for their participation in the present litigation.[10] Defendants note that Plaintiff Uletom Hewitt, a gentleman who was terminated nearly three (3) years prior to his deposition, opined Precinct 1 was the "Hell's Kitchen" area, while another party Plaintiff, Gabe Thompson, jokingly suggested (answering the *last* question on the *last* page of a protracted 303-page deposition) that "Hell's Kitchen" was "a TV show."[11] Defendants' attempted obfuscations aside, the simple fact remains that Precinct 4 of the Lafayette Police Department is considered the most disfavored area for an officer to be transferred,[12] and at least four (4) of the present Plaintiffs[13] were transferred there by and through the retaliatory acts of the Stanley-Craft machine.

Finally, and of particular note to the present opposition is the Defendants' termination of all light duty positions as the necessary predicate to committing a blatant, targeted act of discrimination against *solely* Plaintiff Kane Marceaux. Although Defendants attempt to frame their actions as "mere coincidence," the revealed and acknowledged facts show Plaintiff Marceaux was the sole employee whose interests were adversely affected by a policy change which quite literally forced him from his job and into mandatory sick leave. It is frankly hard to imagine any policy which could be designed and implemented with more discriminatory animus. Mr. Marceaux was a valued, veteran employee whose physical limitations were fully accommodated until the moment he started to expose the Department's widespread, pandemic corruption. At that very moment—allegedly on or about March 14, 2012—Chief Craft's policy change physically removed Marceaux from the Department and placed him inextricably on a

---

[10] Commenced on or about June 5, 2012, with the filing of Plaintiffs' Original Complaint [Rec. Doc. 1].
[11] Rec. Doc. 142-18, p. 65.
[12] See generally, *Broussard v. Lafayette City-Parish Consol. Gov't, et al.*, Docket No.: 6:13-cv-02872 RFD PJH, United States District Court, Western District of Louisiana.
[13] Poiencot, Cormier, Thompson, and Hewitt.

path to a permanent loss of his employment.

This litigation finds its genesis in the claims of certain police officers against their employer, the Lafayette City Police Department (LPD).[14] These officers allege Defendants and others have "employed disparate and discriminatory disciplinary policies and procedures, outright concealment of police misconduct, retaliations, retributions, and reprisals against those who report such misconduct, a gross distortion of the truth relating to instances of police misconduct, and a wholesale deliberate indifference to the Constitution of the United States of America, its Amendments, and the entire canon of federal and state laws requiring fundamental fairness, decency, honesty, due process, and integrity in the police disciplinary system." Rec. Doc. 1, p. 7, para. 29.[15] Plaintiffs are past and present police officers who have been specifically and generally harmed by these policies, procedures, and other actions, all as undertaken, performed, and committed by the Defendants.

### III. FACTUAL BACKGROUND:

"[T]he extensive briefing" heretofore provided by the Defendants sets forth many of the relevant background facts. Further, this Honorable Court is certainly well-aware of the allegations and claims made by the Plaintiffs against their employer, the Lafayette Police Department. For now it suffices to briefly address the disputed portions of Defendants' so-called "Statement of Undisputed Facts"[16] as filed in conjunction with their instant Motion for Summary Judgment.

Defendants contend Marceaux had a "tumultuous" history with his fellow and superior

---

[14] Although a shorthand reference to the "Lafayette City Police Department" or "LPD" is used throughout this memorandum, such reference is made in consideration of the specific designations set forth in Plaintiffs' Complaint detailing the respective defendants and their particular capacities.
[15] Not unsurprisingly, Defendants have sought to strike this paragraph of the Complaint, among others. See Rec. Doc. 4, p. 3, para. 5.
[16] Rec. Doc. 141-3.

officers, with Marceaux allegedly creating "unnecessary drama and friction within LPD and between the LMNTF and D.E.A. Task Force."[17] Marceaux disputes this characterization of his interpersonal relationships with his fellow and superior officers and instead shows that the sole "drama and friction" was caused by Marceaux being unfairly targeted and generally mistreated for daring to oppose the endemic, institutionalized corruption which plagued the Department. Thus, and for instance, when Chief Craft acted with supposedly great benevolence in giving Marceaux "permission to meet" (*circa* December 22, 2011),[18] Marceaux's emanating punishment for accepting that benevolence—a sanctioning Counseling Form issued to Marceaux on January 17, 2012, and a transfer to a new position—was hardly the predicate for an ideal employer / employee relationship.

Thus, and as a direct result of utilizing Chief Craft's supposedly open-door policy,[19] Marceaux found himself removed from the D.E.A. Task Force, reassigned to the Lafayette Metro Narcotics Task Force, and formally reprimanded for having the sheer audacity and unmitigated temerity to present a Department-related personnel concern directly to Craft, the Department's presiding leader. Before Marceaux's new boss could significantly commence the further retaliation intended by Craft to be inflicted, Marceaux's intervening medical condition required him to receive a light-duty assignment—a well-established process which had been in place for many *years* prior to Marceaux's transfer. With Marceaux's new light-duty job now effectively insulating him from the retaliation theretofore planned by Chief Craft and his minions, a new form of retaliation was quickly implemented: "On or about March 14, 2012, LCG/LPD

---

[17] Rec. Doc. 141-3, p. 2, para. 5.
[18] In Chief Craft's own words: "On December 22, 2011, I *granted* Plaintiff, Kane Marceaux, *permission* to meet with me…" Rec. Doc. 141-7, p. 2, para. 5, emphasis added.
[19] Rec. Doc. 141-2, p. 25.

determined that LPD would no longer offer light duty to any officer."[20]  Either because of Chief Craft's retaliatory intentions or, if the Defendants are to be believed, because of Kane Marceaux's general bad luck, he was the sole, exclusive, and only officer actually affected by this change.

Thus, in mere weeks following Marceaux's ill-fated decision to accept Chief Craft's benevolent offer of an "open door policy," he found himself not only reprimanded, removed from the D.E.A. Task Force, and reassigned to the Lafayette Metro Narcotics Task Force, he was also now *en route* to being completely out of a job.  Of course, the Defendants' retelling of these events ascribes no malicious intent to any of these unfortunate "coincidences."  And, in general, perhaps the entirety of this case rests upon a credibility determination regarding the reason for these and other "unfortunate" events which singularly befell those officers, like Marceaux, who found themselves at odds with the entrenches Stanley-Craft Machine.  Of course, such credibility determinations are particularly ill-suited for determination on summary judgment,[21] and, for that reason alone, Defendants' present motion should be denied.

IV.   LAW AND ARGUMENT:

   A.   SUMMARY JUDGMENT

Summary judgment is only proper when the moving party, in a properly supported motion, demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law.[22]  If the moving party carries its burden under F.R.C.P. 56(c), the opposing party must direct the court's attention to specific evidence which demonstrates it can

---

[20] Rec. Doc. 141-3, p. 3, para. 10.
[21] In resolving a summary judgment motion, a court may not evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in the party's favor, the court must deny the motion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *as cited in* Sellers v. Falcon Services Co., Inc., 99-3735 (E.D.La. 09/08/2000), --- F.Supp.2d ---, 2000 WL 1285418, p. *1.
[22] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986).

satisfy a reasonable jury that it is entitled to verdict in its favor.[23] In resolving the motion, the court must review all the evidence and the record taken as a whole in the light most favorable to the party opposing the motion, and draw all reasonable inferences in that party's favor.[24] Thus, and as applied to cases seeking summary judgment with respect to a defense of qualified immunity: "When [a Government official] argues that he is entitled to qualified immunity from suit, [the court] first view[s] the evidence 'in the light most favorable to the party asserting the injury' and decide[s] if 'the facts alleged show the officer's conduct violated a constitutional right.'"[25] After reviewing the motions and supporting evidence, the court may grant summary judgment *only* if it is "satisfied that no reasonable trier of fact could find for the nonmoving party."[26]

### B. INAPPLICABILITY OF QUALIFIED IMMUNITY:

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.[27] The first step in the qualified immunity analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights.[28] Second, if the plaintiff has alleged such a violation, the court must then decide whether the conduct was objectively reasonable in light of clearly established law at the time of the incident.[29] This inquiry, the Saucier Court stated, is undertaken in light of the specific context of

---

[23] Anderson, 477 U.S. at 252, 106 S.Ct. at 2512.
[24] Anderson, 477 U.S. at 255, 106 S.Ct. at 2513.
[25] Mesa v. Prejean, 543 F.3d 264, 269 (5th Cir. 2008), *citing* Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).
[26] Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 178 (5th Cir. 1990).
[27] Huff v. Crites, 473 Fed. Appx. 398 (5th Cir. 2012).
[28] Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). *See also*, Modica v. Taylor, 465 F.3d 174, 179 (5th Cir. 2006), *citing* Hernandez v. Tex. Dep't of Prot. & Reg. Servs., 380 F.3d 872, 879 (5th Cir. 2004).
[29] *Id.*

the case, not as a broad, general proposition.[30] The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted.[31]

Defendants contend Marceaux "cannot prove he suffered from constitutional violations,"[32] or, more simply, that he cannot prove the "first" Saucier element. It is well-settled that in order to set forth and state a claim under 42 U.S.C. 1983, the plaintiff / victim must (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.[33] An at-will public employee may not be discharged for exercising his First Amendment right to freedom of expression.[34]

Here, and even as read through Defendants' own interpretative gloss, the admitted / acknowledged facts of this case reveal Marceaux has alleged *all* the elements of a 42 U.S.C. 1983 First Amendment retaliatory discharge/wrongful termination claim: (1) He suffered an adverse employment action; 2) his speech involved a matter of public concern; (3) his interest in commenting on matters of public concern outweighed the employer's interest in promoting efficiency; and (4) his speech motivated the employer's adverse decision.[35] The recent Pea v. City of Ponchatoula case is particularly instructive to this point. There, the plaintiff was a city employee who "filed suit against his former employer … and its mayor," contending he was terminated "solely in retaliation" for having supported "another mayoral candidate in the March

---

[30] Saucier, 533 U.S. at 201.
[31] Id. at 202.
[32] Rec. Doc. 141-2, p. 18.
[33] Doe v. Covington County Sch. Dist., 675 F.3d 849, 854-55 (5th Cir. 2012), *quoting* James v. Tex. Collin Cnty., 535 F.3d 365, 373 (5th Cir. 2008).
[34] Cabrol v. Town of Youngsville, 106 F.3d 101, 108 (5th Cir. 1997), *citing* Thompson v. City of Starkville, 901 F.2d 456, 460 (5th Cir. 1990).
[35] Modica v. Taylor, 465 F.3d 174, 179-180 (5th Cir. 2006), *citing* Johnson v. Louisiana, 369 F.3d 826, 830 (5th Cir. 2004), *both as cited in* Pea v. City of Ponchatoula, 13-542 (E.D.La. 03/17/2014), --- F.Supp.2d ---, 2014 WL 1050783, p. *3.

2012 election."[36]  There, as in the present matter, the plaintiff in Pea alleged a longstanding series of discriminatory acts which culminated in plaintiff's ultimate termination.  The defendant sought summary judgment on the basis of qualified immunity, and the district court denied the motion, finding the plaintiff met both prongs of the qualified immunity analysis through, *inter alia*, establishing "a violation of a clearly established right."[37]

To state a claim of retaliation for exercise of First Amendment rights under 42 U.S.C. 1983, Employees must show that (1) they engaged in a protected activity, (2) they suffered an adverse employment action, (3) there was a causal connection between the two, and (4) the execution of a policy, custom, or practice of the Employer caused the adverse action.[38]  Much like the plaintiff in Sharp v. City of Houston, Plaintiff Marceaux alleges he suffered "retaliation for exercising [his] First Amendment right to free speech."[39]  Marceaux's speech—including the present litigation and the entire panoply of events leading to this matter's inception—was related to ongoing, systemic corruption within the Lafayette City Police Department, and, as such, it was deserving of imminent protection.  Further, there was clearly an adverse employment action taken against Marceaux where he was reprimanded, removed from the D.E.A. Task Force, reassigned to the Lafayette Metro Narcotics Task Force, and, ultimately, forced from his position completely through the institution of a new policy prohibiting light-duty work assignments—a policy which quite literally affected a single individual in Plaintiff Kane Marceaux.  At day's end, it is clear that Plaintiff has pled and shown the requisite adverse employment action with sufficient specificity to withstand summary disposition of his claims.

As for the second step of the Saucier inquiry, Defendants' conduct was assuredly *not*

---

[36] Pea v. City of Ponchatoula, 2014 WL 1050783 at p. *1.
[37] Pea v. City of Ponchatoula, 2014 WL 1050783 at p. *3.
[38] Sharp v. City of Houston, 164 F.3d 923, 932 (5th Cir. 1999), *as cited in* Banks v. East Baton Rouge Parish School Bd., 320 F.3d 570, 579-580 (5th Cir. 2003).
[39] Sharp v. City of Houston, 164 F.3d at 932.

objectively reasonable in light of clearly established law at the time of the incident. An official in the position of Craft, *et al.*, should have known that he could not terminate Marceaux's employment with the City solely because Marceaux chose to exercise his First Amendment right to expose the Lafayette Police Department's pervasive corruption.[40]  Further, to the extent Defendants seemingly take the position that entitlement to qualified immunity turns solely on whether the act at issue was discretionary in nature, it should be noted that discretionary decision making is only a threshold requirement that makes the defense *potentially* available.  It does not and cannot lie within the province of Defendants' "discretionary" decision making authority to act in complete and total derogation of Plaintiffs' clearly established rights—such as Plaintiffs' fundamental First Amendment right to freedom of speech.

Ultimately, Defendants' entire motion is properly disposed through more generalized principles applicable to all summary judgment motions.  Here, the basic facts are not significantly disputed.  Instead, resolution of Defendants' motion turns upon the inferences which should be drawn from those facts.  Thus, even if this Court were to find Defendants have cited evidence which may tend to raise questions regarding Kane Marceaux's credibility, the Fifth Circuit has routinely found summary judgment inappropriate in such situations.[41]  Here, the ultimate question is truly whether the Defendants' admitted conduct constituted a series of unfortunate "coincidences" or was, rather, the result of a calculated plan or scheme designed /

---

[40] Pea v. City of Ponchatoula, 2014 WL 1050783 at p. *3.
[41] *See, e.g.*, Leonard v. Dixie Well Serv. & Supply, Inc., 828 F.2d 291, 294 (5th Cir. 1987) (reversing grant of summary judgment in favor of Jones Act defendant where district court improperly weighed evidence and found defendant's employment records "inherently more reliable and accurate" than testimony of plaintiff and co-worker regarding amount of time plaintiff worked on vessel); Lindsey v. Prive Corp., 987 F.2d 324, 327 and n. 4 (5th Cir. 1993) (reversing grant of summary judgment and noting that, "[i]n a motion for summary judgment, the district court is not called upon to make credibility assessments of conflicting evidence ..."); International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1265 (5th Cir. 1991) (reversing summary judgment in favor of defendant where district court improperly determined that jury would have believed defendant's assertion of good faith); Honore v. Douglas, 833 F.2d 565, 569 (5th Cir. 1987) (reversing grant of summary judgment in favor of defendant where defendant's motive for terminating plaintiff raised issues of credibility and motivation); Zerangue v. TSP Newspapers, Inc., 814 F.2d 1066, 1071 (5th Cir. 1987) (reversing grant of summary judgment in favor of defendant where witness's credibility was crucial to the case).

implemented to carry out the Defendants' evil intentions and/or to inflict intentional job-related harm upon the Plaintiffs. This "credibility" determination is appropriately presented to a jury, and, for that reason, summary judgment dismissing Plaintiffs' claims is *per se* inappropriate in the premises.

V.   **CONCLUSION:**

For all of the foregoing reasons, Defendants' "Motion for Summary Judgment—Kane Marceaux" [Rec. Doc. 141] should be denied, and this matter should thereafter be permitted to proceed to a full trial on all issues.

Respectfully Submitted,

| | |
|---|---|
| **J. Christopher Alexander, Sr., Esq., LLC**<br>Attorney and Counselor at Law | **Spring & Spring, LLC**<br>Attorneys at Law |
| /s/ J. Christopher Alexander, Sr., Esq.<br>J. Christopher Alexander, Sr., Esq.<br>Louisiana Bar Roll No.: 26,591<br>3751 Government Street, Suite "A"<br>Baton Rouge, Louisiana 70806<br>225-761-9456 (telephone)<br>225-761-7899 (facsimile)<br>chris@jcalaw.us<br>Co-Counsel for Plaintiffs | /s/ S. Stephen Spring, II, Esq.<br>S. Stephen Spring, II, Esq.<br>Louisiana Bar Roll Number: 12347<br>733 East Airport Avenue, Suite 104<br>Baton Rouge, Louisiana 70806<br>225.932.9671 (telephone)<br>413.451.8923 (facsimile)<br>springlaw@gmail.com<br>Co-Counsel for Plaintiffs |

**R. Royal Alexander, Esq.**
Attorney and Counselor at Law


/s/ R. Royal Alexander, Esq.
R. Royal Alexander, Esq.
Louisiana Bar Roll No.: 25,331
333 Texas Street, Suite 725
Shreveport, Louisiana 71101
318-934-1179 (telephone)
318-673-8456 (facsimile)
ralexander@deep-south.com
Co-Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing pleading has been served upon the following counsel of record herein:

> **Michael Patrick Corry, Sr., Esq.**
> Briney Foret Corry, LLP
> 413 Travis Street
> Lafayette, Louisiana  70503
> 337-237-4070 (telephone)
> 337-233-8719 (facsimile)
> corry@brineyforet.com
>
> **Hallie Pilcher Coreil, Esq.**
> Briney Foret Corry, LLP
> 413 Travis Street
> Lafayette, Louisiana  70503
> 337-237-4070 (telephone)
> 337-233-8719 (facsimile)
> coreil@brineyforet.com
>
> **Richard Riley Montgomery, Esq.**
> Briney Foret Corry, LLP
> 413 Travis Street
> Lafayette, Louisiana  70503
> 337-237-4070 (telephone)
> 337-233-8719 (facsimile)
> rrmontgomery@brineyforet.com

**I FURTHER CERTIFY** that the foregoing service was effected via delivery of this self-same document into the Court's electronic filing system, which delivery does thereby fulfill counsel's duty to provide notice to all parties herein, and which filing was made and done on this the   7th   day of July, 2014, from the City of Baton Rouge, Parish of East Baton Rouge, State of Louisiana.

                                                 /s/ J. Christopher Alexander, Sr., Esq.
                                                 J. Christopher Alexander, Sr., Esq.