UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **KANE MARCEAUX,** *ET AL.*, <br> *Plaintiffs*, <br><br> **V.** <br><br><br> **LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT,** *ET AL.*, <br> *Defendants*. | **CIVIL NO.: 6:12-CV-01532 RTH-PJH** <br> **JUDGE: RICHARD THEODORE HAIK, SR.** <br> **MAGISTRATE: PATRICK JOHN HANNA** |

**MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT—ULETOM HEWITT [REC. DOC. 143]**

**NOW INTO COURT**, through undersigned counsel, come the Plaintiffs herein, **Kane Marceaux**, **Greg Cormier**, **Scott Poiencot**, **Gabriel Thompson**, **Norbert Myers**, **Novey Stelly**, **Uletom P. Hewitt**, **Regina Briscoe**, and **Aleeta M. Harding**, who file this Memorandum in Opposition to Defendants' "Motion for Summary Judgment—Uletom Hewitt" [Rec. Doc. 143], as filed by Defendants Lafayette City-Parish Consolidated Government, Dee Edward Stanley, Individually, James P. "Jim" Craft, Individually, and George "Jackie" Alfred, Individually, and who, with respect to same, do hereby allege, aver, depose, attest, state, and claim as follows:

I.  **PREAMBLE:**

Plaintiffs have filed simultaneously filed a Memorandum in Opposition to the Defendants' "Motion for Summary Judgment—Kane Marceaux" [Rec. Doc. 141]. Defendants' current Motion (directed unto Plaintiff Hewitt) adopts and incorporates many of the facts, legal arguments, and exhibits included within Defendants' earlier [Rec. Doc. 141] Motion. For that reason, and in lieu of simply restating many of the points heretofore raised in opposition to that

earlier Motion, Plaintiffs hereby incorporate by reference their prior memorandum in opposition: In accordance with F.R.C.P. 10(c), "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." Plaintiffs thus hereby adopt and incorporate by reference their earlier-filed opposition memorandum for all material and relevant purposes.

A century-old axiom retold by Harvard Law Professor Alan Dershowitz (among others) advises young lawyers: "If the facts are on your side, pound the facts. If the law is on your side, pound the law. If neither the facts nor the law are on your side, pound the table!"[1] In keeping with this Dershowitz adage, Defendants' collective summary judgment motions "pound" neither the facts nor the law. Instead, the lion's share of their "extensive briefing"[2] is given over to "pounding" the individual Plaintiffs—besmirching and often ridiculing the good name and reputation of these valiant officers who were willing to step forward (at extraordinary personal and professional expense) and shine the light of truth upon a police department plagued by rampant misconduct, malfeasance, and widespread, systemic corruption. After the dust settles, it remains unmistakably clear that Plaintiffs have set forth compelling and compensable claims which cannot be supplanted by *any* amount of character assassination (or general obfuscation). Plaintiffs were purposely and intentionally harmed by the Defendants, and this summary judgment motion *must* be denied in favor of granting Plaintiffs their day in court.

## II.   SYLLABUS:

The party moving for summary judgment is responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery

---

[1] Ruben Navarrette Jr., *Pounding the Table About Border Episode*, Fort Worth Star-Telegram, March 4, 2007, at E3. *See also*, <http://quoteinvestigator.com/2010/07/04/legal-adage/>.
[2] Covering some one thousand eighty-eight (1,088) total pages.

which show the lack of a genuine issue of material fact for trial.[3] If the moving party fails to meet this burden, "**the motion must be denied, regardless of the nonmovant's response**."[4] Further, where material facts are in dispute, "the Court must view the facts and draw reasonable inferences in the light most favorable to the plaintiff."[5] Finally, and perhaps most significantly, determinations of credibility have no place in summary judgment: Since "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," and "trial courts must act with caution in granting summary judgment," it is therefore appropriate for a trial court to simply "deny summary judgment in a case were there is reason to believe that the better course would be to proceed to a full trial."[6]

### III. FACTUAL BACKGROUND:

"[T]he extensive briefing" heretofore provided by the Defendants sets forth many of the relevant background facts. Further, this Honorable Court is certainly well-aware of the allegations and claims made by the Plaintiffs against their employer, the Lafayette Police Department. For now it suffices to briefly address the disputed portions of Defendants' so-called "Statement of Undisputed Facts"[7] as filed in conjunction with their instant Motion for Summary Judgment.

Strangely, the main thrust of Defendants' retelling of Plaintiff Hewitt's claims is to highlight the fact that Hewitt has an extended history of receiving "suspensions and termination

---

[3] Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995).
[4] Tubacex, Inc. v. M/V Risan, 45 F.3d at 954, emphasis added, citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
[5] Priority Staffing, Inc. v. Regions Bank, 11-0667 (W.D.La. 09/30/2013), --- F.Supp.2d ---, 2013 WL 5462239, p. *2.
[6] Granite State Ins. Co. v. Tyler, 08-1958, 09-0065 (W.D.La. 07/09/2010), --- F.Supp.2d ---, 2010 WL 2757239, p. *1, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L .Ed.2d 202 (1986).
[7] Rec. Doc. 143-3.

qualify[ing] as adverse employment actions."[8] Of course, Defendants contend these adverse employment actions were not retaliatory, and, further, they allege that many (or perhaps all) of Hewitt's claims are prescribed. Nevertheless, a review of Uletom Hewitt's acknowledged employment history reveals he suffered all manner of suspensions and investigations, all of which culminated in his termination from the Department "on August 30, 2011"[9] The present action (to which Plaintiff Hewitt was a named party) was commenced on June 5, 2012. Accordingly, Hewitt has at least set forth facts alleging his ultimate termination occurred less than one (1) year prior to this matter's inception. Thus, Defendants' "prescription" arguments are overcome at the outset.

Mr. Hewitt's deposition and his accompanying Statement of Material Issues in Dispute reveal that his termination remains unsettled. Mr. Hewitt has sought Civil Service Board review of virtually every sanction he received leading up to (and including) his termination. Unfortunately, because Mr. Hewitt is an individual aligned "against" the Stanley-Craft Organization's systemic corruption, he has been unable, in the absence of district and appellate court intervention, to get the Civil Service Board to even consider his timely appeals. Thus, and at a very broad level, all of the aspersions levied against Mr. Hewitt by the Defendants are subject to a significant asterisk—to the extent that Mr. Hewitt is continuing to seek appellate review and intervention. Nevertheless, for purposes of the present motion, Mr. Hewitt alleges, simply, that he was terminated by and through a series of retaliatory acts committed by the Defendants in response to Hewitt's alignment with the anti-Craft "side" of the Department's hierarchy.

---

[8] Rec. Doc. 143-2, p. 9.
[9] Rec. Doc. 143-2, p. 7, *citing* fn. 17.

**IV.    LAW AND ARGUMENT:**

    **A.    SUMMARY JUDGMENT**

Summary judgment is only proper when the moving party, in a properly supported motion, demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law.[10] If the moving party carries its burden under F.R.C.P. 56(c), the opposing party must direct the court's attention to specific evidence which demonstrates it can satisfy a reasonable jury that it is entitled to verdict in its favor.[11] In resolving the motion, the court must review all the evidence and the record taken as a whole in the light most favorable to the party opposing the motion, and draw all reasonable inferences in that party's favor.[12] Thus, and as applied to cases seeking summary judgment with respect to a defense of qualified immunity: "When [a Government official] argues that he is entitled to qualified immunity from suit, [the court] first view[s] the evidence 'in the light most favorable to the party asserting the injury' and decide[s] if 'the facts alleged show the officer's conduct violated a constitutional right.'"[13] After reviewing the motions and supporting evidence, the court may grant summary judgment *only* if it is "satisfied that no reasonable trier of fact could find for the nonmoving party."[14]

    **B.    INAPPLICABILITY OF QUALIFIED IMMUNITY:**

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.[15] The first step in the qualified immunity analysis is to consider whether, taking the facts as alleged in the light most

---

[10] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986).
[11] Anderson, 477 U.S. at 252, 106 S.Ct. at 2512.
[12] Anderson, 477 U.S. at 255, 106 S.Ct. at 2513.
[13] Mesa v. Prejean, 543 F.3d 264, 269 (5th Cir. 2008), *citing* Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).
[14] Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 178 (5th Cir. 1990).
[15] Huff v. Crites, 473 Fed. Appx. 398 (5th Cir. 2012).

favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights.[16] Second, if the plaintiff has alleged such a violation, the court must then decide whether the conduct was objectively reasonable in light of clearly established law at the time of the incident.[17] This inquiry, the Saucier Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition.[18] The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted.[19]

Defendants contend Hewitt "cannot show that Defendants intended to retaliate against him for any purportedly protected activity,"[20] or, more simply, that he cannot prove the "first" Saucier element. It is well-settled that in order to set forth and state a claim under 42 U.S.C. 1983, the plaintiff / victim must (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.[21] An at-will public employee may not be discharged for exercising his First Amendment right to freedom of expression.[22]

Here, and even as read through Defendants' own interpretative gloss, the admitted / acknowledged facts of this case reveal Hewitt has amply alleged *all* the elements of a 42 U.S.C. 1983 First Amendment retaliatory discharge/wrongful termination claim: (1) He suffered an adverse employment action; 2) his speech involved a matter of public concern; (3) his interest in

---

[16] Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). *See also*, Modica v. Taylor, 465 F.3d 174, 179 (5th Cir. 2006), *citing* Hernandez v. Tex. Dep't of Prot. & Reg. Servs., 380 F.3d 872, 879 (5th Cir. 2004).
[17] *Id*.
[18] Saucier, 533 U.S. at 201.
[19] Id. at 202.
[20] Rec. Doc. 143-2, p. 12.
[21] Doe v. Covington County Sch. Dist., 675 F.3d 849, 854-55 (5th Cir. 2012), *quoting* James v. Tex. Collin Cnty., 535 F.3d 365, 373 (5th Cir. 2008).
[22] Cabrol v. Town of Youngsville, 106 F.3d 101, 108 (5th Cir. 1997), *citing* Thompson v. City of Starkville, 901 F.2d 456, 460 (5th Cir. 1990).

commenting on matters of public concern outweighed the employer's interest in promoting efficiency; and (4) his speech motivated the employer's adverse decision.[23]  The recent <u>Pea v. City of Ponchatoula</u> case is particularly instructive to this point.  There, the plaintiff was a city employee who "filed suit against his former employer … and its mayor," contending he was terminated "solely in retaliation" for having supported "another mayoral candidate in the March 2012 election."[24]  There, as in the present matter, the plaintiff in <u>Pea</u> alleged a longstanding series of discriminatory acts which culminated in plaintiff's ultimate termination.  The defendant sought summary judgment on the basis of qualified immunity, and the district court denied the motion, finding the plaintiff met both prongs of the qualified immunity analysis through, *inter alia*, establishing "a violation of a clearly established right."[25]

To state a claim of retaliation for exercise of First Amendment rights under 42 U.S.C. 1983, Employees must show that (1) they engaged in a protected activity, (2) they suffered an adverse employment action, (3) there was a causal connection between the two, and (4) the execution of a policy, custom, or practice of the Employer caused the adverse action.[26]  Much like the plaintiff in <u>Sharp v. City of Houston</u>, Plaintiff Hewitt alleges he suffered "retaliation for exercising [his] First Amendment right to free speech."[27]  Hewitt's speech—including the present litigation and the entire panoply of events leading to this matter's inception—was related to ongoing, systemic corruption within the Lafayette City Police Department, and, as such, it was deserving of imminent protection.  Further, there was clearly an adverse employment action taken against Hewitt where he was subjected to investigation, suspension, and, ultimately,

---

[23] <u>Modica v. Taylor</u>, 465 F.3d 174, 179-180 (5th Cir. 2006), *citing* <u>Johnson v. Louisiana</u>, 369 F.3d 826, 830 (5th Cir. 2004), *both as cited in* <u>Pea v. City of Ponchatoula</u>, 13-542 (E.D.La. 03/17/2014), --- F.Supp.2d ---, 2014 WL 1050783, p. *3.
[24] <u>Pea v. City of Ponchatoula</u>, 2014 WL 1050783 at p. *1.
[25] <u>Pea v. City of Ponchatoula</u>, 2014 WL 1050783 at p. *3.
[26] <u>Sharp v. City of Houston</u>, 164 F.3d 923, 932 (5th Cir. 1999), *as cited in* <u>Banks v. East Baton Rouge Parish School Bd.</u>, 320 F.3d 570, 579-580 (5th Cir. 2003).
[27] <u>Sharp v. City of Houston</u>, 164 F.3d at 932.

termination, all without being afforded the ability to seek timely review by the Civil Service Board. At day's end, it is clear that Plaintiff has pled and shown the requisite adverse employment action with sufficient specificity to withstand summary disposition of his claims.

As for the second step of the Saucier inquiry, Defendants' conduct was assuredly *not* objectively reasonable in light of clearly established law at the time of the incident. An official in the position of Craft, *et al.*, should have known that he could not terminate Hewitt's employment with the City solely because Hewitt had theretofore chosen to exercise his First Amendment right to expose the Lafayette Police Department's pervasive corruption.[28] Further, to the extent Defendants seemingly take the position that entitlement to qualified immunity turns solely on whether the act at issue was discretionary in nature, it should be noted that discretionary decision making is only a threshold requirement that makes the defense *potentially* available. It does not and cannot lie within the province of Defendants' "discretionary" decision making authority to act in complete and total derogation of Plaintiffs' clearly established rights—such as Plaintiffs' fundamental First Amendment right to freedom of speech.

Ultimately, Defendants' entire motion is properly disposed through more generalized principles applicable to all summary judgment motions. Here, the basic facts are not significantly disputed. Instead, resolution of Defendants' motion turns upon the inferences which should be drawn from those facts. Thus, even if this Court were to find Defendants have cited evidence which may tend to raise questions regarding Kane Marceaux's credibility, the Fifth Circuit has routinely found summary judgment inappropriate in such situations.[29] Here, the

---

[28] Pea v. City of Ponchatoula, 2014 WL 1050783 at p. *3.
[29] *See, e.g.*, Leonard v. Dixie Well Serv. & Supply, Inc., 828 F.2d 291, 294 (5th Cir. 1987) (reversing grant of summary judgment in favor of Jones Act defendant where district court improperly weighed evidence and found defendant's employment records "inherently more reliable and accurate" than testimony of plaintiff and co-worker regarding amount of time plaintiff worked on vessel); Lindsey v. Prive Corp., 987 F.2d 324, 327 and n. 4 (5th Cir. 1993) (reversing grant of summary judgment and noting that, "[i]n a motion for summary judgment, the district court is not called upon to make credibility assessments of conflicting evidence ..."); International Shortstop, Inc. v.

ultimate question is truly whether the Defendants' admitted conduct constituted a series of unfortunate "coincidences" or was, rather, the result of a calculated plan or scheme designed / implemented to carry out the Defendants' evil intentions and/or to inflict intentional job-related harm upon the Plaintiffs.  This "credibility" determination is appropriately presented to a jury, and, for that reason, summary judgment dismissing Plaintiffs' claims is *per se* inappropriate in the premises.

V.   **CONCLUSION:**

For all of the foregoing reasons, Defendants' "Motion for Summary Judgment—Uletom Hewitt" [Rec. Doc. 143] should be denied, and this matter should thereafter be permitted to proceed to a full trial on all issues.

SIGNATURES OF COUNSEL AND CERTIFICATE OF SERVICE ON FOLLOWING PAGE(S).

---

Rally's, Inc., 939 F.2d 1257, 1265 (5th Cir. 1991) (reversing summary judgment in favor of defendant where district court improperly determined that jury would have believed defendant's assertion of good faith); Honore v. Douglas, 833 F.2d 565, 569 (5th Cir. 1987) (reversing grant of summary judgment in favor of defendant where defendant's motive for terminating plaintiff raised issues of credibility and motivation); Zerangue v. TSP Newspapers, Inc., 814 F.2d 1066, 1071 (5th Cir. 1987) (reversing grant of summary judgment in favor of defendant where witness's credibility was crucial to the case).

Respectfully Submitted,

| | |
|---|---|
| **J. Christopher Alexander, Sr., Esq., LLC** | **Spring & Spring, LLC** |
| Attorney and Counselor at Law | Attorneys at Law |
| | |
| /s/ J. Christopher Alexander, Sr., Esq. | /s/ S. Stephen Spring, II, Esq. |
| J. Christopher Alexander, Sr., Esq. | S. Stephen Spring, II, Esq. |
| Louisiana Bar Roll No.: 26,591 | Louisiana Bar Roll Number: 12347 |
| 3751 Government Street, Suite "A" | 733 East Airport Avenue, Suite 104 |
| Baton Rouge, Louisiana 70806 | Baton Rouge, Louisiana 70806 |
| 225-761-9456 (telephone) | 225.932.9671 (telephone) |
| 225-761-7899 (facsimile) | 413.451.8923 (facsimile) |
| chris@jcalaw.us | springlaw@gmail.com |
| Co-Counsel for Plaintiffs | Co-Counsel for Plaintiffs |

**R. Royal Alexander, Esq.**
Attorney and Counselor at Law


/s/ R. Royal Alexander, Esq.
R. Royal Alexander, Esq.
Louisiana Bar Roll No.: 25,331
333 Texas Street, Suite 725
Shreveport, Louisiana 71101
318-934-1179 (telephone)
318-673-8456 (facsimile)
ralexander@deep-south.com
Co-Counsel for Plaintiffs

CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing pleading has been served upon the following counsel of record herein:

>**Michael Patrick Corry, Sr., Esq.**
>Briney Foret Corry, LLP
>413 Travis Street
>Lafayette, Louisiana  70503
>337-237-4070 (telephone)
>337-233-8719 (facsimile)
>corry@brineyforet.com
>
>**Hallie Pilcher Coreil, Esq.**
>Briney Foret Corry, LLP
>413 Travis Street
>Lafayette, Louisiana  70503
>337-237-4070 (telephone)
>337-233-8719 (facsimile)
>coreil@brineyforet.com
>
>**Richard Riley Montgomery, Esq.**
>Briney Foret Corry, LLP
>413 Travis Street
>Lafayette, Louisiana  70503
>337-237-4070 (telephone)
>337-233-8719 (facsimile)
>rrmontgomery@brineyforet.com

**I FURTHER CERTIFY** that the foregoing service was effected via delivery of this self-same document into the Court's electronic filing system, which delivery does thereby fulfill counsel's duty to provide notice to all parties herein, and which filing was made and done on this the   7th   day of July, 2014, from the City of Baton Rouge, Parish of East Baton Rouge, State of Louisiana.

>  /s/ J. Christopher Alexander, Sr., Esq.
> J. Christopher Alexander, Sr., Esq.