UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| KANE MARCEAUX, *ET AL.*, <br>     *Plaintiffs*, <br><br><br> *V.* <br><br><br> LAFAYETTE CITY-PARISH CONSOLIDATED <br> GOVERNMENT, *ET AL.*, <br>     *Defendants*. | CIVIL NO.: 6:12-CV-01532 RTH-PJH <br> JUDGE: RICHARD THEODORE HAIK, SR. <br> MAGISTRATE: PATRICK JOHN HANNA |

MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT— NOLVEY STELLY [REC. DOC. 144]

**NOW INTO COURT**, through undersigned counsel, come the Plaintiffs herein, **Kane Marceaux**, **Greg Cormier**, **Scott Poiencot**, **Gabriel Thompson**, **Norbert Myers**, **Novey Stelly**, **Uletom P. Hewitt**, **Regina Briscoe**, and **Aleeta M. Harding**, who file this Memorandum in Opposition to Defendants' "Motion for Summary Judgment—Nolvey Stelly" [Rec. Doc. 144], as filed by Defendants Lafayette City-Parish Consolidated Government, Dee Edward Stanley, Individually, James P. "Jim" Craft, Individually, and George "Jackie" Alfred, Individually, and who, with respect to same, do hereby allege, aver, depose, attest, state, and claim as follows:

I.    PREAMBLE:

Plaintiffs have filed simultaneously filed a Memorandum in Opposition to the Defendants' "Motion for Summary Judgment—Kane Marceaux" [Rec. Doc. 141] and Defendants' "Motion for Summary Judgment—Scott Poiencot, Greg Cormier, and Gabe Thompson" [Rec. Doc. 142].  Defendants' current Motion (directed unto Plaintiff Stelly) adopts and incorporates many of the facts, legal arguments, and exhibits included within Defendants' earlier [Rec. Docs. 141, 142] Motions.  For that reason, and in lieu of simply restating many of

the points heretofore raised in opposition to that earlier Motion, Plaintiffs hereby incorporate by reference their prior memoranda in opposition: In accordance with F.R.C.P. 10(c), "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."  Plaintiffs thus hereby adopt and incorporate by reference their earlier-filed opposition memoranda [as to Rec. Docs. 141 and 142] for all material and relevant purposes.

A century-old axiom retold by Harvard Law Professor Alan Dershowitz (among others) advises young lawyers: "If the facts are on your side, pound the facts.  If the law is on your side, pound the law.  If neither the facts nor the law are on your side, pound the table!"[1]  In keeping with this Dershowitz adage, Defendants' collective summary judgment motions "pound" neither the facts nor the law.  Instead, the lion's share of their "extensive briefing"[2] is given over to "pounding" the individual Plaintiffs—besmirching and often ridiculing the good name and reputation of these valiant officers who were willing to step forward (at extraordinary personal and professional expense) and shine the light of truth upon a police department plagued by rampant misconduct, malfeasance, and widespread, systemic corruption.  After the dust settles, it remains unmistakably clear that Plaintiffs have set forth compelling and compensable claims which cannot be supplanted by *any* amount of character assassination (or general obfuscation).  Plaintiffs were purposely and intentionally harmed by the Defendants, and this summary judgment motion *must* be denied in favor of granting Plaintiffs their day in court.

## II.   SYLLABUS:

The party moving for summary judgment is responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery

---

[1] Ruben Navarrette Jr., *Pounding the Table About Border Episode*, Fort Worth Star-Telegram, March 4, 2007, at E3. *See also*, <http://quoteinvestigator.com/2010/07/04/legal-adage/>.
[2] Covering some one thousand eighty-eight (1,088) total pages.

which show the lack of a genuine issue of material fact for trial.[3]  If the moving party fails to meet this burden, "**the motion must be denied, regardless of the nonmovant's response**."[4] Further, where material facts are in dispute, "the Court must view the facts and draw reasonable inferences in the light most favorable to the plaintiff."[5]  Finally, and perhaps most significantly, determinations of credibility have no place in summary judgment: Since "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," and "trial courts must act with caution in granting summary judgment," it is therefore appropriate for a trial court to simply "deny summary judgment in a case were there is reason to believe that the better course would be to proceed to a full trial."[6]

### III.   FACTUAL BACKGROUND:

"[T]he extensive briefing" heretofore provided by the Defendants sets forth many of the relevant background facts.  Further, this Honorable Court is certainly well-aware of the allegations and claims made by the Plaintiffs against their employer, the Lafayette Police Department.  For now it suffices to briefly adopt, address, and incorporate by reference[7] the disputed and/or "clarified" portions of the "Plaintiffs' Objection to Defendants' Statement of Uncontested Material Facts and Plaintiff's Own Statement of Disputed Material Facts" filed in conjunction with the present opposition.

After paring down all of the Defendants' tangential, irrelevant, and wholly inconsequential "issues," the claims of Nolvey Stelly rest chiefly upon the Court's determination

---

[3] Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995).
[4] Tubacex, Inc. v. M/V Risan, 45 F.3d at 954, emphasis added, *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
[5] Priority Staffing, Inc. v. Regions Bank, 11-0667 (W.D.La. 09/30/2013), --- F.Supp.2d ---, 2013 WL 5462239, p. *2.
[6] Granite State Ins. Co. v. Tyler, 08-1958, 09-0065 (W.D.La. 07/09/2010), --- F.Supp.2d ---, 2010 WL 2757239, p. *1, *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L .Ed.2d 202 (1986).
[7] In accordance with F.R.C.P. 10(c).

of whether a unilateral transfer of Mr. Stelly to a materially-adverse schedule (as to his particular situation) qualifies as a compensable claim.  Or, perhaps more generally, when Chief Craft and his LPD management cohorts "determined it was time for a change," were they truly engaging in an effort to make the Department's "numerous officers … more well-rounded and otherwise prepare them for future promotions"?[8]

Here, while all manner of individual (both anti-Craft and pro-Craft) were identified for transfer along with Plaintiff Stelly, ultimately only the pro-Craft individuals were actually transferred.  Further, once those, like Mr. Stelly, were ensconced in their new positions, the Stanley-Craft Organization effectively "shut down" the hardship waiver process as to any/all individuals who were involved in the present litigation.  Of course, such occurrences could be considered part of the overall patchwork of purely random "curiosities" and "coincidences."  Or, the net effect of these occurrences could be weighed and judged to determine Defendants' malicious intent (if any).

As noted elsewhere, the Defendants' meticulous retelling ascribes no malicious intent to any of these *many* unfortunate "coincidences."  Yet, the entirety of this case rests upon a credibility determination regarding the reason for these duty transfers and other "unfortunate" events which singularly befell those officers, like Stelly, Marceaux, Hewitt, Poiencot, Cormier, and Thompson, all of whom found themselves at odds with the entrenches Stanley-Craft Machine.  Of course, such credibility determinations are particularly ill-suited for determination on summary judgment,[9] and, for that reason alone, Defendants' present motion should be denied.

---

[8] Rec. Doc. 142-2, pp. 12-13.

[9] In resolving a summary judgment motion, a court may not evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in the party's favor, the court must deny the motion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *as cited in* Sellers v. Falcon Services Co., Inc., 99-3735 (E.D.La. 09/08/2000), --- F.Supp.2d ---, 2000 WL 1285418, p. *1.

IV.    LAW AND ARGUMENT:

A.    SUMMARY JUDGMENT

Summary judgment is only proper when the moving party, in a properly supported motion, demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law.[10]  If the moving party carries its burden under F.R.C.P. 56(c), the opposing party must direct the court's attention to specific evidence which demonstrates it can satisfy a reasonable jury that it is entitled to verdict in its favor.[11]  In resolving the motion, the court must review all the evidence and the record taken as a whole in the light most favorable to the party opposing the motion, and draw all reasonable inferences in that party's favor.[12]  Thus, and as applied to cases seeking summary judgment with respect to a defense of qualified immunity: "When [a Government official] argues that he is entitled to qualified immunity from suit, [the court] first view[s] the evidence 'in the light most favorable to the party asserting the injury' and decide[s] if 'the facts alleged show the officer's conduct violated a constitutional right.'"[13]  After reviewing the motions and supporting evidence, the court may grant summary judgment *only* if it is "satisfied that no reasonable trier of fact could find for the nonmoving party."[14]

B.    INAPPLICABILITY OF QUALIFIED IMMUNITY:

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.[15]  The first step in the qualified immunity analysis is to consider whether, taking the facts as alleged in the light most

---

[10] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986).
[11] Anderson, 477 U.S. at 252, 106 S.Ct. at 2512.
[12] Anderson, 477 U.S. at 255, 106 S.Ct. at 2513.
[13] Mesa v. Prejean, 543 F.3d 264, 269 (5th Cir. 2008), *citing* Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).
[14] Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 178 (5th Cir. 1990).
[15] Huff v. Crites, 473 Fed. Appx. 398 (5th Cir. 2012).

favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights.[16]

Second, if the plaintiff has alleged such a violation, the court must then decide whether the

conduct was objectively reasonable in light of clearly established law at the time of the

incident.[17]  This inquiry, the Saucier Court stated, is undertaken in light of the specific context of

the case, not as a broad, general proposition.[18]  The relevant, dispositive inquiry in determining

whether a constitutional right was clearly established is whether it would have been clear to a

reasonable state official that his conduct was unlawful in the situation which he confronted.[19]

Defendants contend Stelly has failed to show general First Amendment retaliation under

§1983, or, more simply, that Stelly cannot prove the "first" Saucier element.  It is well-settled

that in order to set forth and state a claim under 42 U.S.C. 1983, the plaintiff / victim must (1)

allege a violation of a right secured by the Constitution or laws of the United States, and (2)

demonstrate that the alleged deprivation was committed by a person acting under color of state

law.[20]  An at-will public employee may not be discharged for exercising his First Amendment

right to freedom of expression.[21]

Here, and even as read through Defendants' own interpretative gloss, the admitted /

acknowledged facts of this case reveal Stelly has alleged *all* the elements of a 42 U.S.C. 1983

First Amendment retaliatory discharge/wrongful termination claim: (1) He suffered an adverse

employment action; 2) his speech involved a matter of public concern; (3) his interest in

commenting on matters of public concern outweighed the employer's interest in promoting

---

[16] Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  *See also*, Modica v. Taylor, 465 F.3d 174, 179 (5th Cir. 2006), *citing* Hernandez v. Tex. Dep't of Prot. & Reg. Servs., 380 F.3d 872, 879 (5th Cir. 2004).
[17] *Id*.
[18] Saucier, 533 U.S. at 201.
[19] Id. at 202.
[20] Doe v. Covington County Sch. Dist., 675 F.3d 849, 854-55 (5th Cir. 2012), *quoting* James v. Tex. Collin Cnty., 535 F.3d 365, 373 (5th Cir. 2008).
[21] Cabrol v. Town of Youngsville, 106 F.3d 101, 108 (5th Cir. 1997), *citing* Thompson v. City of Starkville, 901 F.2d 456, 460 (5th Cir. 1990).

efficiency; and (4) his speech motivated the employer's adverse decision.[22]   The recent <u>Pea v. City of Ponchatoula</u> case is particularly instructive to this point.  There, the plaintiff was a city employee who "filed suit against his former employer … and its mayor," contending he was terminated "solely in retaliation" for having supported "another mayoral candidate in the March 2012 election."[23]   There, and similar to the present matter, the plaintiff in <u>Pea</u> alleged a longstanding series of discriminatory acts which culminated in plaintiff's ultimate termination. The defendant sought summary judgment on the basis of qualified immunity, and the district court denied the motion, finding the plaintiff met both prongs of the qualified immunity analysis through, *inter alia*, establishing "a violation of a clearly established right."[24]

To state a claim of retaliation for exercise of First Amendment rights under 42 U.S.C. 1983, Employees must show that (1) they engaged in a protected activity, (2) they suffered an adverse employment action, (3) there was a causal connection between the two, and (4) the execution of a policy, custom, or practice of the Employer caused the adverse action.[25]   Much like the plaintiff in <u>Sharp v. City of Houston</u>, Plaintiff Stelly alleges he suffered "retaliation for exercising [their] First Amendment right to free speech."  This Plaintiff's speech—including the present litigation and the entire panoply of events leading to this matter's inception—was related to ongoing, systemic corruption within the Lafayette City Police Department, and, as such, it was deserving of imminent protection.  Further, there was clearly an adverse employment action taken against this Plaintiff where, as part of a collective group, he was suddenly and unilaterally transferred to a materially disadvantageous schedule.  In light of this collective act of retaliatory

---

[22] <u>Modica v. Taylor</u>, 465 F.3d 174, 179-180 (5th Cir. 2006), *citing* <u>Johnson v. Louisiana</u>, 369 F.3d 826, 830 (5th Cir. 2004), *both as cited in* <u>Pea v. City of Ponchatoula</u>, 13-542 (E.D.La. 03/17/2014), --- F.Supp.2d ---, 2014 WL 1050783, p. *3.

[23] <u>Pea v. City of Ponchatoula</u>, 2014 WL 1050783 at p. *1.

[24] <u>Pea v. City of Ponchatoula</u>, 2014 WL 1050783 at p. *3.

[25] <u>Sharp v. City of Houston</u>, 164 F.3d 923, 932 (5th Cir. 1999), *as cited in* <u>Banks v. East Baton Rouge Parish School Bd.</u>, 320 F.3d 570, 579-580 (5th Cir. 2003).

transfer, it is clear that Plaintiff has pled and shown the requisite adverse employment action with sufficient specificity to withstand summary disposition of his claims.

As for the second step of the <u>Saucier</u> inquiry, Defendants' conduct was assuredly *not* objectively reasonable in light of clearly established law at the time of the incident. An official in the position of Craft, *et al*., should have known that he could not simply enact a sudden, retaliatory transfer of any/all employees who chose to exercise their First Amendment right to expose the Lafayette Police Department's pervasive corruption.[26]   Further, to the extent Defendants seemingly take the position that entitlement to qualified immunity turns solely on whether this act at issue were discretionary in nature, it should be noted that discretionary decision making is only a threshold requirement that makes the defense *potentially* available.  It does not and cannot lie within the province of Defendants' "discretionary" decision making authority to act in complete and total derogation of Plaintiff's clearly established rights—such as Plaintiff's fundamental First Amendment right to freedom of speech.

Ultimately, Defendants' entire motion is properly disposed through more generalized principles applicable to all summary judgment motions.   Here, the basic facts are not significantly disputed.   Instead, resolution of Defendants' motion turns upon the inferences which should be drawn from those facts.   Thus, even if this Court were to find Defendants have cited evidence which may tend to raise questions regarding the credibility of Stelly, the Fifth Circuit has routinely found summary judgment inappropriate in such situations.[27]   Here, the

---

[26] <u>Pea v. City of Ponchatoula</u>, 2014 WL 1050783 at p. *3.

[27] *See, e.g.*, <u>Leonard v. Dixie Well Serv. & Supply, Inc.</u>, 828 F.2d 291, 294 (5th Cir. 1987) (reversing grant of summary judgment in favor of Jones Act defendant where district court improperly weighed evidence and found defendant's employment records "inherently more reliable and accurate" than testimony of plaintiff and co-worker regarding amount of time plaintiff worked on vessel); <u>Lindsey v. Prive Corp.</u>, 987 F.2d 324, 327 and n. 4 (5th Cir. 1993) (reversing grant of summary judgment and noting that, "[i]n a motion for summary judgment, the district court is not called upon to make credibility assessments of conflicting evidence ..."); <u>International Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1265 (5th Cir. 1991) (reversing summary judgment in favor of defendant where district court improperly determined that jury would have believed defendant's assertion of good faith); <u>Honore v. Douglas</u>,

ultimate question is truly whether the Defendants' admitted conduct constituted a series of unfortunate "coincidences" or was, rather, the result of a calculated plan or scheme designed / implemented to carry out the Defendants' evil intentions and/or to inflict intentional job-related harm upon the Plaintiff.  This "credibility" determination is appropriately presented to a jury, and, for that reason, summary judgment dismissing Plaintiff's claims is *per se* inappropriate in the premises.

## V.   CONCLUSION:

For all of the foregoing reasons, Defendants' "Motion for Summary Judgment—Nolvey Stelly" [Rec. Doc. 144] should be denied, and this matter should thereafter be permitted to proceed to a full trial on all issues.

Respectfully Submitted,

**J. Christopher Alexander, Sr., Esq., LLC**           **Spring & Spring, LLC**
Attorney and Counselor at Law                        Attorneys at Law


/s/ J. Christopher Alexander, Sr., Esq.               /s/ S. Stephen Spring, II, Esq.
J. Christopher Alexander, Sr., Esq.                   S. Stephen Spring, II, Esq.
Louisiana Bar Roll No.: 26,591                       Louisiana Bar Roll Number: 12347
3751 Government Street, Suite "A"                     733 East Airport Avenue, Suite 104
Baton Rouge, Louisiana 70806                         Baton Rouge, Louisiana 70806
225-761-9456 (telephone)                             225.932.9671 (telephone)
225-761-7899 (facsimile)                             413.451.8923 (facsimile)
chris@jcalaw.us                                      springlaw@gmail.com
Co-Counsel for Plaintiffs                            Co-Counsel for Plaintiffs

---

833 F.2d 565, 569 (5th Cir. 1987) (reversing grant of summary judgment in favor of defendant where defendant's motive for terminating plaintiff raised issues of credibility and motivation); Zerangue v. TSP Newspapers, Inc., 814 F.2d 1066, 1071 (5th Cir. 1987) (reversing grant of summary judgment in favor of defendant where witness's credibility was crucial to the case).

**R. Royal Alexander, Esq.**
Attorney and Counselor at Law


/s/ R. Royal Alexander, Esq.
R. Royal Alexander, Esq.
Louisiana Bar Roll No.: 25,331
333 Texas Street, Suite 725
Shreveport, Louisiana 71101
318-934-1179 (telephone)
318-673-8456 (facsimile)
ralexander@deep-south.com
Co-Counsel for Plaintiffs

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served upon the following counsel of record herein:

**Michael Patrick Corry, Sr., Esq.**
Briney Foret Corry, LLP
413 Travis Street
Lafayette, Louisiana  70503
337-237-4070 (telephone)
337-233-8719 (facsimile)
corry@brineyforet.com

**Hallie Pilcher Coreil, Esq.**
Briney Foret Corry, LLP
413 Travis Street
Lafayette, Louisiana  70503
337-237-4070 (telephone)
337-233-8719 (facsimile)
coreil@brineyforet.com

**Richard Riley Montgomery, Esq.**
Briney Foret Corry, LLP
413 Travis Street
Lafayette, Louisiana  70503
337-237-4070 (telephone)
337-233-8719 (facsimile)
rrmontgomery@brineyforet.com

I FURTHER CERTIFY that the foregoing service was effected via delivery of this self-same document into the Court's electronic filing system, which delivery does thereby fulfill counsel's duty to provide notice to all parties herein, and which filing was made and done on this the __7th__ day of July, 2014, from the City of Baton Rouge, Parish of East Baton Rouge, State of Louisiana.

      /s/ J. Christopher Alexander, Sr., Esq.
      J. Christopher Alexander, Sr., Esq.