UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| KANE MARCEAUX, ET AL | CIVIL ACTION 12-1532 |
| VERSUS | JUDGE HAIK |
| LAFAYETTE PARISH CONSOLIDATED GOVERNMENT, ET AL | MAGISTRATE JUDGE HANNA |

## REASONS FOR JUDGMENT

The defendants' Motion for Summary Judgment seeking to dismiss the claims of Kane Marceaux (Doc. #141) came before the Court for Hearing on July 17, 2014 with oral argument. Following the dismissal of nine plaintiffs, eight individual defendants, and over 100 paragraphs of the Complaints, the current posture of this case stands as the claims of six plaintiffs against four defendants for alleged First Amendment retaliation under 42 U.S.C. section 1983.

**History of the Case**

Kane Marceaux began working for the Lafayette Police Department (LPD) in March 1997. He had been diagnosed with autosomal polycystic kidney disease in 1994, which he failed to disclose on his application for employment. He served in the Patrol Division before being transferred to the position of special agent in the Metro Narcotics Task Force, an agency under the Criminal Investigation Division umbrella, which operated a counter drug program. He served in this position from October 2000 through April 2007.

In April 2007, Mr. Marceaux was assigned to the D.E.A. Task Force, remaining an employee of the LPD and subject to the conflict resolutions in place for the department. He

1

maintained the rank of corporal under Captain Vincent and Major Alfred, and he was supervised by Captain John Babin with the Lafayette Parish Sheriff's Office. His D.E.A. Task Force supervisor was Donald Desalvo. During his service, Mr. Marceaux began secretly recording his fellow officers and supervisors, some of which he used as the basis for his claims in this litigation.

It is undisputed from the evidence that Mr. Marceaux had somewhat of a difficult relationship with his fellow officers throughout his narcotics career. He also had a strained relationship with his supervisors as the evidence shows he often questioned their decisions with no basis. At some point, difficulties in the relationship between the D.E.A. Task Force and the LMNTF arose, and Mr. Marceaux was involved. In December 2011, Mr. Marceaux requested a meeting with Chief Craft, which Chief Craft believed was to discuss an ongoing federal investigation. He met with Chief Craft in the presence of Major Alfred and Will White, a Metro Narcotics Agent, and proceeded to report his personal grievances about the operations of the Metro Narcotics unit. In doing so, Mr. Marceaux jumped the chain of command, in violation of LPD policies, and received a counseling form.

In early January 2012, following the meeting with Chief Craft and in light of the ongoing problems involving the plaintiff, Marceaux's supervisors recommended he be removed from the D.E.A. Task Force and reassigned to his Metro Narcotics position. Chief Craft relied on the opinions of Marceaux's supervisors and returned him to LMNTF in early January 2012. On April 18, 2012, he filed a Complaint with the Board regarding the transfer.

On February 1, 2012, Dr. Dana Rizk advised that Mr. Marceaux was no longer capable of performing field work, which is essential to his job as an officer. He applied for disability

retirement through the Municipal Police Employee's Retirement System, but was denied for failing to disclose his kidney condition, which pre-existed his employment with LPD. The 19th Judicial District Court upheld the denial.

In light of Dr. Rizk's opinion, Mr. Marceaux had been temporarily placed on light duty assignment, where he stayed until March 2012 at which time the department eliminated light duty positions. The undisputed evidence shows that light duty positions were eliminated by the department upon the advice of counsel in an unrelated matter in an effort to avoid potential discrimination claims. The undisputed evidence also shows Mr. Marceaux was not the only officer affected by the decision at the time. Mr. Marceaux was then sent home on sick leave before returning to the department for a short time period to meet with an informant. He then returned to paid sick leave for another full 52 weeks. Upon exhaustion of his leave time, he was medically unable to return to full duty and was terminated on May 31, 2013. During this time, Mr. Marceaux filed a Complaint with the EEOC on March 25, 2012, complaining of the elimination of light duty and alleging discrimination because of his kidney disease.

**Applicable Law**

Rule 56 of the Federal Rules of Civil Procedure govern summary judgment motions. A motion for summary judgment shall be granted when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Defendants clearly carried their burden in this case. The plaintiff's written opposition offered little more than broad, conclusory statements, with no supporting evidence, and plaintiff's counsel offered nothing more during the July 17, 2014 Hearing.

Qualified Immunity is an affirmative defense which may be asserted by government

3

officials who are sued in their personal capacities. If an official's conduct was objectively reasonable in light of clearly established law, he is entitled to qualified immunity. "Once a public official has raised the defense of qualified immunity, the burden rests on the plaintiff to rebut it. On a motion for summary judgment, the disputed facts to which the plaintiff points must be sufficient, if plaintiff's version is accepted, for a reasonable trier of fact to determine (1) that the defendant violated the plaintiff's constitutional rights and (2) that the violation was objectively unreasonable." *Bolton v. City of Dallas,* 472 F.3d. 261 (5th Cir., 2006).

The only remaining claim before the Court is one for an alleged violation of his First Amendment Rights under 42 U.S.C. section 1983 through retaliation. In order to prevail on a First Amendment retaliation claim, thus proving a violation of his constitutional rights, Mr. Marceaux must prove four elements:

    1. He suffered an adverse employment action;

    2. The plaintiff's speech must involve a matter of public concern;

    3. His interest in speaking or petitioning outweighed the government's interest in promoting efficiency; and

    4. His speech motivated the defendant's conduct.

*Harris v. Victoria Independent School District,* 168 F.3d. 216 (5th Cir. 1999)

**Analysis**

First and foremost, the plaintiff has failed to prove he suffered from a violation of his constitutional rights. Under the circumstances of this case, the plaintiff did not speak on a matter of public concern. The three instances which could be considered as a basis for his speech claim are: 1. His 2011 meeting with Chief Craft; 2. His filing a complaint with the Board; and 3. His

filing an EEOC Complaint. Each of these instances concerns Mr. Marceaux's complaints as an employee which are job related or pertaining to personal issues. The Fifth Circuit Court of Appeals has stated, "Matters of public concern are those which can be fairly considered as relating to any matter of political, social, or other concern to the community..." *Branton v. City of Dallas,* 272 F.3d. 720 (5th Cir., 2001). Internal personnel disputes and job related matters are generally not afforded First Amendment protection. Speech which discloses misconduct, corruption, impropriety, or other malfeasance may be considered protective speech, but that is not what is involved in the instant matter.

**Meeting with Chief Craft:** The evidence reveals that Mr. Marceaux met with Chief Craft in the presence of Will White and Major Alfred on December 22, 2011, where he raised various issues and complaints which dealt with decision making within the department and specifics regarding other officers. Although, in his deposition, he claims he raised issues regarding the LPD's lack of concern for public safety at the December 2011 meeting, the email Mr. Marceaux wrote in response to the Counseling Form he received for jumping the chain of command, which reiterated the topics discussed at the meeting, did **not** reveal any matter of public safety or mention of same. And there is no other evidence or specifics set forth regarding the department's lack of concern for public safety.

Further, during the July 17, 2014 Hearing, the Court asked plaintiff's counsel to present any form of evidence in support of the claim, as evidenced on Pages 29 and 30 of the Transcript:

> **THE COURT**: Let's talk about his one thing, because this is your case–this is y'all's case. I didn't file this case. I didn't file suit. The defendants didn't file it. I'm asking you, give me what you think so that I can rule on it. Can

5

I help you with that, too? Let me give you a littel help, since you obviously didn't read the memo as closely as I did. You know what they did when he went to the Captain and the Major? Do you know what the retaliation was? Do you know what it was? Do you have any clue?

    **MR. ROYAL ALEXANDER**: (no response)

    **THE COURT**: You, Mr. Alexander over there (indicating), do you know what happened?

    **MR. CHRIS ALEXANDER**: (no response)

    **THE COURT**: Do y'all read any of the stuff that people file in the courtroom?

    **MR. ROYAL ALEXANDER**: (nods head)

    **THE COURT**: Do you know what the retaliation that y'all contend was? Do you have any idea, Mr. Alexander?

    **MR. ROYAL ALEXANDER**: I think he was punished from jumping the chain.

    **THE COURT**: What kind of punishment? I mean, give me a break here. To just say punishment, let's see if there's a real punishment.

    **MR. ROYAL ALEXANDER**: (no response).

Based on the foregoing, the Court finds the meeting with Chief Craft did not contain First Amendment protected speech. Further, the disclosure to Mr. Marceaux's supervisors that he jumped the chain of command, and their response, was reasonable and proper.

**Complaint to the Board:** Mr. Marceaux argues he filed a Complaint with the Board on April 18, 2012, which he did not produce, alleging retaliation and a violation of standards relative to his transfer. He produced a copy of an August 13, 2012 complaint, referencing the earlier Complaint, stating, "I Cpl Kane Marceaux appeared before this board and requested that the board investigate Major Jackie Alfred for a transfer that was conducted in violation of Lafayette City Police General Orders...I advised the board that I did not feel that I would obtain a fair and unbiased investigation." This does not raise a matter of public concern. Mr. Marceaux's complaint deals with a personal employment issue. He offered no evidence supporting a finding of public concern, and this instance does not rise to the level of First Amendment protected speech.

**EEOC Complaint:** Mr. Marceaux's EEOC Complaint alleged he was discriminated against because of his kidney disease and that his light duty position was terminated. These are not matters of public concern and do not give rise to a First Amendment violation claim.

**Adverse Employment Action:** Even if Mr. Marceaux had expressed some form of protected speech, which he has not shown, he did not suffer an adverse employment action related to his exercise of speech. "For purposes of First Amendment retaliation claim, 'adverse employment actions' are discharges, demotions, refusals to hire, refusals to promote, and reprimands; transfers can constitute adverse employment actions if they are sufficiently punitive, or if the new job is markedly less prestigious and less interesting than the old one." *Breaux v. City of Garland,* 205 F.3d. 150 (5th Cir., 2000). A transfer may also be considered an adverse employment action if it provides less room for advancement. *Forsyth v. City of Dallas,* 91 F.3d. 769 (5thCir., 1996). "However, it is insufficient for a plaintiff to show merely that he has been

transferred from a job he likes to one that he considers less desirable. Rather, a plaintiff must produce enough evidence to allow a reasonable trier of fact to conclude that, when viewed objectively, the transfer caused harm to the plaintiff, "sufficiently serious to constitute a constitutional injury." *Breaux,* 205 F.3d.

Mr. Marceaux's transfer from the D.E.A. Task Force back to the Metro Narcotics division was not a demotion, and he did not suffer in title, position, salary, or benefits. The assignment to the D.E.A. task force was never a permanently assigned position and he was moved to a similar position. It appears to the Court from the evidence that he was transferred to a position where he would be less able to cause tension between cooperating agencies.

The defendants provided an objectively reasonable basis for his transfer following his own questionable behavior which caused discourse between the departments and fellow officers. The Lafayette Police Department has the right to take appropriate action to maintain an effective and efficient department. Further, it is considered a quasi-military structure, which operates through clearly defined chains of command. When Mr. Marceaux jumped the line of command to voice his personal grievances directly to Chief Craft, he violated department policy and was reprimanded. That act, coupled with the others detailed in defendants' brief, led Mr. Marceaux's supervising officers to recommend a transfer, which was completed.

Secondly, the elimination of light duty positions was a department-wide decision. The undisputed testimony shows it was instituted upon advice of counsel in a matter completely unrelated to this case and affected all positions across the board and that Mr. Marceaux was not the only officer affected. The undisputed evidence shows that no lateral transfers which would allow Mr. Marceaux to continue working under his medical restraints became available between

8

April 2012 and May 2013. Consequently, he was terminated when his leave expired and he was medically unable to return to work. The department had allowed him light duty work until the department policy was changed; CAO Stanley directed Chief Craft to determine whether Mr. Marceaux was eligible for a lateral transfer, which he wasn't; and the department paid him for 52 weeks of sick leave, upon the termination of which, he was medically unable to return to work. These circumstances do not give rise to a finding of an adverse employment action.

Because the plaintiff failed to meet the first two prongs of the First Amendment retaliation inquiry, the Court does not need to explore the final prongs. Mr. Marceaux's interest in speaking or petitioning did not outweigh any government interest, because he did not partake in protected speech. Because he did not partake in protected speech, his acts did not motivate the defendant's conduct in any way which could be considered a violation of the law.

Given the undisputed facts of this case, it is held that the plaintiff's constitutional rights were not violated and the defendants' actions were objectively reasonable under the circumstances. The plaintiff offered essentially no rebuttal to the facts as argued by the defendants either in writing or in oral argument. The Court notes the Transcript of the July 17, 2014 speaks volumes. The written opposition contained blanket statements, with no supporting evidence, and the presentation during the July 17, 2014 Hearing failed to produce anything further. The evidence shows the plaintiff caused turmoil in the department with his behavior, including secretly recording his fellow officers, which is certain to lead to distrust and discord. He was generally considered as an individual who caused "drama" by various fellow officers. In addition, he directly disobeyed the department's policy with respect to the chain of command, which earned him a reprimand. In an effort to rectify the problems, his supervisors transferred

9

him to his former position, which was not a demotion or an adverse action. It was, in fact, a position under the same group of agencies where he always worked.

At some point after his transfer, Mr. Marceaux presented medical evidence limiting his ability to work. He applied for disability, but was denied as a result of his dishonesty on his employment application. The department then made efforts to accommodate him with light duty work, until such time that practice was discontinued department-wide. He was then paid for 52 weeks of medical leave, upon the termination of which he was unable to return to full duty, per doctor's orders. At that time, he was terminated.

Given these facts, it is clear to this Court that the defendants are entitled to qualified immunity, as they acted objectively reasonably and that Mr. Marceaux suffered no constitutional deprivation. As the claims against the individuals must fall, those against the municipal employer do, also. In any event, there are no set of circumstances which have been presented to the Court which would support a cause of action by the plaintiff against these defendants. Consequently, the Motion for Summary Judgment is **GRANTED** as there are no issues of material fact in dispute and judgment in favor of the defendants is proper as a matter of law, and this case is **DISMISSED WITH PREJUDICE.**

THUS DONE and SIGNED on this _____ day of August, 2014.

_____
RICHARD T. HAIK, SR., DISTRICT JUDGE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA