


**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE DIVISION**

| | |
|---|---|
| **KANE MARCEAUX, ET AL** | **CIVIL ACTION 12-1532** |
| **VERSUS** | **JUDGE HAIK** |
| **LAFAYETTE PARISH CONSOLIDATED GOVERNMENT, ET AL** | **MAGISTRATE JUDGE HANNA** |

---

**REASONS FOR JUDGMENT**

The defendants' Motion for Summary Judgment seeking to dismiss the claims of Scott Poiencot, Greg Cormier, and Gabe Thompson (Doc. #142) came before the Court for Hearing on July 17, 2014 with oral argument. Following the dismissal of nine plaintiffs, eight individual defendants, and over 100 paragraphs of the Complaints, the current posture of this case stands as the claims of six plaintiffs against four defendants for alleged First Amendment retaliation under 42 U.S.C. section 1983. This Motion for Summary Judgment seeks to dismiss the claims of three separate plaintiffs. For the sake of clarity, the Court will address each plaintiff individually after a general recitation of the facts.

In April 2012, former LPD Officer Ed Mclean was appealing his termination to the Lafayette Municipal Fire and Police Civil Service Board ("Board"). During the course of the proceedings, his attorney Olita Magee produced a document entitled "SL Notice/Instructions" signed by Internal Affairs Sergeant Keith Gremillion, portions of which had been whited out. The document was confidential and had been taken from a shift level investigative file. Ms. Magee refused to reveal her source for the document and an internal investigation was launched

on May 11, 2012.

The initial stage of the investigation revealed there were only fifteen employees who could have had access to the file in question. Of the fifteen, four requested a suspension of their interview in order to obtain an attorney. Those four were Corporal Scott Poiencot, Lieutenant Greg Cormier, Captain Norbert Myers, and Lieutenant Gabe Thompson. Internal Affairs continued interviewing the remaining parties until the officers named, along with Mr. Marceaux, obtained a Temporary Restraining Order.

On May 22, 2012 at 1:49 p.m., Marceaux, Cormier, Poiencot, Myers, and Thompson petitioned the Fifteenth Judicial District Court, Parish of Lafayette, for a Temporary Restraining Order and Preliminary Injunction pursuant to the Policeman's Bill of Rights. Plaintiffs' counsel, Mr. Spring, advised that he sent a courtesy copy by U.S. mail on that date. The Court did not issue service until May 23, 2012, noticing a scheduled hearing to be held on May 29, 2012. LCG and CAO Stanley were served on May 23, 2012, but Chief Craft and Major Alfred were not served until May 25, 2012. Judge Herman Clause signed the TRO on May 23, 2012 prohibiting any further investigation of the leaked document at that time.

On May 29, 2012, the parties appeared before Judge Kristian Earles for a permanent injunction hearing, at which time the plaintiffs presented some secretly taped recordings, and it was disclosed that Poiencot had been secretly taping his fellow officers since 2006. At the conclusion of the hearing, Judge Earles did not find the plaintiffs presented any evidence which could be considered a thread to anybody in the department. The Judge dissolved the TRO as wrongfully issued, denied the request for an injunction, and awarded defendants' costs and fees.

Following the dissolution of the TRO, the internal investigation continued, limiting the potential wrongdoers to five officers. Each officer was required to submit to a polygraph test. Thompson was cleared of wrongdoing, Poiencot and Cormier ultimately admitted to acts which were in violation of the department's General Orders and PPMs. Cormier admitted he took the document from a file to which he was assigned, which was a known violation. He further admitted to whitening out various parts of the document and giving it to Poiencot, who was the LPD civil service representative serving the Board hearing the appeal. Cormier ultimately failed a polygraph test, and Poincot refused it, which is grounds for termination.

Cormier and Poiencot were terminated on September 12, 2012 for their involvement in the leak of the confidential document. Poiencot's refusal to submit to a polygraph examination and participation in secretly recording his fellow officers were further grounds for his dismissal, as both violated the General Orders and PPMs. Gabe Thompson retired on September 11, 2012.

In addition to this course of events, on March 25, 2012, Cormier filed a complaint with the Board requesting an investigation into payroll fraud of a fellow lieutenant. Chief Craft's Affidavit reveals that he brought the matter to CAO Stanley requesting an investigation. LCG ordered its Human Resource Director, Raymond Domingue, to conduct the investigation. Upon conclusion, it was determined that Mr. Cormier's complaint was "unfounded".

During the course of the Internal Affairs investigation into the leaked document, the police department continued daily operations. Chief Craft's Affidavit claims, *and there is no evidence to the contrary*, that various department wide transfers were deemed necessary prior to May 2012. He states that such changes were necessary to form a more well-rounded department and to prepare various officers for future promotions. Twenty-three employees--consisting of

Eleven lieutenants (including three plaintiffs), eight sergeants, three corporals, and one patrol officer-- were ultimately transferred. The officers received notice of the transfers by Internal Memorandum on May 22, 2012, with the effective dates of transfer set for June 10, 2012. The three corporals (including Poiencot) and the patrol officer received their notices on May 25, 2012.

**Applicable Law**

Rule 56 of the Federal Rules of Civil Procedure govern summary judgment motions. A motion for summary judgment shall be granted when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Defendants clearly carried their burden in this case. The plaintiffs' written opposition offered little more than broad, conclusory statements, with no supporting evidence, and plaintiffs' counsel offered nothing more during the July 17, 2014 Hearing.

Qualified Immunity is an affirmative defense which may be asserted by government officials who are sued in their personal capacities. If an official's conduct was objectively reasonable in light of clearly established law, he is entitled to qualified immunity. "Once a public official has raised the defense of qualified immunity, the burden rests on the plaintiff to rebut it. On a motion for summary judgment, the disputed facts to which the plaintiff points must be sufficient, if plaintiff's version is accepted, for a reasonable trier of fact to determine (1) that the defendant violated the plaintiff's constitutional rights and (2) that the violation was objectively unreasonable." *Bolton v. City of Dallas,* 472 F.3d. 261 (5th Cir., 2006).

The only remaining claims before the Court are for an alleged violation of First Amendment Rights under 42 U.S.C. section 1983 through retaliation. In order to prevail on a

First Amendment retaliation claim, thus proving a violation of their constitutional rights, the plaintiffs must prove four elements:

1. They suffered an adverse employment action;
2. Their speech must involve a matter of public concern;
3. Their interest in speaking or petitioning outweighed the government's interest in promoting efficience; and
4. Their speech motivated the defendant's conduct.

*Harris v. Victoria Independent School District,* 168 F.3d. 216 (5th Cir. 1999)

The Fifth Circuit Court of Appeals has stated with respect to adverse employment actions, "For purposes of First Amendment retaliation claim, 'adverse employment actions' are discharges, demotions, refusals to hire, refusals to promote, and reprimands; transfers can constitute adverse employment actions if they are sufficiently punitive, or if the new job is markedly less prestigious and less interesting than the old one." *Breaux v. City of Garland,* 205 F.3d. 150 (5th Cir., 2000). A transfer may also be considered an adverse employment action if it provides less room for advancement. *Forsyth v. City of Dallas,* 91 F.3d. 769 (5thCir., 1996). "However, it is insufficient for a plaintiff to show merely that he has been transferred from a job he likes to one that he considers less desirable. Rather, a plaintiff must produce enough evidence to allow a reasonable trier of fact to conclude that, when viewed objectively, the transfer caused harm to the plaintiff, "sufficiently serious to constitute a constitutional injury." *Breaux,* 205 F.3d.

**Application of the law to Scott Poiencot Claims:**

Mr. Poiencot claims retaliation as he was transferred from his position on May 22, 2012 and his ultimate termination. He claims various grounds for a violation of his Constitutional rights, including an exchange he had with a citizen, his being made the target of various "baseless" administrative investigations, and his filing the TRO suit. Although the plaintiffs' broadly claim in their written opposition, "These plaintiffs' speech–including the present litigation and the entire panoply of events leading to this matters inception–was related to ongoing, systemic corruption within the Lafayette City Police Department and, as such, it was deserving of imminent protection", they have offered absolutely no evidentiary support for this contention. Further, the Court notes that the "present litigation" cannot serve as a basis for a First Amendment retaliation claim which is the basis of the present litigation.

The plaintiffs' written opposition in this matter is virtually identical to that which plaintiffs' counsel filed in response to all four summary judgment motions. It offers only broad, conclusory allegations, with no supporting evidence and little by way of specifics with respect to these parties. At the July 17, 2014 Hearing, plaintiffs' counsel failed to offer anything further in support of his clients' positions, as evidenced by the Transcript (Doc. #161).

The first prong of the inquiry is whether the plaintiff suffered an adverse employment action. The Court finds Mr. Poincot did not. Mr. Poiencot was transferred from Precinct 3 as a resource officer to Precinct 4, Shift C. He retained his ranking as corporal, his salary, and his benefits. As he had been assigned three out of four times before, he was given a night shift. Although he complained that he did not want to work on the north side of town because it was a

high crime area, he had served for several years as a narcotics agent with direct interaction with criminals. Additionally, it is an officer's duty to serve all areas of the community. This assignment was not out of the ordinary or unreasonable. He was not demoted and he was not negatively affected when viewed objectively. Although he argued Precinct 4 was "Hell's Kitchen", the testimony of his fellow officers reveals that to be inaccurate. One fellow officer testified that Precinct 1 was considered "Hell's Kitchen" and that Precincts 1, 2, and 3 were the least desirable areas. Mr. Thompson, when deposed, did not seem aware that the title of "Hell's Kitchen" belonged outside of the realm of television. Clearly, from the plaintiffs' own inconsistent testimony, the complaints about various precincts being punitive assignments carry little weight.

Even if his transfer was an adverse action, which it was not, he has shown no basis which would make it retaliatory, as he did not engage in protected speech. He raised an argument about an exchange he had with a private citizen, but offered no supporting evidence that it involved a matter of public concern. His secret recording of the meeting with the private citizen offered no evidence of a public matter. Additionally, he offered no evidence whatsoever that his being the target of any investigation serves as a basis for a First Amendment retaliation claim.

The TRO suit at issue, of which Mr. Poiencot was a petitioner, did not relate to a matter of public concern. It was an effort to stop an investigation into a leaked document which he claims was a "nullity at law." This investigation concerned personal employment conditions and were not a public issue. **Further, the decision to transfer him took place prior to his filing suit for a TRO, according to the undisputed testimony in Chief Craft's Affidavit. Notices to nineteen of the twenty-three transfers were issued on May 22, 2012, the same day the**

**TRO was filed, and prior to notice of suit being provided to the defendants.** The remaining were issued only three days later. Common sense tells us that such a large spread shifting of personnel, some of whom are plaintiffs in this case and some of whom are not, is not decided on a whim. It requires planning. To argue that the decision to transfer–and issuing the notices of same-- was retaliation for a TRO suit filed on that same date (or within days), and not yet served on the defendants, rings hollow.

Mr. Poeincot's ultimate termination, which is an adverse employment action, can not be held retaliatory. He was terminated for violating the law and policies of the department through his participation in disseminating a confidential document, which had been wrongfully removed from an investigative file within the police department. Additionally, Mr. Poeincot's clandestine recordings of fellow officers and refusal to submit to a polygraph examination were further grounds for his termination. The police department took objectively reasonable actions against Mr. Poeincot in response to his bad acts. He has failed to provide support for his argument that his termination was the result of retaliation for exercising his First Amendment rights.

**Application of the law to Greg Cormier's Claims:**

Mr. Cormier argues he was retaliated against for filing a payroll fraud complaint with the Board and for filing the TRO suit in state court. He argues his retaliation consisted of a transfer and ultimate termination. For the same reasons the Court has found the TRO suit does not give rise to a retaliation claim with respect to the other plaintiffs, it finds so here. The TRO suit did not involve a matter of public concern, as held by the Judge Earles, and this Court agrees. Secondly, it was filed, and not yet served, on May 22, 2012, the exact same dates notices of

department wide transfers were issued. It defies common sense to find the defendants coordinated all twenty three transfers–including some non-plaintiffs–and issued notices in retaliation of a suit with which they had not yet been served and which was filed on that same date. The Affidavit of Chief Craft stated, with no evidence to the contrary, the transfers had been planned prior to the TRO. The transfers were planned to make a more well rounded force and to train officers for higher positions, according to the evidence.

The filing of a payroll fraud complaint does involve a matter of public concern and could possibly give rise to a retaliation claim if the plaintiff suffered an adverse employment action, which this Court finds he did not. Mr. Cormier was transferred from Patrol Support (Patrol Division) to Precinct 4, Shift C (Patrol Division). He had worked this area at other times in his career, he was not demoted, he maintained his ranking, he maintained his salary, and he maintained his benefits. His own testimony revealed that he preferred to work nights and had been assigned to Precinct 4 at other times in his career. He offers no proof that Precinct 4 is an objectively worse position than he was already in. He failed to carry his burden of proof with respect to retaliation stemming from his transfer.

Mr. Cormier was ultimately terminated as a result of his improper removal of a confidential document from an investigative file, tampering with the document, and disseminating it to other parties, all in violation of the law and policies of the department. Further, Mr. Cormier failed a polygraph examination taken in connection with the investigation of the leaked document. These were clear grounds for his termination. He has offered no credible proof that he was terminated for any other reason.

In fact, plaintiffs' counsel admitted the termination of Mr. Poiencot and Mr. Cormier was objectively reasonable in the following exchange during the July 17, 2014 Hearing:

**THE COURT**: Were they not objectively reasonable for terminating those two guys, those two individuals, because they violated a policy they knew they could be terminated for?

**MR. ROYAL ALEXANDER**: Under those circumstances, no, it wouldn't be objectively reasonable.

**THE COURT**: Okay. It would not be objectively reasonable?

**MR. ROYAL ALEXANDER**: Unreasonable. Excuse me.

(Transcript, July 17, 2014 Hearing, Page 48)

**Application of the law to Gabe Thompson's Claims:**

Mr. Thompson retired from the police department on September 11, 2012. He was not terminated and was, in fact, cleared of wrongdoing in the leaked document case. He has offered no credible or convincing argument for constructive discharge and when his counsel was specifically and directly asked during the June 17, 2014 to provide any proof whatsoever that he felt pressured to retire, he could offer none (Transcript, July 17, 2014 Hearing, Pages 49-53, Doc. #161). The following exchange at Pages 51, 52 of the Transcript demonstrates this:

**THE COURT**: Okay. So you have nothing else except to say–no proof, no evidence, no anything that it was not objectively–that they tried to push him and made him quit. Am I correct?

**MR. ROYAL ALEXANDER**: (no response)

**THE COURT**: Mr. Alexander?

**MR. ROYAL ALEXANDER**: Yes, your Honor.

In *Hunt v. Rapides Healthcare Systems, LLC,* 277 F.3d. 757 (5th Cir., 2001), the appellate court held that courts should consider the following factors when determining whether an employee has been constructively discharged: 1. demotion; 2. reduction in salary; 3. reduction in job responsibilities; 4. reassignment to menial or degrading work; 5. badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or 6. offers of early retirement that would make the employee worse off whether the offer was accepted or not. Mr. Thompson was not demoted, did not receive a reduction in salary, and was not offered an early retirement.

With respect to factor 3, he argues his new supervisor, Captain Montgomery, gave him fewer responsibilities, but admitted that may have been the result of how different Captains run their precincts. He admitted that Captains may run their precincts as they see fit. He offered no proof that the amount of responsibility he was given by Captain Montgomery was in any way retaliatory. He offered no proof that other officers in his position under Captain Montgomery were given more responsibility or that he was treated differently from similarly situated officers. He also offered no evidence showing that Chief Craft had any idea what duties Captain Montgomery would give to Mr. Thompson.

He further did not provide any evidence that he was assigned to menial or degrading work, as set forth in factor 4. Additionally, he did not offer proof of badgering, harassment, or

humiliation calculated to encourage his resignation, as contemplated by factor 5. He offered no argument other than mentioning there was general talk about the happenings in the department, which would be normal given the circumstances. When there is a serious internal investigation taking place, departmental gossip will ensue. He did not present any persuasive evidence to show the talk was directed toward him, about him, or designed to force his resignation. And, in fact, he was cleared of any wrongdoing.

It is held the voluntary retirement of Mr. Thompson, with no evidence of pressure or constructive discharge, is not an adverse employment action.

With respect to Mr. Thompson's transfer, he was laterally transferred from Precinct 3 to Precinct 4, without a loss of rank, benefits, or salary. The only change in his working conditions is that his hours changed from 7 a.m.–4:00 p.m. to 8:00 a.m.–5:00 p.m. He offered no evidence to support a finding of adverse employment action in connection to his transfer. Although he complained he was given fewer responsibilities by his new Captain, as previously discussed, that claim does not give rise to a cause of action. It is held that Mr. Thompson's transfer was not an adverse employment action.

For the same reasons outlined with respect his co-plaintiffs, the filing of the TRO suit was not protected speech giving rise to a First Amendment Claim. Additionally, it does not give rise to a retaliation claim as a basis for Mr. Thompson's transfer, as his transfer was not an adverse employment action <u>and was decided and noticed prior to the filing and notice of the TRO suit</u>.

Based on the foregoing, it is held the defendants are entitled to Qualified Immunity as the plaintiffs did not participate in protected speech under the First Amendment, did not suffer any

adverse employment actions, and were treated objectively reasonably by the defendants given the totality of the situation.

The Motion for Summary Judgment with respect to the claims of Poiencot, Cormier, and Thompson is **GRANTED** and their claims are **DISMISSED** in their entirety.

**THUS DONE** and **SIGNED** on this 8th day of August, 2014.

**RICHARD T. HAIK, SR., DISTRICT JUDGE**
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**