U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED   LAFAYETTE

AUG 0 8 2014

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

KANE MARCEAUX, ET AL

VERSUS

LAFAYETTE PARISH CONSOLIDATED
GOVERNMENT, ET AL

CIVIL ACTION 12-1532

JUDGE HAIK

MAGISTRATE JUDGE HANNA

## REASONS FOR JUDGMENT

The defendants' Motion for Summary Judgment seeking to dismiss the claims of Uletom Hewitt (Doc. #143) came before the Court for Hearing on July 17, 2014 with oral argument. Following the dismissal of nine plaintiffs, eight individual defendants, and over 100 paragraphs of the Complaints, the current posture of this case stands as the claims of six plaintiffs against four defendants for alleged First Amendment retaliation under 42 U.S.C. section 1983.

### History of Uletom Hewitt

Uletom Hewitt was hired as an officer in June 2006, beginning his career in Precinct 2 where he remained until a transfer to Precinct 1 in 2009. It is undisputed that Mr. Hewitt was ultimately terminated on August 30, 2011 following a tumultuous career, replete with disciplinary problems.

The evidence, which is not disputed by the plaintiff, shows in 2007, Mr. Hewitt received a counseling form for allegedly investigating a female patron at Gardner's Oil Change. Also in 2007, he was investigated following a citizen complaint, from which he was eventually exonerated. He received a counseling form in 2008 for failing to volunteer for the Crawfish

1

Festival.  And, in March 2011, he was suspended for five days following actions which caused a panic and chaos at the Acadiana Mall.  Mr. Hewitt disobeyed his supervisor and caused alarm to the public by announcing there was a bomb on the premises and people should evacuate.  The LPD determined he was in violation of General Orders, PPMs, and the Louisiana Revised Statutes.

Mr. Hewitt was ordered to undergo a Fitness for Duty Examination, the results of which could not be authenticated as the typed report contained a mark out and unidentified handwriting. He then reported for a second examination, which was unable to be completed as he failed to comply with the requirements.

It seems he ultimately returned to work as he was again suspended for seven days in August 2011 for violations related to his in-dash camera.  Mr. Hewitt remained on paid leave during his suspensions, during which time he was required to remain available during regular business hours.  While on leave, however, he failed to respond to phone calls and messages from the department during business hours.  Further, he was providing off-duty security services in exchange for free rent, which was prohibited while he was on leave.  Additionally, he failed to complete required forms; he was untruthful in statements to his supervising officers; he was in possession of numerous prohibited items, including a composition book containing the personal information of various suspected prostitutes (including names, body dimensions, and phone numbers), as well as tobacco products; and an authorized search of his laptop computer revealed non-police related documents and a photo of a nude woman.  His internet usage also contained various non-police related searches.  In light of all of the above, Mr Hewitt was terminated on August 30, 2011.

Following his termination, it was learned that Mr. Hewitt had also been secretly recording his fellow officers and other LCG employees for a period of time with devices such as a disguised button, video recording sunglasses, and recording pens.

The defendants argue Mr. Hewitt's claims are prescribed, and this Court agrees. Section 1983 claims prescribe in accordance with state law. In Louisiana, the time period for retaliation claims is one year from the date of injury. Mr. Hewitt claims his transfer to Precinct 1, which occurred in June 2009, was punitive and retaliation. That transfer, however, occurred over three years before this suit was filed. Mr. Hewitt's suspensions and ultimate termination were not raised in the original suit filed on June 5, 2012. Originally, there was a broad, general statement that Mr. Hewitt's Constitutional rights were violated without any further information. The specifics were first presented in the First Amended and Supplemental Complaint filed on September 20, 2012. This amendment could relate back to the original filing date of June 5, 2012 if it arises out of a common core of operative facts. *Mayle v. Felix,* 545 U.S. 644 (2005). Here, however, Mr. Hewitt was terminated long before the claims of the other plaintiffs arose, so a relation back is improper. His August 30, 2011 termination, and all prior suspensions, took place over one year before the September 20, 2012 filing. As such, Mr. Hewitt's claims are prescribed.

In fact, plaintiff conceded this fact during the July 17, 2014 Hearing, as shown on Page 53 of the Transcript (Doc. #161):

> **THE COURT**: Well, do you have any evidence that this wasn't filed late, that in fact it hasn't prescribed?
>
> **MR. ROYAL ALEXANDER**: Just–not at this moment, Your Honor.

THE COURT: Well, you knew this was coming. Do you have anything at all that would show that this matter has not prescribed?

MR. ROYAL ALEXANDER: (no response)

THE COURT: Do you agree with the timetables that counsel just said?

MR. ROYAL ALEXANDER: I don't know that I can disagree with it, Your Honor.

At that point in the Hearing, the Motion for Summary Judgment was **GRANTED** as Mr. Hewitt's claims were admittedly prescribed.

For the sake of completion, however, the Court will address the details of Mr. Hewitt's claims:

**APPLICABLE LAW**

Rule 56 of the Federal Rules of Civil Procedure govern summary judgment motions. A motion for summary judgment shall be granted when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Defendants clearly carried their burden in this case. The plaintiff's written opposition offered little more than broad, conclusory statements, with no supporting evidence, and plaintiff's counsel offered nothing more during the July 17, 2014 Hearing. The Court notes that a reading of the Transcript, filed as Document #161 in the record, speaks volumes.

Qualified Immunity is an affirmative defense which may be asserted by government officials who are sued in their personal capacities. If an official's conduct was objectively reasonable in light of clearly established law, he is entitled to qualified immunity. "Once a public official has raised the defense of qualified immunity, the burden rests on the plaintiff to rebut it. On a motion for summary judgment, the disputed facts to which the plaintiff points must

be sufficient, if plaintiff's version is accepted, for a reasonable trier of fact to determine (1) that the defendant violated the plaintiff's constitutional rights and (2) that the violation was objectively unreasonable." *Bolton v. City of Dallas*, 472 F.3d. 261 (5th Cir., 2006).

The only remaining claim before the Court is one for an alleged violation of his First Amendment Rights under 42 U.S.C. section 1983 through retaliation.  In order to prevail on a First Amendment retaliation claim, thus proving a violation of his constitutional rights, Mr. Hewitt must prove four elements:

1. He suffered an adverse employment action;

2. The plaintiff's speech must involve a matter of public concern;

3. His interest in speaking or petitioning outweighed the government's interest in promoting efficience; and

4. His speech motivated the defendant's conduct.

*Harris v. Victoria Independent School District*, 168 F.3d. 216 (5th Cir. 1999)

**Application of the Law to Mr. Hewitt**

It is clear from the unrefuted evidence in this case that Mr. Hewitt's Constitutional rights were not violated by the defendants and he suffered no adverse employment action arising from retaliation. "For purposes of First Amendment retaliation claim, 'adverse employment actions' are discharges, demotions, refusals to hire, refusals to promote, and reprimands; transfers can constitute adverse employment actions if they are sufficiently punitive, or if the new job is markedly less prestigious and less interesting than the old one." *Breaux v. City of Garland*, 205 F.3d. 150 (5th Cir., 2000).   A transfer may also be considered an adverse employment action if it provides less room for advancement. *Forsyth v. City of Dallas*, 91 F.3d. 769 (5thCir., 1996).

"However, it is insufficient for a plaintiff to show merely that he has been transferred from a job he likes to one that he considers less desirable. Rather, a plaintiff must produce enough evidence to allow a reasonable trier of fact to conclude that, when viewed objectively, the transfer caused harm to the plaintiff, "sufficiently serious to constitute a constitutional injury." *Breaux*, 205 F.3d.

A simple reading of the record reveals that the disciplinary actions encountered by Mr. Hewitt in the form of paid administrative leaves, FFDEs, and administrative investigations were the direct result of his own bad acts. These are not adverse employment actions. His suspensions and ultimate termination are adverse employment actions, but the plaintiff has offered no proof whatsoever that they were in the form of retaliation. The defendants, however, have offered sufficient proof of a basis for taking such action and of reasonableness. The police department has the right to take action against its employees, if necessary, to create an efficient and properly run agency. Mr. Hewitt's adverse employment actions arose from prohibited conduct, which was in direct violation of the General Orders of the department, PPMs, and/or Louisiana Revised Statutes. His suspensions, and ultimate termination, were reasonable actions by the department and those in charge under the circumstances.

Mr. Hewitt's transfer in 2009 does not give rise to a Section 1983 retaliation claim because he did not participate in any First Amended protected activity prior to the transfer and the move was not an adverse employment action. He made a lateral move to another Precinct, with neither his duties or schedule changed. It is absurd to assert that a move which in no way demoted or negatively affected the plaintiff under the law, over three years prior to filing a lawsuit, which was in no way connected to any First Amendment activity could give rise to a retaliation claim.

6

The record, in fact, is devoid of any speech by Mr. Hewitt which could be conceived as protected under the First Amendment. His allegations deal solely with personal and job related issues, far outside of public concern. He failed to show that he spoke out, as a citizen, on a matter of public concern and that he suffered a retaliatory adverse employment action as the result. The record proves that Mr Hewitt's own misconduct was the cause of his job related problems and the basis for the reasonable response by the defendants.

Based on the foregoing, the Court finds the defendants are entitled to Qualified Immunity as they acted with objective reasonableness in the actions taken with Mr. Hewitt and that Mr. Hewitt has failed to prove he suffered a violation of a Constitutional right. In fact, given the facts as presented, which are undisputed by the plaintiffs, if the department had not taken such action against Mr. Hewitt, it likely would have been in violation of its obligation to the community to run an effective and professional department.

Mr. Hewitt made claims against CAO Stanley and Major Alfred personally which are wholly unsupported by any reliable facts or evidence. Beyond the very general and broadly painted allegations the plaintiffs have become known for in this case, Mr. Hewitt offered no evidence supporting claims against these defendants.

Based on the foregoing, the Motion for Summary Judgment is **GRANTED** and the claims of Uletom Hewitt are **DISMISSED WITH PREJUDICE**, in their entirety.

7

**THUS DONE** and **SIGNED** on this _____ day of August, 2014.


_____
RICHARD T. HAIK, SR., DISTRICT JUDGE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA